# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ALFONSO COLORADO PEREZ, | Case No: 8:26-cv-47 |
| Petitioner/Plaintiff. | |
| -vs- | |
| Pamela Bondi, Secretary, Attorney General; <br> Kristi Noem, Secretary, U.S. Department of Homeland Security; <br> Todd M. Lyons, Acting Director of Immigration And Customs Enforcement; <br> David Easterwood, Acting Director, St. Paul Field Office Immigration and Customs Enforcement; <br> Sheriff Robert Sorenson, Cass County Sheriff. | **EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION** |
| Respondents/Defendants. | |

## INTRODUCTION

Petitioner Alfonso Colorado Perez (hereinafter "Petitioner") has been detained by Immigration and Customs Enforcement ("ICE") and denied an opportunity to seek release on bond.

Petitioner requests a Temporary Restraining Order ("TRO") or Preliminary injunction ("PI") to (1) enjoin Respondents from moving Petitioner outside of the geographic boundaries of the District of Nebraska while detained and (2) order the release of the Respondent, or (3) to provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a)(2)(A) within seven days.

1

Petitioner's continued detention without the opportunity to be heard in a bond hearing is inconsistent with the INA. Courts have repeatedly held that individuals similarly situated to Petitioner were detained under 8 U.S.C. § 1226, and the plain text, legislative history, and longstanding administrative practice reinforce the conclusion that Respondents cannot detain him under 8 U.S.C. § 1225(b)(2)(A) now, having detained him more than twenty-six years after he arrived in the United States.

Petitioner is very likely to prevail on the merits of his case because his detention, absent the ability to post bond, is a quintessential irreparable harm. Respondents conversely have no interest in unlawfully detaining Petitioner. The Court should grant this motion.

## FACTS

Petitioner, a native and citizen of Mexico, entered the United States without inspection around 1999. He applied for a U-visa as qualifying family member on March 13, 2023. *See Ex. A*. DHS was made aware of his presence within the United States when the Petitioner filed his application for a U-visa as a qualifying spouse. Instead of denying or rejecting the application and detaining the Petitioner, on July 1, 2025, he was granted a Bona Fide Determination Notice and granted deferred action while his U-visa application is pending. Petitioner was detained by Respondent when Metro Surge Team 3 saw Petitioner in his Ford F-150 in Minnesota on January 3, 2025, and determined he was in the United States unlawfully; no criminal charges were

2

brought against the Petitioner. *See Ex. B*. Petitioner was then transferred to the Cass County Jail, where he has remained since.

## ARGUMENT

### I.   THE COURT HAS JURISDICTION OVER THIS MATTER.

The Petitioner is seeking habeas corpus relief under 28 U.S.C § 2241. "A person challenging the lawfulness of immigration-related detention may also avail themselves of a writ of habeas corpus." *Maldonado v. Olson*, 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (citing *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020. 8 U.S.C. § 1252(b)(9) and § 1252(g) do not preclude review of Petitioner's claims.

8 U.S.C. § 1252(b)(9) comes under the authority of § 1252(b), which lists "[r]equirements for review of orders of removal." This provision channels review of "final orders of removal" to federal courts of appeals. 8 U.S.C. § 1252(b)(9). Nothing in this record indicates that any order of removal has been issued for Petitioner. Without an order of removal, § 1252(b)(9) alone does not bar this Court from reviewing Petitioner's TRO regarding the legality of the new DHS policy and bond orders applying § 1225 rather than § 1226(a). Indeed, custody is entirely separate and independent from removal proceedings. *Compare* 8 U.S.C. § 1229a, *with* 8 U.S.C. § 1226. By regulation, "[c]onsideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding." 8 C.F.R. § 1003.19(d). Custody and removal are distinct issues. The Supreme Court has also rejected the government's proffered broad

3

interpretation of 8 U.S.C. § 1252(b)(9) as it "would lead to staggering results." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018).

8 U.S.C. § 1252(g) is also not relevant here. Petitioner is asserting that the application of 8 U.S.C. § 1225(b)(2)(A) was improper and that he is not subject to mandatory detention. He is not challenging any decision to commence proceedings, adjudicate cases, or execute removal orders. These matters are "separate and apart from" custody, 8 C.F.R. § 1003.19(d), which is what is challenged here. Moreover, the initiation of proceedings is governed by 8 U.S.C. § 1229, regardless of whether the mandatory detention provisions at 8 U.S.C. § 1225(b)(2)(A), or the discretionary detention framework at 8 U.S.C. § 1226(a)(2)(A), apply. Proceedings are commenced with the filing of an NTA that complies with the requirements at 8 U.S.C. § 1229(a). *Cf.* 8 U.S.C. §§ 1225(b)(2)(A); 1229(a); 1229a.

Respondents have not "commenced" proceeding under 8 U.S.C. § 1225(b)(2). Section 1229 is titled "initiation of proceedings" and governs that process. This is not a challenge of the Respondents power to commence, initiate, or execute the removal process. Petitioner is not challenging any action taken under 8 U.S.C. § 1229, but rather a challenge of how to interpret the sections that address Respondents' authority to detain,

Furthermore, the Supreme Court has previously characterized § 1252(g) as a narrow provision, determining that it applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *Reno v. Am.-Arab Anti-Discrimination*

4

*Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). The Supreme Court found it "implausible that the mention of *three discrete events* along the road to deportation was a shorthand way to referring to all claims arising from deportation proceedings." *Id.* (emphasis added).

Moreover, the Eighth Circuit has explicitly observed "an exception to § 1252(g) for a habeas claim raising a pure question of law." *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (citing *Jama v. I.N.S.*, 329 F.3d 630, 633 (8th Cir. 2003), *aff'd sub nom. Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 125 S. Ct. 694, 160 L. Ed. 2d 708 (2005)). This is a pure question of law in the context of habeas.

Finally, section 1252, titled "Judicial Review of Orders of Removal," contains a provision detailing "[m]atters not subject to judicial review." *See* 8 U.S.C. § 1252(a)(2). This provision contains four subsections outlining categories of claims that are not subject to judicial review. *See* 8 U.S.C. § 1252(a)(2)(A)–(D). None of these subsections precluding judicial review apply to this matter, as the specified statutory provisions do not cite to 8 U.S.C. §§ 1225 or 1226, which are the provisions in dispute. No part of § 1252 deprives the Court of jurisdiction.

## II. EXHAUSTION IS FUTILE WHEN RESPONDENTS COLLABORATE IN DEVELOPING A NATIONWIDE CHANGE OF POLICY

The Supreme Court has noted that prudential exhaustion is not required when to do so would be futile or "the administrative body . . . has . . . predetermined the issue before it." *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992). The Board of Immigration Appeals – i.e. the Department of Justice – decided *Matter of Yajure Hurtado*, in which the Department held that 8 U.S.C. §

1225(b)(2)(A) governs custody of aliens like Petitioner. 29 I. & N. Dec. 2016 (BIA 2025). Because *Hurtado* binds the underlying administrative proceedings, 8 C.F.R. § 1003.1(g)(1), those proceedings are rendered entirely futile. The BIA has had an opportunity to decide the matter, the BIA has spoken and now controls the hands of Immigration Judges.

Further, "A party also may escape the exhaustion requirement if it is able to show that the agency clearly exceeded its statutory authority." *Trinity Indus., Inc. v. Reich*, 901 F. Supp. 282, 286 (E.D. Ark. 1993) (citing *Philip Morris, Inc. v. Block*, 755 F.2d 368, 370 (4th Cir. 1985)).

*Hurtado* does not bind the Court. The BIA's interpretations merit respect, but not when they rest on an implausible reading of unambiguous statutory text. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (longstanding executive practice can inform statutory meaning).

That is the case here, and similarly situated courts have agreed. Petitioner's position enjoys overwhelming support. Courts have addressed this issue in over 362 cases heard by over 160 different judges. Petitioners have prevailed in nearly all of them. *See Barco Mercado v. Francis*, --- F. Supp. 3d ----, 2025 WL 3295903, at *4 (S.D. N.Y. Nov. 26, 2025) (collecting cases).

### III. A TEMPORARY RESTRAINING ORDER IS APPROPRIATE.

"[T]he standard for analyzing a motion for a temporary restraining order is the same as a motion for a preliminary injunction." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022). The relevant factors are: 1) the likelihood of irreparable harm; 2) the likelihood of success on the

6

merits; 3) relevant hardships, and 4) public interest. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112 (8th Cir. 1981). The Eighth Circuit has held that the first two factors are particularly important as they comprise what is known as the "traditional test" employed to evaluate the necessity of a Temporary Restraining Order ("TRO"). *Id.* at 12. These factors all militate towards a TRO.

### A. Likelihood of Irreparable Harm and hardship

At the outset, "the equitable balancing test a court must conduct using the *Dataphase* factors requires an initial determination that threatened irreparable harm exists." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987). It most certainly does in this case.

Petitioner faces irreparable harm from loss of liberty. Freedom from imprisonment "lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

The government's actions have already deprived Petitioner of his liberty, and because these violations continue each day he remains in custody, he has suffered and will continue to suffer actual prejudice. *See Puc-Ruiz v. Holder*, 629 F.3d 771, 782 (8th Cir. 2010) (prejudice exists where an alternate result may well have occurred absent the violation). Immediate relief is warranted to halt ongoing harm and restore his rights. Petitioner's continued unjustified detention absent a bond hearing constitutes irreparable and immediate harm and justifies the issuance of injunctive relief while his habeas proceeding pends.

Petitioner will be further harmed if Respondent is not released, he is currently being held in Cass County wherein Counsel is not able to know with certainty that vital requests for confidential attorney-client exchanges will be honored. Cass County currently has no formal process in place for Counsel to request protected attorney-client exchanges and the Petitioner is required initiate all calls with Counsel.  Further, moving Petitioner out of this District complicates the need for any appearance both in this Court and Immigration Court, and would further delay a hearing regarding his detention.

Given the harm of unlawful detention absent a release or bond and issues arising from Petitioner's movement outside of Nebraska, irreparable harm has been established.

### B. Likelihood of Success on Merits

"While no single factor is determinative, the probability of success factor is the most significant" in determining whether to grant a TRO. *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013). Analyzing the likelihood of a party's success on the merits is not an inquiry aimed at pinning down the mathematical probability that a plaintiff will prevail on the merits. Rather, the court seeks to ascertain whether the "balance of equities so favors the movant that justice requires the Court to intervene to preserve the status quo until the merits are determined." *Dataphase Systems, Inc.*, 640 F.2d at 113.

Petitioner's position enjoys overwhelming support. Courts have addressed this issue in over 362 cases heard by over 160 different judges. Petitioners have prevailed in nearly all of them. *See Barco Mercado v. Francis*, --- F. Supp. 3d ----, 2025 WL 3295903, at *4 (S.D. N.Y. Nov. 26, 2025)

(collecting cases). As such, Petitioner is also likely to succeed on the merits of his claim that 8 U.S.C. § 1225(b)(2)(A) does not apply to him.

### B.1. The Plain Text Illustrates that 8 U.S.C. § 1225(b)(2)(A) Cannot Apply as Petitioner Was Not "Seeking Admission" When He Was Detained on January 3, 2025.

The text and structure of the statute illustrate that 8 U.S.C. § 1225(b)(2) does not apply, the Petitioner first arrived and entered into the United States more than twenty-five years ago. As the Supreme Court has held, while "Section 1225(b) 'authorizes the Government to detain certain aliens *seeking admission into the country*,' Section 1226 'authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings.'" *Gomes*, 2025 WL 1869299, at *2 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)(emphasis added).

The statutory text makes it clear that, at the time of his 2025 detention, Petitioner was not "seeking admission" as contemplated at 8 U.S.C. § 1225(b)(2)(A). In reading a statute, "'we must 'give effect, if possible, to every clause and word of [the] statute.'" *Fischer v. United States*, 603 U.S. 480, 486 (2024) (citing *Williams v. Taylor*, 529 U.S. 362, 404 (2000)). A comprehensive reading of 8 U.S.C. § 1225 illustrates that both 8 U.S.C. § 1225(b)(1) and 8 U.S.C. § 1225(b)(2) apply only to those arriving at the border or those who have recently arrived.

"[W]e start where we always do: with the text of the statute." *Van Buren v. United States*, 593 U.S. 374 (2021). In interpreting 8 U.S.C. § 1225(b)(2), it is critical to note how the qualifier "seeking admission" limits the class of aliens to which 8 U.S.C. § 1225(b)(2) applies to those seeking entry into the United States from outside the country, either at the border or a port of entry.

In this way, an "alien present in the United States who has not been admitted" is only subjected to 8 U.S.C. § 1225(b)(2) if he is "seeking admission."As the Supreme Court has held:

> It is important to note at the outset that our immigration *laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality*. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely "on the threshold of initial entry."

*Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (citing *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)) (emphasis added). Petitioner was plainly beyond the threshold of entry when detained.

The term "admission" is also statutorily defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). This is augmented by long-held interpretations of "[t]he word 'entry' [which] by its own force implies a coming from outside." *U.S. ex rel. Claussen v. Day*, 279 U.S. 398, 401 (1929).

Petitioner is not outside the United States, nor did his apprehension occur at the threshold of the United States, he has been in the country for more than twenty-five years and was granted deferred action based on a pending U-visa after notifying DHS of his presence within the United States. As such, 8 U.S.C. § 1225(b)(2) cannot apply to the Petitioner.

Further, this language, now codified at 8 U.S.C. § 1225, came from the former 8 U.S.C. § 1225, which also governed the "inspection of aliens," the well-established legal principal applies: "[w]hen a statutory term is 'obviously transplanted from another legal source,' it 'brings the old soil with it.'" *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019). Then as now, those "seeking

admission" are those at the border or a port of entry, not those simply present in the United States without admission.

By contrast, long-tenured aliens like Petitioner are not "seeking admission" when they are detained by ICE. While they may be "applicants for admission" under 8 U.S.C. § 1225(a)(1), to "seek admission" they would need to present at a border or port of entry and request "admission into the United States." 8 U.S.C. § 1181.

This is consistent with how all Circuits have "construe[d] the meaning of the phrase 'at the time of application for admission'" in the context of 8 U.S.C. § 1182(a)(7), which "refers to the particular point in time when a noncitizen submits an application to physically enter into the United States." *Torres v. Barr*, 976 F.3d 918, 924 (9th Cir. 2020); *see also Marques v. Lynch*, 834 F.3d 549, 561 (5th Cir. 2016) (quoting *Ortiz-Bouchet v. U.S. Atty. Gen.*, 714 F.3d 1353, 1356 (11th Cir. 2013)) ("Section 1182(a)(7) 'only applies to applicants for admission and not to immigrants… who sought post-entry adjustment of status while already in the United States.'"). An "application for admission" occurs at a specific moment in the same manner that a person "seeking admission" occurs the moment admission is sought.

The subsection title further reinforces the conclusion above. While the statutory text is not supplanted, "statutory titles and section headings 'are tools available for the resolution of a doubt about the meaning of a statute.'" *Fla. Dep't of Revenue v. Piccadilly Cafeterias*, 554 U.S. 33, 47 (2008) (citing *Porter v. Nussle*, 534 U.S. 516, 528 (2002)). Section 1225 is titled "[i]nspection by immigration officers; expedited removal of inadmissible arriving aliens; [and] referral for hearing."

11

8 U.S.C. § 1225. All of this is squarely related to inspection at or near a point of entry, not interior enforcement against aliens who have been present for years.

The "catchall" nature of 8 U.S.C. § 1225(b)(2) is not limitless. It has to reflect the general parameters of 8 U.S.C. § 1225(b)(1) and respond to the similarly situated individuals arriving to the country who are not arriving aliens. As the Supreme Court has noted, 8 U.S.C. § 1225(b)(2) is a "catchall" that "applies to most other applicants for admission not covered by § 1225(b)(1)." *Jennings v. Rodriguez*, 583 U.S. 281, 281 (2018). "The ejusdem canon applies when 'a catchall phrase' follows 'an enumeration of specifics, as in dogs, cats, horses, cattle, and other animals.'" *Fischer v. United States*, 603 U.S. 480, 509 (2024) (quoting A. Scalia & B. Garner, Reading Law § 32, at 199 (2012)). We often interpret the catchall phrase to 'embrace only objects similar in nature to those objects enumerated by the preceding specific words.'" *Id.*

8 U.S.C. § 1225(b)(2) follows in line with the specificity contained in 8 U.S.C. § 1225(b)(1). "Congress does not 'hide elephants in mouseholes.'" *Sackett v. Env't Prot. Agency*, 598 U.S. 651, 677 (2023). Section 1225(b)(2) is titled "inspection of other aliens." Nonetheless, "Other aliens" has a proximity limitation around the border and ports of entry. If not, the catchall provision would suddenly become the most far-reaching and consequential detention authority in the INA. The Supreme Court previously recognized this limited reach of § 1225(b)(2) when it held, "An alien arriving in the United States must be inspected by an immigration official, 66 Stat. 198, as amended, 8 U.S.C. § 1225(a)(3), and, unless he is found 'clearly and beyond a doubt entitled to be admitted,'

12

must generally undergo removal proceedings to determine admissibility, § 1225(b)(2)(A)." *Clark v. Martinez*, 543 U.S. 371, 373 (2005).

### b.2. Canons Against Surplusage Require Finding that Petitioner Is Not Subject to 8 U.S.C. § 1225(b)(2) and the catchall.

Courts do not "adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Sudan v. Harrison*, 139 S. Ct. 1048, 1058 (2019). "Canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Chicago v. Fulton*, 141 S. Ct. 585, 591 (2021) (quoting *Yates v. United States*, 574 U.S. 528, 543 (2015)).

Interpreting 8 U.S.C. § 1225(b)(2) as Respondents do would have the Court render the entire Laken Riley Act (LRA) superfluous. "[W]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Pierce Cnty. v. Guillen*, 537 U.S. 129, 145 (2003). In the LRA, Congress added language to 8 U.S.C. § 1226(c) that directly references people who have entered without inspection or who are present without authorization. *See* Laken Riley Act, PL 119-1, January 29, 2025, 139 Stat 3. Pursuant to these amendments, an alien who "is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 212(a) of this title; and is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person" is subject to mandatory detention. 8 U.S.C. § 1226(c)(1)(E). If everyone inadmissible

under 8 U.S.C. § 1182(a)(6)(A) is already subject to mandatory detention under 8 U.S.C. § 1225(b)(2), then there would be no need for the LRA at all. 8 U.S.C. § 1225(b)(2) cannot apply to the Petitioner.

### B.3. *Legislative History and Longstanding Practice Illustrate that Petitioner Is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225(b)(2).*

If the structure and language did not make 8 U.S.C. § 1225(b)(2)'s inapplicability to this case clear, Congress did so expressly. "Section 1226(a)'s predecessor statute, § 1252(a), included discretionary release on bond." *Maldonado*, 2025 WL 2374411, at *11 (D. Minn. Aug. 15, 2025) (citing 8 U.S.C. § 1252(a) (1994)). In House reports accompanying the legislation that enacted 8 U.S.C. § 1225(b)(2), the legislators noted how the simultaneously enacted detention authority that now lives at 8 U.S.C. § 1226(a) merely "restates the [then] current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229 (1996); *see also* H.R. Rep. No. 104-828, at 210 (1996) (Conf. Rep.) (same).

Both provisions were created in the same Act. *See* Illegal Immigration Reform and Immigration Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-585 ("IIRIRA"). It cannot stand reason that Congress would enact one provision, at 8 U.S.C. § 1226(a)(2)(A), for the purpose of authorizing "the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States" just one section after enacting a provision

14

that DHS now claims subjects those exact same people to mandatory detention. *See* 8 U.S.C. § 1225(b)(2).

Further, "[T]he contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect," particularly "when an Executive Branch interpretation was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024). From 1996 to 2025 Respondents granted bond to those present without having Been admitted or paroled. "[D]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 FR 10312, 10323, 62 FR 10312-01, 10323. This is a long-held practice makes it clear that, despite Respondents' newfound position, 8 U.S.C. § 1226 governs Petitioner's detention, and as such, he is eligible for bond.

### C. Relevant Hardships and Public Interest

"The balance of the equities and the public interest ... factors merge [when] the federal government is the party opposing the injunction." *Missouri v. Trump*, 128 F.4th 979, 996–97 (8th Cir. 2025). These factors require the Court to consider "whether the movant's likely harm without a preliminary injunction exceeds the nonmovant's likely harm with a preliminary injunction in place." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1347 (8th Cir. 2024).

Courts have recognized that the public interest includes upholding constitutional safeguards, ensuring due process, and preventing unnecessary deprivation of liberty. *See, e.g.*, *Mohammed H. v. Trump*, 2025 WL 1692739, at *6 (D. Minn. June 17, 2025) (rejecting public-interest argument where detention rested solely on automatic stay without evidence); *Günaydın*, 2025 WL 1459154, at *10 (same). The public interest is not served by needlessly incarcerating a man with no criminal charges.

Granting Petitioner's injunctive relief is fully consistent with the government's ability to enforce its immigration laws. If the TRO or PI is granted, DHS retains all tools to continue his removal case, to monitor his compliance with conditions of release, and to seek re-detention if circumstances change. In short, the government can enforce the law, and the Court can ensure that enforcement proceeds within constitutional bounds by ordering the Respondents schedule a bond hearing within seven days.

The harms to Petitioner have been articulated, *supra*, and they are severe. In contrast, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *Missouri v. Trump*, 128 F.4th 979, 997 (8th Cir. 2025). The Eighth Circuit has called the federal interest in an action is "minimal" where the plaintiff has illustrated a "strong likelihood of success in showing it exceeds agency authority." *Id.* As that is precisely the case here, all factors favor the issuance of a TRO.

## CONCLUSION

The Petitioner has demonstrated a strong likelihood of success on the merits and that he will suffer significantly and irreparably in the absence of a Temporary Restraining Order (TRO) or Preliminary Injunction (PI). As such, a TRO or PI must be granted, enjoining Respondents from moving Petitioner outside of Nebraska while detained and ordering Respondents release or with a bond hearing within seven days.

DATED: February 4, 2026                                                     Respectfully Submitted,

                                                              Alfonso Colorado Perez,
                                                              Petitioner/Plaintiff.

                                    By:     /s/Larry N. Jarvis
                                              /s/ Julia Crryne
                                              Carlson Blakeman LLP
                                              2002 Douglas Street Suite 100
                                              Omaha, NE 68102
                                              (402) 999-9796
                                              larry@carlsonblakeman.com
                                              julia@carlsonblakeman.com
                                              Attorneys for Petitioner