**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| ALFONSO COLORADO PEREZ, ) | |
| ) | Case No: 8:26-cv-47 |
| Petitioner/Plaintiff. ) | |
| ) | |
| -vs- ) | |
| ) | |
| Pamela Bondi, Secretary, Attorney General; ) | |
| Todd M. Lyons, Acting Director of Immigration ) | **DECLARATION OF LARRY** |
| And Customs Enforcement; ) | **N. JARVIS IN SUPPORT OF** |
| David Easterwood, Acting Director, ) | **ALFONSO COLORADO** |
| St. Paul Field Office Immigration and Customs ) | **PEREZ's PETITION OF** |
| Enforcement; ) | **HABEAS CORPUS** |
| Sheriff Robert Sorenson, Cass County Sheriff. ) | |
| ) | |
| Respondents/Defendants. ) | |
| _____) | _____ |

I, Larry N. Jarvis & Julia Cryne being first duly sworn upon oath, depose and state as follows:

1.  I am an attorney licensed in Nebraska. My attorney's license number is 27057. My place of business is Carlson & Blakeman, 2002 Douglas Street, Omaha, Nebraska 68102. My phone number is 720-285-6614.

2.  I am admitted to practice before the U.S. District Court of Nebraska. My admission is in good standing.

3.  I attach as Exhibit A, a true and correct copy of Petitioner's receipt for Form I-918, Petition for Qualifying Family Member of U-1 Recipient.

4.  I attach as Exhibit B, a true and correct copy of Petitioner's Bona Fide Determination Notice.

1

5.      I attach as Exhibit C, a true and correct copy of Petitioner's I-213, Record of Deportable/Inadmissible Alien and Petitioner's Notice to Appear in Immigration Court.

6.      I attach as Exhibit D, a true and correct copy of Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 FR 10312, 10323, 62 FR 10312-01, 10323 (March 6, 1997).

I hereby declare under penalty of perjury that everything in this declaration is true and correct.

Respectfully submitted,

 /s/Larry N. Jarvis                                    DATED: February 4, 2026
/s/Julia Cryne
Carlson Blakeman LLP
2002 Douglas Street Suite 100
Omaha, NE 68102
(402) 999-9796
larry@carlsonblakeman.com
julia@carlsonblakeman.com
Attorneys for Petitioner



Department of Homeland Security
U.S. Citizenship and Immigration Services

# Form I-797C, Notice of Action

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number EAC2315550429 | | Case Type I918A - PETITION FOR QUALIFYING FAMILY MEMBER OF U-1 RECIPIENT |
|---|---|---|
| Received Date 03/13/2023 | Priority Date | Applicant FUENTES NOYOLA, MARIA CRISTINA |
| Notice Date 03/15/2023 | Page 1 of 2 | Beneficiary COLORADO PEREZ, ALFONSO |

| | |
|---|---|
| METRO LAW GROUP c/o PATRICK AGIOUNIM UKE 7900 INTERNATIONAL DR STE 670 BLOOMINGTON MN 55425 | **Notice Type:** Receipt Notice Fee Waived |

EXHIBIT A

We have received the application or petition ("your case") listed above. This notice only shows that your case was filed on the "Received Date" listed above. It does NOT grant you any immigration status or immigration benefit, and it is not evidence that your case is still pending. We will notify you in writing when we make a decision on your case or if we need additional information.

Please save this and any other notices about your case for your records. You should also keep copies of anything you send us, as well as proof of delivery. Have these records available when you contact us about your case.

### Contacting the Agency

If your safe mailing address changes and you do not have an attorney of record or representative on your case you must submit your address change in writing, with your signature, to the center with jurisdiction over your filing. Otherwise, you might not receive notice of your action on this case. If any other changes need to be made you also must contact the center with jurisdiction over your filing in writing. Please include what changes need to be made and your signature.

If any of the information in your notice is incorrect or you have questions about your case, you can reach USCIS at www.uscis.gov/contact, utilizing the available case inquiry options for "Inquiries for VAWA, T, and U Filings."

Vermont Service Center
U.S. Citizenship & Immigration Services
38 River Road
Essex Junction, VT 05479-0001

Processing time - Processing times vary by case type. Go to www.uscis.gov to see the current processing times listed by case type and office.

- View your case status on our website's Case Status Online page.
- You can also sign up to receive free email updates as we process your case.
- During most of the time while your case is pending, the processing status will not change. This is because we are working on cases that were filed before your case.
- When we make a decision on your case or if we need something from you, we will notify you by mail and update our systems.

Biometrics - We require biometrics (fingerprints, a photo, and a signature) for some types of cases. If we need biometrics from you, we will send you a SEPARATE appointment notice with a specific date, time and place for you to go to a USCIS Application Support Center (ASC) for biometrics processing. You must wait for that separate appointment notice and take it (NOT this receipt notice) to your ASC appointment along with your photo identification. Acceptable kinds of photo identification are:

- A passport or national photo ID issued by your country,
- A driver's license,
- A military photo ID, or
- A state-issued photo ID card.

If you receive more than one ASC appointment notice (even for different cases), take them both to the first appointment date.

Return of Original Documents - Use Form G-884, Request for the Return of Original Documents, to request the return of original documents submitted to establish eligibility for an immigration or citizenship benefit. You only need to submit one Form G-884 if you are requesting multiple documents contained in a single USCIS file. However, if the requested documentation is in more than one USCIS file, you must submit a separate request for each file. (For example: If you wish to obtain your mother's birth certificate and your parents' marriage certificate, both of which are in the USCIS file that pertains to her, submit one Form G-884 with your mother's information.)

NOTICE: The information you provide and in support of applications and petitions is submitted under the penalty of perjury. USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after making a decision on your case so we can ensure that you have complied with applicable laws, rules.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

Vermont Service Center
U.S. CITIZENSHIP & IMMIGRATION SVC
38 River Road
Essex Junction VT 05479-0001



USCIS Contact Center: www.uscis.gov/contactcenter

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.        Form I-797C  10/13/21

Uploaded on 8:26-cv-20004-JMC-RMC Central Standard Time Page 4 of 97 - Page ID # 48

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

## Form I-797C, Notice of Action

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.



| Receipt Number<br>EAC2315550429 | | Case Type<br>I918A - PETITION FOR QUALIFYING FAMILY MEMBER OF U-1<br>RECIPIENT |
|---|---|---|
| Received Date<br>03/13/2023 | Priority Date | Applicant<br>FUENTES NOYOLA, MARIA CRISTINA |
| Notice Date<br>03/15/2023 | Page<br>2 of 2 | Beneficiary<br>COLORADO PEREZ, ALFONSO |

regulations, and other legal authorities. We may review public information and records, contact others by mail, the internet or phone, conduct site inspections of businesses and residences, or use other methods of verification. We will use the information obtained to determine whether you are eligible for the benefit you seek. If we find any derogatory information, we will follow the law in determining whether to provide you (and the legal representative listed on your Form G-28, if you submitted one) an opportunity to address that information before we make a formal decision on your case or start proceedings.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

Vermont Service Center
U.S. CITIZENSHIP & IMMIGRATION SVC
38 River Road
Essex Junction VT 05479-0001



USCIS Contact Center: www.uscis.gov/contactcenter

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.          Form I-797C  10/13/21

EOIR 9 of 114

Uploaded on 02/26/2020 at 04:35. 8:26-cv-00047-JMG-RCC Central Standard Time. Page 5 of 97 - Page ID # 49



**Department of Homeland Security**
U.S. Citizenship and Immigration Services

# Form I-797C, Notice of Action

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| Receipt Number<br>EAC2315550429 | | Case Type<br>I918A - PETITION FOR QUALIFYING FAMILY MEMBER OF U-1<br>RECIPIENT |
|---|---|---|
| Received Date<br>03/13/2023 | Priority Date | Applicant A247 007 586<br>FUENTES NOYOLA , MARIA CRISTINA |
| Notice Date<br>07/01/2025 | Page<br>1 of 1 | Beneficiary A247 007 587<br>COLORADO PEREZ , ALFONSO |

| ALFONSO COLORADO PEREZ<br>c/o PATRICK UKE<br>7900 INTERNATIONAL DR STE 670<br>BLOOMINGTON MN 55425 | Notice Type: Bona Fide Determination Notice |
|---|---|

Exhibit

B

We have mailed an official notice about this case (and any relevant documentation) according to the mailing preferences you chose on Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative. **This is a courtesy copy, not the official notice.**

**What the Official Notice Said**

### CORRESPONDENCE

On 03/13/2023, you submitted a Form I-918, Supplement A, Petition for Qualifying Family Member of U-1 Recipient (Form I-918, Supplement A) for your family member. In order to approve a Form I-918, Supplement A, the principal's petition for U Nonimmigrant Status (Form I-918) must first be approved. As the statutory cap for U-1 nonimmigrant status has been reached for this fiscal year, U.S. Citizenship and Immigration Services (USCIS) may not grant U-1 nonimmigrant status to any petitioner until new visas become available. Under 8 U.S.C. 1184(p)(6) and 1103(a), the Department of Homeland Security (DHS) may conduct a bona fide determination, and if warranted as a matter of discretion, provide employment authorization and deferred action.

At this time, the evidence demonstrates your family member's Form I-918, Supplement A petition for U nonimmigrant status is bona fide, and that they warrant a favorable exercise of discretion to receive employment authorization and deferred action. Your family member's employment authorization document and grant of deferred action are valid for a period of four years. Deferred action is an act of administrative convenience to the government which gives some cases lower priority for removal. However, USCIS updates and reviews background and security checks at regular intervals during this period, and USCIS reserves the right to revoke your employment authorization and terminate the grant of deferred action at any time if it determines they are no longer warranted or were granted in error.

USCIS grants employment authorization based on the bona fide determination and favorable exercise of discretion described above under 8 U.S.C. 1184(p) (6), as well as under 8 CFR 274a.12(c)(14), which gives the agency the authority to provide employment authorization to noncitizens placed in deferred action. On 03/13/2023, your family member filed a Form I-765. This Form I-765 is based on your family member's pending Form I-918, Supplement A, which USCIS has determined is bona fide. Please be aware that your family member's currently filed Form I-765 will be adjudicated as if it were filed under 8 CFR, section 274a.12(c)(14). Your family member will receive separate correspondence regarding the adjudication of your family member's Form I-765.

Priority for the issuance of U nonimmigrant status will be determined by the date the Form I-918 was received by USCIS. Once a visa is available to your family member, USCIS will determine their eligibility for U nonimmigrant status, and whether they are admissible to the United States.

If you are represented by an attorney, all further correspondence should be accompanied by Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative.

This notice does not constitute valid U nonimmigrant status or employment authorization, and may not be used to demonstrate legal immigration or employment status.

| Please see the additional information on the back. You will be notified separately about any other cases you filed. |
|---|
| USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://<br>www.uscis.gov/file-online. |
| Vermont Service Center<br>U.S. CITIZENSHIP & IMMIGRATION SVC<br>38 River Road<br>Essex Junction VT 05479-0001 |
| USCIS Contact Center: www.uscis.gov/contactcenter |



If this is an interview or biometrics appointment notice, please see the back of the notice for important information.        Form I-797C 10/13/21

**U.S. Department of Homeland Security**          Subject ID : 401146939          **Record of Deportable/Inadmissible Alien**

| Family Name (CAPS) | First | Middle | | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|---|
| COLORADO PEREZ, ALFONSO | | | | M | BLK | BRO | |

| Country of Citizenship | Passport Number and Country of Issue | File Number | | Height | Weight | Occupation | |
|---|---|---|---|---|---|---|---|
| MEXICO | | SPM2601000098 247 007 587 | | 65 | 172 | Stone Worker | |

| U.S. Address | | Scars and Marks |
|---|---|---|
| | | None Visible - None |

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F.B.I. Number | |
|---|---|---|---|
| Unknown Date Unknown Time, WI-Without Inspection | | 293461WB0 | ☐ Single  ☐ Divorced  ☒ Married  ☐ Widower  ☐ Separated |

| Number, Street, City, Province (State) and Country of Permanent Residence | Method of Location/Apprehension |
|---|---|
| | NCA |

| Date of Birth | | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|---|
| 02/27/1973    Age: 52 | | | SPM/SPM | See I-831 | 01/03/2026 10:07 |

| City, Province (State) and Country of Birth | | | By |
|---|---|---|---|
| MEXICO | AR ☒ | Form : (Type and No.) Lifted ☐ Not Lifted ☐ | M 11091 OLSON |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| | ALFONSO   COLORADO PEREZ | | |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. |
|---|---|---|
| | 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 | |

| Immigration Record | Criminal Record |
|---|---|
| NEGATIVE | |

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children |
|---|---|
| FUENTES, AMAIRANI NATIONALITY: MEXICO | 1-UNITED STATES |

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| COLORADO-RAMIREZ, ALFONSO NATIONALITY: MEXICO | PEREZ-CANDANELO, LORENZA NATIONALITY: MEXICO |

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted? ☒ Yes ☐ No | Systems Checks See Narrative | Charge Code Words(s) See Narrative |
|---|---|---|---|
| None Claimed | | | |

| Name and Address of (Last)(Current) U.S. Employer | Type of Employment | Salary | Employed from/to |
|---|---|---|---|
| See Narrative | Owner | 80000 Yearly ☒ Hr | 01/01/2025 01/03/2026 |

| Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative or criminal violation. Indicate means and route of travel to interior.) |
|---|

FIN: 1349738974                    Left Index fingerprint          Right Index fingerprint



Exhibit C

Family Information
-------------------
Father:COLORADO-RAMIREZ, ALFONSO is a citizen of  MEXICO.
Mother:PEREZ-CANDANELO, LORENZA is a citizen of  MEXICO.
Spouse:FUENTES, AMAIRANI is a citizen of  MEXICO.
Daughter:COLORADO FUENTES, KATIA is a citizen of  UNITED STATES.

Subject Health Status
----------------------
The subject claims good health. ...(CONTINUED ON I-831)

| Alien has been advised of communication privileges _____ (Date/Initials) | _____ (Signature and Title of Immigration Officer) |
|---|---|

| Distribution: | Received: (Subject and Documents)  (Report of Interview) |
|---|---|
| | Officer: _____ |
| | on: _____ (time) |
| | Disposition: Warrant of Arrest/Notice to Appear |
| | Examining Officer: _____ |

Form I-213 (Rev. 08/01/07)

**U.S. Department of Homeland Security**                    **Continuation Page for Form** I-213

| Alien's Name | File Number | Date |
|---|---|---|
| COLORADO PEREZ, ALFONSO | 247 007 587<br>Event No: SPM2601000098 | 01/03/2026 |

```
Current Administrative Charges
------------------------------
01/03/2026 - 212a6Ai - ALIEN PRESENT WITHOUT ADMISSION OR PAROLE - (PWAs)01/03/2026 -
212a7AiI - IMMIGRANT WITHOUT AN IMMIGRANT VISA

RECORDS CHECKED
---------------
AFIS checked on 01/03/2026 with Positive result.TECS checked on 01/03/2026 with Positive
result.NCIC checked on 01/03/2026 with Positive result.CIS checked on 01/03/2026 with
Positive result.CLAIM checked on 01/03/2026 with Positive result.

NAME AND ADDRESS OF US EMPLOYER
-------------------------------
 A&M Stone Design LLP, 4360 Zane Ave N  Crystal, MINNESOTA, 55422, UNITED STATES

Arrested At/Near
----------------
10250 Lexington Ave NE Circle Pines MN 55014 USA

Record of Deportable/Excludable Alien:
--------------------------------------
SPM METRO SURGE
ALIENAGE AND REMOVABILITY:
COLORADO-PEREZ, Alfonso is a citizen of Mexico and native of Mexico. COLORADO-PEREZ makes no
claim to U.S. citizenship or a current lawful immigration status.

METHOD OF APPREHENSION:
Narrative provided by Metro Surge Team 3: On or about 01/03/2026, at approximately 0800,
Team 3 was performing official duties in the area of Blaine when probable cause was
developed to believe that COLORADO-PEREZ, Alfonso, a Mexican national was illegally present
in the United States. Based on investigation and observations made at the scene, Team 3 had
probable cause to believe the subject was occupying a Ford-F150 vehicle at the time of
enforcement action. A warrantless arrest was conducted pursuant to Title 8 USC 1357, as
there was probable cause to believe the subject was in violation of U.S. Immigration laws.
COLORADO-PEREZ, Alfonso was further determined to be an EWI. During the enforcement action,
one targeted subject was apprehended and processed in accordance with agency policy. The
Subject was taken into custody without incident and transported for further processing.

Immigration history: On 02/15/199 COLORADO-PEREZ was granted a 384 victims and witnesses of
crime, including domestic violence and was put as a Deferred Action Status. On 03/13/2023
COLORADO-PEREZ applied for a I-918A a U Visa and it is still currently pending.

Criminal history: On 01/27/2002 COLORADO-PEREZ was arrested by the Minneapolis Police
Department for Assault in the first degree. (609.221 MN) Felony but is pending further
investigation.

MONEY: When arrested, COLORADO-PEREZ had no money on his person.
DOCS: COLORADO-PEREZ had a Minnesota State Driver's license- F000-144-500-500 and an EAD
Card - EAC2319650427
APPLICATIONS: COLORADO-PEREZ has a pending I-918A U Visa.
SMUGGLED: No.
FAMILY: COLORADO-PEREZ claims to be Married with one minor USC child, who resides with their
biological mother in Crystal, Minnesota.
EQUITIES: COLORADO-PEREZ Claims to own A&M Stone Design LLP business with his spouse.
GANG: None claimed.
```

| Signature | Title |
|---|---|
| | |

Form I-831 Continuation Page (Rev. 08/01/07)

**U.S. Department of Homeland Security**                    **Continuation Page for Form** I-213

| Alien's Name | File Number | Date |
|---|---|---|
| **COLORADO PEREZ, ALFONSO** | **247 007 587**<br>**Event No: SPM2601000098** | **01/03/2026** |

**WELFARE: None claimed.**

**HEALTH AND HUMANITARIAN:**
**COLORADO-PEREZ claims and appears to be in good health and not taking any prescribed medication.**
**MILITARY: COLORADO-PEREZ has no prior U.S. Military Service.**
**FREE TELEPHONE CALL: COLORADO-PEREZ was offered a call that was successful.**
**COLORADO-PEREZ was provided with a List of Free Legal Service Providers.**
**COLORADO-PEREZ was provided with a copy of the National Detainee Handbook.**
**COLORADO-PEREZ was advised of the National Detainee Locator System.**
**COLORADO-PEREZ was advised of his right to contact the Mexican Consulate. COLORADO-PEREZ did not choose to contact the Consulate.**
**COLORADO-PEREZ claims NO FEAR of returning to Mexico.**

**RECOMMENDATION:**
**COLORADO-PEREZ is being processed as a (I-862) WA/ Notice to Appear. COLORADO-PEREZ will remain in custody of the Department of Homeland Security pending his removal to Mexico.**


**Other Identifying Numbers**
**--------------------------**
**ALIEN-247007587**
**State Criminal Number/State Bureau Number-MN02408916   (UNITED STATES)**

| Signature | Title |
|---|---|
| | |

Form I-831 Continuation Page (Rev. 08/01/07)

**U.S. Department of Homeland Security**
Immigration and Customs Enforcement                        Notice to EOIR:  Alien Address

Date:   January 8, 2026                                    File No:  **A247 007 587**

To:     Office of the Immigration Judge
        Executive Office for Immigration Review
        Bishop Henry Whipple Federal Building
        1 Federal Drive, Suite 1850
        Fort Snelling, MN 55111

From:   Office of the Field Office Director
        Immigration and Customs Enforcement
        1 Federal Drive, Suite 1640
        Fort Snelling, MN 55111

Respondent:  **COLORADO PEREZ, Alfonso**

---

**This is to notify you that the respondent is:**

☐   Currently incarcerated by other than ICE.  A charging document has been served on the respondent and an Immigration Detainer-Notice of Action by the ICE (Form I-247) has been filed with the institution shown below.  He/she is incarcerated at:

_____

_____

His/her anticipated release date is:  _____

☒   **Currently detained by ICE at: CASS COUNTY JAIL, 336 Main Street, Plattsmouth, NE 68048**

_____
☐   Currently detained by ICE and transferred this date to a new location:  _____

INS motion for change of venue attached.      **Yes**          **No**
                                            ☐             ☒

☐   Released from ICE custody on the following conditions(s)
    ☐ Personal Recognizance
    ☐ Order of recognizance (form I-220A)
    ☐ Bond in the amount of $ _____     ☐ Surety Bond  ☐ Cash bond
    ☐ Other _____

Upon release from ICE custody, the respondent reported his/her address and telephone number will be:


☐   Upon release from ICE custody, the respondent was reminded of the requirements contained in section 239(a)(1)(F)(ii) of the Immigration and Nationality Act and was provided with an EOIR change of address form (EOIR-33).

_____            **Deportation Officer**
(Signature of ICE official)                          (Title of ICE official)

Deepak   Singh                                       **Fort Snelling, MN**

_____            _____
(Printed name of ICE official)                       (Location)
                                                     Form I-830 (Rev. 5/27/97)N

DEPARTMENT OF HOMELAND SECURITY
## NOTICE TO APPEAR

DOB: 02/27/1973

Event No: SPM2601000098

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

Subject ID: 401146939      FINS: 1349738974      File No: 247 007 587

In the Matter of:

Respondent: ALFONSO COLORADO PEREZ      currently residing at:

13880 Business Ctr Dr NW Elk River, MINNESOTA 55330

(Number, street, city, state and ZIP code)      (Area code and phone number)

☐ You are an arriving alien.

☒ You are an alien present in the United States who has not been admitted or paroled.

☐ You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of MEXICO and a citizen of MEXICO;

3. You entered the United States at or near Unknown Location, on or about unknown date;

4. You were not then admitted or paroled after inspection by an Immigration Officer.ORAt that time you arrived at a time or place other than as designated by the Attorney General.
See Continuation Page Made a Part Hereof

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

See Continuation Page Made a Part Hereof

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to: ☐ 8CFR 208.30 ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

1 Federal Dr, Fort Snelling, MN, 55111.
*(Complete Address of Immigration Court, including Room Number, if any)*

on February 24, 2026 at 10:00 am to show why you should not be removed from the United States based on the
    *(Date)*      *(Time)*

charge(s) set forth above.

J 6186 WISE - Deportation Officer (A)SWO
*(Signature and Title of Issuing Officer)*

Date: January 3, 2026      Saint Paul, Minnesota
     *(City and State)*

### Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are in removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 1003.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear, including that you are inadmissible or removable. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge. You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form I-589, Application for Asylum and for Withholding of Removal. The Form I-589, Instructions, and information on where to file the Form can be found at www.uscis.gov/i-589. Failure to file the Form I-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to section 208(a)(2)(B) of the Immigration and Nationality Act.

**Failure to appear:** You are required to provide the Department of Homeland Security (DHS), in writing, with your full mailing address and telephone number. You must notify the Immigration Court and the DHS immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to your local DHS office, listed on the internet at http://www.ice.gov/contact/ero, as directed by the DHS and required by statute and regulation. Immigration regulations at 8 CFR 1241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after your departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Immigration and Nationality Act.

**U.S. Citizenship Claims:** If you believe you are a United States citizen, please advise the DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in 8 U.S.C. § 1229(e)(1), such action complied with 8 U.S.C. § 1367.

### Request for Prompt Hearing

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: _____

_____
*(Signature of Respondent)*

Date: _____

_____
*(Signature and Title of Immigration Officer)*

### Certificate of Service

This Notice To Appear was served on the respondent by me on **January 3, 2026**, in the following manner and in compliance with section 239(a)(1) of the Act.

[X] in person    [ ] by certified mail, returned receipt # _____ requested    [ ] by regular mail

[ ] Attached is a credible fear worksheet.

[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the **SPANISH** language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

*refused to sign*

NATHAN   11823   TURNER - Deportation Officer

_____
*(Signature of Respondent if Personally Served)*

_____
*(Signature and Title of officer)*

## Privacy Act Statement

**Authority:**
The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

**Purpose:**
You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

**Routine Uses:**
For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

**Disclosure:**
Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.

DHS Form I-862 (6/22)

**U.S. Department of Homeland Security**

**Continuation Page for Form** $\underline{I-862}$

| Alien's Name | File Number | Date |
|---|---|---|
| COLORADO PEREZ, ALFONSO | 247 007 587<br>Event No: SPM2601000098 | 01/03/2026 |

THE SERVICE ALLEGES THAT YOU:
--------------------------------------------------------------------------------

5. You are an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; and/or

6. You are an immigrant not in possession of a valid unexpired passport, or other suitable travel document, or document of identity and nationality.

ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION(S) OF LAW:
--------------------------------------------------------------------------------

212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act.

| Signature<br><br>J 6186-WISE | Title<br>Deportation Officer (A) SDDO |
|---|---|

$\underline{\quad 4 \quad}$ of $\underline{\quad 4 \quad}$ Pages

Form I-831 Continuation Page (Rev. 08/01/07)

# DEPARTMENT OF JUSTICE

## Immigration and Naturalization Service

## Executive Office for Immigration Review

**8 CFR Parts 1, 3, 103, 204, 207, 208, 209, 211, 212, 213, 214, 216, 217, 221, 223, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 248, 249, 251, 252, 253, 274a, 286, 287, 299, 316, 318, and 329**

**[INS No. 1788–96; AG ORDER No. 2071–97]**

**RIN 1115–AE47**

## Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures

**AGENCY:** Immigration and Naturalization Service, Justice, and Executive Office for Immigration Review, Justice.

**ACTION:** Interim rule with request for comments.

**SUMMARY:** This interim rule amends the regulations of the Immigration and Naturalization Service (Service) and the Executive Office for Immigration Review (EOIR) to implement the provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) governing expedited and regular removal proceedings, handling of asylum claims, and other activities involving the apprehension, detention, hearing of claims and ultimately the removal of inadmissible and deportable aliens. This rule incorporates a number of changes which are a part of the Administration's reinvention and regulation streamlining initiative.

**DATES:** *Effective date:* This interim rule is effective April 1, 1997.

*Comment date:* Written comments must be submitted on or before July 7, 1997.

**ADDRESSES:** Please submit written comments, in triplicate, to the Director, Policy Directives and Instructions Branch, Immigration and Naturalization Service, 425 I Street, NW, Room 5307, Washington, DC 20536. To ensure proper handling, please reference INS number 1788–96 on your correspondence. Comments are available for public inspection at the above address by calling (202) 514–3048 to arrange for an appointment.

**FOR FURTHER INFORMATION CONTACT:** *For matters relating to the Executive Office for Immigration Review*—Peggy Philbin, General Counsel, Executive Office for Immigration Review, 5107 Leesburg

Pike, Suite 2400, Falls Church, VA 22041, telephone number (703) 305–0470; *for asylum issues*—Michael Shaul, Field Manual Project Office, Immigration and Naturalization Service, 425 I Street NW, ULLB—4th Floor, Washington, DC 20536, telephone number (202) 616–7439; *for inspections issues*—Linda Loveless, Office of Inspections, Immigration and Naturalization Service, 425 I Street NW, Room 4064, Washington, DC 20536, telephone number (202) 616–7489; *for detention and removal issues*—Len Loveless, Office of Detention and Deportation, Immigration and Naturalization Service, 425 I Street NW, Room 3008, Washington, DC 20536, telephone number (202) 616–7799.

**SUPPLEMENTARY INFORMATION:**

Background

The Immigration and Naturalization Service and the Executive Office for Immigration Review jointly published a proposed rule on January 3, 1997 (62 FR 443–517 (1997)), to implement sections of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104–208, which was enacted on September 30, 1996. This legislation significantly amended the Immigration and Nationality Act (Act) by revising the asylum process and providing a mechanism for the determination and review of certain applicants who demonstrate a credible fear of persecution if returned to their own country; expanding the grounds of inadmissibility; redefining applicants for admission to include aliens who entered the United States without inspection; creating new expedited removal procedures for aliens attempting to enter the United States through fraud or misrepresentation or without proper documents; consolidating the former exclusion and deportation proceedings into one unified removal proceeding; and reorganizing and renumbering numerous provisions of existing law.

The effective date of most of the provisions affecting asylum, inspection, and removal processes is April 1, 1997, and implementing regulations must be in place by March 1, 1997. The proposed rule allowed only a 30-day comment period. The limited comment period was necessary, given the short statutory deadline and the time needed to draft the rule, coordinate with interested agencies, and complete the regulatory review process by the Office of Management and Budget. In order to meet the statutory deadline for an implementing regulation and yet provide adequate opportunity for public

input on the issues addressed in this rulemaking, this rule is being published as an interim rule with an additional 120-day comment period.

The Department received 124 comments on the proposed rule. Most of the commenters represented either attorney organizations or voluntary organizations predominantly involved with refugees and asylum claimants. Commenters addressed a variety of topics, with much of the focus on asylum, expedited removal, and voluntary departure. The Department also received comments from individual members of Congress and Congressional subcommittees. Since many of the comments were duplicative or endorsed the submissions of other commenters, they will be addressed by topic, rather than referencing each specific comment and commenter. Also, because many of the comments were complex and dealt with issues that may be better addressed after the Department has had a period of time to gain operational experience under the new law, suggestions that were not adopted for the interim period will be further considered when a final rule is prepared. A number of comments were received concerning sections of the regulations that were not specifically changed by the proposed rule, but were simply moved to new sections. The Department has not addressed these comments at this time, but will consider them either as part of separate rulemaking initiatives or as part of the final rule rather than the interim rule, after the Service and EOIR more closely study the proposals. This supplementary information will identify significant changes made to the proposed rule and briefly discuss reasons why many other major suggestions were not adopted at this time.

Although the Department has addressed the major comments received, there will be further detailed analysis of these comments, as well as consideration of the additional comments received during the 120-day comment period following publication of the interim regulation. This will ensure every suggestion is more fully explored. Commenters responding to the interim rule may choose to amend or expand on prior comments or address other areas not raised by commenters during the first comment period.

Definitions

Several sections of the statute, such as sections 212(a)(9), 240B, and 241 of the Act, refer to arriving aliens, even though this term is not defined in statute. After carefully considering these references, the Department felt that the statute

seemed to differentiate more clearly between aliens at ports-of-entry and those encountered elsewhere in the United States. For clarity, "arriving alien" was specifically defined in 8 CFR part 1, and the Department invited commentary on the proper scope of the regulatory definition.

One commenter suggested that aliens interdicted in United States waters should not be included in the definition because persons arriving in United States waters have already legally arrived in the United States. The Board of Immigration Appeals (BIA) has consistently held that the mere crossing into the territorial waters of the United States has never satisfied the test of having entered the United States. See *Matter of G*, 20 I&N Dec. 764 (BIA 1993). Aliens who have not yet established physical presence on land in the United States cannot be considered as anything other than arriving aliens. In addition, the Department has for years relied on interdiction efforts to stem the flow of inadmissible aliens and attempted illegal entries by sea. The inclusion of aliens interdicted at sea in the definition of arriving alien will support the Department's mandate to protect the nation's borders against illegal immigration. These provisions in no way alter the Department's current interdiction policy and should not be construed as to require that all interdicted aliens be brought to the United States. Only when an express decision is made, in accordance with existing interdiction policies, to transport an interdicted alien to the United States, will that alien be considered an arriving alien for purposes of the Act.

Another commenter suggested that the definition be expanded to include aliens who have been present for less than 24 hours in the United States without inspection and admission. The Department extensively considered this and similar options, such as a distance-based distinction. For the reasons discussed below relating to the decision not to apply the expedited removal provisions at this time to certain aliens who entered without inspection, and considering the difficulty not only in establishing that the alien entered without inspection, but also in determining the exact time of the alien's arrival, the Department continues to believe the position taken in the proposed rule is correct and will not modify this definition in the interim rule. The definition of "arriving alien" will be given further consideration in the final rule, however, drawing upon the experience of the early implementation of the interim rule.

One commenter objected to the inclusion of parolee in the definition of arriving alien. The definition in the proposed rule states "An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act." The inclusion of paroled aliens was based on the statutory language in section 212(d)(5) of the Act, which states "* * * but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he or she was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Existing regulations at § 212.5(d) relating to termination of parole echo this provision, stating "* * * he or she shall be restored to the status he or she had at the time of parole." The Department feels there is solid statutory basis for inclusion of certain paroled aliens in the definition of arriving alien, and so will retain this provision.

The Department has added two additional definitions for the sake of clarity. The term "Service counsel" has been added to clarify that although the term refers to any immigration officer designated to represent the Service before the Immigration Court or the BIA. Existing regulations interchangeably use this term and a variety of other terms, including trial attorney, district counsel and assistant district counsel. The term "aggravated felony" has also been defined by reference to section 101(a)(43) of the Act as amended by IIRIRA. The regulatory definition clarifies that the amended section 101(a)(43) applies to any proceeding, application, custody determination or adjudication.

Parole of Aliens

This interim rule modifies § 212.5(a) to comport with the statutory change made by IIRIRA to section 212(d)(5)(A) of the Act.

Withdrawal of Application for Admission

The proposed rule contains provisions to implement the longstanding practice used by the Service to permit applicants for admission to voluntarily withdraw their application for admission to the United States in lieu of removal proceedings, now included in section 235(a)(4) of the Act. The withdrawal provisions in the proposed rule were written to conform with rulings of the BIA on withdrawal

and with standard practice in many jurisdictions. Several commenters suggested that every alien subject to the expedited removal provisions should automatically be offered the opportunity to withdraw his or her application for admission prior to the secondary inspection interview. Permission to withdraw an application for admission is solely at the discretion of the Attorney General and is not a right of the alien, a premise that has been consistently upheld by the BIA. Only the Attorney General may decide whether to pursue removal charges against an alien who has violated the immigration laws. Withdrawal of application for admission is only one of several discretionary options that may be considered by the Service once the facts of the case are known, and so will not automatically be offered to all aliens subject to expedited removal.

The Department does, however, share the concern of several commenters that aliens who may be inadvertently or unintentionally in violation of the immigration laws or regulations should not be subject to the harsh consequences of a formal removal order. The Department also wishes to ensure that the expedited removal provisions and the discretionary option to permit withdrawal are applied consistently and fairly throughout the nation. Although not included in the regulations at this time, the Department intends to formulate policy guidance and criteria for determining the types of cases in which such permission should or should not be considered.

Classes Subject to Expedited Removal

The Department requested public comment regarding the appropriate use of the authority conferred by the statute upon the Attorney General to expand the class of aliens subject to expedited removal. Most commenters commended the Department on its decision not to apply at this time the expedited removal provisions to aliens in the United States who have not been admitted or paroled and who cannot establish continuous physical presence in the United States for the previous two years. At this time, the Department will apply the provisions only to "arriving aliens," as defined in § 1.1(q). The Department acknowledges that application of the expedited removal provisions to aliens already in the United States will involve more complex determinations of fact and will be more difficult to manage, and therefore wishes to gain insight and experience by initially applying these new provisions on a more limited and controlled basis.

The Department does, however, reserve the right to apply the expedited removal procedures to additional classes of aliens within the limits set by the statute, if, in the Commissioner's discretion, such action is operationally warranted. It is emphasized that a proposed expansion of the expedited removal procedures may occur at any time and may be driven either by specific situations such as a sudden influx of illegal aliens motivated by political or economic unrest or other events or by a general need to increase the effectiveness of enforcement operations at one or more locations.

Although several commenters suggested that imposition of the provisions should only occur after publication of a proposed rule followed by a comment period, the statute does not impose any specific notice requirement in connection with the Attorney General's designation under section 235(b)(1)(A)(3), and certainly does not impose the requirement of a full administrative rulemaking. Indeed, such a requirement would defeat a major purpose of this provision: to allow the Attorney General to respond rapidly, effectively, and flexibly to situations of mass influx or other exigencies. The Attorney General has elected to exercise this authority in connection with publication of a notice in the Federal Register (in advance, where practicable) simply as a matter of sound administration and policy. The provisions contained in § 235.3(b) of this interim rule will apply for now only to arriving aliens.

Several commenters suggested that certain classes of individuals, such as minors, certain nonimmigrant classifications, and aliens claiming to be lawful permanent residents or U.S. citizens, should not be subject to expedited removal, or that it should not be applied where resources or location do not permit optimal inspection conditions. Some stated that aliens in expedited removal should be entitled to a full hearing before an immigration judge. The statute is clear that the expedited removal provisions apply to all aliens inadmissible under sections 212(a)(6)(C) or (7) of the Act, and that such aliens are not entitled to further hearing or review with specific limited exceptions. Although the statute does not require it, the Department has provided for supervisory review and concurrence on all expedited removal orders. The statute itself provides for review of a claim to lawful permanent resident, refugee, or asylee status. In addition, the Department has a certain amount of prosecutorial discretion provided by statute. It may, in lieu of instituting removal proceedings, permit an alien to withdraw his or her application for admission in those cases where there is no fraudulent intent and the alien is inadmissible only through inadvertent error or misinformation. There are also discretionary waivers available in certain cases.

Reorganization of § 235.3(b)(1) and (2)

In order to provide a more logical discussion of the applicability of the expedited removal provisions and the procedures for applying them, § 235.3(b)(1) (determination of inadmissibility) and § 235.3(b)(2) (applicability) as they appeared in the proposed regulation have been interchanged and revised as discussed below.

Expedited Removal Procedures

Many commenters stated that the provisions in § 235.3(b) were not sufficiently explicit to ensure that the expedited removal provisions are fairly and consistently applied. Because most of these commenters represented organizations primarily concerned with refugee and asylum issues, we have addressed this topic in detail below in the section relating to credible fear determinations and claims of asylum or fear of persecution by aliens subject to expedited removal.

Review of Claim of Status as Lawful Permanent Resident, Asylee, or Refugee

Several commenters suggested provisions of § 235.3(b)(5) were not sufficiently clear to provide adequate review of claims by returning lawful permanent residents, asylees, or refugees who are subject to expedited removal. Specifically, the commenters asserted that § 235.3(b)(5)(ii) could be interpreted to imply that an alien whose claim to lawful permanent residence is verified and is not granted a discretionary waiver or provided an opportunity through deferred inspection to present the required documents could be ordered removed under section 235(b) of the Act. These commenters requested that § 235.3(b)(5)(iv) of the proposed regulation be amended to allow that claimed lawful permanent residents, asylees, or refugees (who the Service has been unable to verify ever was admitted in such status) be referred directly to removal proceedings under section 240 of the Act.

For the following reasons, these sections of the proposed regulation will not be changed in the interim rule. Section 235.3(b)(5)(ii) of the proposed regulation relates to those arriving aliens whose prior admission as a lawful permanent resident has been verified by the immigration officer by referring to official Service records. The Department intends that when such a prior admission is verified, the individual will not be removed under the expedited removal provisions of section 235(b) of the Act, regardless of the officer's determination as to the individual's current admissibility and/or retention of such lawful permanent status. For that reason the first sentence of § 235.3(b)(5)(ii) sets forth this prohibition. Since the removal provisions under section 235(b) of the Act are not available, the only actions left for the examining officer are to: admit the individual (through the grant of a waiver if need be); defer inspection to allow the individual to retrieve the appropriate documents; or place the person in removal proceedings under section 240 of the Act. This process will allow those individuals verified as having once been admitted as a lawful permanent resident, asylee, or refugee a full evidentiary hearing in removal proceedings under section 240 of the Act before an immigration judge to address the heavily fact-based issues of abandonment of status or other issues concerning loss of status. The language "may initiate proceedings" was used here to indicate that the officer is not required to initiate any proceedings but may opt to admit the individual into the United States.

As for those individuals claiming to be returning lawful permanent residents, asylees, or refugees, but who are not verified by the Service as having ever been admitted in such status, the referral to the immigration judge in § 235.3(b)(5)(iv) is for the purpose of allowing the individual to establish such a prior admission in such status, nothing more. If the individual establishes such a prior admission, the immigration judge will terminate the expedited removal order and at that point that person will be in the same position as the person whose prior admission was verified by the inspecting Service officer: the Service can admit the individual or contest his or her current retention of such status in the context of removal proceedings under section 240 of the Act.

Another commenter contended that it is not appropriate to refer aliens who are verified as having been admitted or establish that they were once admitted as lawful permanent residents, asylees, or refugees to proceedings under section 240 of the Act. Section 235(b)(1)(C) of the Act states that the Attorney General shall provide regulations for administrative review of an expedited removal order entered against "an alien who claims under oath . . ." to have

been lawfully admitted as a lawful permanent resident, asylee, or refugee. The statute provides no further directive as to how aliens who actually have been admitted in such status are to be processed if, in fact, the Service believes that such status may no longer be valid. If that claim is never verified or established before the inspecting Service officer or an Immigration Judge, the expedited removal order entered against the alien will be effected and the alien will be removed from the United States. However, once an alien establishes admission in such status, it is not inconsistent with the statute for further proceedings against an alien known to have been lawfully admitted as a permanent resident, asylee, or refugee to occur in the context of proceedings under section 240 of the Act. Further, given the greater interests and ties to the United States normally at stake for such aliens compared to those arriving without any previous status, the Department considers it appropriate that verified arriving permanent residents, asylees, and refugees be accorded the protections inherent in proceedings under section 240 of the Act.

Review of Claim to U.S. Citizenship

Several commenters stated that while the statute and regulations provide for review of an expedited removal order of an alien claiming to be a lawful permanent resident, refugee, or asylee, there is no such provision for review of a claim to U.S. citizenship. While U.S. citizens are not subject to the inadmissibility and removal provisions of the Act and the Department makes every effort to prevent the inadvertent removal of U.S. citizens, there are approximately 35,000 false claims to U.S. citizenship made every year at ports-of-entry. Congress recognized this problem in IIRIRA by adding a new ground of inadmissibility to section 212(a)(6)(C)(ii) of the Act specifically designating such aliens as inadmissible and subject to the expedited removal provisions. Existing regulations at § 235.1(b), which have been in place for many years, place the burden of establishing a claim to U.S. citizenship on the person seeking entry. Otherwise, that person is inspected as an alien. To provide an additional level of review and safeguard against a mistaken determination, the Department will institute the same procedures contained in § 235.3(b)(5) for persons who have not been able to establish U.S. citizenship, but who maintain a claim under oath or under penalty of perjury to be U.S. citizens, which are used for persons claiming to be lawfully

admitted as permanent residents, refugees, or asylees.

Several commenters stated that the regulations do not provide any criteria for the detention or release of these individuals. The provisions of § 235.3(b)(2)(iii) requiring detention of all aliens subject to the expedited removal provisions and issued a removal order also apply to persons whose claim to lawful permanent resident, refugee, asylee, or U.S. citizen status has not been verified. To clarify that detention is required for these individuals, the interim rule reiterates this requirement in § 235.3(b)(5)(i).

Filing of an Application for a Refugee Travel Document While Outside the United States

Several commenters remarked favorably on the proposal to revise 8 CFR part 223 to allow refugees and asylees to apply for refugee travel documents from outside the United States, after departure from the United States, under certain very limited circumstances. The Department proposed this revision with full awareness of the provision in section 208(c)(1) of the Act under which the Attorney General may allow the alien to travel abroad ''with the prior consent of the Attorney General.'' Despite the implied language of the statute, the Department felt that an exception was warranted for those cases where the alien innocently departed in ignorance of the requirement or, although aware of the requirement, departed without applying for the document due to an urgent humanitarian need, such as the impending death of a close relative. It should be noted that the current regulations only require that an application be filed before departure, not that the applicant delay travel until after the application is approved and the document is received. The Service has always provided the option of allowing the alien to pick up the document overseas at an American consular post.

A few commenters suggested that the decision whether to accept such applications not be left to the discretion of the Service. This change has been made. However, the regulation does not remove the general requirement that the application be filed before departure, nor does it intend that the new procedure be viewed as a routine method of obtaining the document. Although not specifically stated in the regulation, the Department intends that if it is apparent that the alien knew of the general requirement and simply chose to ignore it (e.g., if the alien had previously been issued a refugee travel document through this ''overseas

procedure'' and there was no emergency necessitating the more recent departure), the director may determine that favorable exercise of discretionary authority is not warranted. Accordingly, the regulation provides that the district director having jurisdiction over the overseas location, or over the inspection facility in the case of an alien at a port-of-entry, may deny the application as a matter of discretion.

A few commenters suggested that there be no limit on how long after departure the application may be filed. Others suggested that the time limit be shortened from 1 year to 6 months to coincide with the 6 month time frame in section 101(a)(13)(C) of the Act, which is the period during which a lawful permanent resident who meets certain other requirements is not considered to be an applicant for admission. Another commenter stated that the validity of a refugee travel document approved under this process should not be limited to 1 year from the date of the alien's departure from the United States, so long as the application was filed within 1 year of that departure. The 1-year limitation was chosen because it is the maximum validity period for which a document would have been approved had the alien complied with the requirement of filing prior to departure. Allowing an applicant to file from outside the United States more than 1 year after departure would effectively authorize a longer validity period for the person who failed to comply with the requirement than for one who did. This would not be appropriate. Likewise, the 6-month period during which a lawful permanent resident (who meets the other criteria in section 101(a)(13) of the Act) is not deemed to be seeking admission is not analogous to that of the stranded refugee, since the refugee is clearly deemed to be seeking admission. Additionally, 6 months might be too short a time for the alien who realizes his or her error to file the application and for the Service to verify eligibility and approve that application. The Department feels that in those cases where it is proper to allow an exception from the requirement to file before departure, it is appropriate that the document be valid for the same length of time as for the person who complied with that requirement.

Revision of Asylum Procedures

In general, many commenters requested that specific ''step-by-step'' procedural instructions be placed in the regulations regarding the interview process at both the secondary inspection stage and the credible fear

determination stage. Although a number of these suggestions have been adopted, others have not. While the Department appreciates both the necessity for equal and proper treatment of all cases and the advantages of standardization, it must also recognize that not all situations are identical and the interviewing officer must be allowed a certain amount of flexibility in conducting interviews to account for differences in individual situations.

Convention Against Torture

Many commenters urged that there be express reference in several parts of the regulation to the non-refoulement obligation under Article 3 of the Convention Against Torture. This article requires a state not to ''expel, return ('refouler') or extradite a person to another state where there are substantial grounds for believing that he or she would be in danger of being subjected to torture.'' This article has been in effect for the United States since November 1994. Although Article 3 of the Torture Convention itself is not self-executing, the Attorney General has sufficient administrative authority to ensure that the United States observes the limitations on removal required by this provision. In fact, the Service has received and considered individual requests for relief under the Torture Convention since November 1994 and has arranged for relief where appropriate. For the present, the Department intends to continue to carry out the non-refoulement provision of the Torture Convention through its existing administrative authority rather than by promulgating regulations. The Service is, however, developing thorough guidelines to address Article 3 issues and intends to issue those guidelines soon. These guidelines generally, and the expedited removal process in particular, will be implemented in accordance with Article 3.

Prohibitions on Filing Asylum Applications

There were numerous comments on the prohibitions on the filing of asylum applications in section 208(a)(2) of the Act. Because of the importance of a decision to deny an alien the right to apply for asylum, the Department has chosen to adopt the suggestion that only asylum officers, immigration judges, and the BIA be empowered to make such determinations. The Department has also made clear that, while the alien must establish by clear and convincing evidence that he or she applied within one year of his or her arrival in the United States, the alien's burden of

establishing that one of the exceptions in section 208(a)(2)(D) applies must only be to the ''satisfaction of the Attorney General.'' The rule also contemplates that the asylum officer or immigration judge hearing such a case will explore the reasons for the late filing. Finally, and importantly, the Department has decided to follow the recommendation that the date of arrival used to determine the one-year period in section 208(a)(2)(B), consistent with the effective date of that section, be no earlier than April 1, 1997. Thus, the first case to which this prohibition could apply would be one filed on April 2, 1998.

Regarding the changed circumstances exception in section 208(a)(2)(D), the Department has followed the recommendation of numerous commentators to drop the language limiting this exception, for purposes of section 208(a)(2)(B), to circumstances that arise after the one-year period. The Department has also decided to provide a better definition of this exception by indicating that the definition may include either changed conditions in the home country or changes in objective circumstances relating to the applicant in the United States, including changes in applicable U.S. law, that create a reasonable possibility that the applicant may qualify for asylum. Because of inconsistency between the formulation of changed circumstances in section 208(a)(2)(D) and the formulation in section 240(c)(5)(ii) of the Act, which permits an alien to file a motion to reopen beyond the time limit normally applicable to such a motion, the Department has decided to drop the requirement that, for purposes of the prohibition in section 208(a)(2)(C), such exception may only be raised through a motion to reopen.

A large number of commenters requested that the Department list examples of what is meant by extraordinary circumstances within the meaning of section 208(a)(2)(D) of the Act, and several commenters suggested examples that they believed were appropriate. Accordingly, the Department has included such a list in the interim rule. It is important to bear two points in mind when reviewing the list. First, the list is not all-inclusive, and it is recognized that there are many other circumstances that might apply if the applicant is able to show that but for such circumstances the application would have been filed within the first year of the alien's arrival in the United States. Second, the alien still has the burden of establishing the existence of the claimed circumstance and that but

for that circumstance, the application would have been filed within the year.

Some commenters requested that the Department clarify that failure to establish changed circumstances or extraordinary circumstances might bar an applicant from applying for asylum, it does not bar him or her from applying for withholding of removal. The Department agrees and the interim rule contains this clarification.

Some commenters objected to the requirement that an alien who meets the extraordinary circumstances criteria, file the application ''as soon after the deadline as practicable given those circumstances,'' preferring instead the phrase ''within a reasonable time period given those circumstances.'' The Department has adopted this suggestion and a similar formulation for the ''changed circumstances'' exception.

''Asylum-Only'' Hearings

The Department noted a conflict in the proposed rule between the provisions of § 208.2(b)(1)(i)(C) and § 252.2(b) regarding crewmembers who are granted landing permits prior to April 1, 1997, and subsequently become deportable. The former provision would place such alien in ''asylum-only'' proceedings before the immigration judge, while the latter would place him or her in regular removal proceedings under section 240 of the Act. The interim rule corrects this conflict by specifying that the ''asylum-only'' process applies to those crewmembers granted landing privileges on or after April 1, 1997. Also, § 208.2(b)(2) has been expanded to explain the consequences of failure to appear for an asylum-only hearing and to set forth conditions and limitations on reopening such proceedings.

Discovery and FOIA Issues

Some commenters expressed concern about the statement in 8 CFR 208.12 that ''[n]othing in this part shall be construed to entitle the applicant to conduct discovery directed towards the records, officers, agents, or employees of the Service, the Department of Justice or the Department of States.'' Specifically, they feared that the provision would preclude someone from seeking, or excuse the Service from providing, information under the Freedom of Information Act (FOIA). This fear is totally groundless. FOIA provisions are covered under separate statutory and regulatory bases. The Service is guided by 5 U.S.C. 522 and 8 CFR 103 with regard to FOIA matters, neither of which are in any way affected by this rulemaking.

Persecution for Illegal Departure or Applying for Asylum

Several commenters objected to the proposed elimination of § 208.13(b)(2)(ii) and § 208.16(b)(4), which require asylum officers and immigration judges to give "due consideration" to evidence that the government of the applicant's country of nationality or last habitual residence persecutes its nationals or residents if they leave the country without authorization or seek asylum in another country. These commenters interpreted this change to mean that the Department does not wish to consider seriously such evidence or to grant asylum or withholding to persons who are at risk of punishment for illegal departure from their countries or for applying for asylum abroad. This is not the case. The Department and the United States Government continue to deplore and oppose certain countries' practice of severely punishing their citizens for illegal departure or for applying for asylum in another country. The Department also acknowledges that persons who face severe punishment for such acts may continue to qualify for asylum or withholding of removal. However, the regulation at issue did not clearly implement this policy. First, it requires only that asylum officers and immigration judges give "due consideration" to evidence of such practices; this is a vague and indefinite standard. Second, it obliges adjudicators to consider evidence of whether a country "persecutes" its nationals for such actions. Such language begs the very question that an adjudicator must answer in deciding such a case: Does the alleged punishment amount to persecution? It is well-established that not all punishment for illegal departure constitutes persecution. *See, e.g., Sovich* v. *Esperdy,* 319 F. 2d 21 (2d Cir. 1963); *Matter of Chumpitazi,* 16 I&N Dec. 629 (BIA 1978). However, in some cases, it may. Such a question must be resolved on a case-by-case basis. Thus, rather than continue to have an ambiguous regulation on this issue, the Department believes its adjudicators should apply the same standards to these cases as they would to any other case in which the applicant claims a fear that derives from governmental prosecution. This is best accomplished by removing the provisions in question from the regulations.

Exception to the Prohibition on Withholding of Deportation in Certain Cases

Several commenters objected to the proposed rule's limitation in § 208.16(c)(3) on those aliens who may be eligible for relief under section 243(h)(3) of the Act, as amended by Pub. L. 104–132. In particular, these commenters object to the notion that the United States may summarily preclude from eligibility for withholding of deportation aliens convicted of a particularly serious crime, including an aggravated felony, without individually considering their cases. However, it is well established in U.S. law that aliens who have been convicted of an aggravated felony are mandatorily barred from obtaining withholding of deportation. *See, e.g., Kofa* v. *INS,* 60 F. 3d 1084, 1090 (4th Cir. 1995) (en banc). In the proposed regulation implementing section 243(h)(3) of the Act, the Department decided, consistent with the revisions made to the withholding of deportation statute by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, to make relief under this section available only to those persons convicted of an aggravated felony who receive an aggregate sentence of imprisonment of less than 5 years. This proposal is almost entirely consistent with a recent precedent decision issued by the BIA on this issue. *See Matter of Q–T–M–T–,* Int. Dec. 3300 (BIA 1996). Thus, the Department intends to retain the basic approach in the proposed regulation. We have only added a sentence providing that an alien convicted of an aggravated felony shall be presumed to have been convicted of a particularly serious crime. This minor change renders the regulation fully consistent with the Board's decision in *Matter of Q–T–M–T–,* supra.

Admission of the Spouse and Children of an Asylee

The proposed rule reserved § 208.19 for regulations pertaining to the admission of the spouse and children of an asylee. This matter was the subject of a separate proposed rule published July 9, 1996, see 61 FR 35,984 (1996) and the Department had intended to incorporate the revised regulations into this interim rule. However, because analysis of the comments to that earlier proposed rule has not been completed, the Department will instead redesignate the existing regulations at § 208.21 as § 208.19. The revised regulations on the admission of the spouse and children of an asylee will be incorporated into the final regulations, which will be published after the expiration of the comment period for this interim rule.

Credible Fear Standard

Several commenters urged that we adopt regulatory language emphasizing that the credible fear standard is a low one and that cases of certain types should necessarily meet that standard. Since the statute expressly defines the term "credible fear of persecution," we have chosen not to provide in the rule a further refinement of this definition. However, both INS and EOIR will give extensive training to their officials on the purpose of the credible fear standard and how it is to be applied to particular cases. The Department believes that such training will ensure that the standard is implemented in a way which will encourage flexibility and a broad application of the statutory standard.

Employment Authorization for Asylum Applicants

Almost all who chose to comment on the Department's position regarding work authorization for asylum applicants were pleased with the decision to continue to allow the applicant to apply for an employment authorization document once the asylum application has been pending for 150 days. One commenter requested that the 150-day period be abolished, but that suggestion was not deemed viable, especially in light of the new statutorily-mandated 6-month minimum time before granting such authorization contained in section 208(d)(2) of the Act.

The Department has also modified the regulations relating to employment authorization at §§ 208.7(a) and 274a.12(a)(8) to ensure that applicants who appear to an asylum officer to be eligible for asylum but have not yet received a grant of asylum are able to obtain employment authorization. Section 208(d)(5)(A)(i) of the Act obliges the Service, prior to granting asylum, to check the identity of the applicant "against all appropriate records or databases maintained by the Attorney General and by the Secretary of State * * *." Such databases include, among others, the Federal Bureau of Investigation's (FBI) fingerprint database. At present, the Service initiates such a fingerprint check at the time it grants asylum; if the check turns up information that undercuts that decision, asylum is later revoked. The Service's experience is that the FBI's fingerprint checks often take a significant period of time to complete. The new statutory requirement at section 208(d)(5)(A)(i) of the Act thus means that after April 1, 1997, an alien who would otherwise appear to be eligible for asylum may have to wait for a long period of time before he or she can be granted asylum or employment authorization. (A similar problem may

arise in the case of an alien who is determined to be a refugee under the new language in section 101(a)(42) of the Act but is precluded from being granted asylum because of the cap in section 207(a)(5) of the Act.) Such a result is contrary to one of the chief purposes of the asylum reforms brought about by the regulatory changes of January 1995: to ensure that bona fide asylees are eligible to obtain employment authorization as quickly as possible. Thus, consistent with the authority in section 208(d)(2) of the Act, the Department has decided to make employment authorization available to asylum applicants who are recommended for a grant of asylum but have not yet received such grant of asylum or withholding. An alien may apply for employment authorization under these provisions as soon as he or she receives notice of the grant recommendation.

Credible Fear Determinations and Claims of Asylum or Fear of Persecution by Alien Subject to Expedited Removal

Under the new section 235(b)(1)(A)(ii) of the Act, an alien subject to expedited removal who indicates an intention to apply for asylum or who expresses a fear of persecution will be referred to an asylum officer to determine if the alien has a credible fear of persecution. Many commenters stated that the regulation in § 235.3 was not sufficiently detailed in delineating the following procedures for recognizing and referring arriving aliens who may be genuine refugees fleeing persecution: disclosures to arriving aliens; conditions of secondary inspection; use of interpreters; representation during secondary inspection; written record of proceeding; time and place of credible fear interview; detention pending a determination of credible fear; and detention following a determination of credible fear. We will address these concerns individually.

Disclosures to Arriving Aliens

Many commenters expressed the opinion that all arriving aliens should be provided with information concerning the credible fear interview. This contention is based on the language of the statute in section 235(b)(1)(B)(iv) that states: "The Attorney General shall provide information concerning the asylum interview described in this subparagraph to aliens who may be eligible * * *." The commenters' position is that this requirement is not limited only to aliens who "are" eligible, but that all aliens who are

suspected of qualifying for expedited removal "may" be eligible, and that the information should be given before the secondary inspection pre-screening process.

To understand the Service position on this issue, one must understand the general inspection process. All persons entering the United States at ports-of-entry undergo primary inspection. U.S. citizens are exempt from the inspection process, but must nevertheless undergo an examination to determine entitlement to exemption from inspection. In FY 96, the Service conducted more than 475 million primary inspections. During the primary inspection stage, the immigration officer literally has only a few seconds to examine documents, run basic lookout queries, and ask pertinent questions to determine admissibility and issue relevant entry documents. At most land border ports-of-entry, primary inspection duties are shared with U.S. Customs inspectors, who are cross-designated to perform primary immigration inspections. If there appear to be discrepancies in documents presented or answers given, or if there are any other problems, questions, or suspicions that cannot be resolved within the exceedingly brief period allowed for primary inspection, the person must be referred to a secondary inspection procedure, where a more thorough inquiry may be conducted. In addition, aliens are often referred to secondary inspection for routine matters, such as processing immigration documents and responding to inquiries. While millions of aliens (almost 10 million in FY 96) are referred to secondary inspection each year for many reasons, approximately 90 percent of these aliens are ultimately admitted to the United States in a very short period of time once they have been interviewed and have established their admissibility.

The secondary officer often does not know if an alien is likely to be removed under the expedited removal process until he or she has questioned the alien. Congress, in drafting the expedited removal provisions, chose to include both section 212(a)(6)(C) and 212(a)(7) of the Act as the applicable grounds of inadmissibility. The common perception is that most expedited removal cases will involve obvious fraudulent documents, or aliens arriving with no documents at all. This is not necessarily the type of case that most frequently falls within the provisions of sections 212(a)(6)(C) and (7) of the Act. Section 212(a)(6)(C) of the Act includes "any alien who, by fraud or willfully misrepresenting a material fact, seeks to

procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this Act * * *," as well as aliens who falsely represent themselves to be citizens of the United States. In addition to the presentation of fraudulent documents, the falsity of which may not be verified until a thorough examination has been conducted, the fraud and misrepresentation referenced in this section may include falsehoods told by the alien concerning his or her admission or other misrepresentations told to Government officials now or in the past.

Section 212(a)(7) of the Act, in addition to covering a lack of valid documents (including expired or incorrect visas or passports), also encompasses the alien "who is not in possession of a valid unexpired immigrant visa." Under immigration law, aliens who cannot establish entitlement to one of the nonimmigrant categories contained in the Act are presumed to be immigrants, and, if not in possession of a valid immigrant visa, are inadmissible under section 212(a)(7) of the Act. The majority of the aliens currently found inadmissible to the United States fall into this category and will now be subject to expedited removal. Again, inadmissibility under this ground often cannot be determined until the secondary inspector has thoroughly questioned the alien.

To fully advise, prior to any secondary questioning, nearly all aliens referred to secondary inspection of the expedited removal procedures and of the possibility of requesting asylum would needlessly delay the millions of aliens who are ultimately found admissible after secondary questioning. For almost all of these people, asylum, fear of persecution, or fear of return is not an issue.

The Service has very carefully considered how best to ensure that bona fide asylum claimants are given every opportunity to assert their claim, while at the same time not unnecessarily burdening the inspections process or encouraging spurious asylum claims. Service procedures require that all expedited removal cases will be documented by creation of an official Service file, to include a complete sworn statement taken from the alien recording all the facts of the case and the reasons for a finding of inadmissibility. This sworn statement will be taken on a new Form I–867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act. The form will be used in every case where it is determined that an alien

is subject to the expedited removal process, and contains a statement of rights, purpose, and consequences of the process. Among other things, it clearly advises the alien that this may be the only opportunity to present information concerning any fears or concerns about being removed from the United States, and that any information concerning that fear will be heard confidentially by another officer. The final page of the form contains a standard question asking if the alien has any fear or concern of being removed or of being sent home. If, during the course of the sworn statement, or at any time in the process, the alien indicates a fear or concern of being removed, he or she will be given a more detailed written explanation of the credible fear interview process prior to being placed in detention pending the credible fear interview. The *Inspector's Field Manual* will contain detailed instructions and guidance to officers to assist them in recognizing potential asylum claims, and this topic will also be covered in officer training. Every expedited removal case also undergoes supervisory review before the alien is removed from the United States. The Service is confident that these safeguards will adequately protect potential asylum claimants. To ensure that these procedures are followed in every expedited removal case, language has been added to § 235.3(b)(4) outlining the procedures.

Conditions of Secondary Inspection

Numerous commenters indicated that the secondary inspection should be conducted in private, comfortable rooms, and that no secondary inspection should take place before an alien has had time to rest (some commenters suggested 24 hours), eat, and consult with family, friends, counsel, or other representatives. The commenters also suggest that aliens should have access to interpreters before and during the screening process.

At airports, the inspection facilities for the Federal Inspection Services (FIS), which includes the Service, U.S. Customs Service, the U.S. Department of Agriculture, and the U.S. Public Health Service, are provided by the airport authorities. While the Government has input when new facilities are constructed, the inspection areas, especially in older airports, simply do not allow for the amenities suggested by the commenters. The same is true for land border ports, where the facility is usually provided by the General Services Administration and overall space is often extremely limited.

Service has always made every effort to afford as much privacy during sensitive or complex interviews as conditions allow, and will continue to do so.

As for delaying the secondary interview to allow every alien time to rest prior to being questioned, the Service again points out that it conducts more than ten million secondary inspections each year. Most of those questioned are eager to have their inspection completed as quickly as possible. The Department has neither the resources nor the authority to detain all secondary referrals without first conducting a prompt interview to determine inadmissibility.

Use of Interpreters

The issue of language barriers and the use of interpreters is not new to the Service. The Service makes use of interpreters whenever necessary and will continue to do so to ensure that all aliens are fully apprised of the proceedings against them. The Service currently uses its own officers, many of whom are bilingual or multilingual, airport personnel, or telephonic interpretive services when in-person interpreters are not available. Occasionally, family members or persons waiting to meet the arriving alien may be allowed to assist in translation of the interview. The Service will use appropriate means to ensure that aliens being removed are advised of and understand the reasons for the removal and the consequences of such removal.

Representation During Secondary Inspection

Several commenters stated that an alien subject to expedited removal should be able to obtain representation or counsel prior to any secondary inspection interview. As discussed in the section on disclosures to aliens in expedited removal, the secondary inspection officer often does not know that an alien will be subject to expedited removal until such questioning has taken place, nor will all determinations of inadmissibility under section 212(a)(6)(C) or (7) of the Act result in an expedited removal order. Section 292 of the Act provides that in any removal proceeding before an immigration judge, the person concerned shall have the privilege of being represented by counsel, at no expense to the Government. Congress did not amend this section to include proceedings before an immigration officer. In addition, while Congress specifically provided for consultation prior to the credible fear interview, it did not provide for consultation prior to the

immigration inspection and issuance of the order. Therefore, the Department will retain its interpretation that an alien in primary or secondary inspection is not entitled to representation, except where the person has become the focus of a criminal investigation and has been taken into custody for that purpose.

Written Record of Proceeding

Several commenters expressed concern that there be a complete record of proceeding to ensure that Service officers are making proper decisions. As previously explained, an official Service file will be created on every expedited removal case. The file will include photographs, fingerprints, copies of any documentary or other evidence presented or discovered, and a complete written sworn statement. The sworn statement will record all facts of the case and the alien's statements. As with all sworn statements taken by the Service, the alien is required to initial each page and any corrections, and sign the statement certifying that he or she has read (or had read to him or her), the statement and that it is true and correct. When necessary, interpreters will be used. The language added to the regulation at § 235.3(b)(2) requires that such sworn statement be taken in every case. Procedures developed for the *Inspector's Field Manual* also contain very specific instructions regarding the record of proceeding.

Time and Place of Credible Fear Interview

Several commenters requested that the regulations state where and when the credible fear interviews will take place. The statute provides that credible fear interviews may take place either at a port-of-entry or at other locations that the Attorney General may designate. The Service intends that most interviews will be conducted at Service detention facilities, but prefers the flexibility to make adjustments to this arrangement as the need arises. Therefore, this operational concern will not be addressed in the regulation. The Service maintains detention facilities near several major airports such as JFK, Miami, and Los Angeles, as well as many locations along the southern border and other sites like Denver, Seattle, and Houston. In circumstances where the port of arrival is not near a Service detention facility and it is impractical to transport the alien to a Service facility, the alien may be detained in other Service-approved detention sites, such as local or county jails. In these instances an asylum

officer will travel to the detention site to conduct the interview.

Several commenters suggest that the Service should conduct credible fear interviews at its local asylum offices whenever possible. The Service declines to be bound by this suggestion because of the prohibitive costs involved in transporting aliens, under escort, to and from detention facilities. However, the Service retains the option to conduct interviews at places designated for asylum officers.

Similarly, the Service intends that aliens will normally be given 48 hours from the time of arrival at the detention facility, in which to contact family members, friends, attorneys, or representatives. During the referral process from the port-of-entry, they will be given a list of pro bono representatives. This list is provided for the purpose of consultation prior to the interview, and does not entitle the alien to formal counsel or representation during the credible fear interview. The aliens will be given access to a telephone to make such contacts. Commenters suggest that aliens be given petty cash or be permitted to make telephone calls at Government expense; however, the statute that provides for such consultation specifically states that the consultation shall be at no expense to the Government.

Detention Pending a Determination of Credible Fear

A few commenters stated that the provisions of § 235.3(b)(4) for detention of aliens awaiting a credible fear determination are too harsh, and asked that the rule be amended to allow for parole of such aliens. However, because section 235(b)(1)(B)(iii)(IV) of the Act requires that an alien in expedited removal proceedings ''shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed,'' the Department feels that parole is appropriate only in the very limited circumstances specified in § 235.3(b)(4). The interim rule has been amended, however, to clarify that aliens found to have a credible fear will be subject to the generally applicable detention and parole standards contained in the Act. Although parole authority is specifically limited while a credible fear determination is pending under § 235.3(b)(4), those found to have a credible fear and referred for a hearing under section 240 of the Act will be subject to the rule generally applicable to arriving aliens in § 235.3(c). In addition, § 235.3(c) has been amended to retain detention authority for aliens whose admissibility will be determined

in exclusion proceedings after April 1, 1997.

Review of Credible Fear Determinations

The proposed regulation provides that an alien may receive, upon request, review by an immigration judge of an asylum officer's finding of no credible fear. A number of commenters requested that language be inserted in the interim regulation which presumes that an asylum officer's finding of no credible fear will be reviewed by an immigration judge unless the alien desires to abandon the review and return to his or her home country. If such a suggestion is not adopted, these commenters request that, at a minimum, language be inserted requiring that the asylum officer advise the alien of his or her right to request review of the negative decision and requiring the officer to ask the alien whether he or she desires such review. The language of section 235(b)(1)(B)(iii)(III) of the Act clearly provides that the alien has the obligation to request review of a negative credible fear determination. The Department notes that § 208.30(e) of the proposed regulation requires the asylum officer to inquire whether the alien wishes review of the negative credible fear determination. This provision is appropriated into Form I–589.

A number of commenters asked that the regulation provide that, whenever practicable, the credible fear review be conducted in person; that the alien may be assisted by an attorney or other representative; and that an interpreter be provided when necessary. Another commenter stated, however, that no counsel should be allowed in the review of credible fear determinations; rather, a representative should be allowed to submit a written statement. The Department recognizes the concerns raised by these commenters. However, because the proposed regulation sets forth a procedure for credible fear review that is consistent with the language of section 235(b)(1)(B)(iii)(III) of the Act and provides the Attorney General the flexibility to administer such a procedure, the rule was not changed.

One commenter asserted that the proposed regulation that provides for an alien who demonstrates a credible fear of persecution to be placed in removal proceedings under section 240 of the Act is incorrect. The commenter maintains that IIRIRA contemplates that such aliens will be limited to an ''asylum only'' hearing with an appeal to the Board. This portion of the regulation will not be changed in the interim rule. Section 235(b)(1)(B)(ii) of

the Act provides that if an asylum officer determines that an alien has a credible fear of persecution, the alien ''shall be detained for further consideration of the application for asylum. The remainder of section 235(b) of the Act is very specific as to what procedures should be followed if an alien does not establish a credible fear. However, the statute is silent as to the procedures for those who do demonstrate a credible fear of persecution. Once an alien establishes a credible fear of persecution, the purpose behind the expedited removal provisions of section 235 of the Act to screen out arriving aliens with fraudulent documents or no documents and with no significant possibility of establishing a claim to asylum has been satisfied. Therefore, the further consideration of the application for asylum by an alien who has established a credible fear of persecution will be provided for in the context of removal proceedings under section 240 of the Act.

Detention Following a Determination of Credible Fear

Numerous commenters stated that aliens who have established a credible fear of persecution are presumptively eligible for release and should not be detained unless the government can demonstrate that the alien poses a danger to the community or a risk of flight. Some stated that the burden should be on the government to prove that custody is necessary. Again, the clear language of the statute states that such aliens shall be detained. The parole provisions of section 212(d)(5) of the Act provide discretionary authority to the Attorney General to parole into the United States or from custody only on a case-by-case basis. The credible fear standard sets a low threshold of proof of potential entitlement to asylum; many aliens who have passed the credible fear standard will not ultimately be granted asylum. It should also be noted, as stated by one commenter, that these aliens are prima facie inadmissible to the United States. However, the Department intends, as part of the credible fear interview process, to assess the eligibility for parole of aliens who have been determined to have a credible fear. The discretion to release from custody will remain with the district director on a case-by-case basis.

Effect of Initiation of Removal Proceedings

Several commenters objected to the language in section 239.3 providing that the filing of a notice to appear has no

effect in determining periods of unlawful presence. These commenters noted that this section of the regulation could be interpreted to mean that the period of time a respondent is in removal proceedings is not a period "authorized by the Attorney General," which would mean that removal proceedings would not toll the running of time periods for purposes of the bars to admission in section 212(a)(9)(B) of the Act. The result, the commenters assert, would be that people would be compelled to abandon their legitimate claims for relief from removal because, by pursuing such relief before an immigration judge or on appeal to the Board, an individual would risk accruing over 180 days in "unlawful status" and thereby becoming inadmissible under section 212(a)(9)(B)(i)(I) of the Act. The commenters recommended that either this language in section 239.2 be deleted or that it be replaced by a statement that the filing of a notice to appear tolls the period of unlawful presence.

Upon review, the Department has concluded that the regulation will be retained without change in the interim rule. Section 212(a)(9)(B)(iv) of the statute is clear that any period of illegal presence may tolled only in very limited circumstances. This section of the statute does not include issuance of a charging document among those circumstances. The Department does not agree that application of this section will deter aliens from pursuing valid claims for relief in removal proceedings. The same forms of relief, including asylum and adjustment of status, remain available in such cases, even after passage of the 180 day and one year time limits. Similarly, availability of voluntary departure is unchanged. Further clarification of the applicability of section 212(a)(9) will be included in a separate proposed rule which the Service is currently drafting.

Motions to Reopen After Departure From United States

A few commenters recommended that motions to reopen be permitted after departure and that the Department delete the language in § 3.2(d) of the proposed rule providing that motions to reopen or reconsider cannot be made by or on behalf of a person after that person's departure from the United States. These commenters contend that this regulation is no longer valid because IIRIRA substituted former section 106(c) of the Act with new section 242. New section 242 of the Act does not contain the provision of former section 106(c) barring judicial review of a final order of deportation or exclusion

if the alien departed the United States after issuance of that order. The interim commenters assert that if a petition for review of habeas corpus is successful, the petitioner should be lawfully entitled to reopen his or her removal case, even though he or she departed from the United States. They argue that such motions will promote judicial efficiency and economy.

The Department has decided not to adopt this suggestion and the interim regulations will not be changed. No provision of the new section 242 of the Act supports reversing the long established rule that a motion to reopen or reconsider cannot be made in immigration proceedings by or on behalf of a person after that person's departure from the United States.

Departure Constituting Withdrawal of Motion

In the proposed regulation, § 3.2(d) did not provide that departure from the United States after the filing of a motion to reopen or a motion to reconsider constitutes a withdrawal of such motion. The Department has reconsidered the advisability of adjudicating motions to reopen and reconsider subsequent to an alien's departure from the United States. The interim regulation retains the long established principal that any departure subsequent to moving to reopen or reconsider constitutes a withdrawal of that motion. The Department believes that the burdens associated with the adjudication of motions to reopen and reconsider on behalf of deported or departed aliens would greatly outweigh any advantages this system might render. Further, the Department is confident that the immigration judge's discretionary authority to stay the deportation or removal of an alien who has filed a motion to reopen or reconsider will safeguard an alien from being inappropriately deported before he is heard on his motion to reopen or motion to reconsider.

Time and Numerical Limitations on Filing Motions

A number of commenters pointed out that §§ 3.2(d) and 3.23(b) subject all parties to time and numerical limits for motions to reopen in deportation and exclusion proceedings, but apply those limits only to aliens in removal proceedings. These commenters argue that the same limitations should apply to all parties in all proceedings.

IIRIRA specifically mandates that "[a]n alien may only file one motion to reopen" in removal proceedings. Congress has imposed limits on motions to reopen, where none existed by statute

before, and specifically imposed those limits on the alien only. The interim regulations will not be changed.

One commenter suggested that the time and numerical limitations for motions to reopen should be broader than changed country conditions, as provided in § 3.23(b)(4). The commenter asserted that IIRIRA contains a much broader exception for individuals to apply for asylum beyond the one year deadline and that it is inconsistent for the statute to provide these broader exceptions if eligible applicants will be barred from applying for asylum because of the stricter motion to reopen standard. As noted earlier, the Department has decided to drop the requirement that the changed circumstances exception to the one year filing deadline in section 208(a)(2) of the Act be raised only through a motion to reopen. The Department also notes that the standard for reopening an asylum case provided in 8 CFR 3.23(b)(4) is entirely consistent with the asylum reopening standard provided in IIRIRA.

Retention of September 30, 1996 Cut-Off Date on Filing Certain Motions

Some commenters indicated that § 3.2(c)(2) does not retain the September 30, 1996 cut-off date for earlier motions to reopen, while the proposed section 3.2(b)(2) does retain the July 31, 1996 cut-off date for earlier motions to reconsider. The commenters point out that although these dates have passed, they should be retained to ensure the rights of respondents who submitted timely motions that have not yet been adjudicated. Since the commenters demonstrate that the cut-off date in §§ 3.2(c)(2) and 3.23(b)(1) are not necessarily obsolete references, those sections are revised in the interim regulation to retain the appropriate cut-off dates.

Immigration Court Rules of Procedure

One commenter noted that § 3.12 omitted disciplinary proceedings under § 292.3 from the scope of the rules of Immigration Court procedure. The commenter correctly noted that no explanation had been given as to why disciplinary proceedings were omitted from the scope of the rules. Section 292.3 is currently being revised by EOIR and will ultimately be moved into 8 CFR 3. It was thought that the disciplinary proceedings regulations would have been revised and moved into part 3 prior to publication of this interim regulation and that a reference to § 292.3 would not be necessary. The disciplinary proceedings regulation, however, is still in progress. The interim

rule will therefore place the reference to disciplinary proceedings pursuant to § 292.3 back into § 3.12.

One commenter claimed that § 3.25(b), which allows the immigration judge to waive a hearing and enter a decision upon a stipulated request for that order, raises due process concerns because the provision requiring an immigration judge to determine that the alien's waiver is voluntary, knowing and intelligent is not an adequate safeguard. The interim rule does not change this provision. The requirement that the immigration judge determine if an unrepresented alien's waiver is voluntary, knowing and intelligent before granting a stipulated request for an order safeguards against an imprudent waiver of a formal adjudication on the part of an unrepresented alien. Further, the request for the order and waiver of the hearing must not only be stipulated to by both the alien and the Service, but must also be approved by the immigration judge. If an immigration judge is confronted with a stipulated request raising due process concerns, he or she may examine that request in the context of a hearing.

Comments Relating to Removal Hearings Under Section 240 of the Act

Several commenters were concerned with various aspects of the ordinary removal hearing process. One aspect of the removal process that received several comments was the method of service of Form I–862, Notice to Appear. Specifically, commenters were concerned that service of the notice to appear by regular mail would be inadequate. A few commenters have assumed that because service by certified mail is not required in all cases, it will not be used in any case. Both the statute and the regulations, however, allow for service by regular mail only when personal service is "not practicable." Moreover, because the regulatory provisions at issue follow exactly the requirements of the Act, these provisions have not been changed in the interim rule.

Commenters expressed concern over the provision at § 240.8(d) that states that it is the alien's burden to establish that mandatory grounds for denial of any application for relief do not apply. It is well-settled that an alien bears the burden of establishing eligibility for relief or a benefit. This provision merely reflects this well-settled rule. Also, an alien is only required to establish eligibility by a preponderance of the evidence. This provision has not been changed in the interim rule.

One commenter expressed concern that § 240.10 of the proposed regulation does not cross-reference § 236.1(e). Section 236.1(e) requires that every detained alien be notified that he or she has the privilege of communication with consular authorities. The commenter proposed that § 236.10 require the Service to determine whether the alien is covered by § 236.1(e) and therefore must have an opportunity to contact the consular officer before a responsive pleading. The Service is required to comply with this requirement before commencement of removal proceedings. In the unlikely event that the Service failed to comply with this requirement, such a procedure could unduly delay an otherwise routine removal case. Contact with a consular officer is unlikely to have any bearing on a respondent's inadmissibility or deportability. The delay in the proceedings and its attendant cost would generate little substantive benefit for the alien as a result.

One commenter expressed concern over provisions in § 240.10(g) implementing section 241(b) of the Act. Those provisions allow the Attorney General to remove an alien to a country other than as designated by the alien under certain circumstances. The commenter suggests a 30-day waiting period for removal from the time the alien is given notice of the new country of removal. The Service has considered this suggestion and has decided not to change this provision in the interim rule. This procedure is not required by the Act, and would place a significant strain on detention resources.

Another commenter argued that provisions in § 240.7(a) relating to the admissibility of prior statements in removal proceedings were unnecessary. Specifically, the commenter was concerned about criminal pleas resulting in less than a criminal conviction and their effect on removal proceedings. It is always within the authority of the immigration judge to assign the statement a proper weight. Moreover, this provision was carried over from the prior regulations where it formerly existed at § 242.14(c). Thus, this section has not been changed in the interim rule.

Several commenters requested that § 240.12(a) of the proposed regulation include language that was in former § 242.18(a) requiring that the decision of an immigration judge "shall include a discussion of the evidence and findings as to deportability [inadmissibility]." The commenters assert that such findings and discussion of the evidence is necessary for the respondent to properly determine whether to file a

motion for reconsideration of that decision or to prepare a notice of appeal with sufficient specificity to prevent a summary dismissal by the Board under § 3.1(d)(1)(1–a) of the regulations. The Department disagrees. The proposed regulation allows for an adequate articulation of the immigration judge's basis for his or her decision as well as the underlying reasons for granting or denying the request. The rule provides sufficient information for the respondent to prepare a notice of appeal with sufficient specificity to prevent a summary dismissal of appeal. For these reasons this section has not been changed in the interim rule.

Other comments regarding procedures are not discussed individually and have not been adopted in this interim rule. Most recommended changes to existing procedures or commented on matters which directly resulted from changes to the law itself. These comments will be reviewed and considered in greater detail when the final rule is prepared.

Guardian Ad Litem

In the proposed rulemaking, the Department solicited comments on the advisability of procedures for appointment of guardians ad litem. Several thorough and detailed comments were received. Because the issue is a complex and sensitive one, the Department has decided to further examine the issue and prepare a separate rulemaking at a later date.

Cancellation of Removal

A number of commenters expressed concern with section 240.20(b) of the proposed regulation, which states that an application for cancellation of removal may be filed only with the Immigration Court after jurisdiction has vested pursuant to section 8 CFR 3.14. Section 3.14(a) provides that jurisdiction vests when a charging document is filed with the Immigration Court by the Service. The practical concern raised by the commenters arise if the Service serves Form I–862, Notice to Appear, on a respondent but does not file it with the Immigration Court. If the Service does not file a notice to appear which has been served, a respondent would not have access to the Immigration Court to obtain forms of relief such as cancellation of removal or adjustment of status. Moreover, the service of the notice to appear will cut off the accrual of time in continuous residence or continuous physical presence for that respondent under new section 240A(d)(1) of the Act. The commenters proposed that language be added to § 3.14(a) of the regulation allowing for jurisdiction to vest and

proceedings to commence when a charging document is filed by the Service or by a respondent. The commenters added that § 3.14(a) already permits immigration judges to conduct bond proceedings and credible fear determinations without a charging document being filed with the court. Thus, they assert, there is no rational basis to permit the initiation of those two types of proceedings and not permit an immigration judge to consider an application for cancellation of removal after a respondent files a charging document that previously has been served on the respondent by the Service. The ability to file a charging document has rested exclusively with the Service for a number of years, without problem. This portion of the proposed regulation will not be changed in the interim rule. The issue of the initiation of removal proceedings lies within the prosecutorial discretion of the Service. The Service needs to have control over when charging documents are filed with the Immigration Courts in order to best manage its administrative resources.

Apprehension, Custody, and Detention of Aliens

The IIRIRA extended the mandatory detention provisions to additional classes of inadmissible and deportable aliens but provided an exception for certain witnesses. It also allowed the Attorney General the option of a transition period for implementation of mandatory detention. The Service exercised this discretion and implemented the transition period custody rules on October 9, 1996, effective for 1 year. This interim rule amends the regulations to comply with the amended Act by removing the release from custody provisions for aliens who may no longer be released. These amendments to the regulations will take effect upon the termination of the transition period. As for non-criminal aliens, the rule reflects the new $1,500 minimum bond amount specified by IIRIRA. Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.

Several commenters complained that the Service has no national standards of detention. They stated that policies, practices, and decisions regarding outside communication are bewildering, arbitrary, and inconsistent. Consistent with its focus on providing safe, secure, and humane detention environments, the Service has implemented detention facility improvements and has set as a

goal the accreditation of each of its facilities. The Krome Service Processing Center (SPC) has received accreditation with commendation from the Joint Commission of Healthcare Organizations (JCHO), the most prestigious medical accreditation that can be awarded. Currently, six SPCs are accredited by the National Commission on Correctional Health Care (NCCHC), and accreditation is pending at the remaining three SPCs. The Denver contract facility is also NCCHC accredited. Six contract facilities have American Correctional Association (ACA) accreditation and two others have begun the accreditation process.

Several commenters stated that the Service should require ACA standards in local detention facilities used. Approximately 46 percent of the detention space used by the Service is with state and local facilities. Formal ACA accreditation of a state or local facility is a matter for the state or local government. The Service could not meet its detention requirements by using only facilities that have been formally accredited. The Service has established its own rigorous inspection program that uses ACA standards for evaluation of a facility. The Service will not use a facility that fails to pass our inspection.

Several commenters stated that § 236 of the proposed rule as written is a reversal of long established procedure that provides that a noncriminal alien is presumptively eligible for release. The Service has been strongly criticized for its failure to remove aliens who are not detained. A recent report by the Department of Justice Inspector General shows that when aliens are released from custody, nearly 90 percent abscond and are not removed from the United States. The mandate of Congress, as evidenced by budget enhancements and other legislation, is increased detention to ensure removal. Accordingly, because the Service believes that the regulation as written is consistent with the intent of Congress, the interim rule has not modified the proposed rule in this regard.

Several commenters noticed a discrepancy between the discussion in the supplementary information and the substance of § 236.1(c)(5) of the proposed regulation. The supplementary information stated the Department's intended approach, and clause (i) of the proposed regulation was in error. Accordingly, the interim rule removes paragraph (c)(5)(i) of § 236.1 and renumbers the remaining paragraphs (c)(5)(ii), (iii), and (iv). The effect of this change is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination

hearings before an immigration judge, while arriving aliens do not. This procedure maintains the status quo regarding release decisions for aliens in proceedings, as discussed in the supplementary information of the proposed regulation.

One commenter stated that no criminal alien may be released pursuant to the Transition Period Custody Rules in section 303(b)(3) of IIRIRA where there is sufficient space to detain the individual alien. The same commenter stated that it was not the intention of Congress that EOIR continue to exercise bond redetermination authority under the Transition Rules. Aside from the classes of aliens covered by the Transition Rules, however, the basic structure of the Rules is essentially that of section 242(a)(2) of the Act as it stood prior to AEDPA, providing for the release of "lawfully admitted" criminal aliens (as well as unremovable criminal aliens), in the exercise of the Attorney General's discretion, when such aliens can demonstrate the absence of a danger to the community or a flight risk upon release. The Department intends to issue a separate proposed rule in the near future establishing both substantive limitations and procedural safeguards concerning the release of criminal aliens eligible to be considered for release under the Transition Rules. Accordingly, the interim rule has not been modified.

Expedited Deportation Procedures for Aliens Convicted of Aggravated Felonies Who Are Not Lawful Permanent Residents

The interim rule amends the Service's regulations to comply with the Act, as amended, by: including aliens who have lawful permanent residence on a conditional basis under section 216 of the Act as being subject to expedited administrative deportation procedures; removing references to prima facie eligibility for relief; and eliminating references to release from custody, since aliens subject to these proceedings are now statutorily ineligible for release as a result of changes to other sections of the Act.

Several commenters addressed the time period for response, the role of the deciding Service officer, the risk of deporting U.S. citizens or permanent residents, and other aspects of the procedure. These procedures were not changed from the regulation as it was written at § 242.25. These comments were previously addressed when the regulation was published on August 24, 1995.

## Voluntary Departure and Employment Authorization

The proposed rule outlined how voluntary departure would be handled at various stages of proceedings. Since new section 240B of the Act and the corresponding proposed regulations represented a significant departure from the predecessor provisions for voluntary departure, public comments regarding the Department's approach to implementation of this provision were particularly welcomed.

Several commenters wrote in opposition to the language in § 240.25 providing that ''[t]he Service may attach to the granting of voluntary departure any conditions it deems necessary to ensure the alien's timely departure from the United States.'' Many based their opposition on their contention that the language was ''beyond the scope of the legislation.'' However, a similar provision already exists in regulation. The present § 242.5(b) states that ''officers * * * may deny or grant the application and determine the conditions under which the alien's departure shall be effected.'' Similarly, current § 244.1 states that voluntary departure may be authorized ''under such conditions as the district director shall direct.'' Basically, the language of the proposed rule merely stated what was already in regulation. In addition, it is noted that voluntary departure is a privilege granted by the Service and is not an entitlement to be claimed by the alien. An alien must establish both that he or she is statutorily eligible for voluntary departure and that he or she merits voluntary departure in the exercise of discretion. *See Matter of Seda,* 17 I&N Dec. 550 (BIA 1980). The ability to attach conditions to a grant of voluntary departure is necessary to the Service's ability to consider the request and is fully consistent with the intent of Congress in enacting section 240B of the Act, which tightens the previously applicable voluntary departure provisions in order better to assure actual departure. Therefore, the language will not be changed for the interim rule.

Several commenters objected to the maximum time limits for voluntary departure of 120 days prior to completion of removal proceedings, and 60 days at the completion of removal proceedings. Those commenters indicated that the statutory language limiting voluntary departure to 120 and 60 days did not preclude an interpretation authorizing additional extensions of voluntary departure in increments of 120 or 60 days. Several commenters, however, wrote in support

of the voluntary departure provisions contained in the proposed rule. One commenter stated that ''it would be unlawful to extend or renew voluntary departure beyond the single period of 60 or 120 days specified in that section.'' Another commenter stated that ''These changes represent nothing more or less than what has been mandated by Congress, and there is no basis on which they can be substantively altered or amended in the promulgation of the interim rule.''

In its proper form, voluntary departure serves several functions. First, it allows the Service to allocate its enforcement resources more efficiently through case management. Second, it saves resources by allowing aliens to depart at their own expense rather than at the expense of the government. Finally, it benefits the aliens involved by allowing them to avoid the harsh consequences of a formal order of removal. Too often, however, voluntary departure has been sought and obtained by persons who have no real intention to depart. The IIRIRA was intended as a comprehensive reform of the immigration system and was specifically designed to curb abuses of voluntary departure. A reading of the voluntary departure provisions allowing for extensions of voluntary departure in multiple increments of 120 or 60 days inconsistent with the purpose of the statute and would be at best difficult to reconcile with the language of section 240B of the Act.

Prior to IIRIRA, the authority for voluntary departure was found in section 244(e) of the Act, which contained no time limitation. Now, for the first time, there are statutory restrictions limiting the time for which voluntary departure may be authorized. The Conference Report on H.R. 2202 stated that under section 240B(a) of the Act, ''[p]ermission to depart voluntarily under this subsection shall not be valid for a period exceeding 120 days * * *.'' Similarly, the Conference Report stated that under section 240B(b) of the Act, ''[t]he period for voluntary departure cannot exceed 60 days * * *. The Department concludes that the total period, including all extensions, may not exceed 120 days for voluntary departure granted prior to completion of proceedings or 60 days for voluntary departure granted at the conclusion of proceedings.

Several commenters objected to the elimination of employment authorization for aliens who have been granted voluntary departure. Several other commenters wrote in favor of the elimination. Prior to April 1, 1997, voluntary departure was often granted

by EOIR and the Service for extended periods of time. With grants and extensions of voluntary departure for extended periods of time, it was reasonable to allow for employment authorization. Now, voluntary departure is limited to a maximum of 120 days. Moreover, it has long been recognized that employment provides a magnet that draws aliens to this country. Voluntary departure provides an opportunity for an alien to complete the process of departure from the United States and should not be seen as a new opportunity for employment authorization. Although the granting of voluntary departure will not, in and of itself, cause any previously approved employment authorization to be terminated, neither will the granting of voluntary departure provide a new opportunity to apply for employment authorization. Therefore, the interim rule will eliminate the general provision found at § 274a.12(c)(12) for employment authorization for aliens who have been granted voluntary departure. Employment authorization will be retained only for beneficiaries of the Family Unity Program (section 301 of the Immigration Act of 1990, Pub. L. 101–649).

Several commenters expressed concern about the consequences for certain abused immigrant spouses and children of lawful permanent residents with properly filed self-petitions who were granted voluntary departure and work authorization pending availability of an immigrant visa. The Department shares the concerns of the commenters and is looking at how best to address them outside the context of voluntary departure.

Several commenters objected to the provisions for appeals, generally stating that the Service could appeal approvals, yet aliens cannot appeal denials. In § 240.25 (voluntary departure by the Service), the appeal procedure at paragraph (e) states that a denial of an application for voluntary departure may not be appealed, but such denial shall be without prejudice to the alien's right to apply to the immigration judge in accordance with § 240.26. Section 240.26(g)(1) (voluntary departure by EOIR) places limitations for appeals only on the Service, and places none on the alien. Section 240.26(g)(2) discusses an appeal of a grant or denial of voluntary departure. Therefore, the appeal procedures in §§ 240.25(e) and 240.26(g)(1) and (2) do not allow the Service to appeal approvals while precluding aliens from appealing denials. In reviewing the comments, however, it became apparent that the language of 240.26(g) appeared to

prohibit the Service from appealing a grant of voluntary departure on the ground that the alien was not eligible for the relief. Any such implication was unintended, and the language has been corrected to reflect that both the alien and the Government may appeal issues of both eligibility and discretion, but that neither may appeal the length of the voluntary departure period granted by the immigration judge.

One commenter expressed concern about the dangerous intersection between the voluntary departure time limits and new section 212(a)(9)(B) of the Act, which imposes a 3- to 10-year bar to admission upon any alien unlawfully present in the United States from 180 days to more than 1 year. The commenter pointed out that individuals now granted voluntary departure for extended periods of time for humanitarian reasons will become unlawfully present after 120 days of voluntary departure. The commenter stated that if deferred action is to be the sole avenue of relief, the Service needs to develop policy guidelines so that district directors will not be afraid to use it to enable the sick and the dying to receive treatment and to enable their parents to work for health insurance. The Department acknowledges that there will be some compelling humanitarian cases for which voluntary departure cannot be extended. A district director will be able to give individual consideration for a recommendation for deferred action to the regional director. If approved by the regional director, employment authorization may be granted under the provisions of § 274a.12(c)(14).

Several commenters objected to the provision for revocation found in § 240.25(f), and stated that revocation of voluntary departure should require notice and the opportunity to be heard. However, this provision already exists in the current § 242.5(c), which provides for revocation of a grant of voluntary departure without notice. The revocation is an adverse action initiated by the Service; therefore, personal service of the decision is required in accordance with § 103.5a(c). However, a notice of intent to revoke will not be issued. The interim rule will be amended to point out that the revocation shall be communicated in writing, and shall cite the statutory basis for revocation.

Several commenters objected to the limits in § 240.26(b)(1) on grants of voluntary departure under section 240B(a) of the Act, particularly the requirement that a request for such relief be made at or before a master calendar hearing, and decided by the immigration judge within 30 days thereafter. Other commenters stated that these provisions were confusing.

The regulation has not been changed substantively based on these comments but has been revised to clarify the applicable time periods. The revisions make it clear that in order to obtain voluntary departure from an immigration judge under section 240B(a) of the Act, an alien must request it prior to or at the master calendar hearing at which the case is initially calendared for a merits hearing, which is not necessarily the first master calendar hearing. This ensures that the alien is not obligated to request voluntary departure at preliminary stages of the process, before the case is ready to be scheduled for a merits hearing. The Department believes that this allows sufficient time for the alien to consider voluntary departure and other options and to discuss them with counsel. If such requests cannot be resolved at the master calendar hearing the immigration judge may take an additional 30 day period in case he or she desires additional time to consider the voluntary departure request or to complete the processing. In the event that the alien decides only after the specified master calendar hearing that he or she wishes to request voluntary departure, such a request can still be made later, but requires the concurrence of the Service under § 240.26(b)(2). Finally, even without Service concurrence, the immigration judge may grant voluntary departure under section 240B(b) of the Act upon conclusion of the proceeding.

Several commenters objected to the language at § 240.26(b)(1)(iv) authorizing the grant of voluntary departure by immigration judges pursuant to section 240B(a) of the Act only if the alien waives appeal of all issues. The Department believes that voluntary departure authorized by immigration judges prior to completion of proceedings should be for the purpose of settling cases in the interests of economy and justice. If an alien wishes to contest any issues, the proper forum will be a merits hearing. Once a case proceeds to a merits hearing and contested issues are settled, voluntary departure remains a form of relief; however, it may be authorized only pursuant to the provisions of section 240B(b) of the Act for voluntary departure granted at the completion of removal proceedings.

Several commenters wrote that the regulation should provide an exemption for an alien who would otherwise have a removal order issued against him or her for failing to depart when the alien,

through no fault of his own, has not obtained travel documents. The regulation already provides, at § 240.26(b)(3)(ii), that the Service in its discretion may extend the period within which the alien must provide such documentation. However, the provision for extension is discretionary and not an entitlement. The alien in removal proceedings bears the responsibility to demonstrate eligibility for any relief requested. The alien is encouraged to work with the government of his or her home country to obtain a valid passport or other travel authorization if a travel document is necessary for return to that country. Failure to obtain necessary travel documentation will leave the Department no option but to enforce the alternate order of removal.

Several commenters pointed out that in a case involving an alien who was previously granted voluntary departure and failed to depart, the proposed regulation correctly reflects the statutory language that such an alien is not eligible for voluntary departure or relief under sections 240A, 245, 248, and 249 of the Act. The commenters pointed out, however, that the proposed regulation fails to include the statutory requirement that the alien must receive notice of the penalty for failing to depart. The Department agrees with the commenters, and will change the language in the interim rule to reflect the requirement that a voluntary departure order permitting an alien to depart voluntarily shall inform the alien of the penalties under section 240B(d) of the Act.

Sections 240B(a)(1) and 240B(b)(1)(C) of the statute bar aliens deportable under section 237(a)(2)(A)(iii) of the Act from voluntary departure. Because aliens entering without inspection are no longer considered deportable, however, the statutory bar might be read as allowing such aliens to obtain voluntary departure despite an aggravated felony conviction. The statute would thus create the anomaly of more favorable treatment for aggravated felons who enter without inspection. The Department does not believe that Congress intended such an anomaly. In any event, having become aware of the problem, the Department now exercises its discretion to bar such aliens from receiving this form of relief.

Finally, several commenters requested clarification regarding the effect of a motion or appeal to the Immigration Court, BIA, or a federal court on any period of voluntary departure already granted. Since an alien granted voluntary departure prior to completion of proceedings must concede removeability and agree to waive

pursuit of any alternative form of relief, no such appeal or motion would be possible in this situation. Regarding post-hearing voluntary departure, the Department considered several options, but has not adopted any position or modified the interim rule. The Department has identified three possible options: no tolling of any period of voluntary departure; tolling the voluntary departure period for any period that an appeal or motion is pending; or setting a brief, fixed period of voluntary departure (for example, 10 days) after any appeal or motion is resolved. The Department wishes to solicit additional public comments on these or other possible approaches to this issue so that it can be resolved when a final rule is promulgated.

Detention and Removal of Aliens Ordered Removed

This rule provides for the assumption of custody during the removal period, allows detention beyond the period, and provides conditions for discretionary release and supervision of aliens who cannot be removed during the period.

Several commenters stated that the wording of the statute provides for release of noncriminal aliens during the removal period and suggested that the Service adopt a policy of allowing the alien to remain at liberty during the 90-day removal period. One commenter stated that the proposed rule is consistent with the language and intent of IIRIRA and should be retained in the interim rule. The plain language of the statute requires that an alien be held in custody during the 90-day removal period and not be released. Accordingly, the proposed language is retained in the interim rule.

Several commenters stated that the statute requires release on an order of supervision after the expiration of the 90-day removal period. One commenter stated that the proposed rule is consistent with the language and intent of IIRIRA and should be retained in the interim rule. Taken together, sections 241(a)(3) and (a)(6) of the Act provide that any alien who is inadmissible or who is deportable on the grounds enumerated in paragraph (a)(6) may be detained beyond the removal period. Additionally, any alien who is a risk to the community or is unlikely to appear for removal may be detained regardless of the charge of inadmissibility or deportability. Accordingly, the proposed language is retained in the interim rule.

Reinstatement of Removal Orders Against Aliens Illegally Reentering

Several commenters suggested that aliens caught illegally reentering the United States after removal should be provided a hearing before an immigration judge. They expressed concern that issues such as identity and the propriety of the earlier removal order would not be addressed. One commenter argued that new section 241(a)(5) of the Act was not intended to be a substantive revision of former section 242(f) of the Act, which also dealt with reinstatement of deportation orders, but was merely taken from a bill proposing to recodify the Act without substantive change. One commenter wrote in support of these provisions, stating that they were consistent with the language and intent of IIRIRA.

A review of the relevant statutory provisions reveals that a substantive change was in fact effected in the transition from section 242(f) of the Act to section 241(a)(5) of the Act. Section 242(f) of the Act provided only that the deportation order was to be reinstated upon illegal entry. New section 241(a)(5) of the Act provides that the removal order is reinstated from its original date, but adds the provision ''and is not subject to being reopened or reviewed.''

The Service has taken steps to ensure the positive identification of an alien apprehended and removed under this section. In § 241.8(a)(2), the regulation requires fingerprint identification before an alien can be removed under section 241(a)(5) of the Act. In cases where no fingerprints are available and the alien disputes that he or she was previously removed, the alien will not be removed under section 241(a)(5) of the Act. Because the process mandated by the proposed rule adequately addresses the concerns expressed by the commenters, this provision remains unchanged in the interim rule.

Detention and Removal of Stowaways

Section 241.11 implements section 305 of IIRIRA, defining the responsibilities for stowaways and costs of detention in the new section 241 of the Act. All stowaways are deemed to be inadmissible under the Act and are not entitled to a hearing on admissibility. Those with a credible fear of persecution may seek asylum in accordance with 8 CFR part 208 in special proceedings before an immigration judge. The statute is very specific regarding most detention and removal responsibilities of the carriers.

Several commenters stated that the regulations do not contain a definition of stowaway. Since IIRIRA added a clear definition of stowaway in section 101(a)(49) of the Act, the Department saw no need to repeat the definition in the regulations. One commenter objected to the 15-day detention period for asylum-seeking stowaways, for which the owner of the vessel or aircraft bringing the stowaway is obligated for the costs of detention. As this time frame is mandated by statute in section 241(c)(3)(A)(ii)(III) of the Act, the Department is bound by it.

One commenter suggested that the regulation clearly define the situations where the Service should allow the carrier to remove, by aircraft, a stowaway who arrived by vessel. The regulation at § 241.11(c)(1) has been amended to include general circumstances where the Service might favorably consider such request. These circumstances will also be more thoroughly addressed in the *Inspector's Field Manual.*

One commenter stated that the regulations should define how the Service will make a determination that the necessary travel documents for the stowaway cannot be obtained, so as to shift the costs of the stowaway's detention from the carrier to the Service, as stated in section 241(c)(3)(A)(ii)(II) of the Act. The Department has not had sufficient time to consider this issue and so will address it in the final rule.

Adjustment of Status

Some commenters objected to the policy statement contained in the proposed rule that amended § 245.1(c)(8) and indicated that, as an exercise of discretion, the Attorney General would not adjust the status of arriving aliens ordered removed under section 235(b)(1) of the Act or in proceedings under section 240 of the Act. Those commenters believed that such a statement exceeded the Attorney General's authority by eliminating an immigration benefit that has not been eliminated by an act of Congress. Other commenters suggested that the policy statement did not go far enough and that the policy should be expanded to include all inadmissible aliens in section 240 proceedings, not just arriving aliens. In this interim rule, the Department will maintain the position taken in the proposed rule. This position promotes the Department's objective of taking steps to preserve the integrity of the visa issuance process while preserving the current additional avenue for review of discretionary denials of adjustment applications filed by aliens present without inspection and admission. The Department continues to believe this position is

consistent with the intent of Congress when it passed IIRIRA.

In response to the commenters who suggested this policy exceeded the Attorney General's statutory authority, it is noted that section 245 of the Act clearly and unambiguously states that adjustment of status is a discretionary decision, subject to such regulatory limitations as the Attorney General may prescribe. The same commenters stated that aliens who depart using an advance parole authorization and whose applications are subsequently denied would no longer be able to renew their adjustment application before an immigration judge. However, the revisions to § 245.2(a)(5)(ii) contained in the proposed rule preserved this procedure.

Rescission of Adjustment of Status

The interim rule includes several changes to 8 CFR part 246 that update obsolete references and bring the regulation into agreement with the statute. References to special inquiry officer were updated to refer to immigration judges. References to status of permanent residence acquired through outdated sections of law, and any related procedures for special report to Congress, were eliminated. In § 246.2, the provision that limited the rescission authority of the district director to cases that had been adjusted under section 245 of 249 or the Act was expanded to include all types of adjustment, thereby bringing the regulation into accord with the statute. In § 246.6, the requirements for immigration judges' decisions were changed to comport with the requirements of immigration judges' decisions found in § 240.12. The reference to Form I–151 in § 246.9 was removed because Form I–151 is no longer a valid document.

Elimination of Mexican Border Visitor's Permit

The proposed rule eliminated the Form I–444, Mexican Border Visitor's Permit, which is issued at land border ports-of-entry along the United States/ Mexico border to Mexican nationals traveling for more than 72 hours but less than 30 days in duration or for more than 25 miles from the United States/ Mexico border but within the five states of Arizona, California, Nevada, New Mexico, or Texas. The elimination was proposed because the Form I–444 does not have adequate security features to deter counterfeiting, and provides no tracking or enforcement benefits.

One commenter suggested that since the elimination of the Form I–444 was not mandated by IIRIRA and represented a significant departure from

past procedure, it should be removed from this rule and proposed in a separate rulemaking. The commenter specifically objected to the elimination of the time and distance controls imposed on Mexican nationals inherent in the issuance of the Form I–444. As stated in the proposed rule, the Service has been unable to demonstrate that there is any connection between the limits on travel by persons issued Forms I–444 and immigration violations. Mexican nationals must undergo the same interview process to obtain a Border Crossing Card (BCC) or nonimmigrant visa as any other applicant from any other country. New validity periods have been imposed in recent years on the BCC, requiring periodic renewal. A Mexican national entering with a BCC undergoes the same inspection process as any other applicant for admission and must establish eligibility as a visitor for business or pleasure upon each entry to the United States. Presently, Mexican nationals who request entry at a Mexican land border port-of-entry to travel more than 30 days or beyond the five-state area, and who establish admissibility as a visitor, are issued Form I–94, Arrival/Departure Record, and allowed to proceed anywhere in the United States with no additional restrictions. Mexican BCC holders entering the United States by air or via the Canadian land border are also admitted with no restrictions. The elimination of the Form I–444 does not expand the possible use of the BCC in any way; it merely standardizes the entry documentation issued. The Department can see no reason to continue to impose specific controls on Mexican nationals seeking admission only at Mexican border ports-of-entry, and so accordingly will retain in the interim rule the elimination of Form I–444 in favor of more thoroughly documenting entry with Form I–94.

Visa Waiver Pilot Program (VWPP)

The provisions relating to the VWPP in 8 CFR part 217 were included in the proposed rule primarily as part of the review intended to streamline and eliminate duplication in Department regulations. In addition, several changes were made to conform to new statutory terminology and to include certain new procedures created as a result of IIRIRA. One commenter expressed concern that there could be confusion in § 217.4 as to what constitutes fraudulent or counterfeit documents and that aliens could be removed without the opportunity for review by an immigration judge. The language in this section was not changed from what has

existed in the regulations for years. Moreover, aliens applying under the VWPP are, by statute, not entitled to a hearing before an immigration judge, except on the basis of an asylum claim. The only change that the proposed rule made to this provision was that the hearing provided for VWPP asylum claimants is now more clearly limited to asylum issues only. In addition, inadmissible VWPP applicants may be temporarily refused permission to enter the United States, but are not subject to the formal expedited removal provisions of section 235(b)(1) of the Act.

One commenter objected to several aspects of the amended language in § 217.6 relating to carrier agreements. Since most of the language in this section is already contained on the Form I–775, Visa Waiver Pilot Program Agreement, which is signed by all carriers participating in the VWPP, much of this section has been removed from the interim rule. The commenter objected to the elimination of due process safeguards in allowing termination of agreements by the Commissioner, with 5 days notice to the carrier, for failure to meet the terms of the agreement. This is not a new provision. The exact language has existed in the regulations since at least 1991 and has also been part of the existing Form I–775 for years, and will be retained. The definition of round (return) trip ticket has been revised to conform with terminology used elsewhere in the regulation and carrier agreement, and to provide for electronic ticketing technology.

Miscellaneous Changes

The proposed rule contemplated removing 8 CFR part 215, Controls of Aliens Departing from the United States, because it was also contained in the Department of State regulations. The Department has decided to retain 8 CFR part 215.

The proposed rule contained § 240.39, which retained material previously found in § 242.22, and § 240.54, which preserved the former § 242.23. These sections have been removed from the interim rule since the subjects are encompassed by §§ 3.23 and 241.8, respectively.

One commenter correctly noted that § 216.5(e)(3)(ii) had been amended to allow an alien in exclusion, deportation, or removal proceedings to file a petition for waiver only until such time as there is a final order of deportation or removal. In § 216.5(e)(3), adjudication of a waiver is based upon the alien's claim of having been battered or subjected to extreme mental cruelty. The commenter stated that there is no reason to shorten

the period allotted for a battered woman and child to file a battered spouse waiver. The proposed rule change was meant to apply generally to all aliens filing a petition for a waiver, and was intended to add a point of finality to the time when the petition could be filed. Therefore, the interim rule has been amended to clarify the general applicability to all petitions for waiver. The regulation will permit filing of a petition for waiver at any time prior to the second anniversary of obtaining permanent resident status and up to the point of receiving a final order in exclusion, deportation, or removal proceedings, which includes any possible Federal court review.

Several commenters were concerned about removing language at § 204.2(a)(1)(iii)(A) through (C), which dealt with commencement and termination of proceedings, and exemptions from the general prohibition against approval of visa petitions filed on the basis of marriages during proceedings. The language was removed as part of the Service's streamlining initiative because it was duplicative of language in § 245.1(c)(8). The interim rule does clarify that in visa petition proceedings the burden of proof remains on the petitioner to establish eligibility for the exemption found at section 204(g) of the Act. In addition, § 204.2(a)(1)(iii) introductory text has been amended reflecting that § 245.1(c)(8) has been renumbered as § 245.1(c)(9).

Streamlining, Updating, and Reorganization

Several commenters expressed concern about sections of the regulation that were identified in the Supplementary Information of the proposed regulation as being revised solely for the purpose of streamlining: elimination of unnecessary recitation of statutory provisions; discussion of procedural matters; elimination of duplication; or general updating. It is emphasized that these streamlining changes neither created new requirements nor abolished any existing ones. Similarly, several comments concerned regulatory provisions that were simply carried over from the existing regulation, but relocated to new sections in order to conform with the general regulatory outline for the affected sections. Although the Department reviewed these comments, none resulted in further amendments to the streamlined or reorganized paragraphs. Other commenters proposed changes to current regulations that are beyond the scope of this rulemaking. These suggestions will be considered for

inclusion in separate regulations after implementation of IIRIRA.

The Department solicited comments on the general organization and restructuring contained in the proposed regulation. No comments were received on this topic. Accordingly, the organizational structure has not been revised in the interim rule.

Regulatory Flexibility Act

The Attorney General, in accordance with the Regulatory Flexibility Act (5 U.S.C. 605(b)), has reviewed this regulation and, by approving it, certifies that the rule will not have a significant adverse economic impact on a substantial number of small entities because of the following factors. This rule affects only federal government operations by codifying statutory amendments to the Immigration and Nationality Act primarily regarding the examination, detention, and removal of aliens from the United States. It affects only individuals and does not impose any reporting or compliance requirements on small entities.

Unfunded Mandates Reform Act of 1995

This rule will not result in the expenditure by State, local and tribal governments, in the aggregate, or by the private sector, of $100 million or more in any one year, and it will not significantly or uniquely affect small governments. Therefore, no actions are deemed necessary under the provisions of the Unfunded Mandates Reform Act of 1995.

Executive Order 12866

This rule is considered by the Department of Justice to be a "significant regulatory action" under Executive Order 12866, section 3(f), because it will have a significant economic impact on the federal government in excess of $100 million. No economic impact is anticipated for state and local governments. The Service projects significant increases in detention-related costs due to the provisions of IIRIRA that mandate the custody of criminal aliens who have committed two or more crimes involving moral turpitude, aliens convicted of firearms offenses, and aliens who have been convicted of an aggravated felony. The type of crime that will qualify as an "aggravated felony" has been greatly expanded under IIRIRA. In addition, all aliens, even non-criminal aliens, who are subject to a final administrative order of removal must be held in custody until the alien can be removed from the United States. If the person is not

removed within 90 days he or she may be released from custody.

The Commissioner has notified Congress pursuant to section 303(b) of IIRIRA that the Service lacks sufficient space to immediately implement the mandatory custody provisions. This notification will delay for 1-year full implementation of the new mandatory custody provisions. Section 303(b) also provides for an additional 1-year delay in implementation of the mandatory custody provisions upon a second certification that space and personnel are inadequate to comply with the requirement. The Service estimates that the cost to enforce the requirement to detain all criminal aliens will be at least $205,000,000. Of that total, personnel costs account for $65,284,000 and include detention and deportation officers ($32,873,000), investigators ($25,501,000), legal proceedings personnel ($4,968,000), and administrative support ($1,942,000). Non-personnel requirements are projected to be at least $139,732,000 and includes increases in bed space and related alien custody requirements ($82,782,000—funds 3,600 beds @ $63.00 per day), increases in alien travel expenses ($36,000,000—3,600 removals @ $1,000 each), and detention vehicle expenses ($20,950,000). The Service is currently in the process of projecting the costs of the IIRIRA requirement that we detain all aliens with administratively final orders of deportation pending their removal.

In addition to these detention related costs, the Service estimates that the expenses for training employees on the provisions of the new law and the regulations will be $2,977,500. The cost to the Service related to additional forms or changes needed to current forms is estimated to be $2,000,000 (until the final list of form requirements is completed it is not possible to more accurately assess this cost). Finally, the Department believes there may be some increases needed for immigration judges to review credible fear determinations made under section 235(b) of the Act.

The EOIR estimates increases in its costs related to IIRIRA-mandated immigration judge review of credible fear determinations (which must be made under stringent time frames) and the prompt immigration judge review that IIRIRA requires of certain expedited removal orders entered against aliens claiming to be, lawful permanent residents, asylees, or refugees. Further, EOIR projects costs associated with the possible need for an Immigration Court presence at certain ports-of-entry and additional detention centers, which will result from the above-mentioned

credible fear review and expedited removal review process. Also, there will be costs related to the overall need for an increased Immigration Court presence at existing Service detention centers to support the processing of the additional detainees that will result from the implementation of this rule. Similarly, EOIR anticipates a need for construction of new Immigration Courts at new detention facilities the Service may open as a result of this rule's implementation.

Although there are still a number of unknown variables which could effect the total costs to EOIR to implement its part of the new expedited removal process and to respond to the increased number of detained individuals in proceedings under this rule, EOIR estimates that the total annual cost for EOIR could be as high as $25,000,000. Of that total, the cost for hiring new immigration judges and legal support staff is projected to be $21,300,000. The cost for new video and audio teleconferencing equipment is estimated at $3,000,000. Training costs are expected to be approximately $400,000. Finally, forms and other support requirements are estimated to cost $300,000.

Small Business Regulatory Enforcement Fairness Act of 1996

The Department of Justice considers this rule to be a ''major'' rule under the Small Business Regulatory Enforcement Fairness Act of 1996 in view of the projected expenditures for the federal government as discussed in the preceding section. The Department finds good cause to make this rule effective on April 1, 1997, in order to meet the statutory deadline. These rules are essential for the implementation of the provisions of Title III-A of IIRIRA, which become effective on that date pursuant to Section 309(a) of IIRIRA.

Executive Order 12612

The regulation adopted herein will not have substantial direct effects on the States, on the relationship between the National Government and the States, or on the distribution of power and responsibilities among the various levels of government. Therefore, in accordance with Executive Order 12612, it is determined that this rule does not have sufficient Federalism implications to warrant the preparation of a Federalism Assessment.

Executive Order 12988

This interim rule meets the applicable standards set forth in section 3(a) and 3(b)(2) of Executive Order 12988.

Paperwork Reduction Act

The information collection requirements contained in this rule have been approved by the Office of Management and Budget under the provisions of the Paperwork Reduction Act. The OMB control numbers for these collections are contained in 8 CFR 299.5, Display of control numbers.

List of Subjects

*8 CFR Part 1*

Administrative practice and procedure, Immigration.

*8 CFR Part 3*

Administrative practice and procedure, Immigration, Organization and functions (Government agencies).

*8 CFR Part 103*

Administrative practice and procedure, Authority delegations (Government agencies), Reporting and recordkeeping requirements.

*8 CFR Part 204*

Administrative practice and procedure, Immigration, Reporting and recordkeeping requirements.

*8 CFR Part 207*

Administrative practice and procedure, Refugees, Reporting and recordkeeping requirements.

*8 CFR Part 208*

Administrative practice and procedure, Aliens, Immigration, Reporting and recordkeeping requirements.

*8 CFR Part 209*

Aliens, Immigration, Refugees.

*8 CFR Part 211*

Immigration, Passports and visas, Reporting and recordkeeping requirements.

*8 CFR Part 212*

Administrative practice and procedure, Aliens, Immigration, Passports and visas, Reporting and recordkeeping requirements.

*8 CFR Part 213*

Immigration, Surety bonds.

*8 CFR Part 214*

Administrative practice and procedure, Aliens.

*8 CFR Part 216*

Administrative practice and procedure, Aliens.

*8 CFR Part 217*

Air carriers, Aliens, Maritime carriers, Passports and visas.

*8 CFR Part 221*

Aliens, Surety bonds.

*8 CFR Part 223*

Aliens, Reporting and recordkeeping requirements.

*8 CFR Part 232*

Aliens, Public health.

*8 CFR Part 233*

Administrative practice and procedure, Air carriers, Government contracts, Travel.

*8 CFR Part 234*

Air carriers, Aircraft, Airports, Aliens.

*8 CFR Part 235*

Administrative practice and procedure, Aliens, Immigration, Reporting and recordkeeping requirements.

*8 CFR Part 236*

Administrative practice and procedure, Aliens, Immigration.

*8 CFR Part 237*

Aliens.

*8 CFR Part 238*

Administrative practice and procedure, Aliens.

*8 CFR Part 239*

Administrative practice and procedure, Aliens, Immigration, Reporting and recordkeeping requirements.

*8 CFR Part 240*

Administrative practice and procedure, Aliens, Immigration.

*8 CFR Part 241*

Administrative practice and procedure, Aliens, Immigration.

*8 CFR Part 242*

Administrative practice and procedure, Aliens, Immigration.

*8 CFR Part 243*

Administrative practice and procedure, Aliens.

*8 CFR Part 244*

Administrative practice and procedure, Aliens.

*8 CFR Part 245*

Aliens, Immigration, Reporting and recordkeeping requirements.

*8 CFR Part 246*

Administrative practice and procedure, Aliens, Immigration.

*8 CFR Part 248*

Aliens, Immigration, Reporting and recordkeeping requirements.

*8 CFR Part 249*

Aliens, Immigration, Reporting and recordkeeping requirements.

*8 CFR Part 251*

Air carriers, Aliens, Crewmen, Maritime carriers, Reporting and recordkeeping requirements.

*8 CFR Part 252*

Air carriers, Airmen, Aliens, Crewmen, Maritime carriers, Reporting and recordkeeping requirements.

*8 CFR Part 253*

Air carriers, Airmen, Aliens, Maritime carriers, Reporting and recordkeeping requirements, Seamen.

*8 CFR Part 274a*

Administrative practice and procedure, Aliens, Employment, Penalties, Reporting and recordkeeping requirements.

*8 CFR Part 286*

Air carriers, Immigration, Reporting and recordkeeping requirements.

*8 CFR Part 287*

Immigration, Law enforcement officers.

*8 CFR Part 299*

Immigration, Reporting and recordkeeping requirements.

*8 CFR Part 316*

Citizenship and naturalization, Reporting and recordkeeping requirements.

*8 CFR Part 318*

Citizenship and naturalization.

*8 CFR Part 329*

Citizenship and naturalization, Military Personnel, Veterans.

Accordingly, chapter I of title 8 of the Code of Federal Regulations is amended as follows:

## PART 1—DEFINITIONS

1. The authority citation for part 1 is revised to read as follows:

Authority: 8 U.S.C. 1101; 8 CFR part 2.

2. Section 1.1 is amended by revising paragraph (l), and by adding new paragraphs (q) through (t) to read as follows:

### §1.1  Definitions.

\*    \*    \*    \*    \*

(l) The term *immigration judge* means an attorney whom the Attorney General

appoints as an administrative judge within the Executive Office for Immigration Review, qualified to conduct specified classes of proceedings, including a hearing under section 240 of the Act. An immigration judge shall be subject to such supervision and shall perform such duties as the Attorney General shall prescribe, but shall not be employed by the Immigration and Naturalization Service.

\*    \*    \*    \*    \*

(q) The term *arriving alien* means an alien who seeks admission to or transit through the United States, as provided in 8 CFR part 235, at a port-of-entry, or an alien who is interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act.

(r) The term *respondent* means a person named in a Notice to Appear issued in accordance with section 239(a) of the Act, or in an Order to Show Cause issued in accordance with § 242.1 of this chapter as it existed prior to April 1, 1997.

(s) The term *Service counsel* means any immigration officer assigned to represent the Service in any proceeding before an immigration judge or the Board of Immigration Appeals.

(t) The term *aggravated felony* means a crime (or a conspiracy or attempt to commit a crime) described in section 101(a)(43) of the Act. This definition is applicable to any proceeding, application, custody determination, or adjudication pending on or after September 30, 1996, but shall apply under section 276(b) of the Act only to violations of section 276(a) of the Act occurring on or after that date.

## PART 3—EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

3. The authority citation for part 3 continues to read as follows:

Authority: 5 U.S.C. 301; 8 U.S.C. 1103, 1252 note, 1252b, 1324b, 1362; 28 U.S.C. 509, 510, 1746; sec. 2, Reorg. Plan No. 2 of 1950; 3 CFR, 1949–1953 Comp., p. 1002.

4. Section 3.1 is amended by revising paragraphs (b)(1), (b)(2), (b)(3), (b)(7), (b)(9), and (b)(10) to read as follows:

### §3.1  General authorities.

\*    \*    \*    \*    \*

(b) \*  \*  \*

(1) Decisions of Immigration Judges in exclusion cases, as provided in 8 CFR part 240, Subpart D.

(2) Decisions of Immigration Judges in deportation cases, as provided in 8 CFR part 240, Subpart E, except that no appeal shall lie seeking review of a length of a period of voluntary departure granted by an Immigration Judge under section 244E of the Act as it existed prior to April 1, 1997.

(3) Decisions of Immigration Judges in removal proceedings, as provided in 8 CFR part 240, except that no appeal shall lie seeking review of the length of a period of voluntary departure granted by an immigration judge under section 240B of the Act or part 240 of this chapter.

\*    \*    \*    \*    \*

(7) Determinations relating to bond, parole, or detention of an alien as provided in 8 CFR part 236, Subpart A and 8 CFR part 240, Subpart E.

\*    \*    \*    \*    \*

(9) Decisions of Immigration Judges in asylum proceedings pursuant to §208.2(b) of this chapter.

(10) Decisions of Immigration Judges relating to Temporary Protected Status as provided in 8 CFR part 244.

\*    \*    \*    \*    \*

5. Section 3.2 is amended by:
a. Revising the section heading;
b. Revising paragraph (b)(2);
c. Revising paragraph (c)(2) and (c)(3), and by
d. Revising paragraphs (d) through (g)(1), to read as follows:

### §3.2  Reopening or reconsideration before the Board of Immigration Appeals.

\*    \*    \*    \*    \*

(b) \*  \*  \*

(2) A motion to reconsider a decision must be filed with the Board within 30 days after the mailing of the Board decision or on or before July 31, 1996, whichever is later. A party may file only one motion to reconsider any given decision and may not seek reconsideration of a decision denying a previous motion to reconsider. In removal proceedings pursuant to section 240 of the Act, an alien may file only one motion to reconsider a decision that the alien is removable from the United States.

(c) \*  \*  \*

(2) Except as provided in paragraph (c)(3) of this section, a party may file only one motion to reopen deportation or exclusion proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened, or on or before September 30, 1996, whichever is later. Except as provided in paragraph (c)(3)

of this section, an alien may file only one motion to reopen removal proceedings (whether before the Board or the Immigration Judge) and that motion must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened.

(3) In removal proceedings pursuant to section 240 of the Act, the time limitation set forth in paragraph (c)(2) of this section shall not apply to a motion to reopen filed pursuant to the provisions of § 3.23(b)(4)(ii). The time and numerical limitations set forth in paragraph (c)(2) of this section shall not apply to a motion to reopen proceedings:

(i) Filed pursuant to the provisions of § 3.23(b)(4)(iii)(A)(*1*) or § 3.23(b)(4)(iii)(A)(*2*);

(ii) To apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing;

(iii) Agreed upon by all parties and jointly filed. Notwithstanding such agreement, the parties may contest the issues in a reopened proceeding; or

(iv) Filed by the Service in exclusion or deportation proceedings when the basis of the motion is fraud in the original proceeding or a crime that would support termination of asylum in accordance with § 208.22(f) of this chapter.

\*    \*    \*    \*    \*

(d) *Departure, deportation, or removal.* A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider, shall constitute a withdrawal of such motion.

(e) *Judicial proceedings.* Motions to reopen or reconsider shall state whether the validity of the exclusion, deportation, or removal order has been or is the subject of any judicial proceeding and, if so, the nature and date thereof, the court in which such proceeding took place or is pending, and its result or status. In any case in which an exclusion, deportation, or removal order is in effect, any motion to reopen or reconsider such order shall

include a statement by or on behalf of the moving party declaring whether the subject of the order is also the subject of any pending criminal proceeding under the Act, and, if so, the current status of that proceeding. If a motion to reopen or reconsider seeks discretionary relief, the motion shall include a statement by or on behalf of the moving party declaring whether the alien for whose relief the motion is being filed is subject to any pending criminal prosecution and, if so, the nature and current status of that prosecution.

(f) *Stay of deportation.* Except where a motion is filed pursuant to the provisions of §§ 3.23(b)(4)(ii) and 3.23(b)(4)(iii)(A), the filing of a motion to reopen or a motion to reconsider shall not stay the execution of any decision made in the case. Execution of such decision shall proceed unless a stay of execution is specifically granted by the Board, the Immigration Judge, or an authorized officer of the Service.

(g) *Filing procedures.* (1) English language, entry of appearance, and proof of service requirements. A motion and any submission made in conjunction with a motion must be in English or accompanied by a certified English translation. If the moving party, other than the Service, is represented, Form EOIR–27, Notice of Entry of Appearance as Attorney or Representative Before the Board, must be filed with the motion. In all cases, the motion shall include proof of service on the opposing party of the motion and all attachments. If the moving party is not the Service, service of the motion shall be made upon the Office of the District Counsel for the district in which the case was completed before the Immigration Judge.

\*    \*    \*    \*    \*

6. The following sentence is added to the end of § 3.4:

### § 3.4  Withdrawal of appeal.

\* \* \* Departure from the United States of a person who is the subject of deportation or removal proceedings, except for arriving aliens as defined in § 1.1(q) of this chapter, subsequent to the taking of an appeal, but prior to a decision thereon, shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken.

## Subpart B—Immigration Court

7. In Part 3, the heading of Subpart B is revised as set forth above.
8. Section 3.9 is revised to read as follows:

### § 3.9  Chief Immigration Judge.

The Chief Immigration Judge shall be responsible for the general supervision, direction, and scheduling of the Immigration Judges in the conduct of the various programs assigned to them. The Chief Immigration Judge shall be assisted by Deputy Chief Immigration Judges and Assistant Chief Immigration Judges in the performance of his or her duties. These shall include, but are not limited to:

(a) Establishment of operational policies; and

(b) Evaluation of the performance of Immigration Courts, making appropriate reports and inspections, and taking corrective action where indicated.

9. Section 3.10 is revised to read as follows:

### § 3.10  Immigration Judges.

Immigration Judges, as defined in 8 CFR part 1, shall exercise the powers and duties in this chapter regarding the conduct of exclusion, deportation, removal, and asylum proceedings and such other proceedings which the Attorney General may assign them to conduct.

10. Section 3.11 is revised to read as follows:

### § 3.11  Administrative control Immigration Courts.

An administrative control Immigration Court is one that creates and maintains Records of Proceedings for Immigration Courts within an assigned geographical area. All documents and correspondence pertaining to a Record of Proceeding shall be filed with the Immigration Court having administrative control over that Record of Proceeding and shall not be filed with any other Immigration Court. A list of the administrative control Immigration Courts with their assigned geographical areas will be made available to the public at any Immigration Court.

## Subpart C—Immigration Court—Rules of Procedure

11. In part 3, the heading of Subpart C is revised as set forth above.
12. Section 3.12 is amended by revising the last sentence, and adding a new sentence at the end of the section, to read as follows:

### § 3.12  Scope of rules.

\* \* \* Except where specifically stated, the rules in this subpart apply to matters before Immigration Judges, including, but not limited to, deportation, exclusion, removal, bond, rescission, departure control, asylum proceedings, and disciplinary

proceedings under § 292.3 of this chapter. The sole procedures for review of credible fear determinations by Immigration Judges are provided for in § 3.42.

13. Section 3.13 is revised to read as follows:

### § 3.13   Definitions.

As used in this subpart:

*Administrative control* means custodial responsibility for the Record of Proceeding as specified in § 3.11.

*Charging document* means the written instrument which initiates a proceeding before an Immigration Judge. For proceedings initiated prior to April 1, 1997, these documents include an Order to Show Cause, a Notice to Applicant for Admission Detained for Hearing before Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien. For proceedings initiated after April 1, 1997, these documents include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien.

*Filing* means the actual receipt of a document by the appropriate Immigration Court.

*Service* means physically presenting or mailing a document to the appropriate party or parties; except that an Order to Show Cause or Notice of Deportation Hearing shall be served in person to the alien, or by certified mail to the alien or the alien's attorney and a Notice to Appear or Notice of Removal Hearing shall be served to the alien in person, or if personal service is not practicable, shall be served by regular mail to the alien or the alien's attorney of record.

14. Section 3.14 is amended by:
a. Revising paragraph (a), and by
b. Adding a new paragraph (c) to read as follows:

### § 3.14   Jurisdiction and commencement of proceedings.

(a) Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service. The charging document must include a certificate showing service on the opposing party pursuant to § 3.32 which indicates the Immigration Court in which the charging document is filed. However, no charging document is required to be filed with the Immigration Court to commence bond proceedings pursuant to §§ 3.19, 236.1(d) and 240.2(b) of this chapter.

*    *    *    *    *

(c) Immigration Judges have jurisdiction to administer the oath of

allegiance in administrative naturalization ceremonies conducted by the Service in accordance with § 337.2(b) of this chapter.

15. Section 3.15 is amended by:
a. Revising the section heading;
b. Amending paragraph (b) introductory text and paragraph (b)(6), by adding the phrase ''and Notice to Appear'' immediately after the phrase ''Order to Show Cause'';
c. Redesignating paragraph (c) as (d);
d. Adding a new paragraph (c); and by
e. Revising newly redesignated paragraph (d), to read as follows:

### § 3.15   Contents of the order to show cause and notice to appear and notification of change of address.

*    *    *    *    *

(c) *Contents of the Notice to Appear for Removal Proceedings.* In the Notice to Appear for removal proceedings, the Service shall provide the following administrative information to the Immigration Court. Failure to provide any of these items shall not be construed as affording the alien any substantive or procedural rights.

(1) The alien's names and any known aliases;

(2) The alien's address;

(3) The alien's registration number, with any lead alien registration number with which the alien is associated;

(4) The alien's alleged nationality and citizenship; and

(5) The language that the alien understands.

(d) *Address and telephone number.* (1) If the alien's address is not provided on the Order to Show Cause or Notice to Appear, or if the address on the Order to Show Cause or Notice to Appear is incorrect, the alien must provide to the Immigration Court where the charging document has been filed, within five days of service of that document, a written notice of an address and telephone number at which the alien can be contacted. The alien may satisfy this requirement by completing and filing Form EOIR–33.

(2) Within five days of any change of address, the alien must provide written notice of the change of address on Form EOIR–33 to the Immigration Court where the charging document has been filed, or if venue has been changed, to the Immigration Court to which venue has been changed.

### § 3.16   [Amended]

16. Section 3.16(b) is amended by revising the term ''respondent/applicant'' to read ''alien''.

### § 3.17   [Amended]

17. Section 3.17(a) is amended in the first sentence by revising the term

''respondent/applicant'' to read ''alien'', and by revising the phrase ''the appropriate EOIR form'' to read ''Form EOIR–28''.

18. Section 3.18 is revised to read as follows:

### § 3.18   Scheduling of cases.

(a) The Immigration Court shall be responsible for scheduling cases and providing notice to the government and the alien of the time, place, and date of hearings.

(b) In removal proceedings pursuant to section 240 of the Act, the Service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable. If that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing. In the case of any change or postponement in the time and place of such proceeding, the Immigration Court shall provide written notice to the alien specifying the new time and place of the proceeding and the consequences under section 240(b)(5) of the Act of failing, except under exceptional circumstances as defined in section 240(e)(1) of the Act, to attend such proceeding. No such notice shall be required for an alien not in detention if the alien has failed to provide the address required in section 239(a)(1)(F) of the Act.

### § 3.19   [Amended]

19. Section 3.19(a) is amended by revising the reference to ''part 242 of this chapter'' to read ''8 CFR part 236'' wherever it appears in the paragraph.

20. Section 3.19(d) is amended in the first sentence by adding the term ''or removal'' immediately after the word ''deportation''.

21. Section 3.19 is amended by removing paragraph (h).

22. In § 3.20, paragraph (a) is revised to read as follows:

### § 3.20   Change of venue.

(a) Venue shall lie at the Immigration Court where jurisdiction vests pursuant to § 3.14.

*    *    *    *    *

23. Section 3.23 is amended by revising the section heading and paragraph (b) to read as follows:

### § 3.23   Reopening or Reconsideration before the Immigration Court.

(a) *    *    *

(b) *Before the Immigration Court.* (1) *In general.* An Immigration Judge may upon his or her own motion at any time, or upon motion of the Service or the

alien, reopen or reconsider any case in which he or she has made a decision, unless jurisdiction is vested with the Board of Immigration Appeals. Subject to the exceptions in this paragraph and paragraph (b)(4), a party may file only one motion to reconsider and one motion to reopen proceedings. A motion to reconsider must be filed within 30 days of the date of entry of a final administrative order of removal, deportation, or exclusion, or on or before July 31, 1996, whichever is later. A motion to reopen must be filed within 90 days of the date of entry of a final administrative order of removal, deportation, or exclusion, or on or before September 30, 1996, whichever is later. A motion to reopen or to reconsider shall not be made by or on behalf of a person who is the subject of removal, deportation, or exclusion proceedings subsequent to his or her departure from the United States. Any departure from the United States, including the deportation or removal of a person who is the subject of exclusion, deportation, or removal proceedings, occurring after the filing of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion. The time and numerical limitations set forth in this paragraph do not apply to motions by the Service in removal proceedings pursuant to section 240 of the Act. Nor shall such limitations apply to motions by the Service in exclusion or deportation proceedings, when the basis of the motion is fraud in the original proceeding or a crime that would support termination of asylum in accordance with § 208.22(f) of this chapter.

(i) *Form and contents of the motion.* The motion shall be in writing and signed by the affected party or the attorney or representative of record, if any. The motion and any submission made in conjunction with it must be in English or accompanied by a certified English translation. Motions to reopen or reconsider shall state whether the validity of the exclusion, deportation, or removal order has been or is the subject of any judicial proceeding and, if so, the nature and date thereof, the court in which such proceeding took place or is pending, and its result or status. In any case in which an exclusion, deportation, or removal order is in effect, any motion to reopen or reconsider such order shall include a statement by or on behalf of the moving party declaring whether the subject of the order is also the subject of any pending criminal proceeding under the Act, and, if so, the current status of that proceeding.

(ii) *Filing.* Motions to reopen or reconsider a decision of an Immigration Judge must be filed with the Immigration Court having administrative control over the Record of Proceeding. A motion to reopen or a motion to reconsider shall include a certificate showing service on the opposing party of the motion and all attachments. If the moving party is not the Service, service of the motion shall be made upon the Office of the District Counsel for the district in which the case was completed. If the moving party, other than the Service, is represented, a Form EOIR–28, Notice of Appearance as Attorney or Representative Before an Immigration Judge must be filed with the motion. The motion must be filed in duplicate with the Immigration Court, accompanied by a fee receipt.

(iii) *Assignment to an Immigration Judge.* If the Immigration Judge is unavailable or unable to adjudicate the motion to reopen or reconsider, the Chief Immigration Judge or his or her delegate shall reassign such motion to another Immigration Judge.

(iv) *Replies to motions; decision.* The Immigration Judge may set and extend time limits for replies to motions to reopen or reconsider. A motion shall be deemed unopposed unless timely response is made. The decision to grant or deny a motion to reopen or a motion to reconsider is within the discretion of the Immigration Judge.

(v) *Stays.* Except in cases involving in absentia orders, the filing of a motion to reopen or a motion to reconsider shall not stay the execution of any decision made in the case. Execution of such decision shall proceed unless a stay of execution is specifically granted by the Immigration Judge, the Board, or an authorized officer of the Service.

(2) *Motion to reconsider.* A motion to reconsider shall state the reasons for the motion by specifying the errors of fact or law in the Immigration Judge's prior decision and shall be supported by pertinent authority. Such motion may not seek reconsideration of a decision denying previous motion to reconsider.

(3) *Motion to reopen.* A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits and other evidentiary material. Any motion to reopen for the purpose of acting on an application for relief must be accompanied by the appropriate application for relief and all supporting documents. A motion to reopen will not be granted unless the Immigration Judge is satisfied that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing. A motion to reopen for the purpose of providing the alien an opportunity to apply for any form of discretionary relief will not be granted if it appears that the alien's right to apply for such relief was fully explained to him or her by the Immigration Judge and an opportunity to apply therefore was afforded at the hearing, unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing. Pursuant to section 240A(d)(1) of the Act, a motion to reopen proceedings for consideration or further consideration of an application for relief under section 240A(a) (cancellation of removal for certain permanent residents) or 240A(b) (cancellation of removal and adjustment of status for certain nonpermanent residents) may be granted only if the alien demonstrates that he or she was statutorily eligible for such relief prior to the service of a notice to appear, or prior to the commission of an offense referred to in section 212(a)(2) of the Act that renders the alien inadmissible or removable under sections 237(a)(2) of the Act or (a)(4), whichever is earliest. The Immigration Judge has discretion to deny a motion to reopen even if the moving party has established a prima facie case for relief.

(4) *Exceptions to filing deadlines.*—(i) *Asylum.* The time and numerical limitations set forth in paragraph (b)(1) of this section shall not apply if the basis of the motion is to apply for relief under section 208 or 241(b)(3) of the Act and is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous proceeding. The filing of a motion to reopen under this section shall not automatically stay the removal of the alien. However, the alien may request a stay and, if granted by the Immigration Judge, the alien shall not be removed pending disposition of the motion by the Immigration Judge. If the original asylum application was denied based upon a finding that it was frivolous, then the alien is ineligible to file either a motion to reopen or reconsider, or for a stay of removal.

(ii) *Order entered in absentia in asylum proceedings or removal proceedings.* An order of removal entered in absentia in asylum proceedings pursuant to § 208.2(b) of this chapter or in removal proceedings pursuant to section 240(b)(5) of the Act may be rescinded only upon a motion to reopen filed within 180 days after the date of the order of removal, if the alien

demonstrates that the failure to appear was because of exceptional circumstances as defined in section 240(e)(1) of the Act. An order entered in absentia pursuant to § 208.2(b) of this chapter or pursuant to section 240(b)(5) may be rescinded upon a motion to reopen filed at any time if the alien demonstrates that he or she did not receive notice in accordance with sections 239(a)(1) or (2) of the Act, or the alien demonstrates that he or she was in Federal or state custody and the failure to appear was through no fault of the alien. However, in accordance with section 240(b)(5)(B) of the Act, no written notice of a change in time or place of proceeding shall be required if the alien has failed to provide the address required under section 239(a)(1)(F) of the Act. The filing of a motion under this paragraph shall stay the removal of the alien pending disposition of the motion by the Immigration Judge. An alien may file only one motion pursuant to this paragraph.

(iii) *Order entered in absentia in deportation or exclusion proceedings.* (A) An order entered in absentia in deportation proceedings may be rescinded only upon a motion to reopen filed:

(*1*) Within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances beyond the control of the alien (e.g., serious illness of the alien or serious illness or death of an immediate relative of the alien, but not including less compelling circumstances); or

(*2*) At any time if the alien demonstrates that he or she did not receive notice or if the alien demonstrates that he or she was in federal or state custody and the failure to appear was through no fault of the alien.

(B) A motion to reopen exclusion hearings on the basis that the Immigration Judge improperly entered an order of exclusion in absentia must be supported by evidence that the alien had reasonable cause for his failure to appear.

(C) The filing of a motion to reopen under paragraph (b)(4)(iii)(A) of this section shall stay the deportation of the alien pending decision on the motion and the adjudication of any properly filed administrative appeal.

(D) The time and numerical limitations set forth in paragraph (b)(1) of this section shall not apply to a motion to reopen filed pursuant to the provisions of paragraph (b)(4)(iii)(A) of this section.

(iv) *Jointly filed motions.* The time and numerical limitations set forth in paragraph (b)(1) of this section shall not apply to a motion to reopen agreed upon by all parties and jointly filed.

24. Section 3.25 is revised to read as follows:

### § 3.25  Form of the proceeding.

(a) *Waiver of presence of the parties.* The Immigration Judge may, for good cause, and consistent with section 240(b) of the Act, waive the presence of the alien at a hearing when the alien is represented or when the alien is a minor child at least one of whose parents or whose legal guardian is present. When it is impracticable by reason of an alien's mental incompetency for the alien to be present, the presence of the alien may be waived provided that the alien is represented at the hearing by an attorney or legal representative, a near relative, legal guardian, or friend.

(b) *Stipulated request for order; waiver of hearing.* An Immigration Judge may enter an order of deportation, exclusion or removal stipulated to by the alien (or the alien's representative) and the Service. The Immigration Judge may enter such an order without a hearing and in the absence of the parties based on a review of the charging document, the written stipulation, and supporting documents, if any. If the alien is unrepresented, the Immigration Judge must determine that the alien's waiver is voluntary, knowing, and intelligent. The stipulated request and required waivers shall be signed on behalf of the government and by the alien and his or her attorney or representative, if any. The attorney or representative shall file a Notice of Appearance in accordance with § 3.16(b). A stipulated order shall constitute a conclusive determination of the alien's deportability or removability from the United States. The stipulation shall include:

(1) An admission that all factual allegations contained in the charging document are true and correct as written;

(2) A concession of deportability or inadmissibility as charged;

(3) A statement that the alien makes no application for relief under the Act;

(4) A designation of a country for deportation or removal under section 241(b)(2)(A)(i) of the Act;

(5) A concession to the introduction of the written stipulation of the alien as an exhibit to the Record of Proceeding;

(6) A statement that the alien understands the consequences of the stipulated request and that the alien enters the request voluntarily, knowingly, and intelligently;

(7) A statement that the alien will accept a written order for his or her deportation, exclusion or removal as a final disposition of the proceedings; and

(8) A waiver of appeal of the written order of deportation or removal.

(c) *Telephonic or video hearings.* An Immigration Judge may conduct hearings through video conference to the same extent as he or she may conduct hearings in person. An Immigration Judge may also conduct a hearing through a telephone conference, but an evidentiary hearing on the merits may only be conducted through a telephone conference with the consent of the alien involved after the alien has been advised of the right to proceed in person or, where available, through a video conference, except that credible fear determinations may be reviewed by the Immigration Judge through a telephone conference without the consent of the alien.

25. Section 3.26 is amended by revising paragraph (c) and adding a new paragraph (d) to read as follows:

### § 3.26  In absentia hearings.

*    *    *    *    *

(c) In any removal proceeding before an Immigration Judge in which the alien fails to appear, the Immigration Judge shall order the alien removed *in absentia* if:

(1) The Service establishes by clear, unequivocal, and convincing evidence that the alien is removable; and

(2) The Service establishes by clear, unequivocal, and convincing evidence that written notice of the time and place of proceedings and written notice of the consequences of failure to appear were provided to the alien.

(d) Written notice to the alien shall be considered sufficient for purposes of this section if it was provided at the most recent address provided by the alien. If the respondent fails to provide his or her address as required under § 3.15(d), no written notice shall be required for an Immigration Judge to proceed with an *in absentia* hearing. This paragraph shall not apply in the event that the Immigration Judge waives the appearance of an alien under § 3.25.

26. Section 3.27 is amended by revising paragraph (c) to read as follows:

### § 3.27  Public access to hearings.

*    *    *    *    *

(c) In any proceeding before an Immigration Judge concerning an abused alien spouse, the hearing and the Record of Proceeding shall be closed to the public unless the abused spouse agrees that the hearing and the Record of Proceeding shall be open to the public. In any proceeding before an

Immigration Judge concerning an abused alien child, the hearing and the Record of Proceeding shall be closed to the public.

27. Section 3.30 is revised to read as follows:

### §3.30   Additional charges in deportation or removal hearings.

At any time during deportation or removal proceedings, additional or substituted charges of deportability and/or factual allegations may be lodged by the Service in writing. The alien shall be served with a copy of these additional charges and/or allegations and the Immigration Judge shall read them to the alien. The Immigration Judge shall advise the alien, if he or she is not represented by counsel, that the alien may be so represented. The alien may be given a reasonable continuance to respond to the additional factual allegations and charges. Thereafter, the provision of § 240.10(b) of this chapter relating to pleading shall apply to the additional factual allegations and charges.

28. Section 3.35 is revised to read as follows:

### §3.35   Depositions and subpoenas.

(a) *Depositions.* If an Immigration Judge is satisfied that a witness is not reasonably available at the place of hearing and that said witness' testimony or other evidence is essential, the Immigration Judge may order the taking of deposition either at his or her own instance or upon application of a party. Such order shall designate the official by whom the deposition shall be taken, may prescribe and limit the content, scope, or manner of taking the deposition, and may direct the production of documentary evidence.

(b) *Subpoenas issued subsequent to commencement of proceedings.* (1) *General.* In any proceeding before an Immigration Judge, other than under 8 CFR part 335, the Immigration Judge shall have exclusive jurisdiction to issue subpoenas requiring the attendance of witnesses or for the production of books, papers and other documentary evidence, or both. An Immigration Judge may issue a subpoena upon his or her own volition or upon application of the Service on the alien.

(2) *Application for subpoena.* A party applying for a subpoena shall be required, as a condition precedent to its issuance, to state in writing or at the proceeding, what he or she expects to prove by such witnesses or documentary evidence, and to show affirmatively that he or she has made diligent effort, without success, to produce the same.

(3) *Issuance of subpoena.* Upon being satisfied that a witness will not appear and testify or produce documentary evidence and that the witness' evidence is essential, the Immigration Judge shall issue a subpoena. The subpoena shall state the title of the proceeding and shall command the person to whom it is directed to attend and to give testimony at a time and place specified. The subpoena may also command the person to whom it is directed to produce the books, papers, or documents specified in the subpoena.

(4) *Appearance of witness.* If the witness is at a distance of more than 100 miles from the place of the proceeding, the subpoena shall provide for the witness' appearance at the Immigration Court nearest to the witness to respond to oral or written interrogatories, unless there is no objection by any party to the witness' appearance at the proceeding.

(5) *Service.* A subpoena issued under this section may be served by any person over 18 years of age not a party to the case.

(6) *Invoking aid of court.* If a witness neglects or refuses to appear and testify as directed by the subpoena served upon him or her in accordance with the provisions of this section, the Immigration Judge issuing the subpoena shall request the United States Attorney for the district in which the subpoena was issued to report such neglect or refusal to the United States District Court and to request such court to issue an order requiring the witness to appear and testify and to produce the books, papers or documents designated in the subpoena.

29. In Subpart C, a new § 3.42 is added to read as follows:

### §3.42   Review of credible fear determination.

(a) *Referral.* Jurisdiction for an Immigration Judge to review an adverse credible fear finding by an asylum officer pursuant to section 235(b)(1)(B) of the Act shall commence with the filing by the Service of Form I–863, Notice of Referral to Immigration Judge. The Service shall also file with the notice of referral a copy of the written record of determination as defined in section 235(b)(1)(B)(iii)(II) of the Act, including a copy of the alien's written request for review, if any.

(b) *Record of proceeding.* The Immigration Court shall create a Record of Proceeding for a review of an adverse credible fear determination. This record shall not be merged with any later proceeding pursuant to section 240 of the Act involving the same alien.

(c) *Procedures and evidence.* The Immigration Judge may receive into evidence any oral or written statement which is material and relevant to any issue in the review. The testimony of the alien shall be under oath or affirmation administered by the Immigration Judge. If an interpreter is necessary, one will be provided by the Immigration Court. The Immigration Judge shall determine whether the review shall be in person, or through telephonic or video connection (where available). The alien may consult with a person or persons of the alien's choosing prior to the review.

(d) *Standard of review.* The Immigration Judge shall make a de novo determination as to whether there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the Immigration Judge, that the alien could establish eligibility for asylum under section 208 of the Act.

(e) *Timing.* The Immigration Judge shall conclude the review to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date the supervisory asylum officer has approved the asylum officer's negative credible fear determination issued on Form I–869, Record of Negative Credible Fear Finding and Request for Review.

(f) *Decision.* If an Immigration Judge determines that an alien has a credible fear of persecution, the Immigration Judge shall vacate the order entered pursuant to section 235(b)(1)(B)(iii)(I) of the Act. Subsequent to the order being vacated, the Service shall issue and file Form I–862, Notice to Appear, with the Immigration Court to commence removal proceedings. The alien shall have the opportunity to apply for asylum in the course of removal proceedings pursuant to section 240 of the Act. If an Immigration Judge determines that an alien does not have a credible fear of persecution, the Immigration Judge shall affirm the asylum officer's determination and remand the case to the Service for execution of the removal order entered pursuant to section 235(b)(1)(B)(iii)(I) of the Act. No appeal shall lie from a review of an adverse credible fear determination made by an Immigration Judge.

(g) *Custody.* An Immigration Judge shall have no authority to review an alien's custody status in the course of a review of an adverse credible fear determination made by the Service.

# PART 103—POWERS AND DUTIES OF SERVICE OFFICERS; AVAILABILITY OF SERVICE RECORDS

30. The authority citation for part 103 continues to read as follows:

Authority: 5 U.S.C. 552, 552(a); 8 U.S.C. 1101, 1103, 1201, 1252 note, 1252b, 1304, 1356; 31 U.S.C. 9701; E.O. 12356; 47 FR 14874, 15557; 3 CFR, 1982 Comp., p. 166; 8 CFR part 2.

31. In § 103.1, paragraph (g)(3)(ii) is revised to read as follows:

### § 103.1    Delegations of authority.

\*    \*    \*    \*    \*

(g) \* \* \*

(3) \* \* \*

(ii) *Asylum officers.* Asylum officers constitute a professional corps of officers who serve under the supervision and direction of the Director of International Affairs and shall be specially trained as required in § 208.1(b) of this chapter. Asylum officers are delegated the authority to hear and adjudicate credible fear of persecution determinations under section 235(b)(1)(B) of the Act and applications for asylum and for withholding of removal, as provided under 8 CFR part 208.

\*    \*    \*    \*    \*

### § 103.5    [Amended]

32. Section 103.5 is amended by:
a. Removing paragraph (a)(1)(iii)(B);
b. Redesignating paragraphs (a)(1)(iii)(C) through (F) as paragraphs (a)(1)(iii)(B) through (E), respectively; and
c. Removing paragraph (a)(5)(iii).

33. In § 103.5a, paragraph (c)(1) is revised to read as follows:

### § 103.5a    Service of notification, decisions, and other papers by the Service.

\*    \*    \*    \*    \*

(c) \* \* \*

(1) *Generally.* In any proceeding which is initiated by the Service, with proposed adverse effect, service of the initiating notice and of notice of any decision by a Service officer shall be accomplished by personal service, except as provided in section 239 of the Act.

\*    \*    \*    \*    \*

34. In § 103.6, paragraph (a) is revised to read as follows:

### § 103.6    Surety bonds.

(a) *Posting of surety bonds.*—(1) *Extension agreements; consent of surety; collateral security.* All surety bonds posted in immigration cases shall be executed on Form I–352, Immigration Bond, a copy of which, and any rider attached thereto, shall be furnished the obligor. A district director is authorized to approve a bond, a formal agreement to extension of liability of surety, a request for delivery of collateral security to a duly appointed and undischarged administrator or executor of the estate of a deceased depositor, and a power of attorney executed on Form I–312, Designation of Attorney in Fact. All other matters relating to bonds, including a power of attorney not executed on Form I–312 and a request for delivery of collateral security to other than the depositor or his or her approved attorney in fact, shall be forwarded to the regional director for approval.

(2) *Bond riders.*—(i) *General.* Bond riders shall be prepared on Form I–351, Bond Riders, and attached to Form I–352. If a condition to be included in a bond is not on Form I–351, a rider containing the condition shall be executed.

\*    \*    \*    \*    \*

35. Section 103.7(b)(1) is amended by:
a. Removing the entry to ''Form I–444'', and by
b. Adding the entry for ''Form EOIR–42'' to the listing of forms, in proper numerical sequence, to read as follows:

### § 103.7    Fees

\*    \*    \*    \*    \*

(b) \* \* \*

(1) \* \* \*

\*    \*    \*    \*    \*

Form EOIR–42. For filing application for cancellation of removal under section 240A of the Act—$100.00. (A single fee of $100.00 will be charged whenever cancellation of removal applications are filed by two or more aliens in the same proceedings).

\*    \*    \*    \*    \*

## PART 204—IMMIGRANT PETITIONS

36. The authority citation for part 204 continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1151, 1153, 1154, 1182, 1186a, 1255; 8 CFR part 2.

37. Section 204.2 is amended by:
a. Revising paragraph (a)(1)(iii) introductory text;
b. Removing paragraphs (a)(1)(iii)(A) through (C); and
c. Redesignating paragraphs (a)(1)(iii)(D) through (I) as paragraphs (a)(1)(iii)(A) through (F) respectively, to read as follows:

### § 204.2    Petitions for relatives, widows, and widowers, and abused spouses and children.

(a) \* \* \*

(1) \* \* \*

(iii) *Marriage during proceedings— general prohibition against approval of visa petition.* A visa petition filed on behalf of an alien by a United States citizen or a lawful permanent resident spouse shall not be approved if the marriage creating the relationship occurred on or after November 10, 1986, and while the alien was in exclusion, deportation, or removal proceedings, or judicial proceedings relating thereto. Determination of commencement and termination of proceedings and exemptions shall be in accordance with § 245.1(c)(9) of this chapter, except that the burden in visa petition proceedings to establish eligibility for the exemption in § 245.1(c)(9)(iii)(F) of this chapter shall rest with the petitioner.

\*    \*    \*    \*    \*

## PART 207—ADMISSION OF REFUGEES

38. The authority citation for part 207 is revised to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1151, 1157, 1159, 1182; 8 CFR part 2.

39. Section 207.1 is amended by removing paragraph (e), and by revising paragraph (a) to read as follows:

### § 207.1    Eligibility.

(a) *Filing jurisdiction.* Any alien who believes he or she is a refugee as defined in section 101(a)(42) of the Act, and is included in a refugee group identified in section 207(a) of the Act, may apply for admission to the United States by filing an application in accordance with § 207.2 with the Service office having jurisdiction over the area where the applicant is located. In those areas too distant from a Service office, the application may be filed at a designated United States consular office.

\*    \*    \*    \*    \*

40. Section 207.3 is revised to read as follows:

### § 207.3    Waivers of inadmissibility.

(a) *Authority.* Section 207(c)(3) of the Act sets forth grounds of inadmissibility under section 212(a) of the Act which are not applicable and those which may be waived in the case of an otherwise qualified refugee and the conditions under which such waivers may be approved. Officers in charge of overseas offices are delegated authority to initiate the necessary investigations to establish the facts in each waiver application pending before them and to approve or deny such waivers.

(b) *Filing requirements.* The applicant for a waiver must submit Form I–602, Application by Refugee for Waiver of Grounds of Inadmissibility, with the Service office processing his or her case. The burden is on the applicant to show that the waiver should be granted based upon humanitarian grounds, family

unity, or the public interest. The applicant shall be notified in writing of the decision, including the reasons for denial, if the application is denied. There is no appeal from such decision.

### § 207.8  [Amended]

41. Section 207.8 is amended in the last sentence by revising the reference to ''sections 235, 236, and 237'' to read ''sections 235, 240, and 241''.

42. Part 208 is revised to read as follows:

## PART 208—PROCEDURES FOR ASYLUM AND WITHHOLDING OF REMOVAL

### Subpart A—Asylum and Withholding of Removal

Sec.
208.1    General.
208.2    Jurisdiction.
208.3    Form of application.
208.4    Filing the application.
208.5    Special duties toward aliens in custody of the Service.
208.6    Disclosure to third parties.
208.7    Employment authorization.
208.8    Limitations on travel outside the United States.
208.9    Procedure for interview before an asylum officer.
208.10    Failure to appear at an interview before an asylum officer.
208.11    Comments from the Department of State.
208.12    Reliance on information compiled by other sources.
208.13    Establishing asylum eligibility.
208.14    Approval, denial, or referral of application.
208.15    Definition of ''firm resettlement.''
208.16    Withholding of removal.
208.17    Decisions.
208.18    Determining if an asylum application is frivolous.
208.19    Admission of the asylee's spouse and children.
208.20    Effect on exclusion, deportation, and removal proceedings.
208.21    Restoration of status.
208.22    Termination of asylum or withholding of removal or deportation.
208.23–29    [Reserved]

### Subpart B—Credible Fear of Persecution

208.30    Credible fear determinations involving stowaways and applicants for admission found inadmissible pursuant to section 212(a)(6)(C) or 212(a)(7) of the Act.

Authority: 8 U.S.C. 1103, 1158, 1226, 1252, 1282; 8 CFR part 2.

## Subpart A—Asylum and Withholding or Removal

### § 208.1  General.

(a) *Applicability.* Unless otherwise provided in this chapter, this subpart shall apply to all applications for asylum under section 208 of the Act or for withholding of deportation or withholding of removal under section 241(b)(3) of the Act, whether before an asylum officer or an immigration judge, regardless of the date of filing. For purposes of this chapter, withholding of removal shall also mean withholding of deportation under section 243(h) of the Act, as it appeared prior to April 1, 1997, except as provided in § 208.16(c). Such applications are hereinafter referred to generically as asylum applications. The provisions of this part shall not affect the finality or validity of any decision made by a district director, an immigration judge, or the Board of Immigration Appeals in any such case prior to April 1, 1997. No asylum application that was filed with a district director, asylum officer or immigration judge prior to April 1, 1997, may be reopened or otherwise reconsidered under the provisions of this part except by motion granted in the exercise of discretion by the Board of Immigration Appeals, an immigration judge, or an asylum officer for proper cause shown. Motions to reopen or reconsider must meet the requirements of sections 240(c)(5) and (c)(6) of the Act, and 8 CFR parts 3 and 103, where applicable.

(b) *Training of asylum officers.* The Director of International Affairs shall ensure that asylum officers receive special training in international human rights law, nonadversarial interview techniques, and other relevant national and international refugee laws and principles. The Director of International Affairs shall also, in cooperation with the Department of State and other appropriate sources, compile and disseminate to asylum officers information concerning the persecution of persons in other countries on account of race, religion, nationality, membership in a particular social group, or political opinion, as well as other information relevant to asylum determinations, and shall maintain a documentation center with information on human rights conditions.

### § 208.2  Jurisdiction.

(a) *Office of International Affairs.* Except as provided in paragraph (b) of this section, the Office of International Affairs shall have initial jurisdiction over an asylum application filed by, or a credible fear determination pertaining to, an alien physically present in the United States or seeking admission at a port-of-entry. An application that is complete within the meaning of § 208.3(c)(3) shall be either adjudicated or referred by asylum officers under this part in accordance with § 208.14. An application that is incomplete within the meaning of § 208.3(c)(3) shall be returned to the applicant. Except as provided in § 208.16(a), an asylum officer shall not decide whether an alien is entitled to withholding of removal under section 241(b)(3) of the Act.

(b) *Immigration Court*—(1) *Certain aliens not entitled to proceedings under section 240 of the Act.* After Form I–863, Notice of Referral to Immigration Judge, has been filed with the Immigration Court, an immigration judge shall have exclusive jurisdiction over any asylum application filed on or after April 1, 1997, by:

(i) An alien crewmember who:

(A) Is an applicant for a landing permit;

(B) Has been refused permission to land under section 252 of the Act; or

(C) On or after April 1, 1997, was granted permission to land under section 252 of the Act, regardless of whether the alien has remained in the United States longer than authorized;

(ii) An alien stowaway who has been found to have a credible fear of persecution pursuant to the procedure set forth in subpart B of this part;

(iii) An alien who is an applicant for admission pursuant to the Visa Waiver Pilot Program under section 217 of the Act;

(iv) An alien who was admitted to the United States pursuant to the Visa Waiver Pilot Program under section 217 of the Act and has remained longer than authorized or has otherwise violated his or her immigration status;

(v) An alien who has been ordered removed under section 235(c) of the Act; or

(vi) An alien who is an applicant for admission, or has been admitted, as an alien classified under section 101(a)(15)(S) of the Act.

(2) *Rules of procedure.* (i) *General.* Proceedings falling under the jurisdiction of the immigration judge pursuant to paragraph (b)(1) of this section shall be conducted in accordance with the same rules of procedure as proceedings conducted under 8 CFR part 240, except the scope of review shall be limited to a determination of whether the alien is eligible for asylum or withholding of removal and whether asylum shall be granted in the exercise of discretion. During such proceedings all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, removability, eligibility for waivers, and eligibility for any form of relief other than asylum or withholding of removal.

(ii) *Notice of hearing procedures and in-absentia decisions.* The alien will be provided with notice of the time and place of the proceeding. The request for asylum and withholding of removal

submitted by an alien who fails to appear for the hearing shall be denied. The denial of asylum and withholding of removal for failure to appear may be reopened only upon a motion filed with the immigration judge with jurisdiction over the case. Only one motion to reopen may be filed, and it must be filed within 90 days, unless the alien establishes that he or she did not receive notice of the hearing date or was in Federal or State custody on the date directed to appear. The motion must include documentary evidence which demonstrates that:

(A) The alien did not receive the notice;

(B) The alien was in Federal or State custody and the failure to appear was through no fault of the alien; or

(C) "Exceptional circumstances," as defined in section 240(e)(1) of the Act, caused the failure to appear.

(iii) *Relief.* The filing of a motion to reopen shall not stay removal of the alien unless the immigration judge grants a written request for a stay pending disposition of the motion. An alien who fails to appear for a proceeding under this section shall not be eligible for relief under section 208, 212(h), 212(i), 240A, 240B, 245, 248, or 249 for a period of 10 years after the date of the denial.

(3) *Other aliens.* Immigration judges shall have exclusive jurisdiction over asylum applications filed by an alien who has been served Form I–221, Order to Show Cause; Form I–122, Notice to Applicant for Admission Detained for a Hearing before an Immigration Judge; or Form I–862, Notice to Appear, after a copy of the charging document has been filed with the Immigration Court. Immigration judges shall also have jurisdiction over any asylum applications filed prior to April 1, 1997, by alien crewmembers who have remained in the United States longer than authorized, by applicants for admission under the Visa Waiver Pilot Program, and by aliens who have been admitted to the United States under the Visa Waiver Pilot Program.

### § 208.3  Form of application.

(a) An asylum applicant must file Form I–589, Application for Asylum or Withholding of Removal, together with any additional supporting evidence in accordance with the instructions on the form. The applicant's spouse and children shall be listed on the application and may be included in the request for asylum if they are in the United States. One additional copy of the principal applicant's Form I–589 must be submitted for each dependent included in the principal's application.

(b) An asylum application shall be deemed to constitute at the same time an application for withholding of removal, unless adjudicated in deportation or exclusion proceedings commenced prior to April 1, 1997. In such instances, the asylum application shall be deemed to constitute an application for withholding of deportation under section 243(h) of the Act, as that section existed prior to April 1, 1997. Where a determination is made that an applicant is ineligible to apply for asylum under section 208(a)(2) of the Act, an asylum application shall be construed as an application for withholding of removal.

(c) Form I–589 shall be filed under the following conditions and shall have the following consequences:

(1) If the application was filed on or after January 4, 1995, information provided in the application may be used as a basis for the initiation of removal proceedings, or to satisfy any burden of proof in exclusion, deportation, or removal proceedings;

(2) The applicant and anyone other than a spouse, parent, son, or daughter of the applicant who assists the applicant in preparing the application must sign the application under penalty of perjury. The applicant's signature establishes a presumption that the applicant is aware of the contents of the application. A person other than a relative specified in this paragraph who assists the applicant in preparing the application also must provide his or her full mailing address;

(3) An asylum application that does not include a response to each of the questions contained in the Form I–589, is unsigned, or is unaccompanied by the required materials specified in paragraph (a) of this section is incomplete. The filing of an incomplete application shall not commence the 150-day period after which the applicant may file an application for employment authorization in accordance with § 208.7. An application that is incomplete shall be returned by mail to the applicant within 30 days of the receipt of the application by the Service. If the Service has not mailed the incomplete application back to the applicant within 30 days, it shall be deemed complete. An application returned to the applicant as incomplete shall be resubmitted by the applicant with the additional information if he or she wishes to have the application considered;

(4) Knowing placement of false information on the application may subject the person placing that information on the application to criminal penalties under title 18 of the United States Code and to civil penalties under section 274C of the Act; and

(5) Knowingly filing a frivolous application on or after April 1, 1997, so long as the applicant has received the notice required by section 208(d)(4) of the Act, shall render the applicant permanently ineligible for any benefits under the Act pursuant to § 208.18.

### § 208.4  Filing the application.

Except as prohibited in paragraph (a) of this section, asylum applications shall be filed in accordance with paragraph (b) of this section.

(a) *Prohibitions on filing.* Section 208(a)(2) of the Act prohibits certain aliens from filing for asylum on or after April 1, 1997, unless the alien can demonstrate to the satisfaction of the Attorney General that one of the exceptions in section 208(a)(2)(D) of the Act applies. Such prohibition applies only to asylum applications under section 208 of the Act and not to applications for withholding of removal under section 241 of the Act. If an applicant submits an asylum application and it appears that one or more of the prohibitions contained in section 208(a)(2) of the Act apply, an asylum officer or an immigration judge shall review the application to determine if the application should be rejected or denied. For the purpose of making determinations under section 208(a)(2) of the Act, the following rules shall apply:

(1) *Authority.* Only an asylum officer, an immigration judge, or the Board of Immigration Appeals is authorized to make determinations regarding the prohibitions contained in section 208(a)(2)(B) or (C) of the Act;

(2) *One-year filing deadline.* (i) For purposes of section 208(a)(2)(B) of the Act, an applicant has the burden of proving

(A) By clear and convincing evidence that he or she applied within one year of the alien's arrival in the United States or

(B) To the satisfaction of the asylum officer, immigration judge, or Board of Immigration Appeals that he or she qualifies for an exception to the one-year deadline.

(ii) The one-year period shall be calculated from the date of the alien's last arrival in the United States or April 1, 1997, whichever is later. In the case of an application that appears to have been filed more than a year after the applicant arrived in the United States, an asylum officer or immigration judge will determine whether the applicant qualifies under one of the exceptions to the deadline;

(3) *Prior denial of application.* For purposes of section 208(a)(2)(C) of the Act, an asylum application has not been denied unless denied by an immigration judge or the Board of Immigration Appeals;

(4) *Changed circumstances.* (i) The term ''changed circumstances'' in section 208(a)(2)(D) of the Act shall refer to circumstances materially affecting the applicant's eligibility for asylum. They may include:

(A) Changes in conditions in the applicant's country of nationality or, if the person is stateless, country of last habitual residence or

(B) Changes in objective circumstances relating to the applicant in the United States, including changes in applicable U.S. law, that create a reasonable possibility that applicant may qualify for asylum.

(ii) The applicant shall apply for asylum within a reasonable period given those ''changed circumstances.''

(5) The term *extraordinary circumstances* in section 208(a)(2)(D) of the Act shall refer to events or factors beyond the alien's control that caused the failure to meet the 1-year deadline. Such circumstances shall excuse the failure to file within the 1-year period so long as the alien filed the application within a reasonable period given those circumstances. The burden of proof is on the applicant to establish to the satisfaction of the asylum officer or immigration judge that the circumstances were both beyond his or her control and that, but for those circumstances, he or she would have filed within the 1-year period. These circumstances may include:

(i) Serious illness or mental or physical disability of significant duration, including any effects of persecution or violent harm suffered in the past, during the 1-year period after arrival;

(ii) Legal disability (e.g., the applicant was an unaccompanied minor or suffered from a mental impairment) during the first year after arrival;

(iii) Ineffective assistance of counsel, provided that:

(A) The alien files an affidavit setting forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representations counsel did or did not make to the respondent in this regard;

(B) The counsel whose integrity or competence is being impugned has been informed of the allegations leveled against him or her and given an opportunity to respond; and

(C) The alien indicates whether a complaint has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities, and if not, why not;

(iv) The applicant maintained Temporary Protected Status until a reasonable period before the filing of the asylum application; and

(v) The applicant submitted an asylum application prior to the expiration of the 1-year deadline, but that application was rejected by the Service as not properly filed, was returned to the applicant for corrections, and was refiled within a reasonable period thereafter.

(b) *Filing location*—(1) *With the service center by mail.* Except as provided in paragraphs (b)(2), (b)(3), (b)(4) and (b)(5) of this section, asylum applications shall be filed directly by mail with the service center servicing the asylum office with jurisdiction over the place of the applicant's residence or, in the case of an alien without a United States residence, the applicant's current lodging or the land border port-of-entry through which the alien seeks admission to the United States.

(2) *With the asylum office.* Asylum applications shall be filed directly with the asylum office having jurisdiction over the matter in the case of an alien who has received the express consent of the Director of Asylum to do so.

(3) *With the immigration judge.* Asylum applications shall be filed directly with the Immigration Court having jurisdiction over the case in the following circumstances:

(i) During exclusion, deportation, or removal proceedings, with the Immigration Court having jurisdiction over the port, district office, or sector after service and filing of the appropriate charging document.

(ii) After completion of exclusion, deportation, or removal proceedings, and in conjunction with a motion to reopen pursuant to 8 CFR part 3 where applicable, with the Immigration Court having jurisdiction over the prior proceeding. Any such motion must reasonably explain the failure to request asylum prior to the completion of the proceedings.

(iii) In asylum proceedings pursuant to § 208.2(b)(1) and after the Notice of Referral to Immigration Judge has been served on the alien and filed with the Immigration Court having jurisdiction over the case.

(4) *With the Board of Immigration Appeals.* In conjunction with a motion to remand or reopen pursuant to §§ 3.2 and 3.8 of this chapter where applicable, an initial asylum application shall be filed with the Board of Immigration Appeals if jurisdiction over the proceedings is vested in the Board of Immigration Appeals under 8 CFR part 3. Any such motion must reasonably explain the failure to request asylum prior to the completion of the proceedings.

(5) *With the district director.* In the case of any alien described in § 208.2(b)(1) and prior to the service on the alien of Form I–863, any asylum application shall be submitted to the district director having jurisdiction pursuant to 8 CFR part 103. The district director shall forward such asylum application to the appropriate Immigration Court with the Form I–863 being filed with that Immigration Court.

(c) *Amending an application after filing.* Upon request of the alien and as a matter of discretion, the asylum officer or immigration judge having jurisdiction may permit an asylum applicant to amend or supplement the application, but any delay caused by such request shall extend the period within which the applicant may not apply for employment authorization in accordance with § 208.7(a).

## § 208.5  Special duties toward aliens in custody of the Service.

(a) *General.* When an alien in the custody of the Service requests asylum or withholding of removal or expresses a fear of persecution or harm upon return to his or her country of origin or to agents thereof, the Service shall make available the appropriate application forms and shall provide the applicant with the information required by section 208(d)(4) of the Act, except in the case of an alien who is in custody pending a credible fear of persecution determination under section 235(b)(1)(B) of the Act. Where possible, expedited consideration shall be given to applications of detained aliens. Except as provided in paragraph (c) of this section, such alien shall not be excluded, deported, or removed before a decision is rendered on his or her asylum application.

(b) *Certain aliens aboard vessels.* (1) If an alien crewmember or alien stowaway on board a vessel or other conveyance alleges, claims, or otherwise makes known to an immigration inspector or other official making an examination on the conveyance that he or she is unable or unwilling to return to his or her country of nationality or last habitual residence (if not a national of any country) because of persecution or a fear of persecution in that country on account of race, religion, nationality, membership in a particular social group, or political opinion, the alien shall be promptly removed from the conveyance. If the alien makes such fear known to an official while off such conveyance, the

alien shall not be returned to the conveyance but shall be retained in or transferred to the custody of the Service.

(i) An alien stowaway will be referred to an asylum officer for a credible fear determination under § 208.30.

(ii) An alien crewmember shall be provided the appropriate application forms and information required by section 208(d)(4) of the Act and may then have 10 days within which to submit an asylum application to the district director having jurisdiction over the port of entry. The district director, pursuant to § 208.4(b), shall serve Form I–863 on the alien and immediately forward any such application to the appropriate Immigration Court with a copy of the Form I–863 being filed with that court.

(2) Pending adjudication of the application, and, in the case of a stowaway the credible fear determination and any review thereof, the alien may be detained by the Service or otherwise paroled in accordance with § 212.5 of this chapter. However, pending the credible fear determination, parole of an alien stowaway may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective.

(c) *Exception to prohibition on removal.* A motion to reopen or an order to remand accompanied by an asylum application pursuant to § 208.4(b)(3)(iii) shall not stay execution of a final exclusion, deportation, or removal order unless such stay is specifically granted by the Board of Immigration Appeals or the immigration judge having jurisdiction over the motion.

### § 208.6   Disclosure to third parties.

(a) Information contained in or pertaining to any asylum application shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Attorney General.

(b) The confidentiality of other records kept by the Service that indicate that a specific alien has applied for asylum shall also be protected from disclosure. The Service will coordinate with the Department of State to ensure that the confidentiality of these records is maintained if they are transmitted to Department of State offices in other countries.

(c) This section shall not apply to any disclosure to:

(1) Any United States Government official or contractor having a need to examine information in connection with:

(i) The adjudication of asylum applications;

(ii) The defense of any legal action arising from the adjudication of or failure to adjudicate the asylum application;

(iii) The defense of any legal action of which the asylum application is a part; or

(iv) Any United States Government investigation concerning any criminal or civil matter; or

(2) Any Federal, state, or local court in the United States considering any legal action:

(i) Arising from the adjudication of or failure to adjudicate the asylum application; or

(ii) Arising from the proceedings of which the asylum application is a part.

### § 208.7   Employment authorization.

(a) *Application and approval.* (1) Subject to the restrictions contained in sections 208(d) and 236(a) of the Act, an applicant for asylum who is not an aggravated felon shall be eligible pursuant to §§ 274a.12(c)(8) and 274a.13(a) of this chapter to submit a Form I–765, Application for Employment Authorization. Except in the case of an alien whose asylum application has been recommended for approval, or in the case of an alien who filed an asylum application prior to January 4, 1995, the application shall be submitted no earlier than 150 days after the date on which a complete asylum application submitted in accordance with §§ 208.3 and 208.4 has been received. In the case of an applicant whose asylum application has been recommended for approval, the applicant may apply for employment authorization when he or she receives notice of the recommended approval. If an asylum application has been returned as incomplete in accordance with § 208.3(c)(3), the 150-day period will commence upon receipt by the Service of a complete asylum application. An applicant whose asylum application has been denied by an asylum officer or by an immigration judge within the 150-day period shall not be eligible to apply for employment authorization. If an asylum application is denied prior to a decision on the application for employment authorization, the application for employment authorization shall be denied. If the asylum application is not so denied, the Service shall have 30 days from the date of filing of the Form I–765 to grant or deny that application, except that no employment authorization shall be issued to an asylum applicant prior to the expiration of the 180-day period following the

filing of the asylum application filed on or after April 1, 1997.

(2) The time periods within which the alien may not apply for employment authorization and within which the Service must respond to any such application and within which the asylum application must be adjudicated pursuant to section 208(d)(5)(A)(iii) of the Act shall begin when the alien has filed a complete asylum application in accordance with §§ 208.3 and 208.4. Any delay requested or caused by the applicant shall not be counted as part of these time periods. Such time periods also shall be extended by the equivalent of the time between issuance of a request for evidence under § 103.2(b)(8) of this chapter and the receipt of the applicant's response to such request.

(3) The provisions of paragraphs (a)(1) and (a)(2) of this section apply to applications for asylum filed on or after January 4, 1995.

(4) Employment authorization pursuant to § 274a.12(c)(8) of this chapter may not be granted to an alien who fails to appear for a scheduled interview before an asylum officer or a hearing before an immigration judge, unless the applicant demonstrates that the failure to appear was the result of exceptional circumstances.

(b) *Renewal and termination.* Employment authorization shall be renewable, in increments to be determined by the Commissioner, for the continuous period of time necessary for the asylum officer or immigration judge to decide the asylum application and, if necessary, for completion of any administrative or judicial review.

(1) If the asylum application is denied by the asylum officer, the employment authorization shall terminate at the expiration of the employment authorization document or 60 days after the denial of asylum, whichever is longer.

(2) If the application is denied by the immigration judge, the Board of Immigration Appeals, or a Federal court, the employment authorization terminates upon the expiration of the employment authorization document, unless the applicant has filed an appropriate request for administrative or judicial review.

(c) *Supporting evidence for renewal of employment authorization.* In order for employment authorization to be renewed under this section, the alien must provide the Service (in accordance with the instructions on or attached to the employment authorization application) with a Form I–765, the required fee (unless waived in accordance with § 103.7(c) of this chapter), and (if applicable) proof that

he or she has continued to pursue his or her asylum application before an immigration judge or sought administrative or judicial review. For purposes of employment authorization, pursuit of an asylum application is established by presenting to the Service one of the following, depending on the stage of the alien's immigration proceedings:

(1) If the alien's case is pending in proceedings before the immigration judge, and the alien wishes to continue to pursue his or her asylum application, a copy of any asylum denial, referral notice, or charging document placing the alien in such proceedings;

(2) If the immigration judge has denied asylum, a copy of the document issued by the Board of Immigration Appeals to show that a timely appeal has been filed from a denial of the asylum application by the immigration judge; or

(3) If the Board of Immigration Appeals has dismissed the alien's appeal of a denial of asylum, or sustained an appeal by the Service of a grant of asylum, a copy of the petition for judicial review or for habeas corpus pursuant to section 242 of the Act, date stamped by the appropriate court.

(d) In order for employment authorization to be renewed before its expiration, the application for renewal must be received by the Service 90 days prior to expiration of the employment authorization.

### § 208.8   Limitations on travel outside the United States.

(a) An applicant who leaves the United States without first obtaining advance parole under § 212.5(e) of this chapter shall be presumed to have abandoned his or her application under this section.

(b) An applicant who leaves the United States pursuant to advance parole under § 212.5(e) of this chapter and returns to the country of claimed persecution shall be presumed to have abandoned his or her application, unless the applicant is able to establish compelling reasons for such return.

### § 208.9   Procedure for interview before an asylum officer.

(a) The Service shall adjudicate the claim of each asylum applicant whose application is complete within the meaning of § 208.3(c)(3) and is within the jurisdiction of the Service.

(b) The asylum officer shall conduct the interview in a nonadversarial manner and, except at the request of the applicant, separate and apart from the general public. The purpose of the interview shall be to elicit all relevant and useful information bearing on the applicant's eligibility for asylum. At the time of the interview, the applicant must provide complete information regarding his or her identity, including name, date and place of birth, and nationality, and may be required to register this identity electronically or through any other means designated by the Attorney General. The applicant may have counsel or a representative present, may present witnesses, and may submit affidavits of witnesses and other evidence.

(c) The asylum officer shall have authority to administer oaths, verify the identity of the applicant (including through the use of electronic means), verify the identity of any interpreter, present and receive evidence, and question the applicant and any witnesses.

(d) Upon completion of the interview, the applicant or the applicant's representative shall have an opportunity to make a statement or comment on the evidence presented. The asylum officer may, in his or her discretion, limit the length of such statement or comment and may require its submission in writing. Upon completion of the interview, the applicant shall be informed that he or she must appear in person to receive and to acknowledge receipt of the decision of the asylum officer and any other accompanying material at a time and place designated by the asylum officer, except as otherwise provided by the asylum officer. An applicant's failure to appear to receive and acknowledge receipt of the decision shall be treated as delay caused by the applicant for purposes of § 208.7(a)(3) and shall extend the period within which the applicant may not apply for employment authorization by the number of days until the applicant does appear to receive and acknowledge receipt of the decision or until the applicant appears before an immigration judge in response to the issuance of a charging document under § 208.14(b).

(e) The asylum officer shall consider evidence submitted by the applicant together with his or her asylum application, as well as any evidence submitted by the applicant before or at the interview. As a matter of discretion, the asylum officer may grant the applicant a brief extension of time following an interview during which the applicant may submit additional evidence. Any such extension shall extend by an equivalent time the periods specified by § 208.7 for the filing and adjudication of any employment authorization application.

(f) The asylum application, all supporting information provided by the applicant, any comments submitted by the Department of State or by the Service, and any other information specific to the applicant's case and considered by the asylum officer shall comprise the record.

(g) An applicant unable to proceed with the interview in English must provide, at no expense to the Service, a competent interpreter fluent in both English and the applicant's native language or any other language in which the applicant is fluent. The interpreter must be at least 18 years of age. Neither the applicant's attorney or representative of record, a witness testifying on the applicant's behalf, nor a representative or employee of the applicant's country of nationality, or if stateless, country of last habitual residence, may serve as the applicant's interpreter. Failure without good cause to comply with this paragraph may be considered a failure to appear for the interview for purposes of § 208.10.

### § 208.10   Failure to appear at an interview before an asylum officer.

Failure to appear for a scheduled interview without prior authorization may result in dismissal of the application or waiver of the right to an interview. Failure to appear shall be excused if the notice of the interview was not mailed to the applicant's current address and such address had been provided to the Office of International Affairs by the applicant prior to the date of mailing in accordance with section 265 of the Act and regulations promulgated thereunder, unless the asylum officer determines that the applicant received reasonable notice of the interview. Failure to appear will be excused if the applicant demonstrates that such failure was the result of exceptional circumstances.

### § 208.11   Comments from the Department of State.

(a) The Service shall forward to the Department of State a copy of each completed application it receives. At its option, the Department of State may provide detailed country conditions information relevant to eligibility for asylum or withholding of removal.

(b) At its option, the Department of State may also provide:

(1) An assessment of the accuracy of the applicant's assertions about conditions in his or her country of nationality or habitual residence and his or her particular situation;

(2) Information about whether persons who are similarly situated to the applicant are persecuted in his or her country of nationality or habitual

residence and the frequency of such persecution; or

(3) Such other information as it deems relevant.

(c) Asylum officers and immigration judges may request specific comments from the Department of State regarding individual cases or types of claims under consideration, or such other information as they deem appropriate.

(d) Any such comments received pursuant to paragraphs (b) and (c) of this section shall be made part of the record. Unless the comments are classified under the applicable Executive Order, the applicant shall be provided an opportunity to review and respond to such comments prior to the issuance of any decision to deny the application.

### §208.12   Reliance on information compiled by other sources.

(a) In deciding an asylum application, or whether the alien has a credible fear of persecution pursuant to section 235(b)(1)(B) of the Act, the asylum officer may rely on material provided by the Department of State, the Office of International Affairs, other Service offices, or other credible sources, such as international organizations, private voluntary agencies, news organizations, or academic institutions.

(b) Nothing in this part shall be construed to entitle the applicant to conduct discovery directed toward the records, officers, agents, or employees of the Service, the Department of Justice, or the Department of State.

### §208.13   Establishing asylum eligibility.

(a) *Burden of proof.* The burden of proof is on the applicant for asylum to establish that he or she is a refugee as defined in section 101(a)(42) of the Act. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration. The fact that the applicant previously established a credible fear of persecution for purposes of section 235(b)(1)(B) of the Act does not relieve the alien of the additional burden of establishing eligibility for asylum.

(b) *Persecution.* The applicant may qualify as a refugee either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution.

(1) *Past persecution.* An applicant shall be found to be a refugee on the basis of past persecution if he or she can establish that he or she has suffered persecution in the past in his or her country of nationality or last habitual residence on account of race, religion, nationality, membership in a particular social group, or political opinion, and

that he or she is unable or unwilling to return to or avail himself or herself of the protection of that country owing to such persecution.

(i) If it is determined that the applicant has established past persecution, he or she shall be presumed also to have a well-founded fear of persecution unless a preponderance of the evidence establishes that since the time the persecution occurred conditions in the applicant's country of nationality or last habitual residence have changed to such an extent that the applicant no longer has a well-founded fear of being persecuted if he or she were to return.

(ii) An application for asylum shall be denied if the applicant establishes past persecution under this paragraph but it is also determined that he or she does not have a well-founded fear of future persecution under paragraph (b)(2) of this section, unless it is determined that the applicant has demonstrated compelling reasons for being unwilling to return to his or her country of nationality or last habitual residence arising out of the severity of the past persecution. If the applicant demonstrates such compelling reasons, he or she may be granted asylum unless such a grant is barred by paragraph (c) of this section .

(2) *Well-founded fear of persecution.* An applicant shall be found to have a well-founded fear of persecution if he or she can establish first, that he or she has a fear of persecution in his or her country of nationality or last habitual residence on account of race, religion, nationality, membership in a particular social group, or political opinion; second, that there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and third, that he or she is unable or unwilling to return to or avail himself or herself of the protection of that country because of such fear. In evaluating whether the applicant has sustained his or her burden of proving that he or she has a well-founded fear of persecution, the asylum officer or immigration judge shall not require the applicant to provide evidence that he or she would be singled out individually for persecution if:

(i) The applicant establishes that there is a pattern or practice in his or her country of nationality or last habitual residence of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and

(ii) The applicant establishes his or her own inclusion in and identification with such group of persons such that his

or her fear of persecution upon return is reasonable.

(c) *Mandatory denials.* (1) *Applications filed on or after April 1, 1997.* For applications filed on or after April 1, 1997, an applicant shall not qualify for asylum if section 208(a)(2) or 208(b)(2) of the Act applies to the applicant. If the applicant is found to be ineligible for asylum under either section 208(a)(2) or 208(b)(2) of the Act, the applicant shall be considered for eligibility for withholding of removal under section 241(b)(3) of the Act.

(2) *Applications filed before April 1, 1997.* (i) An immigration judge or asylum officer shall not grant asylum to any applicant who filed his or her application before April 1, 1997, if the alien:

(A) Having been convicted by a final judgment of a particularly serious crime in the United States, constitutes a danger to the community;

(B) Has been firmly resettled within the meaning of § 208.15;

(C) Can reasonably be regarded as a danger to the security of the United States;

(D) Has been convicted of an aggravated felony, as defined in section 101(a)(43) of the Act; or

(E) Ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion.

(ii) If the evidence indicates that one of the above grounds apply to the applicant, he or she shall have the burden of proving by a preponderance of the evidence that he or she did not so act.

(d) *Discretionary denial.* An asylum application may be denied in the discretion of the Attorney General if the alien can be removed to a third country which has offered resettlement and in which the alien would not face harm or persecution.

### §208.14   Approval, denial, or referral of application.

(a) *By an immigration judge.* Unless otherwise prohibited in § 208.13(c), an immigration judge may grant or deny asylum in the exercise of discretion to an applicant who qualifies as a refugee under section 101(a)(42) of the Act.

(b) *By an asylum officer.* Unless otherwise prohibited in § 208.13(c):

(1) An asylum officer may grant asylum in the exercise of discretion to an applicant who qualifies as a refugee under section 101(a)(42) of the Act.

(2) If the alien appears to be deportable, excludable or removable under section 240 of the Act, the asylum

officer shall either grant asylum or refer the application to an immigration judge for adjudication in deportation, exclusion, or removal proceedings. An asylum officer may refer such an application after an interview conducted in accordance with § 208.9 or if, in accordance with § 208.10, the applicant is deemed to have waived his or her right to an interview.

(3) If the applicant is maintaining valid nonimmigrant status at the time the application is decided, the asylum officer may grant or deny asylum, except in the case of an applicant described in § 208.2(b)(1).

(c) *Applicability of § 103.2(b) of this chapter.* No application for asylum or withholding of deportation shall be subject to denial pursuant to § 103.2(b) of this chapter.

(d) *Duration.* If the alien's asylum application is granted, the grant will be effective for an indefinite period, subject to termination as provided in § 208.22.

(e) *Effect of denial of principal's application on separate applications by dependents.* The denial of an asylum application filed by a principal applicant for asylum shall also result in the denial of asylum status to any dependents of that principal applicant who are included in that same application. Such denial shall not preclude a grant of asylum for an otherwise eligible dependent who has filed a separate asylum application, nor shall such denial result in an otherwise eligible dependent becoming ineligible to apply for asylum due to the provisions of section 208(a)(2)(C) of the Act.

### § 208.15  Definition of "firm resettlement."

An alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another nation with, or while in that nation received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement unless he or she establishes:

(a) That his or her entry into that nation was a necessary consequence of his or her flight from persecution, that he or she remained in that nation only as long as was necessary to arrange onward travel, and that he or she did not establish significant ties in that nation; or

(b) That the conditions of his or her residence in that nation were so substantially and consciously restricted by the authority of the country of refuge that he or she was not in fact resettled. In making his or her determination, the Asylum Officer or Immigration Judge shall consider the conditions under which other residents of the country live, the type of housing made available to the refugee, whether permanent or temporary, the types and extent of employment available to the refugee, and the extent to which the refugee received permission to hold property and to enjoy other rights and privileges, such as travel documentation including a right of entry or reentry, education, public relief, or naturalization, ordinarily available to others resident in the country.

### § 208.16  Withholding of removal.

(a) *Consideration of application for withholding of removal.* An asylum officer shall not decide whether the exclusion, deportation, or removal of an alien to a country where the alien's life or freedom would be threatened must be withheld, except in the case of an alien who is otherwise eligible for asylum but is precluded from being granted such status due solely to section 207(a)(5) of the Act. In exclusion, deportation, or removal proceedings, an immigration judge may adjudicate both an asylum claim and a request for withholding of removal whether or not asylum is granted.

(b) *Eligibility for withholding of removal; burden of proof.* The burden of proof is on the applicant for withholding of removal to establish that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion. The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration. The evidence shall be evaluated as follows:

(1) The applicant's life or freedom shall be found to be threatened if it is more likely than not that he or she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion.

(2) If the applicant is determined to have suffered persecution in the past such that his or her life or freedom was threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion, it shall be presumed that his or her life or freedom would be threatened on return to that country unless a preponderance of the evidence establishes that conditions in the country have changed to such an extent that it is no longer more likely than not that the applicant would be so persecuted there.

(3) In evaluating whether the applicant has sustained the burden of proving that his or her life or freedom would be threatened in a particular country on account of race, religion, nationality, membership in a particular social group, or political opinion, the asylum officer or immigration judge shall not require the applicant to provide evidence that he or she would be singled out individually for such persecution if:

(i) The applicant establishes that there is a pattern or practice in the country of proposed removal of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and

(ii) The applicant establishes his or her own inclusion in and identification with such group of persons such that it is more likely than not that his or her life or freedom would be threatened upon return.

(c) *Approval or denial of application.* (1) *General.* Subject to paragraphs (c)(2) and (c)(3) of this section, an application for withholding of deportation or removal to a country of proposed removal shall be granted if the applicant's eligibility for withholding is established pursuant to paragraph (b) of this section.

(2) *Mandatory denials.* Except as provided in paragraph (c)(3) of this section, an application for withholding of removal shall be denied if the applicant falls within section 241(b)(3)(B) of the Act or, for applications for withholding of deportation adjudicated in proceedings commenced prior to April 1, 1997, within section 243(h)(2) of the Act as it appeared prior to that date. For purposes of section 241(b)(3)(B)(ii) of the Act, or section 243(h)(2)(B) of the Act as it appeared prior to April 1, 1997, an alien who has been convicted of a particularly serious crime shall be considered to constitute a danger to the community. If the evidence indicates the applicability of one or more of the grounds for denial enumerated in the Act, the applicant shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.

(3) *Exception to the prohibition on withholding of deportation in certain cases.* Section 243(h)(3) of the Act, as added by section 413 of Public Law 104–132, shall apply only to applications adjudicated in proceedings commenced before April 1, 1997, and in which final action had not been taken before April 24, 1996. The discretion permitted by that section to override section 243(h)(2) of the Act shall be exercised only in the case of an applicant convicted of an aggravated felony (or felonies) where he or she was

sentenced to an aggregate term of imprisonment of less than 5 years and the immigration judge determines on an individual basis that the crime (or crimes) of which the applicant was convicted does not constitute a particularly serious crime. Nevertheless, it shall be presumed that an alien convicted of an aggravated felony has been convicted of a particularly serious crime. Except in the cases specified in this paragraph, the grounds for denial of withholding of deportation in section 243(h)(2) of the Act as it appeared prior to April 1, 1997, shall be deemed to comply with the 1967 Protocol Relating to the Status of Refugees.

(d) *Reconsideration of discretionary denial of asylum.* In the event that an applicant is denied asylum solely in the exercise of discretion, and the applicant is subsequently granted withholding of deportation or removal under this section, thereby effectively precluding admission of the applicant's spouse or minor children following to join him or her, the denial of asylum shall be reconsidered. Factors to be considered will include the reasons for the denial and reasonable alternatives available to the applicant such as reunification with his or her spouse or minor children in a third country.

### § 208.17  Decisions.

The decision of an asylum officer to grant or to deny asylum or withholding of removal, or to refer an asylum application in accordance with § 208.14(b), shall be communicated in writing to the applicant. Notices of decisions to grant or deny asylum, or to refer an application, by asylum officers shall generally be served in person unless, in the discretion of the asylum office director, routine service by mail is appropriate. A letter communicating denial of the application shall state the basis for denial of the asylum application. The letter also shall contain an assessment of the applicant's credibility, unless the denial is the result of the applicant's conviction of an aggravated felony. Pursuant to § 208.9(d), an applicant must appear in person to receive and to acknowledge receipt of the decision.

### § 208.18  Determining if an asylum application is frivolous.

For applications filed on or after April 1, 1997, an applicant is subject to the provisions of section 208(d)(6) of the Act only if a final order by an immigration judge or the Board of Immigration Appeals specifically finds that the alien knowingly filed a frivolous asylum application. For purposes of this section, an asylum application is frivolous if any of its material elements is deliberately fabricated. Such finding shall only be made if the immigration judge or the Board is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

### § 208.19  Admission of the asylee's spouse and children.

(a) *Eligibility.* A spouse, as defined in section 101(a)(35) of the Act, 8 U.S.C. 1101(a)(35), or child, as defined in section 101(b)(1)(A), (B), (C), (D), (E), or (F) of the Act, also may be granted asylum if accompanying or following to join the principal alien who was granted asylum, unless it is determined that:

(1) The spouse or child ordered, incited, assisted, or otherwise participated in the persecution of any persons on account of race, religion, nationality, membership in a particular social group, or political opinion;

(2) The spouse or child, having been convicted by a final judgment of a particularly serious crime in the United States, constitutes a danger to the community of the United States;

(3) The spouse or child has been convicted of an aggravated felony, as defined in section 101(a)(43) of the Act; or

(4) There are reasonable grounds for regarding the spouse or child a danger to the security of the United States.

(b) *Relationship.* The relationship of spouse and child as defined in section 101(b)(1) of the Act must have existed at the time the principal alien's asylum application was approved, except for children born to or legally adopted by the principal alien and spouse after approval of the principal alien's asylum application.

(c) *Spouse or child in the United States.* When a spouse or child of an alien granted asylum is in the United States but was not included in the principal alien's application, the principal alien may request asylum for the spouse or child by filing Form I–730 with the District Director having jurisdiction over his only place of residence, regardless of the status of that spouse or child in the United States.

(d) *Spouse or child outside the United States.* When a spouse or child of an alien granted asylum is outside the United States, the principal alien may request asylum for the spouse or child by filing form I–730 with the District Director, setting forth the full name, relationship, date and place of birth, and current location of each such person. Upon approval of the request, the District Director shall notify the Department of State, which will send an authorization cable to the American Embassy or Consulate having jurisdiction over the area in which the asylee's spouse or child is located.

(e) *Denial.* If the spouse or child is found to be ineligible for the status accorded under section 208(c) of the Act, a written notice stating the basis for denial shall be forwarded to the principal alien. No appeal shall lie from this decision.

(f) *Burden of proof.* To establish the claim of relationship of spouse or child as defined in section 101(b)(1) of the Act, evidence must be submitted with the request as set forth in part 204 of this chapter. Where possible this will consist of the documents specified in 8 CFR 204.2(c) (2) and (3). The burden of proof is on the principal alien to establish by a preponderance of the evidence that any person on whose behalf he or she is making a request under this section is an eligible spouse or child.

(g) *Duration.* The spouse or child qualifying under section 208(c) of the Act shall be granted asylum for an indefinite period unless the principal's status is revoked.

### § 208.20  Effect on exclusion, deportation, and removal proceedings.

(a) An alien who has been granted asylum may not be deported or removed unless his or her asylum status is terminated pursuant to § 208.22. An alien in exclusion, deportation, or removal proceedings who is granted withholding of removal or deportation may not be deported or removed to the country to which his or her deportation or removal is ordered withheld unless the withholding order is terminated pursuant to § 208.22.

(b) When an alien's asylum status or withholding of removal or deportation is terminated under this chapter, the Service shall initiate removal proceedings under section 235 or 240 of the Act, as appropriate, if the alien is not already in exclusion, deportation, or removal proceedings. Removal proceedings may also be in conjunction with a termination hearing scheduled under § 208.22(e).

### § 208.21  Restoration of status.

An alien who was maintaining his or her nonimmigrant status at the time of filing an asylum application and has such application denied may continue in or be restored to that status, if it has not expired.

### § 208.22  Termination of asylum or withholding of removal or deportation.

(a) *Termination of asylum by the Service.* Except as provided in

paragraph (e) of this section, an asylum officer may terminate a grant of asylum made under the jurisdiction of an asylum officer or a district director if following an interview, the asylum officer determines that:

(1) There is a showing of fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted;

(2) As to applications filed on or after April 1, 1997, one or more of the conditions described in section 208(c)(2) of the Act exist; or

(3) As to applications filed before April 1, 1997, the alien no longer has a well-founded fear of persecution upon return due to a change of country conditions in the alien's country of nationality or habitual residence or the alien has committed any act that would have been grounds for denial of asylum under § 208.13(c)(2).

(b) *Termination of withholding of deportation or removal by the Service.* Except as provided in paragraph (e) of this section, an asylum officer may terminate a grant of withholding of deportation or removal made under the jurisdiction of an asylum officer or a district director if the asylum officer determines, following an interview, that:

(1) The alien is no longer entitled to withholding of deportation or removal due to a change of conditions in the country to which removal was withheld;

(2) There is a showing of fraud in the alien's application such that the alien was not eligible for withholding of removal at the time it was granted;

(3) The alien has committed any other act that would have been grounds for denial of withholding of removal under section 241(b)(3)(B) of the Act had it occurred prior to the grant of withholding of removal; or

(4) For applications filed in proceedings commenced before April 1, 1997, the alien has committed any act that would have been grounds for denial of withholding of deportation under section 243(h)(2) of the Act.

(c) *Procedure.* Prior to the termination of a grant of asylum or withholding of deportation or removal, the alien shall be given notice of intent to terminate, with the reasons therefor, at least 30 days prior to the interview specified in paragraph (a) of this section before an asylum officer. The alien shall be provided the opportunity to present evidence showing that he or she is still eligible for asylum or withholding of deportation or removal. If the asylum officer determines that the alien is no longer eligible for asylum or withholding of deportation or removal, the alien shall be given written notice

that asylum status or withholding of deportation or removal and any employment authorization issued pursuant thereto, are terminated.

(d) *Termination of derivative status.* The termination of asylum status for a person who was the principal applicant shall result in termination of the asylum status of a spouse or child whose status was based on the asylum application of the principal. Such termination shall not preclude the spouse or child of such alien from separately asserting an asylum or withholding of deportation or removal claim.

(e) *Termination of asylum or withholding of deportation or removal by the Executive Office for Immigration Review.* An immigration judge or the Board of Immigration Appeals may reopen a case pursuant to § 3.2 or § 3.23 of this chapter for the purpose of terminating a grant of asylum or withholding of deportation or removal made under the jurisdiction of an immigration judge. In such a reopened proceeding, the Service must establish, by a preponderance of evidence, one or more of the grounds set forth in paragraphs (a) or (b) of this section. In addition, an immigration judge may terminate a grant of asylum or withholding of deportation or removal made under the jurisdiction of the Service at any time after the alien has been provided a notice of intent to terminate by the Service. Any termination under this paragraph may occur in conjunction with an exclusion, deportation or removal proceeding.

(f) *Termination of asylum for arriving aliens.* If the Service determines that an applicant for admission who had previously been granted asylum in the United States falls within conditions set forth in section 208(c)(2) of the Act and is inadmissible, the Service shall issue a notice of intent to terminate asylum and initiate removal proceedings under section 240 of the Act. The alien shall present his or her response to the intent to terminate during proceedings before the immigration judge.

**§§ 208.23—208.29    [Reserved]**

## Subpart B—Credible Fear of Persecution

**§ 208.30    Credible fear determinations involving stowaways and applicants for admission found inadmissible pursuant to section 212(a)(6)(C) or 212(a)(7) of the Act.**

(a) *Jurisdiction.* The provisions of this subpart apply to aliens subject to sections 235(a)(2) and 235(b)(1) of the Act. Pursuant to section 235(b)(1)(B) of the Act, the Service has exclusive jurisdiction to make credible fear determinations, and the Executive

Office for Immigration Review has exclusive jurisdiction to review such determinations. Except as otherwise provided in this subpart, paragraphs (b) through (e) of this section are the exclusive procedures applicable to credible fear interviews, determinations, and review under section 235(b)(1)(B) of the Act.

(b) *Interview and procedure.* The asylum officer, as defined in section 235(b)(1)(E) of the Act, will conduct the interview in a nonadversarial manner, separate and apart from the general public. At the time of the interview, the asylum officer shall verify that the alien has received Form M–444, Information about Credible Fear Interview in Expedited Removal Cases. The officer shall also determine that the alien has an understanding of the credible fear determination process. The alien may be required to register his or her identity electronically or through any other means designated by the Attorney General. The alien may consult with a person or persons of the alien's choosing prior to the interview or any review thereof, and may present other evidence, if available. Such consultation shall be at no expense to the Government and shall not unreasonably delay the process. Any person or persons with whom the alien chooses to consult may be present at the interview and may be permitted, in the discretion of the asylum officer, to present a statement at the end of the interview. The asylum officer, in his or her discretion, may place reasonable limits on the number of such persons who may be present at the interview and on the length of statement or statements made. If the alien is unable to proceed effectively in English, and if the asylum officer is unable to proceed competently in a language chosen by the alien, the asylum officer shall arrange for the assistance of an interpreter in conducting the interview. The interpreter may not be a representative or employee of the applicant's country of nationality or, if the applicant is stateless, the applicant's country of last habitual residence. The asylum officer shall create a summary of the material facts as stated by the applicant. At the conclusion of the interview, the officer shall review the summary with the alien and provide the alien with an opportunity to correct errors therein. The asylum officer shall create a written record of his or her determination, including a summary of the material facts as stated by the applicant, any additional facts relied on by the officer, and the officer's determination of whether, in light of such facts, the alien

has established a credible fear of persecution. The decision shall not become final until reviewed by a supervisory asylum officer.

(c) *Authority.* Asylum officers conducting credible fear interviews shall have the authorities described in § 208.9(c).

(d) *Referral for an asylum hearing.* If an alien, other than an alien stowaway, is found to have a credible fear of persecution, the asylum officer will so inform the alien and issue a Form I–862, Notice to Appear, for full consideration of the asylum claim in proceedings under section 240 of the Act. Parole of the alien may only be considered in accordance with section 212(d)(5) of the Act and § 212.5 of this chapter. If an alien stowaway is found to have a credible fear of persecution, the asylum officer will so inform the alien and issue a Form I–863, Notice to Referral to Immigration Judge, for full consideration of the asylum claim in proceedings under § 208.2(b)(1).

(e) *Removal of aliens with no credible fear of persecution.* If an alien is found not to have a credible fear of persecution, the asylum officer shall provide the alien with a written notice of decision and inquire whether the alien wishes to have an immigration judge review the negative decision, using Form I–869, Record of Negative Credible Fear Finding and Request for Review by Immigration Judge, on which the alien shall indicate whether he or she desires such review. If the alien is not a stowaway, the officer shall also order the alien removed and issue a Form I–860, Notice and Order of Expedited Removal. If the alien is a stowaway and the alien does not request a review by an immigration judge, the asylum officer shall also refer the alien to the district director for completion of removal proceedings in accordance with section 235(a)(2) of the Act.

(f) *Review by immigration judge.* The asylum officer's negative decision regarding credible fear shall be subject to review by an immigration judge upon the applicant's request, in accordance with section 235(b)(1)(B)(iii)(III) of the Act. If the alien requests such review, the asylum officer shall arrange for the detention of the alien and serve him or her with a Form I–863, Notice of Referral to Immigration Judge. The record of determination, including copies of the Form I–863, the asylum officer's notes, the summary of the material facts, and other materials upon which the determination was based shall be provided to the immigration judge with the negative determination. Upon review of the asylum officer's negative credible fear determination:

(1) If the immigration judge concurs with the determination of the asylum officer that the alien does not have a credible fear of persecution, the case shall be returned to the Service for removal of the alien.

(2) If the immigration judge finds that the alien, other than an alien stowaway, possesses a credible fear of persecution, the immigration judge shall vacate the order of the asylum officer issued on Form I–860 and the Service may commence removal proceedings under section 240 of the Act, during which time the alien may file an asylum application in accordance with § 208.4(b)(3)(i).

(3) If the immigration judge finds that an alien stowaway possesses a credible fear of persecution, the alien shall be allowed to file an asylum application before the immigration judge in accordance with § 208.4(b)(3)(iii). The immigration judge shall decide the asylum application as provided in that section. Such decision may be appealed by either the stowaway or the Service to the Board of Immigration Appeals. If and when a denial of the asylum application becomes final, the alien shall be removed from the United States in accordance with section 235(a)(2) of the Act. If and when an approval of the asylum application becomes final, the Service shall terminate removal proceedings under section 235(a)(2) of the Act.

## PART 209—ADJUSTMENT OF STATUS OF REFUGEES AND ALIENS GRANTED ASYLUM

43. The authority citation for part 209 is revised to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1157, 1158, 1159, 1228, 1252, 1282; 8 CFR part 2.

### § 209.1   [Amended]

44. In § 209.1, paragraph (a)(1) is amended in the first sentence by revising the reference to '', 236, and 237'' to read ''and 240''.

45. In § 209.2, the last sentence of paragraph (c) is revised to read as follows:

### § 209.2   Adjustment of status of alien granted asylum.

\*    \*    \*    \*    \*

(c) *Application.* \* \* \* If an alien has been placed in deportation, exclusion, or removal proceedings under any section of this Act (as effective on the date such proceedings commenced), the application can be filed and considered only in those proceedings.

\*    \*    \*    \*    \*

## PART 211—DOCUMENTARY REQUIREMENTS: IMMIGRANTS; WAIVERS

46. Part 211 is revised to read as follows:

Sec.
211.1   Visas.
211.2   Passports.
211.3   Expiration of immigrant visas, reentry permits, refugee travel documents, and Forms I–551.
211.4   Waiver of documents for returning residents.
211.5   Alien commuters.

Authority: 8 U.S.C. 1101, 1103, 1181, 1182, 1203, 1225, 1257; 8 CFR part 2.

### § 211.1   Visas.

(a) *General.* Except as provided in paragraph (b) of this section, each arriving alien applying for admission (or boarding the vessel or aircraft on which he or she arrives) into the United States for lawful permanent residence, or as a lawful permanent resident returning to an unrelinquished lawful permanent residence in the United States, shall present one of the following:

(1) A valid, unexpired immigrant visa;

(2) A valid, unexpired Form I–551, Alien Registration Receipt Card, if seeking readmission after a temporary absence of less than 1 year, or in the case of a crewmember regularly serving on board a vessel or aircraft of United States registry seeking readmission after any temporary absence connected with his or her duties as a crewman;

(3) A valid, unexpired Form I–327, Permit to Reenter the United States;

(4) A valid, unexpired Form I–571, Refugee Travel Document, properly endorsed to reflect admission as a lawful permanent resident;

(5) An expired Form I–551, Alien Registration Receipt Card, accompanied by a filing receipt issued within the previous 6 months for either a Form I–751, Petition to Remove the Conditions on Residence, or Form I–829, Petition by Entrepreneur to Remove Conditions, if seeking admission or readmission after a temporary absence of less than 1 year;

(6) A Form I–551, whether or not expired, presented by a civilian or military employee of the United States Government who was outside the United States pursuant to official orders, or by the spouse or child of such employee who resided abroad while the employee or serviceperson was on overseas duty and who is preceding, accompanying or following to join within 4 months the employee, returning to the United States; or

(7) Form I–551, whether or not expired, or a transportation letter issued by an American consular officer,

presented by an employee of the American University of Beirut, who was so employed immediately preceding travel to the United States, returning temporarily to the United States before resuming employment with the American University of Beirut, or resuming permanent residence in the United States.

(b) *Waivers.* (1) A waiver of the visa required in paragraph (a) of this section shall be granted without fee or application by the district director, upon presentation of the child's birth certificate, to a child born subsequent to the issuance of an immigrant visa to his or her accompanying parent who applies for admission during the validity of such a visa; or a child born during the temporary visit abroad of a mother who is a lawful permanent resident alien, or a national, of the United States, provided that the child's application for admission to the United States is made within 2 years of birth, the child is accompanied by the parent who is applying for readmission as a permanent resident upon the first return of the parent to the United States after the birth of the child, and the accompanying parent is found to be admissible to the United States.

(2) For an alien described in paragraph (b)(1) of this section, recordation of the child's entry shall be on Form I–181, Memorandum of Creation of Record of Admission for Lawful Permanent Residence. The carrier of such alien shall not be liable for a fine pursuant to section 273 of the Act.

(3) If an immigrant alien returning to an unrelinquished lawful permanent residence in the United States after a temporary absence abroad believes that good cause exists for his or her failure to present an immigrant visa, Form I–551, or reentry permit, the alien may file an application for a waiver of this requirement with the district director in charge of the port-of-entry. To apply for this waiver, the alien must file Form I–193, Application for Waiver of Passport and/or Visa, with the fee prescribed in § 103.7(b)(1) of this chapter, except that if the alien's Form I–551 was lost or stolen, the alien shall instead file Form I–90, Application to Replace Alien Registration Receipt Card, with the fee prescribed in § 103.7(b)(1) of this chapter, provided the temporary absence did not exceed 1 year. In the exercise of discretion, the district director in charge of the port-of-entry may waive the alien's lack of an immigrant visa, Form I–551, or reentry permit and admit the alien as a returning resident, if the district director is satisfied the alien has established

good cause for the alien's failure to present an immigrant visa, Form I–551, or reentry permit. Filing the Form I–90 will serve as both application for replacement and as application for waiver of passport and visa, without the obligation to file a separate waiver application.

(c) *Immigrants having occupational status defined in section 101(a)(15) (A), (E), or (G) of the Act.* An immigrant visa, reentry permit, or Form I–551 shall be invalid when presented by an alien who has an occupational status under section 101(a)(15) (A), (E), or (G) of the Act, unless he or she has previously submitted, or submits at the time he or she applies for admission to the United States, the written waiver required by section 247(b) of the Act and 8 CFR part 247.

(d) *Returning temporary residents.* (1) Form I–688, Temporary Resident Card, may be presented in lieu of an immigrant visa by an alien whose status has been adjusted to that of a temporary resident under the provisions of § 210.1 of this chapter, such status not having changed, and who is returning to an unrelinquished residence within one year after a temporary absence abroad.

(2) Form I–688 may be presented in lieu of an immigrant visa by an alien whose status has been adjusted to that of a temporary resident under the provisions of § 245a.2 of this chapter, such status not having changed, and who is returning to an unrelinquished residence within 30 days after a temporary absence abroad, provided that the aggregate of all such absences abroad during the temporary residence period has not exceeded 90 days.

### § 211.2 Passports.

(a) A passport valid for the bearer's entry into a foreign country at least 60 days beyond the expiration date of his or her immigrant visa shall be presented by each immigrant except an immigrant who:

(1) Is the parent, spouse, or unmarried son or daughter of a United States citizen or of an alien lawful permanent resident of the United States;

(2) Is entering under the provisions of § 211.1(a)(2) through (a)(7);

(3) Is a child born during the temporary visit abroad of a mother who is a lawful permanent resident alien, or a national, of the United States, provided that the child's application for admission to the United States is made within 2 years of birth, the child is accompanied by the parent who is applying for readmission as a permanent resident upon the first return of the parent to the United States after the birth of the child, and the

accompanying parent is found to be admissible to the United States;

(4) Is a stateless person or a person who because of his or her opposition to Communism is unwilling or unable to obtain a passport from the country of his or her nationality, or is the accompanying spouse or unmarried son or daughter of such immigrant; or

(5) Is a member of the Armed Forces of the United States.

(b) Except as provided in paragraph (a) of this section, if an alien seeking admission as an immigrant with an immigrant visa believes that good cause exists for his or her failure to present a passport, the alien may file an application for a waiver of this requirement with the district director in charge of the port-of-entry. For this waiver, the alien must file Form I–193, Application for Waiver of Passport and/or Visa, with the fee prescribed in § 103.7(b)(1) of this chapter. In the exercise of discretion, the district director in charge of the port-of-entry may waive the alien's lack of passport and admit the alien as an immigrant, if the district director is satisfied that the alien has established good cause for the alien's failure to present a passport.

### § 211.3 Expiration of immigrant visas, reentry permits, refugee travel documents, and Forms I–551.

An immigrant visa, reentry permit, refugee travel document, or Form I—551 shall be regarded as unexpired if the rightful holder embarked or enplaned before the expiration of his or her immigrant visa, reentry permit, or refugee travel document, or with respect to Form I—551, before the first anniversary of the date on which he or she departed from the United States, provided that the vessel or aircraft on which he or she so embarked or enplaned arrives in the United States or foreign contiguous territory on a continuous voyage. The continuity of the voyage shall not be deemed to have been interrupted by scheduled or emergency stops of the vessel or aircraft en route to the United States or foreign contiguous territory, or by a layover in foreign contiguous territory necessitated solely for the purpose of effecting a transportation connection to the United States.

### § 211.4 Waiver of documents for returning residents.

(a) Pursuant to the authority contained in section 211(b) of the Act, an alien previously lawfully admitted to the United States for permanent residence who, upon return from a temporary absence was inadmissible because of failure to have or to present

a valid passport, immigrant visa, reentry permit, border crossing card, or other document required at the time of entry, may be granted a waiver of such requirement in the discretion of the district director if the district director determines that such alien:

(1) Was not otherwise inadmissible at the time of entry, or having been otherwise inadmissible at the time of entry is with respect thereto qualified for an exemption from deportability under section 237(a)(1)(H) of the Act; and

(2) Is not otherwise subject to removal.

(b) Denial of a waiver by the district director is not appealable but shall be without prejudice to renewal of an application and reconsideration in proceedings before the immigration judge.

### § 211.5   Alien commuters.

(a) *General.* An alien lawfully admitted for permanent residence or a special agricultural worker lawfully admitted for temporary residence under section 210 of the Act may commence or continue to reside in foreign contiguous territory and commute as a special immigrant defined in section 101(a)(27)(A) of the Act to his or her place of employment in the United States. An alien commuter engaged in seasonal work will be presumed to have taken up residence in the United States if he or she is present in this country for more than 6 months, in the aggregate, during any continuous 12-month period. An alien commuter's address report under section 265 of the Act must show his or her actual residence address even though it is not in the United States.

(b) *Loss of residence status.* An alien commuter who has been out of regular employment in the United States for a continuous period of 6 months shall be deemed to have lost residence status, notwithstanding temporary entries in the interim for other than employment purposes. An exception applies when employment in the United States was interrupted for reasons beyond the individual's control other than lack of a job opportunity or the commuter can demonstrate that he or she has worked 90 days in the United States in the aggregate during the 12-month period preceding the application for admission into the United States. Upon loss of status, Form I–551 or I–688 shall become invalid and must be surrendered to an immigration officer.

(c) *Eligibility for benefits under the immigration and nationality laws.* Until he or she has taken up residence in the United States, an alien commuter cannot satisfy the residence requirements of the naturalization laws and cannot qualify for any benefits under the immigration laws on his or her own behalf or on behalf of his or her relatives other than as specified in paragraph (a) of this section. When an alien commuter takes up residence in the United States, he or she shall no longer be regarded as a commuter. He or she may facilitate proof of having taken up such residence by notifying the Service as soon as possible, preferably at the time of his or her first reentry for that purpose. Application for issuance of a new alien registration receipt card to show that he or she has taken up residence in the United States shall be made on Form I–90.

## PART 212—DOCUMENTARY REQUIREMENTS: NONIMMIGRANTS; WAIVERS; ADMISSION OF CERTAIN INADMISSIBLE ALIENS; PAROLE

47. The authority citation for part 212 continues to read as follows:

Authority: 8 U.S.C. 1101, 1102, 1103, 1182, 1184, 1187, 1225, 1226, 1227, 1228, 1252; 8 CFR part 2.

48. Section 212.5 is amended by:
a. Revising paragraph (a) and (b);
b. Revising introductory text in paragraph (c);
c. Revising paragraph (c)(1); and by
d. Revising paragraph (d)(2)(i), to read as follows:

### § 212.5   Parole of aliens into the United States.

(a) The parole of aliens within the following groups who have been or are detained in accordance with § 235.3(b) or (c) of this chapter would generally be justified only on a case-by-case basis for ''urgent humanitarian reasons'' or ''significant public benefit,'' provided the aliens present neither a security risk nor a risk of absconding:

(1) Aliens who have serious medical conditions in which continued detention would not be appropriate;

(2) Women who have been medically certified as pregnant;

(3) Aliens who are defined as juveniles in § 236.3(a) of this chapter. The district director or chief patrol agent shall follow the guidelines set forth in § 236.3(a) of this chapter and paragraphs (a)(3)(i) through (iii) of this section in determining under what conditions a juvenile should be paroled from detention:

(i) Juveniles may be released to a relative (brother, sister, aunt, uncle, or grandparent) not in Service detention who is willing to sponsor a minor and the minor may be released to that relative notwithstanding that the juvenile has a relative who is in detention.

(ii) If a relative who is not in detention cannot be located to sponsor the minor, the minor may be released with an accompanying relative who is in detention.

(iii) If the Service cannot locate a relative in or out of detention to sponsor the minor, but the minor has identified a non-relative in detention who accompanied him or her on arrival, the question of releasing the minor and the accompanying non-relative adult shall be addressed on a case-by-case basis;

(4) Aliens who will be witnesses in proceedings being, or to be, conducted by judicial, administrative, or legislative bodies in the United States; or

(5) Aliens whose continued detention is not in the public interest as determined by the district director or chief patrol agent.

(b) In the cases of all other arriving aliens, except those detained under § 235.3(b) or (c) of this chapter and paragraph (a) of this section, the district director or chief patrol agent may, after review of the individual case, parole into the United States temporarily in accordance with section 212(d)(5)(A) of the Act, any alien applicant for admission, under such terms and conditions, including those set forth in paragraph (c) of this section, as he or she may deem appropriate. An alien who arrives at a port-of-entry and applies for parole into the United States for the sole purpose of seeking adjustment of status under section 245A of the Act, without benefit of advance authorization as described in paragraph (e) of this section shall be denied parole and detained for removal in accordance with the provisions of § 235.3(b) or (c) of this chapter. An alien seeking to enter the United States for the sole purpose of applying for adjustment of status under section 210 of the Act shall be denied parole and detained for removal under § 235.3(b) or (c) of this chapter, unless the alien has been recommended for approval of such application for adjustment by a consular officer at an Overseas Processing Office.

(c) *Conditions.* In any case where an alien is paroled under paragraph (a) or (b) of this section, the district director or chief patrol agent may require reasonable assurances that the alien will appear at all hearings and/or depart the United States when required to do so. Not all factors listed need be present for parole to be exercised. The district director or chief patrol agent should apply reasonable discretion. The consideration of all relevant factors includes:

(1) The giving of an undertaking by the applicant, counsel, or a sponsor to ensure appearances or departure, and a bond may be required on Form I–352 in such amount as the district director or chief patrol agent may deem appropriate;

*    *    *    *    *

(d) * * *

(2)(i) *On notice.* In cases not covered by paragraph (d)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of the district director or chief patrol agent in charge of the area in which the alien is located, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed by removal within a reasonable time, the alien shall again be released on parole unless in the opinion of the district director or the chief patrol agent the public interest requires that the alien be continued in custody.

*    *    *    *    *

49. In § 212.6, paragraph (a)(2) is revised to read as follows:

### § 212.6  Nonresident alien border crossing cards.

(a) * * *

(2) *Mexican border crossing card, Form I–186 or I–586.* The rightful holder of a nonresident alien Mexican border crossing card, Form I–186 or I–586, may be admitted under § 235.1(f) of this chapter if found otherwise admissible. However, any alien seeking entry as a visitor for business or pleasure must also present a valid passport and shall be issued Form I–94 if the alien is applying for admission from:

(i) A country other than Mexico or Canada, or

(ii) Canada if the alien has been in a country other than the United States or Canada since leaving Mexico.

*    *    *    *    *

## PART 213—ADMISSION OF ALIENS ON GIVING BOND OR CASH DEPOSIT

50. The authority citation for part 213 is revised to read as follows:

Authority: 8 U.S.C. 1103; 8 CFR part 2.

### § 213.1  [Amended]

51. Section 213.1 is amended in the last sentence by revising the term ''part 103'' to read ''§ 103.6''.

## PART 214—NONIMMIGRANT CLASSES

52. The authority citation for part 214 continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1182, 1184, 1186a, 1187, 1221, 1281, 1282; 8 CFR part 2.

53. Section 214.1 is amended by revising paragraph (c)(4)(iv) to read as follows:

### § 214.1  Requirements for admission, extension, and maintenance of status.

*    *    *    *    *

(c) * * *

(4) * * *

(iv) The alien is not the subject of deportation proceedings under section 242 of the Act (prior to April 1, 1997) or removal proceedings under section 240 of the Act.

*    *    *    *    *

## PART 216—CONDITIONAL BASIS OF LAWFUL PERMANENT RESIDENCE STATUS

54. The authority citation for part 216 continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1154, 1184, 1186a, 1186b, and 8 CFR part 2.

55. Section 216.3 is revised to read as follows:

### § 216.3  Termination of conditional resident status.

(a) *During the two-year conditional period.* The director shall send a formal written notice to the conditional permanent resident of the termination of the alien's conditional permanent resident status if the director determines that any of the conditions set forth in section 216(b)(1) or 216A(b)(1) of the Act, whichever is applicable, are true, or it becomes known to the government that an alien entrepreneur who was admitted pursuant to section 203(b)(5) of the Act obtained his or her investment capital through other than legal means (such as through the sale of illegal drugs). If the Service issues a notice of intent to terminate an alien's conditional resident status, the director shall not adjudicate Form I–751 or Form I–829 until it has been determined that the alien's status will not be terminated. During this time, the alien shall

continue to be a lawful conditional permanent resident with all the rights, privileges, and responsibilities provided to persons possessing such status. Prior to issuing the notice of termination, the director shall provide the alien with an opportunity to review and rebut the evidence upon which the decision is to be based, in accordance with § 103.2(b)(2) of this chapter. The termination of status, and all of the rights and privileges concomitant thereto (including authorization to accept or continue in employment in this country), shall take effect as of the date of such determination by the director, although the alien may request a review of such determination in removal proceedings. In addition to the notice of termination, the director shall issue a notice to appear in accordance with 8 CFR part 239. During the ensuing removal proceedings, the alien may submit evidence to rebut the determination of the director. The burden of proof shall be on the Service to establish, by a preponderance of the evidence, that one or more of the conditions in section 216(b)(1) or 216A(b)(1) of the Act, whichever is applicable, are true, or that an alien entrepreneur who was admitted pursuant to section 203(b)(5) of the Act obtained his or her investment capital through other than legal means (such as through the sale of illegal drugs).

(b) *Determination of fraud after two years.* If, subsequent to the removal of the conditional basis of an alien's permanent resident status, the director determines that an alien spouse obtained permanent resident status through a marriage which was entered into for the purpose of evading the immigration laws or an alien entrepreneur obtained permanent resident status through a commercial enterprise which was improper under section 216A(b)(1) of the Act, the director may institute rescission proceedings pursuant to section 246 of the Act (if otherwise appropriate) or removal proceedings under section 240 of the Act.

56. Section 216.4 is amended by:

a. Revising paragraphs (a)(6), and (b)(3);

b. Revising paragraph, (c)(4);

c. Removing the unnumbered paragraph immediately after paragraph (c)(4); and by

d. Revising paragraph (d)(2) to read as follows:

### § 216.4  Joint petition to remove conditional basis of lawful permanent resident status for alien spouse.

(a) * * *

(6) *Termination of status for failure to file petition.* Failure to properly file Form I–751 within the 90-day period immediately preceding the second anniversary of the date on which the alien obtained lawful permanent residence on a conditional basis shall result in the automatic termination of the alien's permanent residence status and the initiation of proceedings to remove the alien from the United States. In such proceedings the burden shall be on the alien to establish that he or she complied with the requirement to file the joint petition within the designated period. Form I–751 may be filed after the expiration of the 90-day period only if the alien establishes to the satisfaction of the director, in writing, that there was good cause for the failure to file Form I–751 within the required time period. If the joint petition is filed prior to the jurisdiction vesting with the immigration judge in removal proceedings and the director excuses the late filing and approves the petition, he or she shall restore the alien's permanent residence status, remove the conditional basis of such status and cancel any outstanding notice to appear in accordance with § 239.2 of this chapter. If the joint petition is not filed until after jurisdiction vests with the immigration judge, the immigration judge may terminate the matter upon joint motion by the alien and the Service.

(b) * * *

(3) *Termination of status for failure to appear for interview.* If the conditional resident alien and/or the petitioning spouse fail to appear for an interview in connection with the joint petition required by section 216(c) of the Act, the alien's permanent residence status will be automatically terminated as of the second anniversary of the date on which the alien obtained permanent residence. The alien shall be provided with written notification of the termination and the reasons therefor, and a notice to appear shall be issued placing the alien under removal proceedings. The alien may seek review of the decision to terminate his or her status in such proceedings, but the burden shall be on the alien to establish compliance with the interview requirements. If the alien submits a written request that the interview be rescheduled or that the interview be waived, and the director determines that there is good cause for granting the request, the interview may be rescheduled or waived, as appropriate. If the interview is rescheduled at the request of the petitioners, the Service shall not be required to conduct the interview within the 90-day period following the filing of the petition.

(c) * * *

(4) A fee or other consideration was given (other than a fee or other consideration to an attorney for assistance in preparation of a lawful petition) in connection with the filing of the petition through which the alien obtained conditional permanent residence. If derogatory information is determined regarding any of these issues, the director shall offer the petitioners the opportunity to rebut such information. If the petitioners fail to overcome such derogatory information the director may deny the joint petition, terminate the alien's permanent residence, and issue a notice to appear to initiate removal proceedings. If derogatory information not relating to any of these issues is determined during the course of the interview, such information shall be forwarded to the investigations unit for appropriate action. If no unresolved derogatory information is determined relating to these issues, the petition shall be approved and the conditional basis of the alien's permanent residence status removed, regardless of any action taken or contemplated regarding other possible grounds for removal.

(d) * * *

(2) *Denial.* If the director denies the joint petition, he or she shall provide written notice to the alien of the decision and the reason(s) therefor and shall issue a notice to appear under section 239 of the Act and 8 CFR part 239. The alien's lawful permanent resident status shall be terminated as of the date of the director's written decision. The alien shall also be instructed to surrender any Alien Registration Receipt Card previously issued by the Service. No appeal shall lie from the decision of the director; however, the alien may seek review of the decision in removal proceedings. In such proceedings the burden of proof shall be on the Service to establish, by a preponderance of the evidence, that the facts and information set forth by the petitioners are not true or that the petition was properly denied.

57. Section 216.5 is amended by revising paragraphs (a), (d), (e)(1), (e)(3)(ii), and (f) to read as follows:

### § 216.5  Waiver of requirement to file joint petition to remove conditions by alien spouse.

(a) *General.* (1) A conditional resident alien who is unable to meet the requirements under section 216 of the Act for a joint petition for removal of the conditional basis of his or her permanent resident status may file Form I–751, Petition to Remove the Conditions on Residence, if the alien requests a waiver, was not at fault in failing to meet the filing requirement, and the conditional resident alien is able to establish that:

(i) Deportation or removal from the United States would result in extreme hardship;

(ii) The marriage upon which his or her status was based was entered into in good faith by the conditional resident alien, but the marriage was terminated other than by death, and the conditional resident was not at fault in failing to file a timely petition; or

(iii) The qualifying marriage was entered into in good faith by the conditional resident but during the marriage the alien spouse or child was battered by or subjected to extreme cruelty committed by the citizen or permanent resident spouse or parent.

(2) A conditional resident who is in exclusion, deportation, or removal proceedings may apply for the waiver only until such time as there is a final order of exclusion, deportation or removal.

* * * * *

(d) *Interview.* The service center director may refer the application to the appropriate local office and require that the alien appear for an interview in connection with the application for a waiver. The director shall deny the application and initiate removal proceedings if the alien fails to appear for the interview as required, unless the alien establishes good cause for such failure and the interview is rescheduled.

(e) *Adjudication of waiver application.* (1) *Application based on claim of hardship.* In considering an application for a waiver based upon an alien's claim that extreme hardship would result from the alien's removal from the United States, the director shall take into account only those factors that arose subsequent to the alien's entry as a conditional permanent resident. The director shall bear in mind that any removal from the United States is likely to result in a certain degree of hardship, and that only in those cases where the hardship is extreme should the application for a waiver be granted. The burden of establishing that extreme hardship exists rests solely with the applicant.

* * * * *

(3) * * *

(ii) A conditional resident or former conditional resident who has not departed the United States after termination of resident status may apply for the waiver. The conditional resident may apply for the waiver regardless of

his or her present marital status. The conditional resident may still be residing with the citizen or permanent resident spouse, or may be divorced or separated.

\*   \*   \*   \*   \*

(f) *Decision.* The director shall provide the alien with written notice of the decision on the application for waiver. If the decision is adverse, the director shall advise the alien of the reasons therefor, notify the alien of the termination of his or her permanent residence status, instruct the alien to surrender any Alien Registration Receipt Card issued by the Service and issue a notice to appear placing the alien in removal proceedings. No appeal shall lie from the decision of the director; however, the alien may seek review of such decision in removal proceedings.

## PART 217—VISA WAIVER PILOT PROGRAM

58. The authority citation for part 217 continues to read as follows:

Authority: 8 U.S.C. 1103, 1187; 8 CFR part 2.

59. Section 217.1 is revised to read as follows:

### § 217.1   Scope.

The Visa Waiver Pilot Program (VWPP) described in this section is established pursuant to the provisions of section 217 of the Act.

60. Section 217.2 is revised to read as follows:

### § 217.2   Eligibility.

(a) *Definitions.* As used in this part, the term:

*Carrier* refers to the owner, charterer, lessee, or authorized agent of any commercial vessel or commercial aircraft engaged in transporting passengers to the United States from a foreign place.

*Designated country* refers to Andorra, Argentina, Australia, Austria, Belgium, Brunei, Denmark, Finland, France, Germany, Iceland, Italy, Japan, Liechtenstein, Luxembourg, Monaco, the Netherlands, New Zealand, Norway, San Marino, Spain, Sweden, Switzerland, and the United Kingdom. The United Kingdom refers only to British citizens who have the unrestricted right of permanent abode in the United Kingdom (England, Scotland, Wales, Northern Ireland, the Channel Islands and the Isle of Man); it does not refer to British overseas citizens, British dependent territories' citizens, or citizens of British Commonwealth countries. Effective April 1, 1995, until September 30, 1998, or the expiration of

the Visa Waiver Pilot Program, whichever comes first, Ireland has been designated as a Visa Waiver Pilot Program country with Probationary Status in accordance with section 217(g) of the Act.

*Round trip ticket* means any return trip transportation ticket in the name of an arriving Visa Waiver Pilot Program applicant on a participating carrier valid for at least 1 year, electronic ticket record, airline employee passes indicating return passage, individual vouchers for return passage, group vouchers for return passage for charter flights, and military travel orders which include military dependents for return to duty stations outside the United States on U.S. military flights. A period of validity of 1 year need not be reflected on the ticket itself, provided that the carrier agrees that it will honor the return portion of the ticket at any time, as provided in Form I–775, Visa Waiver Pilot Program Agreement.

(b) *Special program requirements.* (1) *General.* In addition to meeting all of the requirements for the Visa Waiver Pilot Program specified in section 217 of the Act, each applicant must possess a valid, unexpired passport issued by a designated country and present a completed, signed Form I–94W, Nonimmigrant Visa Waiver Arrival/ Departure Form.

(2) *Persons previously removed as deportable aliens.* Aliens who have been deported or removed from the United States, after having been determined deportable, require the consent of the Attorney General to apply for admission to the United States pursuant to section 212(a)(9)(A)(iii) of the Act. Such persons may not be admitted to the United States under the provisions of this part notwithstanding the fact that the required consent of the Attorney General may have been secured. Such aliens must secure a visa in order to be admitted to the United States as nonimmigrants, unless otherwise exempt.

(c) *Restrictions on manner of arrival.* (1) *Applicants arriving by air and sea.* Applicants must arrive on a carrier that is signatory to a Visa Waiver Pilot Program Agreement and at the time of arrival must have a round trip ticket that will transport the traveler out of the United States to any other foreign port or place as long as the trip does not terminate in contiguous territory or an adjacent island; except that the round trip ticket may transport the traveler to contiguous territory or an adjacent island, if the traveler is a resident of the country of destination.

(2) *Applicants arriving at land border ports-of-entry.* Any Visa Waiver Pilot

Program applicant arriving at a land border port-of-entry must provide evidence to the immigration officer of financial solvency and a domicile abroad to which the applicant intends to return. An applicant arriving at a land-border port-of-entry will be charged a fee as prescribed in § 103.7(b)(1) of this chapter for issuance of Form I–94W, Nonimmigrant Visa Waiver Arrival/ Departure Form. A round-trip transportation ticket is not required of applicants at land border ports-of-entry.

(d) *Aliens in transit.* An alien who is in transit through the United States is eligible to apply for admission under the Visa Waiver Pilot Program, provided the applicant meets all other program requirements.

61. Section 217.3 is revised to read as follows:

### § 217.3   Maintenance of status.

(a) *Satisfactory departure.* If an emergency prevents an alien admitted under this part from departing from the United States within his or her period of authorized stay, the district director having jurisdiction over the place of the alien's temporary stay may, in his or her discretion, grant a period of satisfactory departure not to exceed 30 days. If departure is accomplished during that period, the alien is to be regarded as having satisfactorily accomplished the visit without overstaying the allotted time.

(b) *Readmission after departure to contiguous territory or adjacent island.* An alien admitted to the United States under this part may be readmitted to the United States after a departure to foreign contiguous territory or adjacent island for the balance of his or her original Visa Waiver Pilot Program admission period if he or she is otherwise admissible and meets all the conditions of this part with the exception of arrival on a signatory carrier.

62. Section 217.4 is amended by:

a. Revising the section heading;

b. Removing paragraph (a);

c. Redesignating paragraphs (b), (c), and (d) as paragraphs (a), (b), and (c) respectively;

d. Revising newly redesignated paragraph (a)(1);

e. Adding a new paragraph (a)(3);

f. Revising newly redesignated paragraph (b); and by

g. Revising newly redesignated paragraph (c) to read as follows:

### § 217.4   Inadmissibility and deportability.

(a) *Determinations of inadmissibility.* (1) An alien who applies for admission under the provisions of section 217 of the Act, who is determined by an immigration officer not to be eligible for

admission under that section or to be inadmissible to the United States under one or more of the grounds of inadmissibility listed in section 212 of the Act (other than for lack of a visa), or who is in possession of and presents fraudulent or counterfeit travel documents, will be refused admission into the United States and removed. Such refusal and removal shall be made at the level of the port director or officer-in-charge, or an officer acting in that capacity, and shall be effected without referral of the alien to an immigration judge for further inquiry, examination, or hearing, except that an alien who presents himself or herself as an applicant for admission under section 217 of the Act, who applies for asylum in the United States must be issued a Form I–863, Notice of Referral to Immigration Judge, for a proceeding in accordance with § 208.2(b)(1) and (2) of this chapter.

\*    \*    \*    \*    \*

(3) Refusal of admission under paragraph (a)(1) of this section shall not constitute removal for purposes of the Act.

(b) *Determination of deportability.* (1) An alien who has been admitted to the United States under the provisions of section 217 of the Act and of this part who is determined by an immigration officer to be deportable from the United States under one or more of the grounds of deportability listed in section 237 of the Act shall be removed from the United States to his or her country of nationality or last residence. Such removal shall be determined by the district director who has jurisdiction over the place where the alien is found, and shall be effected without referral of the alien to an immigration judge for a determination of deportability, except that an alien admitted as a Visa Waiver Pilot Program visitor who applies for asylum in the United States must be issued a Form I–863 for a proceeding in accordance with § 208.2(b)(1) and (2) of this chapter.

(2) Removal by the district director under paragraph (b)(1) of this section is equivalent in all respects and has the same consequences as removal after proceedings conducted under section 240 of the Act.

(c)(1) *Removal of inadmissible aliens who arrived by air or sea.* Removal of an alien from the United States under this section may be effected using the return portion of the round trip passage presented by the alien at the time of entry to the United States as required by section 217(a)(7) of the Act. Such removal shall be on the first available means of transportation to the alien's

point of embarkation to the United States. Nothing in this part absolves the carrier of the responsibility to remove any inadmissible or deportable alien at carrier expense, as provided in the carrier agreement.

(2) *Removal of inadmissible and deportable aliens who arrived at land border ports-of-entry.* Removal under this section will be by the first available means of transportation deemed appropriate by the district director.

### § 217.5    [Removed and reserved]

63. Section 217.5 is removed and reserved.

64. Section 217.6 is revised to read as follows:

### § 217.6    Carrier agreements.

(a) *General.* The carrier agreements referred to in section 217(e) of the Act shall be made by the Commissioner on behalf of the Attorney General and shall be on Form I–775, Visa Waiver Pilot Program Agreement.

(b) *Termination of agreements.* The Commissioner, on behalf of the Attorney General, may terminate any carrier agreement under this part, with 5 days notice to a carrier, for the carrier's failure to meet the terms of such agreement. As a matter of discretion, the Commissioner may notify a carrier of the existence of a basis for termination of a carrier agreement under this part and allow the carrier a period not to exceed 15 days within which the carrier may bring itself into compliance with the terms of the carrier agreement. The agreement shall be subject to cancellation by either party for any reason upon 15 days' written notice to the other party.

## PART 221—ADMISSION OF VISITORS OR STUDENTS

65. The authority citation for part 221 is revised to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1201; 8 CFR part 2.

### § 221.1    [Amended]

66. Section 221.1 is amended in the last sentence by revising the term ''part 103'' to read ''§ 103.6''.

## PART 223—REENTRY PERMITS, REFUGEE TRAVEL DOCUMENTS, AND ADVANCE PAROLE DOCUMENTS

67. The authority citation for part 223 is revised to read as follows:

Authority: 8 U.S.C. 1103, 1181, 1182, 1186a, 1203, 1225, 1226, 1227, 1251; Protocol Relating to the Status of Refugees, November 1, 1968, 19 U.S.T. 6223 (TIAS) 6577; 8 CFR part 2.

68. In § 223.1, paragraph (b) is revised to read as follows:

### § 223.1    Purpose of documents.

\*    \*    \*    \*    \*

(b) *Refugee travel document.* A refugee travel document is issued pursuant to this part and article 28 of the United Nations Convention of July 29, 1951, for the purpose of travel. Except as provided in § 223.3(d)(2)(i), a person who holds refugee status pursuant to section 207 of the Act, or asylum status pursuant to section 208 of the Act, must have a refugee travel document to return to the United States after temporary travel abroad unless he or she is in possession of a valid advance parole document.

69. In § 223.2, paragraph (b)(2) is revised to read as follows:

### § 223.2    Processing.

\*    \*    \*    \*    \*

(b) \*    \*    \*

(2) *Refugee travel document.* (i) *General.* Except as otherwise provided in this section, an application may be approved if filed by a person who is in the United States at the time of application, and either holds valid refugee status under section 207 of the Act, valid asylum status under section 208 of the Act, or is a permanent resident and received such status as a direct result of his or her asylum or refugee status.

(ii) *Discretionary authority to adjudicate an application from an alien not within the United States.* As a matter of discretion, a district director having jurisdiction over a port-of-entry or a preinspection station where an alien is an applicant for admission, or an overseas district director having jurisdiction over the place where an alien is physically present, may accept and adjudicate an application for a refugee travel document from an alien who previously had been admitted to the United States as a refugee, or who previously had been granted asylum status in the United States, and who had departed from the United States without having applied for such refugee travel document, provided:

(A) The alien submits a Form I–131, Application for Travel Document, with the fee required under § 103.7(b)(1) of this chapter;

(B) The district director is satisfied that the alien did not intend to abandon his or her refugee status at the time of departure from the United States;

(C) The alien did not engage in any activities while outside the United States that would be inconsistent with continued refugee or asylee status; and

(D) The alien has been outside the United States for less than 1 year since his or her last departure.

*   *   *   *   *

70. In § 223.3, paragraph (d)(2) is revised to read as follows:

### § 223.3    Validity and effect on admissibility.

*   *   *   *   *

(d) * * *

(2) *Refugee travel document.* (i) *Inspection and immigration status.* Upon arrival in the United States, an alien who presents a valid unexpired refugee travel document, or who has been allowed to file an application for a refugee travel document and this application has been approved under the procedure set forth in § 223.2(b)(2)(iii), shall be examined as to his or her admissibility under the Act. An alien shall be accorded the immigration status endorsed in his or her refugee travel document, or (in the case of an alien discussed in § 223.2(b)(2)(ii)) which will be endorsed in such document, unless he or she is no longer eligible for that status, or he or she applies for and is found eligible for some other immigration status.

(ii) *Inadmissibility.* If an alien who presents a valid unexpired refugee travel document appears to the examining immigration officer to be inadmissible, he or she shall be referred for proceedings under section 240 of the Act. Section 235(c) of the Act shall not be applicable.

## PART 232—DETENTION OF ALIENS FOR PHYSICAL AND MENTAL EXAMINATION

71. The heading for part 232 is revised to read as set forth above.

72. The authority citation for part 232 is revised to read as follows:

Authority: 8 U.S.C. 1103, 1222, 1224, 1252; 8 CFR part 2.

### § 232.1    [Redesignated and revised]

73. Section 232.1 is redesignated as § 232.3, and is revised to read as follows:

### § 232.3    Arriving aliens.

When a district director has reasonable grounds for believing that persons arriving in the United States should be detained for reasons specified in section 232 of the Act, he or she shall, after consultation with the United States Public Health Service at the port-of-entry, notify the master or agent of the arriving vessel or aircraft of his or her intention to effect such detention by serving on the master or agent Form I–259 in accordance with § 235.3(a) of this chapter.

### §§ 234.1 and 234.2    [Redesignated as §§ 232.1 and 232.2 respectively]

74. Sections 234.1 and 234.2 are redesignated as §§ 232.1 and 232.2 respectively.

## PART 234—[REMOVED]

75. Part 234 is removed.

76. The following parts are redesignated as set forth in the table below:

| Old part | New part |
| --- | --- |
| Part 238 ...................................... | Part 233. |
| Part 239 ...................................... | Part 234. |

## PART 233—CONTRACTS WITH TRANSPORTATION LINES

77. The authority citation for newly designated part 233 continues to read as follows:

Authority: 8 U.S.C. 1103, 1228; 8 CFR part 2.

78. Newly redesignated § 233.1 is revised to read as follows:

### § 233.1    Contracts.

The contracts with transportation lines referred to in section 233(c) of the Act may be entered into by the Executive Associate Commissioner for Programs, or by an immigration officer designated by the Executive Associate Commissioner for Programs on behalf of the government and shall be documented on Form I–420. The contracts with transportation lines referred to in section 233(a) of the Act shall be made by the Commissioner on behalf of the government and shall be documented on Form I–426. The contracts with transportation lines desiring their passengers to be preinspected at places outside the United States shall be made by the Commissioner on behalf of the government and shall be documented on Form I–425; except that contracts for irregularly operated charter flights may be entered into by the Associate Commissioner for Examinations or an immigration officer designated by the Executive Associate Commissioner for Programs and having jurisdiction over the location where the inspection will take place.

79. In newly redesignated § 233.3, paragraph (b) is revised to read as follows (the list of agreements is removed):

### § 233.3    Aliens in immediate and continuous transit.

*   *   *   *   *

(b) *Signatory lines.* A list of currently effective Form I–426 agreements is maintained by the Service's

Headquarters Office of Inspections and is available upon written request.

*   *   *   *   *

80. Newly redesignated § 233.4 is revised to read as follows:

### § 233.4    Preinspection outside the United States.

(a) *Form I–425 agreements.* A transportation line bringing applicants for admission to the United States through preinspection sites outside the United States shall enter into an agreement on Form I–425. Such an agreement shall be negotiated directly by the Service's Headquarters Office of Inspections and the head office of the transportation line.

(b) *Signatory lines.* A list of transportation lines with currently valid transportation agreements on Form I–425 is maintained by the Service's Headquarters Office of Inspections and is available upon written request.

81. Newly redesignated § 233.5 is revised to read as follows:

### § 233.5    Aliens entering Guam pursuant to section 14 of Public Law 99–396, "Omnibus Territories Act.'

A transportation line bringing aliens to Guam under the visa waiver provisions of § 212.1(e) of this chapter shall enter into an agreement on Form I–760. Such agreements shall be negotiated directly by the Service's Headquarters and head offices of the transportation lines.

## PART 234—DESIGNATION OF PORTS OF ENTRY FOR ALIENS ARRIVING BY CIVIL AIRCRAFT

82. The heading for newly redesignated part 234 is revised as set forth above.

83. The authority citation for newly designated part 234 is revised to read as follows:

Authority: 8 U.S.C. 1103, 1221, 1229; 8 CFR part 2.

### § 234.3    [Amended]

84. Newly redesignated § 234.3 is amended by removing the last sentence.

## PART 235—INSPECTION OF PERSONS APPLYING FOR ADMISSION

85. The authority citation for part 235 is revised to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1182, 1183, 1201, 1224, 1225, 1226, 1227, 1228, 1252; 8 CFR part 2.

86. Section 235.1 is revised to read as follows:

### § 235.1    Scope of examination.

(a) *General.* Application to lawfully enter the United States shall be made in

person to an immigration officer at a U.S. port-of-entry when the port is open for inspection, or as otherwise designated in this section.

(b) *U.S. citizens.* A person claiming U.S. citizenship must establish that fact to the examining officer's satisfaction and must present a U.S. passport if such passport is required under the provisions of 22 CFR part 53. If such applicant for admission fails to satisfy the examining immigration officer that he or she is a U.S. citizen, he or she shall thereafter be inspected as an alien.

(c) *Alien members of United States Armed Forces and members of a force of a NATO country.* Any alien member of the United States Armed Forces who is in the uniform of, or bears documents identifying him or her as a member of, such Armed Forces, and who is coming to or departing from the United States under official orders or permit of such Armed Forces is not subject to the removal provisions of the Act. A member of the force of a NATO country signatory to Article III of the Status of Forces Agreement seeking to enter the United States under official orders is exempt from the control provision of the Act. Any alien who is a member of either of the foregoing classes may, upon request, be inspected and his or her entry as an alien may be recorded. If the alien does not appear to the examining immigration officer to be clearly and beyond a doubt entitled to enter the United States under the provisions of the Act, the alien shall be so informed and his or her entry shall not be recorded.

(d) *Alien applicants for admission.* (1) Each alien seeking admission at a United States port-of-entry shall present whatever documents are required and shall establish to the satisfaction of the immigration officer that he or she is not subject to removal under the immigration laws, Executive Orders, or Presidential Proclamations and is entitled under all of the applicable provisions of the immigration laws and this chapter to enter the United States. A person claiming to have been lawfully admitted for permanent residence must establish that fact to the satisfaction of the inspecting immigration officer and must present proper documents in accordance with § 211.1 of this chapter.

(2) An alien present in the United States who has not been admitted or paroled or an alien who seeks entry at other than an open, designated port-of-entry, except as otherwise permitted in this section, is subject to the provisions of section 212(a) of the Act and to removal under section 235(b) or 240 of the Act.

(3) An alien who is brought to the United States, whether or not to a designated port-of-entry and regardless of the means of transportation, after having been interdicted in international or United States waters, is considered an applicant for admission and shall be examined under section 235(b) of the Act.

(4) An alien stowaway is not an applicant for admission and may not be admitted to the United States. A stowaway shall be removed from the United States under section 235(a)(2) of the Act. The provisions of section 240 of the Act are not applicable to stowaways, nor is the stowaway entitled to further hearing or review of the removal, except that an alien stowaway who indicates an intention to apply for asylum shall be referred to an asylum officer for a determination of credible fear of persecution in accordance with section 235(b)(1)(B) of the Act and § 208.30 of this chapter. An alien stowaway who is determined to have a credible fear of persecution shall have his or her asylum application adjudicated in accordance with § 208.2(b)(2) of this chapter. Nothing in this section shall be construed to require expedited removal proceedings in accordance with section 235(b)(1) of the Act. A stowaway who absconds either prior to inspection by an immigration officer or after being ordered removed as a stowaway pursuant to section 235(a)(2) of the Act is not entitled to removal proceedings under section 240 of the Act and shall be removed under section 235(a)(2) of the Act as if encountered upon arrival. A stowaway who has been removed pursuant to section 235(a)(2) of the Act and this section shall be considered to have been formally removed from the United States for all purposes under the Act.

(e) *U.S. citizens, lawful permanent residents of the United States, Canadian nationals, and other residents of Canada having a common nationality with Canadians, entering the United States by small craft.* Upon being inspected by an immigration officer and found eligible for admission as a citizen of the United States, or found eligible for admission as a lawful permanent resident of the United States, or in the case of a Canadian national or other resident of Canada having a common nationality with Canadians being found eligible for admission as a temporary visitor for pleasure, a person who desires to enter the United States from Canada in a small pleasure craft of less than 5 net tons without merchandise may be issued, upon application and payment of a fee prescribed under § 103.7(b)(1) of this chapter, Form I–68,

Canadian Border Boat Landing Card, and may thereafter enter the United States along with the immediate shore area of the United States on the body of water designated on the Form I–68 from time to time for the duration of that navigation season without further inspection. In the case of a Canadian national or other resident of Canada having a common nationality with Canadians, the Form I–68 shall be valid only for the purpose of visits not to exceed 72 hours and only if the alien will remain in nearby shopping areas, nearby residential neighborhoods, or other similar areas adjacent to the immediate shore area of the United States. If the bearer of Form I–68 seeks to enter the United States by means other than small craft of less than 5 net tons without merchandise, or if he or she seeks to enter the United States for other purposes, or if he or she is an alien, other than a lawful permanent resident alien of the United States, and intends to proceed beyond an area adjacent to the immediate shore area of the United States, or remains in the United States longer than 72 hours, he or she must apply for admission at a United States port-of-entry.

(f) *Form I–94, Arrival Departure Record.* (1) Unless otherwise exempted, each arriving nonimmigrant who is admitted to the United States shall be issued, upon payment of a fee prescribed in § 103.7(b)(1) of this chapter for land border admissions, a Form I–94 as evidence of the terms of admission. A Form I–94 issued at a land border port-of-entry shall be considered issued for multiple entries unless specifically annotated for a limited number of entries. A Form I–94 issued at other than a land border port-of-entry, unless issued for multiple entries, must be surrendered upon departure from the United States in accordance with the instructions on the form. Form I–94 is not required by:

(i) Any nonimmigrant alien described in § 212.1(a) of this chapter and 22 CFR 41.33 who is admitted as a visitor for business or pleasure or admitted to proceed in direct transit through the United States;

(ii) Any nonimmigrant alien residing in the British Virgin Islands who was admitted only to the U.S. Virgin Islands as a visitor for business or pleasure under § 212.1(b) of this chapter;

(iii) Any Mexican national in possession of a valid nonresident alien Mexican border crossing card, or a valid Mexican passport and a multiple-entry nonimmigrant visa issued under section 101(a)(15)(B) of the Act, who is admitted as a nonimmigrant visitor at a Mexican border port of entry for a

period not to exceed 72 hours to visit within 25 miles of the border;

(iv) Bearers of Mexican diplomatic or official passports described in § 212.1(c–1) of this chapter.

(2) *Paroled aliens.* Any alien paroled into the United States under section 212(d)(5) of the Act, including any alien crewmember, shall be issued a completely executed Form I–94, endorsed with the parole stamp.

87. Section 235.2 is revised to read as follows:

## § 235.2 Parole for deferred inspection.

(a) A district director may, in his or her discretion, defer the inspection of any vessel or aircraft, or of any alien, to another Service office or port-of-entry. Any alien coming to a United States port from a foreign port, from an outlying possession of the United States, from Guam, Puerto Rico, or the Virgin Islands of the United States, or from another port of the United States at which examination under this part was deferred, shall be regarded as an applicant for admission at that onward port.

(b) An examining immigration officer may defer further examination and refer the alien's case to the district director having jurisdiction over the place where the alien is seeking admission, or over the place of the alien's residence or destination in the United States, if the examining immigration officer has reason to believe that the alien can overcome a finding of inadmissibility by:

(1) Posting a bond under section 213 of the Act;

(2) Seeking and obtaining a waiver under section 211 or 212(d)(3) or (4) of the Act; or

(3) Presenting additional evidence of admissibility not available at the time and place of the initial examination.

(c) Such deferral shall be accomplished pursuant to the provisions of section 212(d)(5) of the Act for the period of time necessary to complete the deferred inspection.

(d) Refusal of a district director to authorize admission under section 213 of the Act, or to grant an application for the benefits of section 211 or section 212(d) (3) or (4) of the Act, shall be without prejudice to the renewal of such application or the authorizing of such admission by the immigration judge without additional fee.

(e) Whenever an alien on arrival is found or believed to be suffering from a disability that renders it impractical to proceed with the examination under the Act, the examination of such alien, members of his or her family concerning whose admissibility it is necessary to

have such alien testify, and any accompanying aliens whose protection or guardianship will be required should such alien be found inadmissible shall be deferred for such time and under such conditions as the district director in whose district the port is located imposes.

88. Section 235.3 is revised to read as follows:

## § 235.3 Inadmissible aliens and expedited removal.

(a) *Detention prior to inspection.* All persons arriving at a port-of-entry in the United States by vessel or aircraft shall be detained aboard the vessel or at the airport of arrival by the owner, agent, master, commanding officer, person in charge, purser, or consignee of such vessel or aircraft until admitted or otherwise permitted to land by an officer of the Service. Notice or order to detain shall not be required. The owner, agent, master, commanding officer, person in charge, purser, or consignee of such vessel or aircraft shall deliver every alien requiring examination to an immigration officer for inspection or to a medical officer for examination. The Service will not be liable for any expenses related to such detention or presentation or for any expenses of a passenger who has not been presented for inspection and for whom a determination has not been made concerning admissibility by a Service officer.

(b) *Expedited removal.* (1) *Applicability.* The expedited removal provisions shall apply to the following classes of aliens who are determined to be inadmissible under section 212(a)(6)(C) or (7) of the Act:

(i) Arriving aliens, as defined in § 1.1(q) of this chapter, except for citizens of Cuba arriving at a United States port-of-entry by aircraft;

(ii) As specifically designated by the Commissioner, aliens who arrive in, attempt to enter, or have entered the United States without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, and who have not established to the satisfaction of the immigration officer that they have been physically present in the United States continuously for the 2-year period immediately prior to the date of determination of inadmissibility. The Commissioner shall have the sole discretion to apply the provisions of section 235(b)(1) of the Act, at any time, to any class of aliens described in this section. The Commissioner's designation shall become effective upon publication of a notice in the Federal Register. However, if the Commissioner

determines, in the exercise of discretion, that the delay caused by publication would adversely affect the interests of the United States or the effective enforcement of the immigration laws, the Commissioner's designation shall become effective immediately upon issuance, and shall be published in the Federal Register as soon as practicable thereafter. When these provisions are in effect for aliens who enter without inspection, the burden of proof rests with the alien to affirmatively show that he or she has the required continuous physical presence in the United States. Any absence from the United States shall serve to break the period of continuous physical presence. An alien who was not inspected and admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2-year period immediately prior to the date of determination of inadmissibility shall be detained in accordance with section 235(b)(2) of the Act for a proceeding under section 240 of the Act.

(2) *Determination of inadmissibility.* (i) *Record of proceeding.* An alien who is arriving in the United States, or other alien as designated pursuant to paragraph (b)(1)(ii) of this section, who is determined to be inadmissible under section 212(a)(6)(C) or 212(a)(7) of the Act (except an alien for whom documentary requirements are waived under § 211.1(b)(3) or § 212.1 of this chapter), shall be ordered removed from the United States in accordance with section 235(b)(1) of the Act. In every case in which the expedited removal provisions will be applied and before removing an alien from the United States pursuant to this section, the examining immigration officer shall create a record of the facts of the case and statements made by the alien. This shall be accomplished by means of a sworn statement using Form I–867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act. The examining immigration officer shall read (or have read) to the alien all information contained on Form I–867A. Following questioning and recording of the alien's statement regarding identity, alienage, and inadmissibility, the examining immigration officer shall record the alien's response to the questions contained on Form I–867B, and have the alien read (or have read to him or her) the statement, and the alien shall sign and initial each page of the statement and each correction. The examining immigration officer shall advise the alien of the charges against him or her

on Form I–860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement. After obtaining supervisory concurrence in accordance with paragraph (b)(7) of this section, the examining immigration official shall serve the alien with Form I–860 and the alien shall sign the reverse of the form acknowledging receipt. Interpretative assistance shall be used if necessary to communicate with the alien.

(ii) *No entitlement to hearings and appeals.* Except as otherwise provided in this section, such alien is not entitled to a hearing before an immigration judge in proceedings conducted pursuant to section 240 of the Act, or to an appeal of the expedited removal order to the Board of Immigration Appeals.

(iii) *Detention and parole of alien in expedited removal.* An alien whose inadmissibility is being considered under this section or who has been ordered removed pursuant to this section shall be detained pending determination and removal, except that parole of such alien, in accordance with section 212(d)(5) of the Act, may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective.

(3) *Additional charges of inadmissibility.* In the expedited removal process, the Service may not charge an alien with any additional grounds of inadmissibility other than section 212(a)(6)(C) or 212(a)(7) of the Act. If an alien appears to be inadmissible under other grounds contained in section 212(a) of the Act, and if the Service wishes to pursue such additional grounds of inadmissibility, the alien shall be detained and referred for a removal hearing before an immigration judge pursuant to sections 235(b)(2) and 240 of the Act for inquiry into all charges. Once the alien is in removal proceedings under section 240 of the Act, the Service is not precluded from lodging additional charges against the alien. Nothing in this paragraph shall preclude the Service from pursuing such additional grounds of inadmissibility against the alien in any subsequent attempt to reenter the United States, provided the additional grounds of inadmissibility still exist.

(4) *Claim of asylum or fear of persecution.* If an alien subject to the expedited removal provisions indicates an intention to apply for asylum, a fear of persecution, or a fear of return to his or her country, the inspecting officer shall not proceed further with removal of the alien until the alien has been referred for an interview by an asylum officer in accordance with § 208.30 of this chapter to determine if the alien has a credible fear of persecution. The examining immigration officer shall record sufficient information in the sworn statement to establish and record that the alien has indicated such intention, fear, or concern, and to establish the alien's inadmissibility.

(i) *Referral.* The referring officer shall provide the alien with a written disclosure on Form M–444, Information About Credible Fear Interview, describing:

(A) The purpose of the referral and description of the credible fear interview process;

(B) The right to consult with other persons prior to the interview and any review thereof at no expense to the United States Government;

(C) The right to request a review by an immigration judge of the asylum officer's credible fear determination; and

(D) The consequences of failure to establish a credible fear of persecution.

(ii) *Detention pending credible fear interview.* Pending the credible fear determination by an asylum officer and any review of that determination by an immigration judge, the alien shall be detained. Parole of such alien in accordance with section 212(d)(5) of the Act may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective. Prior to the interview, the alien shall be given time to contact and consult with any person or persons of his or her choosing. Such consultation shall be made available in accordance with the policies and procedures of the detention facility where the alien is detained, shall be at no expense to the government, and shall not unreasonably delay the process.

(5) *Claim to lawful permanent resident, refugee, or asylee status or U.S. citizenship.*—(i) *Verification of status.* If an applicant for admission who is subject to expedited removal pursuant to section 235(b)(1) of the Act claims to have been lawfully admitted for permanent residence, admitted as a refugee under section 207 of the Act, granted asylum under section 208 of the Act, or claims to be a U.S. citizen, the immigration officer shall attempt to verify the alien's claim. Such verification shall include a check of all available Service data systems and any other means available to the officer. An alien whose claim to lawful permanent resident, refugee, asylee status, or U.S. citizen status cannot be verified will be advised of the penalties for perjury, and will be placed under oath or allowed to make a declaration as permitted under 28 U.S.C. 1746, concerning his or her lawful admission for permanent residence, admission as a refugee under section 207 of the Act, grant of asylum status under section 208 of the Act, or claim to U.S. citizenship. A written statement shall be taken from the alien in the alien's own language and handwriting, stating that he or she declares, certifies, verifies, or states that the claim is true and correct. The immigration officer shall issue an expedited order of removal under section 235(b)(1)(A)(i) of the Act and refer the alien to the immigration judge for review of the order in accordance with paragraph (b)(5)(iv) of this section and § 235.6(a)(2)(ii). The person shall be detained pending review of the expedited removal order under this section. Parole of such person, in accordance with section 212(d)(5) of the Act, may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective.

(ii) *Verified lawful permanent residents.* If the claim to lawful permanent resident status is verified, and such status has not been terminated in exclusion, deportation, or removal proceedings, the examining immigration officer shall not order the alien removed pursuant to section 235(b)(1) of the Act. The examining immigration officer will determine in accordance with section 101(a)(13)(C) of the Act whether the alien is considered to be making an application for admission. If the alien is determined to be seeking admission and the alien is otherwise admissible, except that he or she is not in possession of the required documentation, a discretionary waiver of documentary requirements may be considered in accordance with section 211(b) of the Act and § 211.1(b)(3) of this chapter or the alien's inspection may be deferred to an onward office for presentation of the required documents. If the alien appears to be inadmissible, the immigration officer may initiate removal proceedings against the alien under section 240 of the Act.

(iii) *Verified refugees and asylees.* If a check of Service records or other means indicates that the alien has been granted refugee status or asylee status, and such status has not been terminated in deportation, exclusion, or removal proceedings, the immigration officer shall not order the alien removed pursuant to section 235(b)(1) of the Act.

If the alien is not in possession of a valid, unexpired refugee travel document, the examining immigration officer may accept an application for a refugee travel document in accordance with § 223.2(b)(2)(ii) of this chapter. If accepted, the immigration officer shall readmit the refugee or asylee in accordance with § 223.3(d)(2)(i) of this chapter. If the alien is determined not to be eligible to file an application for a refugee travel document the immigration officer may initiate removal proceedings against the alien under section 240 of the Act.

(iv) *Review of order for claimed lawful permanent residents, refugees, asylees, or U.S. citizens.* A person whose claim to U.S. citizenship has been verified may not be ordered removed. When an alien whose status has not been verified but who is claiming under oath or under penalty of perjury to be a lawful permanent resident, refugee, asylee, or U.S. citizen is ordered removed pursuant to section 235(b)(1) of the Act, the case will be referred to an immigration judge for review of the expedited removal order under section 235(b)(1)(C) of the Act and § 235.6(a)(2)(ii). If the immigration judge determines that the alien has never been admitted as a lawful permanent resident or as a refugee, granted asylum status, or is not a U.S. citizen, the order issued by the immigration officer will be affirmed and the Service will remove the alien. There is no appeal from the decision of the immigration judge. If the immigration judge determines that the alien was once so admitted as a lawful permanent resident or as a refugee, or was granted asylum status, or is a U.S. citizen, and such status has not been terminated by final administrative action, the immigration judge will terminate proceedings and vacate the expedited removal order. The Service may initiate removal proceedings against such an alien, but not against a person determined to be a U.S. citizen, in proceedings under section 240 of the Act. During removal proceedings, the immigration judge may consider any waivers, exceptions, or requests for relief for which the alien is eligible.

(6) *Opportunity for alien to establish that he or she was admitted or paroled into the United States.* If the Commissioner determines that the expedited removal provisions of section 235(b)(1) of the Act shall apply to any or all aliens described in paragraph (b)(2)(ii) of this section, such alien will be given a reasonable opportunity to establish to the satisfaction of the examining immigration officer that he or she was admitted or paroled into the United States following inspection at a

port-of-entry. The alien will be allowed to present evidence or provide sufficient information to support the claim. Such evidence may consist of documentation in the possession of the alien, the Service, or a third party. The examining immigration officer will consider all such evidence and information, make further inquiry if necessary, and will attempt to verify the alien's status through a check of all available Service data systems. The burden rests with the alien to satisfy the examining immigration officer of the claim of lawful admission or parole. If the alien establishes that he or she was lawfully admitted or paroled, the case will be examined to determine if grounds of deportability under section 237(a) of the Act are applicable, or if paroled, whether such parole has been, or should be, terminated, and whether the alien is inadmissible under section 212(a) of the Act. An alien who cannot satisfy the examining officer that he or she was lawfully admitted or paroled will be ordered removed pursuant to section 235(b)(1) of the Act.

(7) *Review of expedited removal orders.* Any removal order entered by an examining immigration officer pursuant to section 235(b)(1) of the Act must be reviewed and approved by the appropriate supervisor before the order is considered final. Such supervisory review shall not be delegated below the level of the second line supervisor, or a person acting in that capacity. The supervisory review shall include a review of the sworn statement and any answers and statements made by the alien regarding a fear of removal or return. The supervisory review and approval of an expedited removal order for an alien described in section 235(b)(1)(A)(iii) of the Act must include a review of any claim of lawful admission or parole and any evidence or information presented to support such a claim, prior to approval of the order. In such cases, the supervisor may request additional information from any source and may require further interview of the alien.

(8) *Removal procedures relating to expedited removal.* An alien ordered removed pursuant to section 235(b)(1) of the Act shall be removed from the United States in accordance with section 241(c) of the Act and 8 CFR part 241.

(9) *Waivers of documentary requirements.* Nothing in this section limits the discretionary authority of the Attorney General, including authority under sections 211(b) or 212(d) of the Act, to waive the documentary requirements for arriving aliens.

(10) *Applicant for admission under section 217 of the Act.* The provisions of § 235.3(b) do not apply to an applicant for admission under section 217 of the Act.

(c) *Arriving aliens placed in proceedings under section 240 of the Act.* Except as otherwise provided in this chapter, any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act shall be detained in accordance with section 235(b) of the Act. Parole of such alien shall only be considered in accordance with § 212.5(a) of this chapter. This paragraph shall also apply to any alien who arrived before April 1, 1997, and who was placed in exclusion proceedings.

(d) *Service custody.* The Service will assume custody of any alien subject to detention under paragraph (b) or (c) of this section. In its discretion, the Service may require any alien who appears inadmissible and who arrives at a land border port-of-entry from Canada or Mexico, to remain in that country while awaiting a removal hearing. Such alien shall be considered detained for a proceeding within the meaning of section 235(b) of the Act and may be ordered removed in absentia by an immigration judge if the alien fails to appear for the hearing.

(e) *Detention in non-Service facility.* Whenever an alien is taken into Service custody and detained at a facility other than at a Service Processing Center, the public or private entities contracted to perform such service shall have been approved for such use by the Service's Jail Inspection Program or shall be performing such service under contract in compliance with the Standard Statement of Work for Contract Detention Facilities. Both programs are administered by the Detention and Deportation section having jurisdiction over the alien's place of detention. Under no circumstances shall an alien be detained in facilities not meeting the four mandatory criteria for usage. These are:

(1) 24-Hour supervision,

(2) Conformance with safety and emergency codes,

(3) Food service, and

(4) Availability of emergency medical care.

(f) *Privilege of communication.* The mandatory notification requirements of consular and diplomatic officers pursuant to § 236.1(e) of this chapter apply when an inadmissible alien is detained for removal proceedings, including for purpose of conducting the credible fear determination.

89. Section 235.4 is revised to read as follows:

### § 235.4  Withdrawal of application for admission.

(a) The Attorney General may, in his or her discretion, permit any alien applicant for admission to withdraw his or her application for admission in lieu of removal proceedings under section 240 of the Act or expedited removal under section 235(b)(1) of the Act. The alien's decision to withdraw his or her application for admission must be made voluntarily, but nothing in this section shall be construed as to give an alien the right to withdraw his or her application for admission. Permission to withdraw an application for admission should not normally be granted unless the alien intends and is able to depart the United States immediately. An alien permitted to withdraw his or her application for admission shall normally remain in carrier or Service custody pending departure, unless the district director determines that parole of the alien is warranted in accordance with § 212.5(a) of this chapter.

(b) An immigration judge may allow only an arriving alien to withdraw an application for admission. Once the issue of inadmissibility has been resolved, permission to withdraw an application for admission should ordinarily be granted only with the concurrence of the Service. An immigration judge shall not allow an alien to withdraw an application for admission unless the alien, in addition to demonstrating that he or she possesses both the intent and the means to depart immediately from the United States, establishes that factors directly relating to the issue of inadmissibility indicate that the granting of the withdrawal would be in the interest of justice. During the pendency of an appeal from the order of removal, permission to withdraw an application for admission must be obtained from the immigration judge or the Board.

90. Section 235.5 is revised to read as follows:

### § 235.5  Preinspection.

(a) *In United States territories and possessions.* In the case of any aircraft proceeding from Guam, Puerto Rico, or the United States Virgin Islands destined directly and without touching at a foreign port or place, to any other of such places, or to one of the States of the United States or the District of Columbia, the examination of the passengers and crew required by the Act may be made prior to the departure of the aircraft, and in such event, final determination of admissibility shall be

made immediately prior to such departure. The examination shall be conducted in accordance with sections 232, 235, and 240 of the Act and 8 CFR parts 235 and 240. If it appears to the examining immigration officer that any person in the United States being examined under this section is prima facie removable from the United States, further action with respect to his or her examination shall be deferred and further proceedings regarding removability conducted as provided in section 240 of the Act and 8 CFR part 240. When the foregoing inspection procedure is applied to any aircraft, persons examined and found admissible shall be placed aboard the aircraft, or kept at the airport separate and apart from the general public until they are permitted to board the aircraft. No other person shall be permitted to depart on such aircraft until and unless he or she is found to be admissible as provided in this section.

(b) *In foreign territory.* In the case of any aircraft, vessel, or train proceeding directly, without stopping, from a port or place in foreign territory to a port-of-entry in the United States, the examination and inspection of passengers and crew required by the Act and final determination of admissibility may be made immediately prior to such departure at the port or place in the foreign territory and shall have the same effect under the Act as though made at the destined port-of-entry in the United States.

91. Section 235.6 is revised to read as follows:

### § 235.6  Referral to immigration judge.

(a) *Notice.* (1) *Referral by Form I-862, Notice to Appear.* An immigration officer or asylum officer will sign and deliver a Form I-862 to an alien in the following cases:

(i) If, in accordance with the provisions of section 235(b)(2)(A) of the Act, the examining immigration officer detains an alien for a proceeding before an immigration judge under section 240 of the Act; or

(ii) If, in accordance with section 235(b)(1)(B)(ii) of the Act, an asylum officer determines that an alien in expedited removal proceedings has a credible fear of persecution and refers the case to the immigration judge for consideration of the application for asylum.

(iii) If, in accordance with section 235(b)(1)(B)(iii)(III) of the Act, the immigration judge determines that an alien in expedited removal proceedings has a credible fear of persecution and vacates the expedited removal order

issued by the asylum officer pursuant to section 235(b)(1)(B)(iii) of the Act.

(iv) If an immigration officer verifies that an alien subject to expedited removal under section 235(b)(1) of the Act has been admitted as a lawful permanent resident refugee, or asylee, or upon review pursuant to § 235.3(b)(5)(iv) an immigration judge determines that the alien was once so admitted, provided that such status has not been terminated by final administrative action, and the Service initiates removal proceedings against the alien under section 240 of the Act.

(2) *Referral by Form I-863, Notice of Referral to Immigration Judge.* An immigration officer will sign and deliver a Form I-863 to an alien in the following cases:

(i) If, in accordance with section 235(b)(1)(B)(iii)(III) of the Act, an asylum officer determines that an alien does not have a credible fear of persecution, and the alien requests a review of that determination by an immigration judge; or

(ii) If, in accordance with section 235(b)(1)(C) of the Act, an immigration officer refers an expedited removal order entered on an alien claiming to be a lawful permanent resident, refugee, asylee, or U.S. citizen for whom the officer could not verify such status to an immigration judge for review of the order.

(iii) If an immigration officer refers an applicant described in § 208.2(b)(1) of this chapter to an immigration judge for an asylum hearing under § 208.2(b)(2) of this chapter.

(b) *Certification for mental condition; medical appeal.* An alien certified under sections 212(a)(1) and 232(b) of the Act shall be advised by the examining immigration officer that he or she may appeal to a board of medical examiners of the United States Public Health Service pursuant to section 232 of the Act. If such appeal is taken, the district director shall arrange for the convening of the medical board.

### § 235.7  [Removed]

92. Section 235.7 is removed.

### § 235.13  [Redesignated as § 235.7]

93. Section 235.13 is redesignated as § 235.7.

94. Section 235.8 is revised to read as follows:

### § 235.8  Inadmissibility on security and related grounds.

(a) *Report.* When an immigration officer or an immigration officer suspects that an arriving alien appears to be inadmissible under section 212(a)(3)(A) (other than clause (ii)), (B), or (C) of the

Act, the immigration officer or immigration judge shall order the alien removed and report the action promptly to the district director who has administrative jurisdiction over the place where the alien has arrived or where the hearing is being held. The immigration officer shall, if possible, take a brief sworn question-and-answer statement from the alien, and the alien shall be notified by personal service of Form I–147, Notice of Temporary Inadmissibility, of the action taken and the right to submit a written statement and additional information for consideration by the Attorney General. The district director shall forward the report to the regional director for further action as provided in paragraph (b) of this section.

(b) *Action by regional director.* (1) In accordance with section 235(c)(2)(B) of the Act, the regional director may deny any further inquiry or hearing by an immigration judge and order the alien removed by personal service of Form I–148, Notice of Permanent Inadmissibility, or issue any other order disposing of the case that the regional director considers appropriate.

(2) If the regional director concludes that the case does not meet the criteria contained in section 235(c)(2)(B) of the Act, the regional director may direct that:

(i) An immigration officer shall conduct a further examination of the alien, concerning the alien's admissibility; or,

(ii) The alien's case be referred to an immigration judge for a hearing, or for the continuation of any prior hearing.

(3) The regional director's decision shall be in writing and shall be signed by the regional director. Unless the written decision contains confidential information, the disclosure of which would be prejudicial to the public interest, safety, or security of the United States, the written decision shall be served on the alien. If the written decision contains such confidential information, the alien shall be served with a separate written order showing the disposition of the case, but with the confidential information deleted.

(c) *Finality of decision.* The regional director's decision under this section is final when it is served upon the alien in accordance with paragraph (b)(3) of this section. There is no administrative appeal from the regional director's decision.

(d) *Hearing by immigration judge.* If the regional director directs that an alien subject to removal under this section be given a hearing or further hearing before an immigration judge, the hearing and all further proceedings in

the matter shall be conducted in accordance with the provisions of section 240 of the Act and other applicable sections of the Act to the same extent as though the alien had been referred to an immigration judge by the examining immigration officer. In a case where the immigration judge ordered the alien removed pursuant to paragraph (a) of this section, the Service shall refer the case back to the immigration judge and proceedings shall be automatically reopened upon receipt of the notice of referral. If confidential information, not previously considered in the matter, is presented supporting the inadmissibility of the alien under section 212(a)(3)(A) (other than clause (ii)), (B) or (C) of the Act, the disclosure of which, in the discretion of the immigration judge, may be prejudicial to the public interest, safety, or security, the immigration judge may again order the alien removed under the authority of section 235(c) of the Act and further action shall be taken as provided in this section.

(e) *Nonapplicability.* The provisions of this section shall apply only to arriving aliens, as defined in § 1.1(q) of this chapter. Aliens present in the United States who have not been admitted or paroled may be subject to proceedings under Title V of the Act.

### § 235.9   [Removed]

95. Section 235.9 is removed.

### § 235.12   [Redesignated as § 235.9 and revised]

96. Section 235.12 is redesignated as § 235.9 and is revised to read as follows:

### § 235.9   Northern Marianas identification card.

During the two-year period that ended July 1, 1990, the Service issued Northern Marianas Identification Cards to aliens who acquired United States citizenship when the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States entered into force on November 3, 1986. These cards remain valid as evidence of United States citizenship. Although the Service no longer issues these cards, a United States citizen to whom a card was issued may file Form I–777, Application for Issuance or Replacement of Northern Marianas Card, to obtain replacement of a lost, stolen, or mutilated Northern Marianas Identification Card.

97. Section 235.10 is revised to read as follows:

### § 235.10   U.S. Citizen Identification Card.

(a) *General.* Form I–197, U.S. Citizen Identification Card, is no longer issued

by the Service but valid existing cards will continue to be acceptable documentation of U.S. citizenship. Possession of the identification card is not mandatory for any purpose. A U.S. Citizen Identification Card remains the property of the United States. Because the identification card is no longer issued, there are no provisions for replacement cards.

(b) *Surrender and voidance.* (1) *Institution of proceeding under section 240 or 342 of the Act.* A U.S. Citizen Identification Card must be surrendered provisionally to a Service office upon notification by the district director that a proceeding under section 240 or 342 of the Act is being instituted against the person to whom the card was issued. The card shall be returned to the person if the final order in the proceeding does not result in voiding the card under this paragraph. A U.S. Citizen Identification Card is automatically void if the person to whom it was issued is determined to be an alien in a proceeding conducted under section 240 of the Act, or if a certificate, document, or record relating to that person is canceled under section 342 of the Act.

(2) *Investigation of validity of identification card.* A U.S. Citizen Identification Card must be surrendered provisionally upon notification by a district director that the validity of the card is being investigated. The card shall be returned to the person who surrendered it if the investigation does not result in a determination adverse to his or her claim to be a United States citizen. When an investigation results in a tentative determination adverse to the applicant's claim to be a United States citizen, the applicant shall be notified by certified mail directed to his or her last known address. The notification shall inform the applicant of the basis for the determination and of the intention of the district director to declare the card void unless within 30 days the applicant objects and demands an opportunity to see and rebut the adverse evidence. Any rebuttal, explanation, or evidence presented by the applicant must be included in the record of proceeding. The determination whether the applicant is a United States citizen must be based on the entire record and the applicant shall be notified of the determination. If it is determined that the applicant is not a United States citizen, the applicant shall be notified of the reasons, and the card deemed void. There is no appeal from the district director's decision.

(3) *Admission of alienage.* A U.S. Citizen Identification Card is void if the person to whom it was issued admits in a statement signed before an

immigration officer that he or she is an alien and consents to the voidance of the card. Upon signing the statement the card must be surrendered to the immigration officer.

(4) *Surrender of void card.* A void U.S. Citizen Identification Card which has not been returned to the Service must be surrendered without delay to an immigration officer or to the issuing office of the Service.

(c) *U.S. Citizen Identification Card previously issued on Form I–179.* A valid Form I–179, U.S. Citizen Identification Card, continues to be valid subject to the provisions of this section.

98. Section 235.11 is revised to read as follows:

### § 235.11  Admission of conditional permanent residents.

(a) *General.* (1) *Conditional residence based on family relationship.* An alien seeking admission to the United States with an immigrant visa as the spouse or son or daughter of a United States citizen or lawful permanent resident shall be examined to determine whether the conditions of section 216 of the Act apply. If so, the alien shall be admitted conditionally for a period of 2 years. At the time of admission, the alien shall be notified that the alien and his or her petitioning spouse must file a Form I–751, Petition to Remove the Conditions on Residence, within the 90-day period immediately preceding the second anniversary of the alien's admission for permanent residence.

(2) *Conditional residence based on entrepreneurship.* An alien seeking admission to the United States with an immigrant visa as an alien entrepreneur (as defined in section 216A(f)(1) of the Act) or the spouse or unmarried minor child of an alien entrepreneur shall be admitted conditionally for a period of 2 years. At the time of admission, the alien shall be notified that the principal alien (entrepreneur) must file a Form I–829, Petition by Entrepreneur to Remove Conditions, within the 90-day period immediately preceding the second anniversary of the alien's admission for permanent residence.

(b) *Correction of endorsement on immigrant visa.* If the alien is subject to the provisions of section 216 of the Act, but the classification endorsed on the immigrant visa does not so indicate, the endorsement shall be corrected and the alien shall be admitted as a lawful permanent resident on a conditional basis, if otherwise admissible. Conversely, if the alien is not subject to the provisions of section 216 of the Act, but the visa classification endorsed on the immigrant visa indicates that the

alien is subject thereto (e.g., if the second anniversary of the marriage upon which the immigrant visa is based occurred after the issuance of the visa and prior to the alien's application for admission) the endorsement on the visa shall be corrected and the alien shall be admitted as a lawful permanent resident without conditions, if otherwise admissible.

(c) *Expired conditional permanent resident status.* The lawful permanent resident alien status of a conditional resident automatically terminates if the conditional basis of such status is not removed by the Service through approval of a Form I–751, Petition to Remove the Conditions on Residence or, in the case of an alien entrepreneur (as defined in section 216A(f)(1) of the Act), Form I–829, Petition by Entrepreneur to Remove Conditions. Therefore, an alien who is seeking admission as a returning resident subsequent to the second anniversary of the date on which conditional residence was obtained (except as provided in § 211.1(b)(1) of this chapter) and whose conditional basis of such residence has not been removed pursuant to section 216(c) or 216A(c) of the Act, whichever is applicable, shall be placed under removal proceedings. However, in a case where conditional residence was based on a marriage, removal proceedings may be terminated and the alien may be admitted as a returning resident if the required Form I–751 is filed jointly, or by the alien alone (if appropriate), and approved by the Service. In the case of an alien entrepreneur, removal proceedings may be terminated and the alien admitted as a returning resident if the required Form I–829 is filed by the alien entrepreneur and approved by the Service.

99. Part 236 is revised to read as follows:

## PART 236—APPREHENSION AND DETENTION OF INADMISSIBLE AND DEPORTABLE ALIENS; REMOVAL OF ALIENS ORDERED REMOVED

**Subpart A—Detention of Aliens Prior to Order of Removal**

Sec.
236.1    Apprehension, custody, and detention.
236.2    Confined aliens, incompetents, and minors.
236.3    Detention and release of juveniles.
236.4    Removal of S–5, S–6, and S–7 nonimmigrants.
236.5    Fingerprints and photographs.
236.6–236.9    Reserved.

**Subpart B—Family Unity Program**

236.10    Description of program.
236.11    Definitions.
236.12    Eligibility.

236.13    Ineligible aliens.
236.14    Filing.
236.15    Voluntary departure and eligibility for employment.
236.16    Travel outside the United States.
236.17    Eligibility for Federal financial assistance programs.
236.18    Termination of Family Unity Program benefits.
    Authority: 8 U.S.C. 1103, 1182, 1224, 1225, 1226, 1227, 1362; 8 CFR part 2.

**Subpart A—Detention of Aliens Prior to Order of Removal**

### § 236.1  Apprehension, custody, and detention.

(a) *Detainers.* The issuance of a detainer under this section shall be governed by the provisions of § 287.7 of this chapter.

(b) *Warrant of arrest.* (1) *In general.* At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter.

(2) If, after the issuance of a warrant of arrest, a determination is made not to serve it, any officer authorized to issue such warrant may authorize its cancellation.

(c) *Custody issues and release procedures.* (1) After the expiration of the Transition Period Custody Rules under Public Law 104–208, no alien described in section 236(c)(1) of the Act shall be released from custody during removal proceedings except pursuant to section 236(c)(2) of the Act.

(2) Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.

(3) When an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign), in which event the alien may be taken into physical custody and detained. If

detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled.

(4) The provisions of § 103.6 of this chapter shall apply to any bonds authorized. Subject to the provisions of this section, the provisions of § 3.19 of this chapter shall govern availability to the respondent of recourse to other administrative authority for release from custody.

(5) An immigration judge may not exercise authority provided in this section and the review process described in paragraph (d) of this section shall not apply with respect to:

(i) Arriving aliens, as described in § 1.1(q) of this chapter, including aliens paroled pursuant to section 212(d)(5) of the Act, in removal proceedings,

(ii) Aliens described in section 237(a)(4) of the Act, or

(iii) After the expiration of section 303(b)(3) of Public Law 104–208, aliens described in section 236(c)(1) of the Act.

(d) *Appeals from custody decisions.* (1) *Application to immigration judge.* After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority in section 236 of the Act to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 3.19 of this chapter. If the alien has been released from custody, an application for amelioration of the terms of release must be filed within 7 days of release. Once a removal order becomes administratively final, determinations regarding custody and bond are made by the district director.

(2) *Application to the district director.* (i) After expiration of the 7-day period in paragraph (d)(1) of this section, the respondent may request review by the district director of the conditions of his or her release.

(ii) After an order becomes administratively final, the respondent may request review by the district director of the conditions of his or her release.

(3) *Appeal to the Board of Immigration Appeals.* An appeal relating to bond and custody determinations may be filed to the Board of Immigration Appeals in the following circumstances:

(i) In accordance with § 3.38 of this chapter, the alien or the Service may appeal the decision of an immigration judge pursuant to paragraph (d)(1) of this section.

(ii) The alien, within 10 days, may appeal from the district director's decision under paragraph (d)(2)(i) of this section.

(iii) The alien, within 10 days, may appeal from the district director's decision under paragraph (d)(2)(ii) of this section, except that no appeal shall be allowed when the Service notifies the alien that it is ready to execute an order of removal and takes the alien into custody for that purpose.

(4) *Effect of filing an appeal.* The filing of an appeal from a determination of an immigration judge or district director under this paragraph shall not operate to delay compliance with the order, nor stay the administrative proceedings or removal.

(e) *Privilege of communication.* Every detained alien shall be notified that he or she may communicate with the consular or diplomatic officers of the country of his or her nationality in the United States. Existing treaties with the following countries require immediate communication with appropriate consular or diplomatic officers whenever nationals of the following countries are detained in removal proceedings, whether or not requested by the alien and even if the alien requests that no communication be undertaken in his or her behalf. When notifying consular or diplomatic officials, Service officers shall not reveal the fact that any detained alien has applied for asylum or withholding of removal.

Albania [1]
Antigua
Armenia
Azerbaijan
Bahamas
Barbados
Belarus
Belize
Brunei
Bulgaria
China (People's Republic of) [2]
Costa Rica
Cyprus
Czech Republic
Dominica
Fiji
Gambia, The
Georgia
Ghana

Grenada
Guyana
Hungary
Jamaica
Kazakhstan
Kiribati
Kuwait
Kyrgyzstan
Malaysia
Malta
Mauritius
Moldova
Mongolia
Nigeria
Philippines
Poland
Romania
Russian Federation
St. Kitts/Nevis
St. Lucia
St. Vincent/Grenadines
Seychelles
Sierra Leone
Singapore
Slovak Republic
South Korea
Tajikistan
Tanzania
Tonga
Trinidad/Tobago
Turkmenistan
Tuvalu
Ukraine
United Kingdom [3]
U.S.S.R. [4]
Uzbekistan
Zambia

(f) *Notification to Executive Office for Immigration Review of change in custody status.* The Service shall notify the Immigration Court having administrative control over the Record of Proceeding of any change in custody location or of release from, or subsequent taking into, Service custody of a respondent/applicant pursuant to § 3.19(g) of this chapter.

### § 236.2  Confined aliens, incompetents, and minors.

(a) *Service.* If the respondent is confined, or if he or she is an incompetent, or a minor under the age of 14, the notice to appear, and the warrant of arrest, if issued, shall be served in the manner prescribed in § 239.1 of this chapter upon the person or persons specified by § 103.5a(c) of this chapter.

(b) *Service custody and cost of maintenance.* An alien confined because of physical or mental disability in an institution or hospital shall not be

---

[1] Arrangements with these countries provide that U.S. authorities shall notify responsible representatives within 72 hours of the arrest or detention of one of their nationals.

[2] When Taiwan nationals (who carry ''Republic of China'' passports) are detained, notification should be made to the nearest office of the Taiwan Economic and Cultural Representative's Office, the unofficial entity representing Taiwan's interests in the United States.

---

[3] British dependencies are also covered by this agreement. They are: Anguilla, British Virgin Islands, Hong Kong, Bermuda, Montserrat, and the Turks and Caicos Islands. Their residents carry British passports.

[4] All U.S.S.R. successor states are covered by this agreement. They are: Armenia, Azerbaijan, Belarus, Georgia, Kazakhstan, Kyrgyzstan, Moldova, Russian Federation, Tajikistan, Turkmenistan, Ukraine, and Uzbekistan.

accepted into physical custody by the Service until an order of removal has been entered and the Service is ready to remove the alien. When such an alien is an inmate of a public or private institution at the time of the commencement of the removal proceedings, expenses for the maintenance of the alien shall not be incurred by the Government until he or she is taken into physical custody by the Service.

### § 236.3 Detention and release of juveniles.

(a) *Juveniles.* A juvenile is defined as an alien under the age of 18 years.

(b) *Release.* Juveniles for whom bond has been posted, for whom parole has been authorized, or who have been ordered released on recognizance, shall be released pursuant to the following guidelines:

(1) Juveniles shall be released, in order of preference, to:

(i) A parent;

(ii) Legal guardian; or

(iii) An adult relative (brother, sister, aunt, uncle, grandparent) who is not presently in Service detention, unless a determination is made that the detention of such juvenile is required to secure his or her timely appearance before the Service or the Immigration Court or to ensure the juvenile's safety or that of others. In cases where the parent, legal guardian, or adult relative resides at a location distant from where the juvenile is detained, he or she may secure release at a Service office located near the parent, legal guardian, or adult relative.

(2) If an individual specified in paragraphs (b)(1)(i) through (iii) of this section cannot be located to accept custody of a juvenile, and the juvenile has identified a parent, legal guardian, or adult relative in Service detention, simultaneous release of the juvenile and the parent, legal guardian, or adult relative shall be evaluated on a discretionary case-by-case basis.

(3) In cases where the parent or legal guardian is in Service detention or outside the United States, the juvenile may be released to such person as is designated by the parent or legal guardian in a sworn affidavit, executed before an immigration officer or consular officer, as capable and willing to care for the juvenile's well-being. Such person must execute an agreement to care for the juvenile and to ensure the juvenile's presence at all future proceedings before the Service or an immigration judge.

(4) In unusual and compelling circumstances and in the discretion of the district director or chief patrol agent, a juvenile may be released to an adult, other than those identified in paragraphs (b)(1)(i) through (iii) of this section, who executes an agreement to care for the juvenile's well-being and to ensure the juvenile's presence at all future proceedings before the Service or an immigration judge.

(c) *Juvenile coordinator.* The case of a juvenile for whom detention is determined to be necessary should be referred to the ''Juvenile Coordinator,'' whose responsibilities should include, but not be limited to, finding suitable placement of the juvenile in a facility designated for the occupancy of juveniles. These may include juvenile facilities contracted by the Service, state or local juvenile facilities, or other appropriate agencies authorized to accommodate juveniles by the laws of the state or locality.

(d) *Detention.* In the case of a juvenile for whom detention is determined to be necessary, for such interim period of time as is required to locate suitable placement for the juvenile, whether such placement is under paragraph (b) or (c) of this section, the juvenile may be temporarily held by Service authorities or placed in any Service detention facility having separate accommodations for juveniles.

(e) *Refusal of release.* If a parent of a juvenile detained by the Service can be located, and is otherwise suitable to receive custody of the juvenile, and the juvenile indicates a refusal to be released to his or her parent, the parent(s) shall be notified of the juvenile's refusal to be released to the parent(s), and shall be afforded an opportunity to present their views to the district director, chief patrol agent, or immigration judge before a custody determination is made.

(f) *Notice to parent of application for relief.* If a juvenile seeks release from detention, voluntary departure, parole, or any form of relief from removal, where it appears that the grant of such relief may effectively terminate some interest inherent in the parent-child relationship and/or the juvenile's rights and interests are adverse with those of the parent, and the parent is presently residing in the United States, the parent shall be given notice of the juvenile's application for relief, and shall be afforded an opportunity to present his or her views and assert his or her interest to the district director or immigration judge before a determination is made as to the merits of the request for relief.

(g) *Voluntary departure.* Each juvenile, apprehended in the immediate vicinity of the border, who resides permanently in Mexico or Canada, shall be informed, prior to presentation of the voluntary departure form or being allowed to withdraw his or her application for admission, that he or she may make a telephone call to a parent, close relative, a friend, or to an organization found on the free legal services list. A juvenile who does not reside in Mexico or Canada who is apprehended shall be provided access to a telephone and must in fact communicate either with a parent, adult relative, friend, or with an organization found on the free legal services list prior to presentation of the voluntary departure form. If such juvenile, of his or her own volition, asks to contact a consular officer, and does in fact make such contact, the requirements of this section are satisfied.

(h) *Notice and request for disposition.* When a juvenile alien is apprehended, he or she must be given a Form I–770, Notice of Rights and Disposition. If the juvenile is less than 14 years of age or unable to understand the notice, the notice shall be read and explained to the juvenile in a language he or she understands. In the event a juvenile who has requested a hearing pursuant to the notice subsequently decides to accept voluntary departure or is allowed to withdraw his or her application for admission, a new Form I–770 shall be given to, and signed by the juvenile.

### § 236.4 Removal of S–5, S–6, and S–7 nonimmigrants.

(a) *Condition of classification.* As a condition of classification and continued stay in classification pursuant to section 101(a)(15)(S) of the Act, nonimmigrants in S classification must have executed Form I–854, Part B, Inter-agency Alien Witness and Informant Record, certifying that they have knowingly waived their right to a removal hearing and right to contest, other than on the basis of an application for withholding of deportation or removal, any removal action, including detention pending deportation or removal, instituted before lawful permanent resident status is obtained.

(b) *Determination of deportability.* (1) A determination to remove a deportable alien classified pursuant to section 101(a)(15)(S) of the Act shall be made by the district director having jurisdiction over the place where the alien is located.

(2) A determination to remove such a deportable alien shall be based on one or more of the grounds of deportability listed in section 237 of the Act based on conduct committed after, or conduct or a condition not disclosed to the Service prior to, the alien's classification as an S nonimmigrant under section 101(a)(15)(S) of the Act, or for a

violation of, or failure to adhere to, the particular terms and conditions of status in S nonimmigrant classification.

(c) *Removal procedures.* (1) A district director who determines to remove an alien witness or informant in S nonimmigrant classification shall notify the Commissioner, the Assistant Attorney General, Criminal Division, and the relevant law enforcement agency in writing to that effect. The Assistant Attorney General, Criminal Division, shall concur in or object to that decision. Unless the Assistant Attorney General, Criminal Division, objects within 7 days, he or she shall be deemed to have concurred in the decision. In the event of an objection by the Assistant Attorney General, Criminal Division, the matter will be expeditiously referred to the Deputy Attorney General for a final resolution. In no circumstances shall the alien or the relevant law enforcement agency have a right of appeal from any decision to remove.

(2) A district director who has provided notice as set forth in paragraph (c)(1) of this section and who has been advised by the Commissioner that the Assistant Attorney General, Criminal Division, has not objected shall issue a Warrant of Removal. The alien shall immediately be arrested and taken into custody by the district director initiating the removal. An alien classified under the provisions of section 101(a)(15)(S) of the Act who is determined, pursuant to a warrant issued by a district director, to be deportable from the United States shall be removed from the United States to his or her country of nationality or last residence. The agency that requested the alien's presence in the United States shall ensure departure from the United States and so inform the district director in whose jurisdiction the alien has last resided. The district director, if necessary, shall oversee the alien's departure from the United States and, in any event, shall notify the Commissioner of the alien's departure.

(d) *Withholding of removal.* An alien classified pursuant to section 101(a)(15)(S) of the Act who applies for withholding of removal shall have 10 days from the date the Warrant of Removal is served upon the alien to file an application for such relief with the district director initiating the removal order. The procedures contained in §§ 208.2 and 208.16 of this chapter shall apply to such an alien who applies for withholding of removal.

(e) *Inadmissibility.* An alien who applies for admission under the provisions of section 101(a)(15)(S) of the Act who is determined by an immigration officer not to be eligible for admission under that section or to be inadmissible to the United States under one or more of the grounds of inadmissibility listed in section 212 of the Act and which have not been previously waived by the Commissioner will be taken into custody. The district director having jurisdiction over the port-of-entry shall follow the notification procedures specified in paragraph (c)(1) of this section. A district director who has provided such notice and who has been advised by the Commissioner that the Assistant Attorney General, Criminal Division, has not objected shall remove the alien without further hearing. An alien may not contest such removal, other than by applying for withholding of removal.

### § 236.5   Fingerprints and photographs.

Every alien 14 years of age or older against whom proceedings based on deportability under section 237 of the Act are commenced under this part by service of a notice to appear shall be fingerprinted and photographed. Such fingerprints and photographs shall be made available to Federal, State, and local law enforcement agencies upon request to the district director or chief patrol agent having jurisdiction over the alien's record. Any such alien, regardless of his or her age, shall be photographed and/or fingerprinted if required by any immigration officer authorized to issue a notice to appear. Every alien 14 years of age or older who is found to be inadmissible to the United States and ordered removed by an immigration judge shall be fingerprinted, unless during the preceding year he or she has been fingerprinted at an American consular office.

### §§ 236.6—236.9   [Reserved]

## Subpart B—Family Unity Program

### § 236.10   Description of program.

The family unity program implements the provisions of section 301 of the Immigration Act of 1990, Public Law 101–649. This Act is referred to in this subpart as "IMMACT 90".

### § 236.11   Definitions.

In this subpart, the term:

*Eligible immigrant* means a qualified immigrant who is the spouse or unmarried child of a legalized alien.

*Legalized alien* means an alien who:

(1) Is a temporary or permanent resident under section 210 or 245A of the Act; or

(2) Is a permanent resident under section 202 of the Immigration Reform and Control Act of 1986 (Cuban/Haitian Adjustment).

### § 236.12   Eligibility.

(a) *General.* An alien who is not a lawful permanent resident is eligible to apply for benefits under the Family Unity Program if he or she establishes:

(1) That he or she entered the United States before May 5, 1988 (in the case of a relationship to a legalized alien described in subsection (b)(2)(B) or (b)(2)(C) of section 301 of IMMACT 90), or as of December 1, 1988 (in the case of a relationship to a legalized alien described in subsection (b)(2)(A) of section 301 of IMMACT 90), and has been continuously residing in the United States since that date; and

(2) That on May 5, 1988 (in the case of a relationship to a legalized alien described in subsection (b)(2)(B) or (b)(2)(C) of section 301 of IMMACT 90), or as of December 1, 1988 (in the case of a relationship to a legalized alien described in subsection (b)(2)(A) of section 301 of IMMACT 90), he or she was the spouse or unmarried child of a legalized alien, and that he or she has been eligible continuously since that time for family-sponsored second preference immigrant status under section 203(a)(2) of the Act based on the same relationship.

(b) *Legalization application pending as of May 5, 1988 or December 1, 1988.* An alien whose legalization application was filed on or before May 5, 1988 (in the case of a relationship to a legalized alien described in subsection (b)(2)(B) or (b)(2)(C) of section 301 of IMMACT 90), or as of December 1, 1988 (in the case of a relationship to a legalized alien described in subsection (b)(2)(A) of section 301 of IMMACT 90), but not approved until after that date will be treated as having been a legalized alien as of May 5, 1988 (in the case of a relationship to a legalized alien described in subsection (b)(2)(B) or (b)(2)(C) of section 301 of IMMACT 90), or as of December 1, 1988 (in the case of a relationship to a legalized alien described in subsection (b)(2)(A) of section 301 of IMMACT 90), for purposes of the Family Unity Program.

### § 236.13   Ineligible aliens.

The following categories of aliens are ineligible for benefits under the Family Unity Program:

(a) An alien who is deportable under any paragraph in section 237(a) of the Act, except paragraphs (1)(A), (1)(B), (1)(C), and (3)(A); provided that an alien who is deportable under section 237(a)(1)(A) of such Act is also ineligible for benefits under the Family Unity Program if deportability is based

upon a ground of inadmissibility described in section 212(a)(2) or (3) of the Act;

(b) An alien who has been convicted of a felony or three or more misdemeanors in the United States; or

(c) An alien described in section 241(b)(3)(B) of the Act.

### § 236.14   Filing.

(a) *General.* An application for voluntary departure under the Family Unity Program must be filed at the service center having jurisdiction over the alien's place of residence. A Form I–817, Application for Voluntary Departure under the Family Unity Program, must be filed with the correct fee required in § 103.7(b)(1) of this chapter and the required supporting documentation. A separate application with appropriate fee and documentation must be filed for each person claiming eligibility.

(b) *Decision.* The service center director has sole jurisdiction to adjudicate an application for benefits under the Family Unity Program. The director will provide the applicant with specific reasons for any decision to deny an application. Denial of an application may not be appealed. An applicant who believes that the grounds for denial have been overcome may submit another application with the appropriate fee and documentation.

(c) *Referral of denied cases for consideration of issuance of notice to appear.* If an application is denied, the case will be referred to the district director with jurisdiction over the alien's place of residence for consideration of whether to issue a notice to appear. After an initial denial, an applicant's case will not be referred for issuance of a notice to appear until 90 days from the date of the initial denial, to allow the alien the opportunity to file a new Form I–817 application in order to attempt to overcome the basis of the denial. However, if the applicant is found not to be eligible for benefits under § 236.13(b), the Service reserves the right to issue a notice to appear at any time after the initial denial.

### § 236.15   Voluntary departure and eligibility for employment.

(a) *Authority.* Voluntary departure under this section implements the provisions of section 301 of IMMACT 90, and authority to grant voluntary departure under the family unity program derives solely from that section. Voluntary departure under the family unity program shall be governed solely by this section, notwithstanding the provisions of section 240B of the Act and 8 CFR part 240.

(b) *Children of legalized aliens.* Children of legalized aliens residing in the United States, who were born during an authorized absence from the United States of mothers who are currently residing in the United States under voluntary departure pursuant to the Family Unity Program, may be granted voluntary departure under section 301 of IMMACT 90 for a period of 2 years.

(c) *Duration of voluntary departure.* An alien whose application for benefits under the Family Unity Program is approved will receive voluntary departure for 2 years, commencing with the date of approval of the application. Voluntary departure under this section shall be considered effective from the date on which the application was properly filed.

(d) *Employment authorization.* An alien granted benefits under the Family Unity Program is authorized to be employed in the United States and may apply for an employment authorization document on Form I–765, Application for Employment Authorization. The application may be filed concurrently with Form I–817. The application must be accompanied by the correct fee required by § 103.7(b)(1) of this chapter. The validity period of the employment authorization will coincide with the period of voluntary departure.

(e) *Extension of voluntary departure.* An application for an extension of voluntary departure under the Family Unity Program must be filed by the alien on Form I–817 along with the correct fee required in § 103.7(b)(1) of this chapter and the required supporting documentation. The submission of a copy of the previous approval notice will assist in shortening the processing time. An extension may be granted if the alien continues to be eligible for benefits under the Family Unity Program. However, an extension may not be approved if the legalized alien is a lawful permanent resident, and a petition for family-sponsored immigrant status has not been filed in behalf of the applicant. In such case the Service will notify the alien of the reason for the denial and afford him or her the opportunity to file another Form I–817 once the petition, Form I–130, has been filed in behalf of him or her. No charging document will be issued for a period of 90 days.

(f) *Supporting documentation for extension application.* Supporting documentation need not include documentation provided with the previous application(s). The extension application need only include changes to previous applications and evidence of continuing eligibility since the date of the prior approval.

### § 236.16   Travel outside the United States.

An alien granted Family Unity Program benefits who intends to travel outside the United States temporarily must apply for advance authorization using Form I–131, Application for Travel Document. The authority to grant an application for advance authorization for an alien granted Family Unity Program benefits rests solely with the district director. An alien who is granted advance authorization and returns to the United States in accordance with such authorization, and who is found not to be inadmissible under section 212(a)(2) or (3) of the Act, shall be inspected and admitted in the same immigration status as the alien had at the time of departure, and shall be provided the remainder of the voluntary departure period previously granted under the Family Unity Program.

### § 236.17   Eligibility for Federal financial assistance programs.

An alien granted Family Unity Program benefits based on a relationship to a legalized alien as defined in § 236.11 is ineligible for public welfare assistance in the same manner and for the same period as the legalized alien who is ineligible for such assistance under section 245A(h) or 210(f) of the Act, respectively.

### § 236. 18   Termination of Family Unity Program benefits.

(a) *Grounds for termination.* The Service may terminate benefits under the Family Unity Program whenever the necessity for the termination comes to the attention of the Service. Such grounds will exist in situations including, but not limited to, those in which:

(1) A determination is made that Family Unity Program benefits were acquired as the result of fraud or willful misrepresentation of a material fact;

(2) The beneficiary commits an act or acts which render him or her inadmissible as an immigrant or who are ineligible for benefits under the Family Unity Program;

(3) The legalized alien upon whose status benefits under the Family Unity Program were based loses his or her legalized status;

(4) The beneficiary is the subject of a final order of exclusion, deportation, or removal issued subsequent to the grant of Family Unity Program benefits unless such final order is based on entry without inspection; violation of status; or failure to comply with section 265 of the Act;

or inadmissibility at the time of entry other than inadmissibility pursuant to section 212(a)(2) or 212(a)(3) of the Act, regardless of whether the facts giving rise to such ground occurred before or after the benefits were granted; or

(5) A qualifying relationship to a legalized alien no longer exists.

(b) *Notice procedure.* Notice of intent to terminate and of the grounds thereof shall be served pursuant to the provisions of § 103.5a of this chapter. The alien shall be given 30 days to respond to the notice and may submit to the Service additional evidence in rebuttal. Any final decision of termination shall also be served pursuant to the provisions of § 103.5a of this chapter. Nothing in this section shall preclude the Service from commencing exclusion or deportation proceedings prior to termination of Family Unity Program benefits.

(c) *Effect of termination.* Termination of benefits under the Family Unity Program, other than as a result of a final order of removal, shall render the alien amenable to removal proceedings under section 240 of the Act. If benefits are terminated, the period of voluntary departure under this section is also terminated.

## PART 237—[REMOVED AND RESERVED]

100. Part 237 is removed and reserved.

101. Part 238 is added to read as follows:

## PART 238—EXPEDITED REMOVAL OF AGGRAVATED FELONS

Sec.
238.1   Proceedings under section 238(b) of the Act.

Authority: 8 U.S.C. 1228; 8 CFR part 2.

### § 238.1   Proceedings under section 238(b) of the Act.

(a) *Definitions.* As used in this part:

*Deciding Service officer* means a district director, chief patrol agent, or another immigration officer designated by a district director or chief patrol agent, who is not the same person as the issuing Service officer.

*Issuing Service officer* means any Service officer listed in § 239.1 of this chapter as authorized to issue notices to appear.

(b) *Preliminary consideration and Notice of Intent to Issue a Final Administrative Deportation Order; commencement of proceedings.*—(1) *Basis of Service charge.* An issuing Service officer shall cause to be served upon an alien a Form I–851, Notice of Intent to Issue a Final Administrative

Deportation Order (Notice of Intent), if the officer is satisfied that there is sufficient evidence, based upon questioning of the alien by an immigration officer and upon any other evidence obtained, to support a finding that the individual:

(i) Is an alien;

(ii) Has not been lawfully admitted for permanent residence, or has conditional permanent resident status under section 216 of the Act;

(iii) Has been convicted (as defined in section 101(a)(48) of the Act and as demonstrated by any of the documents or records listed in § 3.41 of this chapter) of an aggravated felony and such conviction has become final; and

(iv) Is deportable under section 237(a)(2)(A)(iii) of the Act, including an alien who has neither been admitted nor paroled, but who is conclusively presumed deportable under section 237(a)(2)(A)(iii) by operation of section 238(c) of the Act (''Presumption of Deportability'').

(2) *Notice.* (i) Removal proceedings under section 238(b) of the Act shall commence upon personal service of the Notice of Intent upon the alien, as prescribed by §§ 103.5a(a)(2) and 103.5a(c)(2) of this chapter. The Notice of Intent shall set forth the preliminary determinations and inform the alien of the Service's intention to issue a Form I–851A, Final Administrative Removal Order, without a hearing before an immigration judge. This Notice shall constitute the charging document. The Notice of Intent shall include allegations of fact and conclusions of law. It shall advise that the alien: has the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing, as long as counsel is authorized to practice in deportation proceedings; may inspect the evidence supporting the Notice of Intent; and may rebut the charges within 10 calendar days after service of such Notice (or 13 calendar days if service of the Notice was by mail).

(ii) The Notice of Intent also shall advise the alien that he or she may designate in writing, within the rebuttal period, the country to which he or she chooses to be deported in accordance with section 241 of the Act, in the event that a Final Administrative Removal Order is issued, and that the Service will honor such designation only to the extent permitted under the terms, limitations, and conditions of section 241 of the Act.

(iii) The Service must determine that the person served with the Notice of Intent is the person named on the notice.

(iv) The Service shall provide the alien with a list of available free legal services programs qualified under 8 CFR part 3 and organizations recognized pursuant to 8 CFR part 292, located within the district or sector where the Notice of Intent is issued.

(v) The Service must either provide the alien with a written translation of the Notice of Intent or explain the contents of the Notice of Intent to the alien in the alien's native language or in a language that the alien understands.

(c) *Alien's response.* (1) *Time for response.* The alien will have 10 calendar days from service of the Notice of Intent, or 13 calendar days if service is by mail, to file a response to the Notice of Intent. In the response, the alien may: designate his or her choice of country for removal; submit a written response rebutting the allegations supporting the charge and/or requesting the opportunity to review the Government's evidence; and/or request in writing an extension of time for response, stating the specific reasons why such an extension is necessary. Alternatively, the alien may, in writing, choose to accept immediate issuance of a Final Administrative Removal Order. The deciding Service officer may extend the time for response for good cause shown. A request for extension of time for response will not automatically extend the period for the response. The alien will be permitted to file a response outside the prescribed period only if the deciding Service officer permits it. The alien must send the response to the deciding Service officer at the address provided in the Notice of Intent.

(2) *Nature of rebuttal or request to review evidence.* (i) If an alien chooses to rebut the allegations contained in the Notice of Intent, the alien's written response must indicate which finding(s) are being challenged and should be accompanied by affidavit(s), documentary information, or other specific evidence supporting the challenge.

(ii) If an alien's written response requests the opportunity to review the Government's evidence, the Service shall serve the alien with a copy of the evidence in the record of proceeding upon which the Service is relying to support the charge. The alien may, within 10 calendar days following service of the Government's evidence (13 calendar days if service is by mail), furnish a final response in accordance with paragraph (c)(1) of this section. If the alien's final response is a rebuttal of the allegations, such a final response should be accompanied by affidavit(s), documentary information, or other

specific evidence supporting the challenge.

(d) *Determination by deciding Service officer.* (1) *No response submitted or concession of deportability.* If the deciding Service officer does not receive a timely response and the evidence in the record of proceeding establishes deportability by clear, convincing, and unequivocal evidence, or if the alien concedes deportability, then the deciding Service officer shall issue and cause to be served upon the alien a Final Administrative Removal Order that states the reasons for the deportation decision. The alien may, in writing, waive the 14-day waiting period before execution of the final order of removal provided in a paragraph (f) of this section.

(2) *Response submitted.* (i) *Insufficient rebuttal; no genuine issue of material fact.* If the alien timely submits a rebuttal to the allegations, but the deciding Service officer finds that deportability is established by clear, convincing, and unequivocal evidence in the record of proceeding, the deciding Service officer shall issue and cause to be served upon the alien a Final Administrative Removal Order that states the reasons for the decision of deportability.

(ii) *Additional evidence required.* (A) If the deciding Service officer finds that the record of proceeding, including the alien's timely rebuttal, raises a genuine issue of material fact regarding the preliminary findings, the deciding Service officer may either obtain additional evidence from any source, including the alien, or cause to be issued a notice to appear to initiate removal proceedings under section 240 of the Act. The deciding Service officer may also obtain additional evidence from any source, including the alien, if the deciding Service officer deems that such additional evidence may aid the officer in the rendering of a decision.

(B) If the deciding Service officer considers additional evidence from a source other than the alien, that evidence shall be made a part of the record of proceeding, and shall be provided to the alien. If the alien elects to submit a response to such additional evidence, such response must be filed with the Service within 10 calendar days of service of the additional evidence (or 13 calendar days if service is by mail). If the deciding Service officer finds, after considering all additional evidence, that deportability is established by clear, convincing, and unequivocal evidence in the record of proceeding, the deciding Service officer shall issue and cause to be served upon the alien a Final Administrative

Removal Order that states the reasons for the decision of deportability.

(iii) *Conversion to proceedings under section 240 of the Act.* If the deciding Service officer finds that the alien is not amenable to removal under section 238 of the Act, the deciding Service officer shall terminate the expedited proceedings under section 238 of the Act and shall, where appropriate, cause to be issued a notice to appear for the purpose of initiating removal proceedings before an immigration judge under section 240 of the Act.

(3) *Termination of proceedings by deciding Service officer.* Only the deciding Service officer may terminate proceedings under section 238 of the Act, in accordance with this section.

(e) *Proceedings commenced under section 240 of the Act.* In any proceeding commenced under section 240 of the Act which is based on deportability under section 237 of the Act, if it appears that the respondent alien is subject to removal pursuant to section 238 of the Act, the immigration judge may, upon the Service's request, terminate the case and, upon such termination, the Service may commence administrative proceedings under section 238 of the Act. However, in the absence of any such request, the immigration judge shall complete the proceeding commenced under section 240 of the Act.

(f) *Executing final removal order of deciding Service officer.* (1) *Time of execution.* Upon the issuance of a Final Administrative Removal Order, the Service shall issue a Warrant of Removal in accordance with § 241.2 of this chapter; such warrant shall be executed no sooner than 14 calendar days after the date the Final Administrative Removal Order is issued, unless the alien knowingly, voluntarily, and in writing waives the 14-day period.

(2) *Country to which alien is to be removed.* The deciding Service officer shall designate the country of removal in the manner prescribed by section 241 of the Act.

(g) *Arrest and detention.* At the time of issuance of a Notice of Intent or at any time thereafter and up to the time the alien becomes the subject of a Warrant of Removal, the alien may be arrested and taken into custody under the authority of a Warrant of Arrest issued by an officer listed in § 287.5(e)(2) of this chapter. The decision of the Service concerning custody or bond shall not be administratively appealable during proceedings initiated under section 238 of the Act and this part.

(h) *Record of proceeding.* The Service shall maintain a record of proceeding for judicial review of the Final Administrative Removal Order sought by any petition for review. The record of proceeding shall include, but not necessarily be limited to: the charging document (Notice of Intent); the Final Administrative Removal Order (including any supplemental memorandum of decision); the alien's response, if any; all evidence in support of the charge; and any admissible evidence, briefs, or documents submitted by either party respecting deportability. The executed duplicate of the Notice of Intent in the record of proceedings shall be retained as evidence that the individual upon whom the notice for the proceeding was served was, in fact, the alien named in the notice.

102. Part 239 is added to read as follows:

## PART 239—INITIATION OF REMOVAL PROCEEDINGS

Sec.
239.1    Notice to appear.
239.2    Cancellation of notice to appear.
239.3    Effect of filing notice to appear.
   Authority: 8 U.S.C. 1103, 1221, 1229; 8 CFR part 2.

### § 239.1    Notice to appear.

(a) *Commencement.* Every removal proceeding conducted under section 240 of the Act to determine the deportability or inadmissibility of an alien is commenced by the filing of a notice to appear with the Immigration Court. Any immigration officer performing an inspection of an arriving alien at a port-of-entry may issue a notice to appear to such an alien. In addition, the following officers, or officers acting in such capacity, may issue a notice to appear:

(1) District directors (except foreign);
(2) Deputy district directors (except foreign);
(3) Assistant district directors for investigations;
(4) Deputy assistant district directors for investigations;
(5) Assistant district directors for deportation;
(6) Deputy assistant district directors for deportation;
(7) Assistant district directors for examinations;
(8) Deputy assistant district directors for examinations;
(9) Officers in charge (except foreign);
(10) Assistant officers in charge (except foreign);
(11) Chief patrol agents;
(12) Deputy chief patrol agents;
(13) Associate chief patrol agents;

(14) Assistant chief patrol agents;

(15) Patrol agents in charge;

(16) The Assistant Commissioner, Investigations;

(17) Service center directors;

(18) Deputy center directors;

(19) Assistant center directors for examinations;

(20) Supervisory asylum officers;

(21) Institutional Hearing Program directors; or

(22) Deputy Institutional Hearing Program directors.

(b) *Service of notice to appear.* Service of the notice to appear shall be in accordance with section 239 of the Act.

### § 239.2   Cancellation of notice to appear.

(a) Any officer authorized by § 239.1(a) to issue a notice to appear may cancel such notice prior to jurisdiction vesting with the immigration judge pursuant to § 3.14 of this chapter provided the officer is satisfied that:

(1) The respondent is a national of the United States;

(2) The respondent is not deportable or inadmissible under immigration laws;

(3) The respondent is deceased;

(4) The respondent is not in the United States;

(5) The notice was issued for the respondent's failure to file a timely petition as required by section 216(c) of the Act, but his or her failure to file a timely petition was excused in accordance with section 216(d)(2)(B) of the Act;

(6) The notice to appear was improvidently issued, or

(7) Circumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the government.

(b) A notice to appear issued pursuant to section 235(b)(3) of the Act may be canceled under provisions in paragraphs (a)(2) and (a)(6) of this section only by the issuing officer, unless it is impracticable for the issuing officer to cancel the notice.

(c) *Motion to dismiss.* After commencement of proceedings pursuant to § 3.14 of this chapter, Service counsel, or any officer enumerated in paragraph (a) of this section may move for dismissal of the matter on the grounds set out under paragraph (a) of this section. Dismissal of the matter shall be without prejudice to the alien or the Service.

(d) *Motion for remand.* After commencement of the hearing, Service counsel, or any officer enumerated in paragraph (a) of this section may move

for remand of the matter to district jurisdiction on the ground that the foreign relations of the United States are involved and require further consideration. Remand of the matter shall be without prejudice to the alien or the Service.

(e) *Warrant of arrest.* When a notice to appear is canceled or proceedings are terminated under this section any outstanding warrant of arrest is canceled.

(f) *Termination of removal proceedings by immigration judge.* An immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors; in every other case, the removal hearing shall be completed as promptly as possible notwithstanding the pendency of an application for naturalization during any state of the proceedings.

### § 239.3   Effect of filing notice to appear.

The filing of a notice to appear shall have no effect in determining periods of unlawful presence as defined in section 212(a)(9)(B) of the Act.

### §§ 240.1–240.20   [Redesignated as §§ 244.3–244.22]

103. Sections 240.1 through 240.20 are redesignated as §§ 244.3 through 244.22.

104. Part 240 is revised to read as follows:

## PART 240—PROCEEDINGS TO DETERMINE REMOVABILITY OF ALIENS IN THE UNITED STATES

### Subpart A—Removal Proceedings

Sec.
240.1   Immigration judges.
240.2   Service counsel.
240.3   Representation by counsel.
240.4   Incompetent respondents.
240.5   Interpreter.
240.6   Postponement and adjournment of hearing.
240.7   Evidence in removal proceedings under section 240 of the Act.
240.8   Burdens of proof in removal proceedings.
240.9   Contents of record.
240.10   Hearing.
240.11   Ancillary matters, applications.
240.12   Decision of the immigration judge.
240.13   Notice of decision.
240.14   Finality of order.
240.15   Appeals.
240.16   Application of new procedures or termination of proceedings in old proceedings pursuant to section 309(c) of Public Law 104–208.
240.17–240.19   [Reserved]

### Subpart B—Cancellation of Removal

240.20   Cancellation of removal and adjustment of status under section 240A of the Act.
240.21–240.24   [Reserved]

### Subpart C—Voluntary Departure

240.25   Voluntary departure—authority of the Service.
240.26   Voluntary departure—authority of the Executive Office for Immigration Review.
240.27–240.29   [Reserved]

### Subpart D—Exclusion of Aliens (for proceedings commenced prior to April 1, 1997)

240.30   Proceedings prior to April 1, 1997.
240.31   Authority of immigration judges.
240.32   Hearing.
240.33   Applications for asylum or withholding of deportation.
240.34   Renewal of application for adjustment of status under section 245 of the Act.
240.35   Decision of the immigration judge; notice to the applicant.
240.36   Finality of order.
240.37   Appeals.
240.38   Fingerprinting of excluded aliens.
240.39   [Reserved]

### Subpart E—Proceedings to determine deportability of aliens in the United States: Hearing and Appeal (for proceedings commenced prior to April 1, 1997)

240.40   Proceedings commenced prior to April 1, 1997.
240.41   Immigration judges.
240.42   Representation by counsel.
240.43   Incompetent respondents.
240.44   Interpreter.
240.45   Postponement and adjournment of hearing.
240.46   Evidence.
240.47   Contents of record.
240.48   Hearing.
240.49   Ancillary matters, applications.
240.50   Decision of the immigration judge.
240.51   Notice of decision.
240.52   Finality of order.
240.53   Appeals.
240.54   [Reserved]

### Subpart F—Suspension of Deportation and Voluntary Departure (for proceedings commenced prior to April 1, 1997)

240.55   Proceedings commenced prior to April 1, 1997.
240.56   Application.
240.57   Extension of time to depart.

### Subpart G—Civil Penalties for Failure to Depart [Reserved]

Authority: 8 U.S.C. 1103; 1182, 1186a, 1224, 1225, 1226, 1227, 1251, 1252 note, 1252a, 1252b, 1362; 8 CFR part 2.

### Subpart A—Removal Proceedings

### § 240.1   Immigration judges.

(a) *Authority.* In any removal proceeding pursuant to section 240 of the Act, the immigration judge shall have the authority to: determine removability pursuant to section

240(a)(1) of the Act; to make decisions, including orders of removal as provided by section 240(c)(1)(A) of the Act; to determine applications under sections 208, 212(a)(2)(F), 212(a)(6)(F)(ii), 212(a)(9)(B)(v), 212(d)(11), 212(d)(12), 212(g), 212(h), 212(i), 212(k), 237(a)(1)(E)(iii), 237(a)(1)(H), 237(a)(3)(C)(ii), 240A(a) and (b), 240B, 245, and 249 of the Act; to order withholding of removal pursuant to section 241(b)(3) of the Act; and to take any other action consistent with applicable law and regulations as may be appropriate. In determining cases referred for further inquiry, immigration judges shall have the powers and authority conferred upon them by the Act and this chapter. Subject to any specific limitation prescribed by the Act and this chapter, immigration judges shall also exercise the discretion and authority conferred upon the Attorney General by the Act as is appropriate and necessary for the disposition of such cases. An immigration judge may certify his or her decision in any case under section 240 of the Act to the Board of Immigration Appeals when it involves an unusually complex or novel question of law or fact. Nothing contained in this part shall be construed to diminish the authority conferred on immigration judges under sections 101(b)(4) and 103 of the Act.

(b) *Withdrawal and substitution of immigration judges.* The immigration judge assigned to conduct the hearing shall at any time withdraw if he or she deems himself or herself disqualified. If an immigration judge becomes unavailable to complete his or her duties, another immigration judge may be assigned to complete the case. The new immigration judge shall familiarize himself or herself with the record in the case and shall state for the record that he or she has done so.

(c) *Conduct of hearing.* The immigration judge shall receive and consider material and relevant evidence, rule upon objections, and otherwise regulate the course of the hearing.

**§ 240.2   Service counsel.**

(a) *Authority.* Service counsel shall present on behalf of the government evidence material to the issues of deportability or inadmissibility and any other issues that may require disposition by the immigration judge. The duties of the Service counsel include, but are not limited to, the presentation of evidence and the interrogation, examination, and cross-examination of the respondent or other witnesses. Nothing contained in this subpart diminishes the authority of an immigration judge to conduct

proceedings under this part. The Service counsel is authorized to appeal from a decision of the immigration judge pursuant to § 3.38 of this chapter and to move for reopening or reconsideration pursuant to § 3.23 of this chapter.

(b) *Assignment.* In a removal proceeding, the Service shall assign an attorney to each case within the provisions of § 240.10(d), and to each case in which an unrepresented respondent is incompetent or is under 18 years of age, and is not accompanied by a guardian, relative, or friend. In a case in which the removal proceeding would result in an order of removal, the Service shall assign an attorney to each case in which a respondent's nationality is in issue. A Service attorney shall be assigned in every case in which the Commissioner approves the submission of non-record information under § 240.11(a)(3). In his or her discretion, whenever he or she deems such assignment necessary or advantageous, the General Counsel may assign a Service attorney to any other case at any stage of the proceeding.

**§ 240.3   Representation by counsel.**

The respondent may be represented at the hearing by an attorney or other representative qualified under 8 CFR part 292.

**§ 240.4   Incompetent respondents.**

When it is impracticable for the respondent to be present at the hearing because of mental incompetency, the attorney, legal representative, legal guardian, near relative, or friend who was served with a copy of the notice to appear shall be permitted to appear on behalf of the respondent. If such a person cannot reasonably be found or fails or refuses to appear, the custodian of the respondent shall be requested to appear on behalf of the respondent.

**§ 240.5   Interpreter.**

Any person acting as an interpreter in a hearing before an immigration judge under this part shall be sworn to interpret and translate accurately, unless the interpreter is an employee of the United States Government, in which event no such oath shall be required.

**§ 240.6   Postponement and adjournment of hearing.**

After the commencement of the hearing, the immigration judge may grant a reasonable adjournment either at his or her own instance or, for good cause shown, upon application by the respondent or the Service.

**§ 240.7   Evidence in removal proceedings under section 240 of the Act.**

(a) *Use of prior statements.* The immigration judge may receive in evidence any oral or written statement that is material and relevant to any issue in the case previously made by the respondent or any other person during any investigation, examination, hearing, or trial.

(b) *Testimony.* Testimony of witnesses appearing at the hearing shall be under oath or affirmation administered by the immigration judge.

(c) *Depositions.* The immigration judge may order the taking of depositions pursuant to § 3.35 of this chapter.

**§ 240.8   Burdens of proof in removal proceedings.**

(a) *Deportable aliens.* A respondent charged with deportability shall be found to be removable if the Service proves by clear and convincing evidence that the respondent is deportable as charged.

(b) *Arriving aliens.* In proceedings commenced upon a respondent's arrival in the Untied States or after the revocation or expiration of parole, the respondent must prove that he or she is clearly and beyond a doubt entitled to be admitted to the United States and is not inadmissible as charged.

(c) *Aliens present in the United States without being admitted or paroled.* In the case of a respondent charged as being in the United States without being admitted or paroled, the Service must first establish the alienage of the respondent. Once alienage has been established, unless the respondent demonstrates by clear and convincing evidence that he or she is lawfully in the United States pursuant to a prior admission, the respondent must prove that he or she is clearly and beyond a doubt entitled to be admitted to the United States and is not inadmissible as charged.

(d) *Relief from removal.* The respondent shall have the burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion. If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply.

**§ 240.9   Contents of record.**

The hearing before the immigration judge, including the testimony, exhibits, applications, proffers, and requests, the immigration judge's decision, and all

written orders, motions, appeals, briefs, and other papers filed in the proceedings shall constitute the record in the case. The hearing shall be recorded verbatim except for statements made off the record with the permission of the immigration judge. In his or her discretion, the immigration judge may exclude from the record any arguments made in connection with motions, applications, requests, or objections, but in such event the person affected may submit a brief.

### § 240.10   Hearing.

(a) *Opening.* In a removal proceeding, the immigration judge shall:

(1) Advise the respondent of his or her right to representation, at no expense to the government, by counsel of his or her own choice authorized to practice in the proceedings and require the respondent to state then and there whether he or she desires representation;

(2) Advise the respondent of the availability of free legal services provided by organizations and attorneys qualified under 8 CFR part 3 and organizations recognized pursuant to § 292.2 of this chapter, located in the district where the removal hearing is being held;

(3) Ascertain that the respondent has received a list of such programs, and a copy of appeal rights;

(4) Advise the respondent that he or she will have a reasonable opportunity to examine and object to the evidence against him or her, to present evidence in his or her own behalf and to cross-examine witnesses presented by the government (but the respondent shall not be entitled to examine such national security information as the government may proffer in opposition to the respondent's admission to the United States or to an application by the respondent for discretionary relief);

(5) Place the respondent under oath;

(6) Read the factual allegations and the charges in the notice to appear to the respondent and explain them in non-technical language; and

(7) Enter the notice to appear as an exhibit in the Record of Proceeding.

(b) *Public access to hearings.* Removal hearings shall be open to the public, except that the immigration judge may, in his or her discretion, close proceedings as provided in § 3.27 of this chapter.

(c) *Pleading by respondent.* The immigration judge shall require the respondent to plead to the notice to appear by stating whether he or she admits or denies the factual allegations and his or her removability under the charges contained therein. If the respondent admits the factual allegations and admits his or her removability under the charges and the immigration judge is satisfied that no issues of law or fact remain, the immigration judge may determine that removability as charged has been established by the admissions of the respondent. The immigration judge shall not accept an admission of removability from an unrepresented respondent who is incompetent or under the age of 18 and is not accompanied by an attorney or legal representative, a near relative, legal guardian, or friend; nor from an officer of an institution in which a respondent is an inmate or patient. When, pursuant to this paragraph, the immigration judge does not accept an admission of removability, he or she shall direct a hearing on the issues.

(d) *Issues of removability.* When removability is not determined under the provisions of paragraph (c) of this section, the immigration judge shall request the assignment of an Service counsel, and shall receive evidence as to any unresolved issues, except that no further evidence need be received as to any facts admitted during the pleading. The alien shall provide a court certified copy of a Judicial Recommendation Against Deportation (JRAD) to the immigration judge when such recommendation will be the basis of denying any charge(s) brought by the Service in the proceedings against the alien. No JRAD is effective against a charge of deportability under former section 241(a)(11) of the Act or if the JRAD was granted on or after November 29, 1990.

(e) *Additional charges in removal hearings.* At any time during the proceeding, additional or substituted charges of inadmissibility and/or deportability and/or factual allegations may be lodged by the Service in writing. The alien in removal proceedings shall be served with a copy of these additional charges and allegations. The immigration judge shall read the additional factual allegations and charges to the alien and explain them to him or her. The immigration judge shall advise the alien, if he or she is not represented by counsel, that the alien may be so represented, and that he or she may be given a reasonable continuance to respond to the additional factual allegations and charges. Thereafter, the provision of § 240.6(b) relating to pleading shall apply to the additional factual allegations and charges.

(f) *Country of removal.* The immigration judge shall notify the alien that if he or she is finally ordered removed, the country of removal will in the first instance be directed pursuant to section 241(b) of the Act to the country designated by the alien, unless section 241(b)(2)(C) of the Act applies, and shall afford him or her an opportunity then and there to make such designation. The immigration judge shall then specify and state for the record the country, or countries in the alternative, to which the alien's removal will be directed pursuant to section 241(b) of the Act if the country of his or her designation will not accept him or her into its territory, or fails to furnish timely notice of acceptance, or if the alien declines to designate a country.

(g) In the event that the Service is unable to remove the alien to the specified or alternative country or countries, the Service may remove the alien to any other country as permitted by section 241(b) of the Act.

### § 240.11   Ancillary matters, applications.

(a) *Creation of the status of an alien lawfully admitted for permanent residence.* (1) In a removal proceeding, an alien may apply to the immigration judge for cancellation of removal under section 240A of the Act, adjustment of status under section 245 of the Act, adjustment of status under section 1 of the Act of November 2, 1966 (as modified by section 606 of Public Law 104–132) or under section 101 or 104 of the Act of October 28, 1977, or for the creation of a record of lawful admission for permanent residence under section 249 of the Act. The application shall be subject to the requirements of § 240.20, and 8 CFR parts 245 and 249. The approval of any application made to the immigration judge under section 245 of the Act by an alien spouse (as defined in section 216(g)(1) of the Act) or by an alien entrepreneur (as defined in section 216A(f)(1) of the Act) shall result in the alien's obtaining the status of lawful permanent resident on a conditional basis in accordance with the provisions of section 216 or 216A of the Act, whichever is applicable. However, the Petition to Remove the Conditions on Residence required by section 216(c) of the Act, or the Petition by Entrepreneur to Remove Conditions required by section 216A(c) of the Act shall be made to the director in accordance with 8 CFR part 216.

(2) In conjunction with any application for creation of status of an alien lawfully admitted for permanent residence made to an immigration judge, if the alien is inadmissible under any provision of section 212(a) of the Act, and believes that he or she meets the eligibility requirements for a waiver of the ground of inadmissibility, he or

she may apply to the immigration judge for such waiver. The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing.

(3) In exercising discretionary power when considering an application for status as a permanent resident under this chapter, the immigration judge may consider and base the decision on information not contained in the record and not made available for inspection by the alien, provided the Commissioner has determined that such information is relevant and is classified under the applicable Executive Order as requiring protection from unauthorized disclosure in the interest of national security. Whenever the immigration judge believes that he or she can do so while safeguarding both the information and its source, the immigration judge should inform the alien of the general nature of the information in order that the alien may have an opportunity to offer opposing evidence. A decision based in whole or in part on such classified information shall state that the information is material to the decision.

(b) *Voluntary departure.* The alien may apply to the immigration judge for voluntary departure in lieu of removal pursuant to section 240B of the Act and subpart C of this part.

(c) *Applications for asylum and withholding of removal.* (1) If the alien expresses fear of persecution or harm upon return to any of the countries to which the alien might be removed pursuant to § 240.10(f), and the alien has not previously filed an application for asylum or withholding of removal that has been referred to the immigration judge by an asylum officer in accordance with § 208.14 of this chapter, the immigration judge shall:

(i) Advise the alien that he or she may apply for asylum in the United States or withholding of removal to those countries;

(ii) Make available the appropriate application forms; and

(iii) Advise the alien of the privilege of being represented by counsel at no expense to the government and of the consequences, pursuant to section 208(d)(6) of the Act, of knowingly filing a frivolous application for asylum. The immigration judge shall provide to the alien a list of persons who have indicated their availability to represent aliens in asylum proceedings on a *pro bono* basis.

(2) An application for asylum or withholding of removal must be filed with the Immigration Court, pursuant to § 208.4(c) of this chapter. Upon receipt of an application that has not been referred to an asylum officer, the Immigration Court shall forward a copy to the Department of State pursuant to § 208.11 of this chapter and shall calendar the case for a hearing. The reply, if any, from the Department of State, unless classified under the applicable Executive Order, shall be given to both the alien and to the Service counsel representing the government.

(3) Applications for asylum and withholding of removal so filed will be decided by the immigration judge pursuant to the requirements and standards established in 8 CFR part 208 of this chapter after an evidentiary hearing to resolve factual issues in dispute. An evidentiary hearing extending beyond issues related to the basis for a mandatory denial of the application pursuant to § 208.14 or § 208.16 of this chapter is not necessary once the immigration judge has determined that such a denial is required.

(i) Evidentiary hearings on applications for asylum or withholding of removal will be open to the public unless the alien expressly requests that the hearing be closed pursuant to § 3.27 of this chapter. The immigration judge shall inquire whether the alien requests such closure.

(ii) Nothing in this section is intended to limit the authority of the immigration judge to properly control the scope of any evidentiary hearing.

(iii) During the removal hearing, the alien shall be examined under oath on his or her application and may present evidence and witnesses in his or her own behalf. The alien has the burden of establishing that he or she is a refugee as defined in section 101(a)(42) of the Act pursuant to the standards set forth in § 208.13 of this chapter.

(iv) Service counsel may call witnesses and present evidence for the record, including information classified under the applicable Executive Order, provided the immigration judge or the Board has determined that such information is relevant to the hearing. When the immigration judge receives such classified information, he or she shall inform the alien. The agency that provides the classified information to the immigration judge may provide an unclassified summary of the information for release to the alien, whenever it determines it can do so consistently with safeguarding both the classified nature of the information and its sources. The summary should be as detailed as possible, in order that the alien may have an opportunity to offer opposing evidence. A decision based in whole or in part on such classified information shall state whether such information is material to the decision.

(4) The decision of an immigration judge to grant or deny asylum or withholding of removal shall be communicated to the alien and to the Service counsel. An adverse decision shall state why asylum or withholding of removal was denied.

(d) *Application for relief under sections 237(a)(1)(H) and 237(a)(1)(E)(iii) of the Act.* The respondent may apply to the immigration judge for relief from removal under sections 237(a)(1)(H) and 237(a)(1)(E)(iii) of the Act.

(e) *General.* An application under this section shall be made only during the hearing and shall not be held to constitute a concession of alienage or deportability in any case in which the respondent does not admit his or her alienage or deportability. However, nothing in this section shall prohibit the Service from using information supplied in an application for asylum or withholding of deportation or removal submitted to the Service on or after January 4, 1995, as the basis for issuance of a charging document or to establish alienage or deportability in a case referred to an immigration judge under § 208.14(b) of this chapter. The alien shall have the burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion. Nothing contained in this section is intended to foreclose the respondent from applying for any benefit or privilege that he or she believes himself or herself eligible to receive in proceedings under this part. Nothing in this section is intended to limit the Attorney General's authority to remove an alien to any country permitted by section 241(b) of the Act.

(f) *Fees.* The alien shall not be required to pay a fee on more than one application within paragraphs (a) and (c) of this section, provided that the minimum fee imposed when more than one application is made shall be determined by the cost of the application with the highest fee.

**§ 240.12  Decision of the immigration judge.**

(a) *Contents.* The decision of the immigration judge may be oral or written. The decision of the immigration judge shall include a finding as to inadmissibility or deportability. The formal enumeration of findings is not required. The decision shall also contain reasons for granting or denying the request. The decision shall be

concluded with the order of the immigration judge.

(b) *Summary decision.* Notwithstanding the provisions of paragraph (a) of this section, in any case where inadmissibility or deportability is determined on the pleadings pursuant to § 240.10(b) and the respondent does not make an application under § 240.11, the alien is statutorily ineligible for relief, or the respondent applies for voluntary departure only and the immigration judge grants the application, the immigration judge may enter a summary decision or, if voluntary departure is granted, a summary decision with an alternate order of removal.

(c) *Order of the immigration judge.* The order of the immigration judge shall direct the respondent's removal, or the termination of the proceedings, or such other disposition of the case as may be appropriate. When removal is ordered, the immigration judge shall specify the country, or countries in the alternate, to which respondent's removal shall be directed. The immigration judge is authorized to issue orders in the alternative or in combination as he or she may deem necessary.

### § 240.13   Notice of decision.

(a) *Written decision.* A written decision shall be served upon the respondent and the Service counsel, together with the notice referred to in § 3.3 of this chapter. Service by mail is complete upon mailing.

(b) *Oral decision.* An oral decision shall be stated by the immigration judge in the presence of the respondent and the Service counsel, if any, at the conclusion of the hearing. A copy of the summary written order shall be furnished at the request of the respondent or the Service counsel.

(c) *Summary decision.* When the immigration judge renders a summary decision as provided in § 240.12(b), he or she shall serve a copy thereof upon the respondent and the Service counsel at the conclusion of the hearing.

(d) *Decision to remove.* If the immigration judge decides that the respondent is removable and orders the respondent to be removed, the immigration judge shall advise the respondent of such decision, and of the consequences for failure to depart under the order of removal, including civil and criminal penalties described at sections 274D and 243 of the Act. Unless appeal from the decision is waived, the respondent shall be furnished with Form EOIR–26, Notice of Appeal, and advised of the provisions of § 240.15.

### § 240.14   Finality of order.

The order of the immigration judge shall become final in accordance with § 3.39 of this chapter.

### § 240.15   Appeals.

Pursuant to 8 CFR part 3, an appeal shall lie from a decision of an immigration judge to the Board of Immigration Appeals, except that no appeal shall lie from an order of removal entered in absentia. The procedures regarding the filing of a Form EOIR 26, Notice of Appeal, fees, and briefs are set forth in §§ 3.3, 3.31, and 3.38 of this chapter. An appeal shall be filed within 30 calendar days after the mailing of a written decision, the stating of an oral decision, or the service of a summary decision. The filing date is defined as the date of receipt of the Notice of Appeal by the Board of Immigration Appeals. The reasons for the appeal shall be stated in the Notice of Appeal in accordance with the provisions of § 3.3(b) of this chapter. Failure to do so may constitute a ground for dismissal of the appeal by the Board pursuant to § 3.1(d)(1–a) of this chapter.

### § 240.16   Application of new procedures or termination of proceedings in old proceedings pursuant to section 309(c) of Public Law 104–208.

The Attorney General shall have the sole discretion to apply the provisions of section 309(c) of Public Law 104–208, which provides for the application of new removal procedures to certain cases in exclusion or deportation proceedings and for the termination of certain proceedings in exclusion or deportation proceedings and initiation of new removal proceedings. The Attorney General's application of the provisions of section 309(c) shall become effective upon publication of a notice in the Federal Register. However, if the Attorney General determines, in the exercise of his or her discretion, that the delay caused by publication would adversely affect the interests of the United States or the effective enforcement of the immigration laws, the Attorney General's application shall become effective immediately upon issuance, and shall be published in the Federal Register as soon as practicable thereafter.

### §§ 240.17—240.19   [Reserved]

## Subpart B—Cancellation of removal

### § 240.20   Cancellation of removal and adjustment of status under section 240A of the Act.

(a) *Jurisdiction.* An application for the exercise of discretion under section 240A of the Act shall be submitted on Form EOIR–42, Application for Cancellation of Removal, to the Immigration Court having administrative control over the Record of Proceeding of the underlying removal proceeding under section 240 of the Act. The application must be accompanied by payment of the filing fee as set forth in § 103.7(b) of this chapter or a request for a fee waiver.

(b) *Filing the application.* The application may be filed only with the Immigration Court after jurisdiction has vested pursuant to § 3.14 of this chapter.

### §§ 240.21—240.24   [Reserved]

## Subpart C—Voluntary Departure

### § 240.25   Voluntary departure—authority of the Service.

(a) *Authorized officers.* The authority contained in section 240B(a) of the Act to permit aliens to depart voluntarily from the United States may be exercised in lieu of being subject to proceedings under section 240 of the Act by district directors, assistant district directors for investigations, assistant district directors for examinations, officers in charge, chief patrol agents, service center directors, and assistant center directors for examinations.

(b) *Conditions.* The Service may attach to the granting of voluntary departure any conditions it deems necessary to ensure the alien's timely departure from the United States, including the posting of a bond, continued pending departure, and removal under safeguards. The alien shall be required to present to the Service, for inspection and photocopying, his or her passport or other travel documentation sufficient to assure lawful entry into the country to which the alien is departing. The Service may hold the passport or documentation for sufficient time to investigate its authenticity. A voluntary departure order permitting an alien to depart voluntarily shall inform the alien of the penalties under section 240B(d) of the Act.

(c) *Decision.* The authorized officer, in his or her discretion, shall specify the period of time permitted for voluntary departure, and may grant extensions thereof, except that the total period allowed, including any extensions, shall not exceed 120 days. Every decision regarding voluntary departure shall be communicated in writing on Form I–210, Notice of Action—Voluntary Departure. Voluntary departure may not be granted unless the alien requests such voluntary departure and agrees to its terms and conditions.

(d) *Application.* Any alien who believes himself or herself to be eligible

for voluntary departure under this section may apply therefor at any office of the Service. After the commencement of removal proceedings, the application may be communicated through the Service counsel. If the Service agrees to voluntary departure after proceedings have commenced, it may either:

(1) Join in a motion to terminate the proceedings, and if the proceedings are terminated, grant voluntary departure; or

(2) Join in a motion asking the immigration judge to permit voluntary departure in accordance with § 240.26.

(e) *Appeals.* An appeal shall not lie from a denial of an application for voluntary departure under this section, but the denial shall be without prejudice to the alien's right to apply to the immigration judge for voluntary departure in accordance with § 240.26 or for relief from removal under any provision of law.

(f) Revocation. If, subsequent to the granting of an application for voluntary departure under this section, it is ascertained that the application should not have been granted, that grant may be revoked without advance notice by any officer authorized to grant voluntary departure under § 240.25(a). Such revocation shall be communicated in writing, citing the statutory basis for revocation. No appeal shall lie from revocation.

**§ 240.26  Voluntary departure—authority of the Executive Office for Immigration Review.**

(a) *Eligibility: general.* An alien previously granted voluntary departure under section 240B of the Act, including by the Service under § 240.25, and who fails to depart voluntarily within the time specified, shall thereafter be ineligible, for a period of ten years, for voluntary departure or for relief under sections 240A, 245, 248, and 249 of the Act.

(b) *Prior to completion of removal proceedings.*—(1) *Grant by the immigration judge.* (i) An alien may be granted voluntary departure by an immigration judge pursuant to section 240B(a) of the Act only if the alien:

(A) Makes such request prior to or at the master calendar hearing at which the case is initially calendared for a merits hearing;

(B) Makes no additional requests for relief (or if such requests have been made, such requests are withdrawn prior to any grant of voluntary departure pursuant to this section);

(C) Concedes removability;

(D) Waives appeal of all issues; and

(E) Has not been convicted of a crime described in section 101(a)(43) of the

Act and is not deportable under section 237(a)(4).

(ii) The judge may not grant voluntary departure under section 240B(a) of the Act beyond 30 days after the master calendar hearing at which the case is initially calendared for a merits hearing, except pursuant to a stipulation under paragraph (b)(2) of this section.

(2) *Stipulation.* At any time prior to the completion of removal proceedings, the Service counsel may stipulate to a grant of voluntary departure under section 240B(a) of the Act.

(3) *Conditions.* (i) The judge may impose such conditions as he or she deems necessary to ensure the alien's timely departure from the United States, including the posting of a voluntary departure bond to be canceled upon proof that the alien has departed the United States within the time specified. The alien shall be required to present to the Service, for inspection and photocopying, his or her passport or other travel documentation sufficient to assure lawful entry into the country to which the alien is departing, unless:

(A) A travel document is not necessary to return to his or her native country or to which country the alien is departing; or

(B) The document is already in the possession of the Service.

(ii) The Service may hold the passport or documentation for sufficient time to investigate its authenticity. If such documentation is not immediately available to the alien, but the immigration judge is satisfied that the alien is making diligent efforts to secure it, voluntary departure may be granted for a period not to exceed 120 days, subject to the condition that the alien within 60 days must secure such documentation and present it to the Service. The Service in its discretion may extend the period within which the alien must provide such documentation. If the documentation is not presented within the 60-day period or any extension thereof, the voluntary departure order shall vacate automatically and the alternate order of removal will take effect, as if in effect on the date of issuance of the immigration judge order.

(c) *At the conclusion of the removal proceedings.*—(1) *Required findings.* An immigration judge may grant voluntary departure at the conclusion of the removal proceedings under section 240B(b) of the Act, if he or she finds that:

(i) The alien has been physically present in the United States for period of at least one year preceding the date the Notice to Appear was served under section 239(a) of the Act;

(ii) The alien is, and has been, a person of good moral character for at least five years immediately preceding the application;

(iii) The alien has not been convicted of a crime described in section 101(a)(43) of the Act and is not deportable under section 237(a)(4); and

(iv) The alien has established by clear and convincing evidence that the alien has the means to depart the United States and has the intention to do so.

(2) *Travel documentation.* Except as otherwise provided in paragraph (b)(3) of this section, the clear and convincing evidence of the means to depart shall include in all cases presentation by the alien of a passport or other travel documentation sufficient to assure lawful entry into the country to which the alien is departing. The Service shall have full opportunity to inspect and photocopy the documentation, and to challenge its authenticity or sufficiency before voluntary departure is granted.

(3) *Conditions.* The judge may impose such conditions as he or she deems necessary to ensure the alien's timely departure from the United States. In all cases under section 240B(b) of the Act, the alien shall be required to post a voluntary departure bond, in an amount necessary to ensure that the alien departs within the time specified, but in no case less than $500. The voluntary departure bond shall be posted with the district director within 5 business days of the immigration judge's order granting voluntary departure, and the district director may, at his or her discretion, hold the alien in custody until the bond is posted. If the bond is not posted within 5 business days, the voluntary departure order shall vacate automatically and the alternate order of removal will take effect on the following day. In order for the bond to be canceled, the alien must provide proof of departure to the district director.

(d) *Alternate order of removal.* Upon granting a request made for voluntary departure either prior to the completion of proceedings or at the conclusion of proceedings, the immigration judge shall also enter an alternate order of removal.

(e) *Periods of time.* If voluntary departure is granted prior to the completion of removal proceedings, the immigration judge may grant a period not to exceed 120 days. If voluntary departure is granted at the conclusion of proceedings, the immigration judge may grant a period not to exceed 60 days.

(f) *Extension of time to depart.* Authority to extend the time within which to depart voluntarily specified initially by an immigration judge or the Board is within the sole jurisdiction of

the district director. An immigration judge or the Board may reinstate voluntary departure in a removal proceeding that has been reopened for a purpose other than solely making an application for voluntary departure if reopening was granted prior to the expiration of the original period of voluntary departure. In no event can the total period of time, including any extension, exceed 120 days or 60 days as set forth in section 240B of the Act.

(g) *Administrative Appeals.* No appeal shall lie regarding the length of a period of voluntary departure (as distinguished from issues of whether to grant voluntary departure).

(h) *Reinstatement of voluntary departure.* An immigration judge or the Board may reinstate voluntary departure in a removal proceeding that has been reopened for a purpose other than solely making application for voluntary departure, if reopening was granted prior to the expiration of the original period of voluntary departure. In no event can the total period of time, including any extension, exceed 120 days or 60 days as set forth in section 240B of the Act and paragraph (a) of this section.

§§ 240.27–240.29   [Reserved]

## Subpart D—Exclusion of Aliens (for proceedings commenced prior to April 1, 1997)

### § 240.30   Proceedings prior to April 1, 1997.

Subpart D of 8 CFR part 240 applies to exclusion proceedings commenced prior to April 1, 1997, pursuant to the former section 236 of the Act. An exclusion proceeding is commenced by the filing of Form I–122 with the Immigration Court, and an alien is considered to be in exclusion proceedings only upon such filing. All references to the Act contained in this subpart are references to the Act in effect prior to April 1, 1997.

### § 240.31   Authority of immigration judges.

In determining cases referred for further inquiry as provided in section 235 of the Act, immigration judges shall have the powers and authority conferred upon them by the Act and this chapter. Subject to any specific limitation prescribed by the Act and this chapter, immigration judges shall also exercise the discretion and authority conferred upon the Attorney General by the Act as is appropriate and necessary for the disposition of such cases.

### § 240.32   Hearing.

(a) *Opening.* Exclusion hearings shall be closed to the public, unless the alien at his or her own instance requests that the public, including the press, be permitted to attend; in that event, the hearing shall be open, provided that the alien states for the record that he or she is waiving the requirement in section 236 of the Act that the inquiry shall be kept separate and apart from the public. When the hearing is to be open, depending upon physical facilities, reasonable limitation may be placed upon the number in attendance at any one time, with priority being given to the press over the general public. The immigration judge shall ascertain whether the applicant for admission is the person to whom Form I–122 was previously delivered by the examining immigration officer as provided in 8 CFR part 235; enter a copy of such form in evidence as an exhibit in the case; inform the applicant of the nature and purpose of the hearing; advise him or her of the privilege of being represented by an attorney of his or her own choice at no expense to the Government, and of the availability of free legal services programs qualified under 8 CFR part 3 and organizations recognized pursuant to § 292.2 of this chapter located in the district where his or her exclusion hearing is to be held; and shall ascertain that the applicant has received a list of such programs; and request him or her to ascertain then and there whether he or she desires representation; advise him or her that he or she will have a reasonable opportunity to present evidence in his or her own behalf, to examine and object to evidence against him or her, and to cross-examine witnesses presented by the Government; and place the applicant under oath.

(b) *Procedure.* The immigration judge shall receive and adduce material and relevant evidence, rule upon objections, and otherwise regulate the course of the hearing.

(c) *Attorney for the Service.* The Service shall assign an attorney to each case in which an applicant's nationality is in issue and may assign an attorney to any case in which such assignment is deemed necessary or advantageous. The duties of the Service counsel include, but are not limited to, the presentation of evidence and the interrogation, examination, and cross-examination of the applicant and other witnesses. Nothing contained in this section diminishes the authority of an immigration judge to conduct proceedings under this part.

(d) *Depositions.* The procedures specified in § 240.48(e) shall apply.

(e) *Record.* The hearing before the immigration judge, including the testimony, exhibits, applications, proffers, and requests, the immigration judge's decision, and all written orders, motions, appeals, and other papers filed in the proceeding shall constitute the record in the case. The hearing shall be recorded verbatim except for statements made off the record with the permission of the immigration judge.

### § 240.33   Applications for asylum or withholding of deportation.

(a) If the alien expresses fear of persecution or harm upon return to his or her country of origin or to a country to which the alien may be deported after a determination of excludability from the United States pursuant to this subpart, and the alien has not been referred to the immigration judge by an asylum officer in accordance with § 208.14(b) of this chapter, the immigration judge shall:

(1) Advise the alien that he or she may apply for asylum in the United States or withholding of deportation to that other country; and

(2) Make available the appropriate application forms.

(b) An application for asylum or withholding of deportation must be filed with the Immigration Court, pursuant to § 208.4(c) of this chapter. Upon receipt of an application that has not been referred by an asylum officer, the Immigration Court shall forward a copy to the Department of State pursuant to § 208.11 of this chapter and shall calendar the case for a hearing. The reply, if any, from the Department of State, unless classified under the applicable Executive Order, shall be given to both the applicant and to the Service counsel representing the government.

(c) Applications for asylum or withholding of deportation so filed will be decided by the immigration judge pursuant to the requirements and standards established in 8 CFR part 208 after an evidentiary hearing that is necessary to resolve material factual issues in dispute. An evidentiary hearing extending beyond issues related to the basis for a mandatory denial of the application pursuant to § 208.13(c) of this chapter is not necessary once the immigration judge has determined that such denial is required.

(1) Evidentiary hearings on applications for asylum or withholding of deportation will be closed to the public unless the applicant expressly requests that it be open pursuant to § 236.3 of this chapter.

(2) Nothing in this section is intended to limit the authority of the immigration judge properly to control the scope of any evidentiary hearing.

(3) During the exclusion hearing, the applicant shall be examined under oath on his or her application and may

present evidence and witnesses on his or her own behalf. The applicant has the burden of establishing that he or she is a refugee as defined in section 101(a)(42) of the Act pursuant to the standard set forth in § 208.13 of this chapter.

(4) The Service counsel for the government may call witnesses and present evidence for the record, including information classified under the applicable Executive Order, provided the immigration judge or the Board has determined that such information is relevant to the hearing. The applicant shall be informed when the immigration judge receives such classified information. The agency that provides the classified information to the immigration judge may provide an unclassified summary of the information for release to the applicant whenever it determines it can do so consistently with safeguarding both the classified nature of the information and its source. The summary should be as detailed as possible, in order that the applicant may have an opportunity to offer opposing evidence. A decision based in whole or in part on such classified information shall state that such information is material to the decision.

(d) The decision of an immigration judge to grant or deny asylum or withholding of deportation shall be communicated to the applicant and to the Service counsel for the government. An adverse decision will state why asylum or withholding of deportation was denied.

### § 240.34   Renewal of application for adjustment of status under section 245 of the Act.

An adjustment application by an alien paroled under section 212(d)(5) of the Act, which has been denied by the district director, may be renewed in exclusion proceedings under section 236 of the Act (as in effect prior to April 1, 1997) before an immigration judge under the following two conditions: first, the denied application must have been properly filed subsequent to the applicant's earlier inspection and admission to the United States; and second, the applicant's later absence from and return to the United States must have been under the terms of an advance parole authorization on Form I–512 granted to permit the applicant's absence and return to pursue the previously filed adjustment application.

### § 240.35   Decision of the immigration judge; notice to the applicant.

(a) *Decision*. The immigration judge shall inform the applicant of his or her decision in accordance with § 3.37 of this chapter.

(b) *Advice to alien ordered excluded.* An alien ordered excluded shall be furnished with Form I–296, Notice to Alien Ordered Excluded by Immigration Judge, at the time of an oral decision by the immigration judge or upon service of a written decision.

(c) *Holders of refugee travel documents.* Aliens who are the holders of valid unexpired refugee travel documents may be ordered excluded only if they are found to be inadmissible under section 212(a)(2), 212(a)(3), or 212(a)(6)(E) of the Act, and it is determined that on the basis of the acts for which they are inadmissible there are compelling reasons of national security or public order for their exclusion. If the immigration judge finds that the alien is inadmissible but determines that there are no compelling reasons of national security or public order for exclusion, the immigration judge shall remand the case to the district director for parole.

### § 240.36   Finality of order.

The decision of the immigration judge shall become final in accordance with § 3.37 of this chapter.

### § 240.37   Appeals.

Except for temporary exclusions under section 235(c) of the Act, an appeal from a decision of an Immigration Judge under this part may be taken by either party pursuant to § 3.38 of this chapter.

### § 240.38   Fingerprinting of excluded aliens.

Every alien 14 years of age or older who is excluded from admission to the United States by an immigration judge shall be fingerprinted, unless during the preceding year he or she has been fingerprinted at an American consular office.

### § 240.39   [Reserved]

## Subpart E—Proceedings to Determine Deportability of Aliens in the United States: Hearing and Appeal (for proceedings commenced prior to April 1, 1997)

### § 240.40   Proceedings commenced prior to April 1, 1997.

Subpart E of 8 CFR part 240 applies only to deportation proceedings commenced prior to April 1, 1997. A deportation proceeding is commenced by the filing of Form I–221 (Order to Show Cause) with the Immigration Court, and an alien is considered to be in deportation proceedings only upon such filing, except in the case of an alien admitted to the United States

under the provisions of section 217 of the Act. All references to the Act contained in this subpart pertain to the Act as in effect prior to April 1, 1997.

### § 240.41   Immigration judges.

(a) *Authority.* In any proceeding conducted under this part the immigration judge shall have the authority to determine deportability and to make decisions, including orders of deportation, as provided by section 242(b) and 242B of the Act; to reinstate orders of deportation as provided by section 242(f) of the Act; to determine applications under sections 208, 212(k), 241(a)(1)(E)(iii), 241(a)(1)(H), 244, 245 and 249 of the Act; to determine the country to which an alien's deportation will be directed in accordance with section 243(a) of the Act; to order temporary withholding of deportation pursuant to section 243(h) of the Act; and to take any other action consistent with applicable law and regulations as may be appropriate. An immigration judge may certify his or her decision in any case to the Board of Immigration Appeals when it involves an unusually complex or novel question of law or fact. Nothing contained in this part shall be construed to diminish the authority conferred on immigration judges under section 103 of the Act.

(b) *Withdrawal and substitution of immigration judges.* The immigration judge assigned to conduct the hearing shall at any time withdraw if he or she deems himself or herself disqualified. If an immigration judge becomes unavailable to complete his or her duties within a reasonable time, or if at any time the respondent consents to a substitution, another immigration judge may be assigned to complete the case. The new immigration judge shall familiarize himself or herself with the record in the case and shall state for the record that he or she has done so.

### § 240.42   Representation by counsel.

The respondent may be represented at the hearing by an attorney or other representative qualified under 8 CFR part 292.

### § 240.43   Incompetent respondents.

When it is impracticable for the respondent to be present at the hearing because of mental incompetency, the guardian, near relative, or friend who was served with a copy of the order to show cause shall be permitted to appear on behalf of the respondent. If such a person cannot reasonably be found or fails or refuses to appear, the custodian of the respondent shall be requested to appear on behalf of the respondent.

## § 240.44 Interpreter.

Any person acting as interpreter in a hearing before an immigration judge under this part shall be sworn to interpret and translate accurately, unless the interpreter is an employee of the United States Government, in which event no such oath shall be required.

## § 240.45 Postponement and adjournment of hearing.

After the commencement of the hearing, the immigration judge may grant a reasonable adjournment either at his or her own instance, or for good cause shown, upon application by the respondent or the Service.

## § 240.46 Evidence.

(a) *Sufficiency.* A determination of deportability shall not be valid unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true.

(b) *Use of prior statements.* The immigration judge may receive in evidence any oral or written statement that is material and relevant to any issue in the case previously made by the respondent or any other person during any investigation, examination, hearing, or trial.

(c) *Testimony.* Testimony of witnesses appearing at the hearing shall be under oath or affirmation administered by the immigration judge.

(d) *Depositions.* The immigration judge may order the taking of depositions pursuant to § 3.35 of this chapter.

## § 240.47 Contents of record.

The hearing before the immigration judge, including the testimony, exhibits, applications, proffers, and requests, the immigration judge's decision, and all written orders, motions, appeals, briefs, and other papers filed in the proceedings shall constitute the record in the case. The hearing shall be recorded verbatim except for statements made off the record with the permission of the immigration judge. In his or her discretion, the immigration judge may exclude from the record any arguments made in connection with motions, applications, requests, or objections, but in such event the person affected may submit a brief.

## § 240.48 Hearing.

(a) *Opening.* The immigration judge shall advise the respondent of his or her right to representation, at no expense to the Government, by counsel of his or her own choice authorized to practice in the proceedings and require him or her to state then and there whether he or she desires representation; advise the respondent of the availability of free legal services programs qualified under 8 CFR part 3 and organizations recognized pursuant to § 292.2 of this chapter, located in the district where the deportation hearing is being held; ascertain that the respondent has received a list of such programs, and a copy of Form I–618, Written Notice of Appeal Rights; advise the respondent that he or she will have a reasonable opportunity to examine and object to the evidence against him or her, to present evidence in his or her own behalf and to cross-examine witnesses presented by the Government; place the respondent under oath; read the factual allegations and the charges in the order to show cause to the respondent and explain them in nontechnical language, and enter the order to show cause as an exhibit in the record. Deportation hearings shall be open to the public, except that the immigration judge may, in his or her discretion and for the purpose of protecting witnesses, respondents, or the public interest, direct that the general public or particular individuals shall be excluded from the hearing in any specific case. Depending upon physical facilities, reasonable limitation may be placed upon the number in attendance at any one time, with priority being given to the press over the general public.

(b) *Pleading by respondent.* The immigration judge shall require the respondent to plead to the order to show cause by stating whether he or she admits or denies the factual allegations and his or her deportability under the charges contained therein. If the respondent admits the factual allegations and admits his or her deportability under the charges and the immigration judge is satisfied that no issues of law or fact remain, the immigration judge may determine that deportability as charged has been established by the admissions of the respondent. The immigration judge shall not accept an admission of deportability from an unrepresented respondent who is incompetent or under age 16 and is not accompanied by a guardian, relative, or friend; nor from an officer of an institution in which a respondent is an inmate or patient. When, pursuant to this paragraph, the immigration judge may not accept an admission of deportability, he or she shall direct a hearing on the issues.

(c) *Issues of deportability.* When deportability is not determined under the provisions of paragraph (b) of this section, the immigration judge shall request the assignment of a Service counsel, and shall receive evidence as to any unresolved issues, except that no further evidence need be received as to any facts admitted during the pleading. The respondent shall provide a court certified copy of a Judicial Recommendation Against Deportation (JRAD) to the immigration judge when such recommendation will be the basis of denying any charge(s) brought by the Service in the proceedings against the respondent. No JRAD is effective against a charge of deportability under section 241(a)(11) of the Act or if the JRAD was granted on or after November 29, 1990.

(d) *Additional charges.* The Service may at any time during a hearing lodge additional charges of deportability, including factual allegations, against the respondent. Copies of the additional factual allegations and charges shall be submitted in writing for service on the respondent and entry as an exhibit in the record. The immigration judge shall read the additional factual allegations and charges to the respondent and explain them to him or her. The immigration judge shall advise the respondent if he or she is not represented by counsel that he or she may be so represented and also that he or she may have a reasonable time within which to meet the additional factual allegations and charges. The respondent shall be required to state then and there whether he or she desires a continuance for either of these reasons. Thereafter, the provisions of paragraph (b) of this section shall apply to the additional factual allegations and lodged charges.

## § 240.49 Ancillary matters, applications.

(a) *Creation of the status of an alien lawfully admitted for permanent residence.* The respondent may apply to the immigration judge for suspension of deportation under section 244(a) of the Act; for adjustment of status under section 245 of the Act, or under section 1 of the Act of November 2, 1966, or under section 101 or 104 of the Act of October 28, 1977; or for the creation of a record of lawful admission for permanent residence under section 249 of the Act. The application shall be subject to the requirements of 8 CFR parts 240, 245, and 249. The approval of any application made to the immigration judge under section 245 of the Act by an alien spouse (as defined in section 216(g)(1) of the Act) or by an alien entrepreneur (as defined in section 216A(f)(1) of the Act), shall result in the alien's obtaining the status of lawful permanent resident on a conditional basis in accordance with the provisions of section 216 or 216A of the Act, whichever is applicable. However, the Petition to Remove the Conditions on

Residence required by section 216(c) of the Act or the Petition by Entrepreneur to Remove Conditions required by section 216A(c) of the Act shall be made to the director in accordance with 8 CFR part 216. In conjunction with any application for creation of status of an alien lawfully admitted for permanent residence made to an immigration judge, if the respondent is inadmissible under any provision of section 212(a) of the Act and believes that he or she meets the eligibility requirements for a waiver of the ground of inadmissibility, he or she may apply to the immigration judge for such waiver. The immigration judge shall inform the respondent of his or her apparent eligibility to apply for any of the benefits enumerated in this paragraph and shall afford the respondent an opportunity to make application therefor during the hearing. In exercising discretionary power when considering an application under this paragraph, the immigration judge may consider and base the decision on information not contained in the record and not made available for inspection by the respondent, provided the Commissioner has determined that such information is relevant and is classified under the applicable Executive Order as requiring protection from unauthorized disclosure in the interest of national security. Whenever the immigration judge believes that he or she can do so while safeguarding both the information and its source, the immigration judge should inform the respondent of the general nature of the information in order that the respondent may have an opportunity to offer opposing evidence. A decision based in whole or in part on such classified information shall state that the information is material to the decision.

(b) *Voluntary departure.* The respondent may apply to the immigration judge for voluntary departure in lieu of deportation pursuant to section 244(e) of the Act and § 240.56.

(c) *Applications for asylum or withholding of deportation.* (1) The immigration judge shall notify the respondent that if he or she is finally ordered deported, his or her deportation will in the first instance be directed pursuant to section 243(a) of the Act to the country designated by the respondent and shall afford him or her an opportunity then and there to make such designation. The immigration judge shall then specify and state for the record the country, or countries in the alternative, to which respondent's deportation will be directed pursuant to section 243(a) of the Act if the country of his or her designation will not accept

him or her into its territory, or fails to furnish timely notice of acceptance, or if the respondent declines to designate a country.

(2) If the alien expresses fear of persecution or harm upon return to any of the countries to which the alien might be deported pursuant to paragraph (c)(1) of this section, and the alien has not previously filed an application for asylum or withholding of deportation that has been referred to the immigration judge by an asylum officer in accordance with § 208.14(b) of this chapter, the immigration judge shall:

(i) Advise the alien that he or she may apply for asylum in the United States or withholding of deportation to those countries; and

(ii) Make available the appropriate application forms.

(3) An application for asylum or withholding of deportation must be filed with the Immigration Court, pursuant to § 208.4(b) of this chapter. Upon receipt of an application that has not been referred by an asylum officer, the Immigration Court shall forward a copy to the Department of State pursuant to § 208.11 of this chapter and shall calendar the case for a hearing. The reply, if any, of the Department of State, unless classified under the applicable Executive Order, shall be given to both the applicant and to the Service counsel representing the government.

(4) Applications for asylum or withholding of deportation so filed will be decided by the immigration judge pursuant to the requirements and standards established in 8 CFR part 208 after an evidentiary hearing that is necessary to resolve factual issues in dispute. An evidentiary hearing extending beyond issues related to the basis for a mandatory denial of the application pursuant to § 208.13 or § 208.16 of this chapter is not necessary once the immigration judge has determined that such a denial is required.

(i) Evidentiary hearings on applications for asylum or withholding of deportation will be open to the public unless the applicant expressly requests that it be closed.

(ii) Nothing in this section is intended to limit the authority of the immigration judge properly to control the scope of any evidentiary hearing.

(iii) During the deportation hearing, the applicant shall be examined under oath on his or her application and may present evidence and witnesses in his or her own behalf. The applicant has the burden of establishing that he or she is a refugee as defined in section

101(a)(42) of the Act pursuant to the standard set forth in § 208.13 of this chapter.

(iv) The Service counsel for the government may call witnesses and present evidence for the record, including information classified under the applicable Executive Order, provided the immigration judge or the Board has determined that such information is relevant to the hearing. When the immigration judge receives such classified information he or she shall inform the applicant. The agency that provides the classified information to the immigration judge may provide an unclassified summary of the information for release to the applicant, whenever it determines it can do so consistently with safeguarding both the classified nature of the information and its source. The summary should be as detailed as possible, in order that the applicant may have an opportunity to offer opposing evidence. A decision based in whole or in part on such classified information shall state whether such information is material to the decision.

(5) The decision of an immigration judge to grant or deny asylum or withholding of deportation shall be communicated to the applicant and to the Service counsel for the government. An adverse decision will state why asylum or withholding of deportation was denied.

(d) *Application for relief under sections 241(a)(1)(H) and 241(a)(1)(E)(iii) of the Act.* The respondent may apply to the immigration judge for relief from deportation under sections 241(a)(1)(H) and 241(a)(1)(E)(iii) of the Act.

(e) *General.* An application under this section shall be made only during the hearing and shall not be held to constitute a concession of alienage or deportability in any case in which the respondent does not admit his alienage or deportability. However, nothing in this section shall prohibit the Service from using information supplied in an application for asylum or withholding of deportation submitted to an asylum officer pursuant to § 208.2 of this chapter on or after January 4, 1995, as the basis for issuance of an order to show cause or a notice to appear to establish alienage or deportability in a case referred to an immigration judge under § 208.14(b) of this chapter. The respondent shall have the burden of establishing that he or she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion. The respondent shall not be required to pay a fee on more than one application within paragraphs (a)

and (c) of this section, provided that the minimum fee imposed when more than one application is made shall be determined by the cost of the application with the highest fee. Nothing contained in this section is intended to foreclose the respondent from applying for any benefit or privilege which he or she believes himself or herself eligible to receive in proceedings under this part.

### § 240.50  Decision of the immigration judge.

(a) *Contents.* The decision of the immigration judge may be oral or written. Except when deportability is determined on the pleadings pursuant to § 240.48(b), the decision of the immigration judge shall include a finding as to deportability. The formal enumeration of findings is not required. The decision shall also contain the reasons for granting or denying the request. The decision shall be concluded with the order of the immigration judge.

(b) *Summary decision.* Notwithstanding the provisions of paragraph (a) of this section, in any case where deportability is determined on the pleadings pursuant to § 240.48(b) and the respondent does not make an application under § 240.49, or the respondent applies for voluntary departure only and the immigration judge grants the respondent, the immigration judge may enter a summary decision on Form EOIR–7, Summary Order of Deportation, if deportation is ordered, or on Form EOIR–6, Summary Order of Voluntary Departure, if voluntary departure is granted with an alternate order of deportation.

(c) *Order of the immigration judge.* The order of the immigration judge shall direct the respondent's deportation, or the termination of the proceedings, or such other disposition of the case as may be appropriate. When deportation is ordered, the immigration judge shall specify the country, or countries in the alternate, to which respondent's deportation shall be directed. The immigration judge is authorized to issue orders in the alternative or in combination as he or she may deem necessary.

### § 240.51  Notice of decision.

(a) *Written decision.* A written decision shall be served upon the respondent and the Service counsel, together with the notice referred to in § 3.3 of this chapter. Service by mail is complete upon mailing.

(b) *Oral decision.* An oral decision shall be stated by the immigration judge in the presence of the respondent and the trial attorney, if any, at the conclusion of the hearing. Unless appeal from the decision is waived, the respondent shall be furnished with Form EOIR–26, Notice of Appeal, and advised of the provisions of § 240.53. A printed copy of the oral decision shall be furnished at the request of the respondent or the Service counsel.

(c) *Summary decision.* When the immigration judge renders a summary decision as provided in § 240.51(b), he or she shall serve a copy thereof upon the respondent at the conclusion of the hearing. Unless appeal from the decision is waived, the respondent shall be furnished with Form EOIR–26, Notice of Appeal, and advised of the provisions of § 240.54.

### § 240.52  Finality of order.

The decision of the immigration judge shall become final in accordance with § 3.39 of this chapter.

### § 240.53  Appeals.

(a) Pursuant to 8 CFR part 3, an appeal shall lie from a decision of an immigration judge to the Board, except that no appeal shall lie from an order of deportation entered in absentia. The procedures regarding the filing of a Form EOIR–26, Notice of Appeal, fees, and briefs are set forth in §§ 3.3, 3.31, and 3.38 of this chapter. An appeal shall be filed within 30 calendar days after the mailing of a written decision, the stating of an oral decision, or the service of a summary decision. The filing date is defined as the date of receipt of the Notice of Appeal by the Board. The reasons for the appeal shall be stated in the Form EOIR–26, Notice of Appeal, in accordance with the provisions of § 3.3(b) of this chapter. Failure to do so may constitute a ground for dismissal of the appeal by the Board pursuant to § 3.1(d)(1-a) of this chapter.

(b) *Prohibited appeals; legalization or applications.* An alien respondent defined in § 245a.2(c)(6) or (7) of this chapter who fails to file an application for adjustment of status to that of a temporary resident within the prescribed period(s), and who is thereafter found to be deportable by decision of an immigration judge, shall not be permitted to appeal the finding of deportability based solely on refusal by the immigration judge to entertain such an application in deportation proceedings.

### § 240.54  [Reserved]

## Subpart F—Suspension of Deportation and Voluntary Departure (for proceedings commenced prior to April 1, 1997)

### § 240.55  Proceedings commenced prior to April 1, 1997.

Subpart F of 8 CFR part 240 applies to deportation proceedings commenced prior to April 1, 1997. A deportation proceeding is commenced by the filing of Form I–221 (Order to Show Cause) with the Immigration Court, and an alien is considered to be in deportation proceedings only upon such filing, except in the case of an alien admitted to the United States under the provisions of section 217 of the Act. All references to the Act contained in this subpart are references to the Act in effect prior to April 1, 1997.

### § 240.56  Application.

Notwithstanding any other provision of this chapter, an alien who is deportable because of a conviction on or after November 18, 1988, for an aggravated felony as defined in section 101(a)(43) of the Act, shall not be eligible for voluntary departure as prescribed in 8 CFR part 240 and section 244 of the Act. Pursuant to subpart F of this part and section 244 of the Act, an immigration judge may authorize the suspension of an alien's deportation; or, if the alien establishes that he or she is willing and has the immediate means with which to depart promptly from the United States, an immigration judge may authorize the alien to depart voluntarily from the United States in lieu of deportation within such time as may be specified by the immigration judge when first authorizing voluntary departure, and under such conditions as the district director shall direct. An application for suspension of deportation shall be made on Form EOIR–40.

### § 240.57  Extension of time to depart.

Authority to reinstate or extend the time within which to depart voluntarily specified initially by an immigration judge or the Board is within the sole jurisdiction of the district director, except that an immigration judge or the Board may reinstate voluntary departure in a deportation proceeding that has been reopened for a purpose other than solely making an application for voluntary departure. A request by an alien for reinstatement or an extension of time within which to depart voluntarily shall be filed with the district director having jurisdiction over the alien's place of residence. Written notice of the district director's decision

shall be served upon the alien and no appeal may be taken therefrom.

## Subpart G—Civil Penalties for Failure to Depart [Reserved]

105. Part 241 is revised to read as follows:

## PART 241—APPREHENSION AND DETENTION OF ALIENS ORDERED REMOVED

### Subpart A—Post-hearing Detention and Removal

Sec.
241.1  Final order of removal.
241.2  Warrant of removal.
241.3  Detention of aliens during removal period.
241.4  Continued detention beyond the removal period.
241.5  Conditions of release after removal period.
241.6  Administrative stay of removal.
241.7  Self-removal.
241.8  Reinstatement of removal orders.
241.9  Notice to transportation line of alien's removal.
241.10  Special care and attention of removable aliens.
241.11  Detention and removal of stowaways.
241.12  Nonapplication of costs of detention and maintenance.
241.13—241.19  [Reserved]

### Subpart B—Deportation of Excluded Aliens (for hearings commenced prior to April 1, 1997)

241.20  Proceedings commenced prior to April 1, 1997.
241.21  Stay of deportation of excluded alien.
241.22  Notice to surrender for deportation.
241.23  Cost of maintenance not assessed.
241.24  Notice to transportation line of alien's exclusion.
241.25  Deportation.
241.26—241.29  [Reserved]

### Subpart C—Deportation of Aliens in the United States (for hearings commenced prior to April 1, 1997)

241.30  Proceedings commenced prior to April 1, 1997.
241.31  Final order of deportation.
241.32  Warrant of deportation.
241.33  Expulsion.

Authority: 8 U.S.C. 1103, 1223, 1227, 1251, 1253, 1255, and 1330; 8 CFR part 2.

### Subpart A—Post-hearing Detention and Removal

### § 241.1  Final order of removal.

An order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final:

(a) Upon dismissal of an appeal by the Board of Immigration Appeals;

(b) Upon waiver of appeal by the respondent;

(c) Upon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time;

(d) If certified to the Board or Attorney General, upon the date of the subsequent decision ordering removal;

(e) If an immigration judge orders an alien removed in the alien's absence, immediately upon entry of such order; or

(f) If an immigration judge issues an alternate order of removal in connection with a grant of voluntary departure, upon overstay of the voluntary departure period except where the respondent has filed a timely appeal with the Board. In such a case, the order shall become final upon an order of removal by the Board or the Attorney General, or upon overstay of any voluntary departure period granted or reinstated by the Board or the Attorney General.

### § 241.2  Warrant of removal.

(a) *Issuance of a warrant of removal.* A Form I–205, Warrant of Removal, based upon the final administrative removal order in the alien's case shall be issued by a district director. The district director shall exercise the authority contained in section 241 of the Act to determine at whose expense the alien shall be removed and whether his or her mental or physical condition requires personal care and attention en route to his or her destination.

(b) *Execution of the warrant of removal.* Any officer authorized by § 287.5(e) of this chapter to execute administrative warrants of arrest may execute a warrant of removal.

### § 241.3  Detention of aliens during removal period.

(a) *Assumption of custody.* Once the removal period defined in section 241(a)(1) of the Act begins, an alien in the United States will be taken into custody pursuant to the warrant of removal.

(b) *Cancellation of bond.* Any bond previously posted will be canceled unless it has been breached or is subject to being breached.

(c) *Judicial stays.* The filing of (or intention to file) a petition or action in a Federal court seeking review of the issuance or execution of an order of removal shall not delay execution of the Warrant of Removal except upon an affirmative order of the court.

### § 241.4  Continued detention beyond the removal period.

(a) *Continuation of custody for inadmissible or criminal aliens.* The district director may continue in custody any alien inadmissible under

section 212(a) of the Act or removable under section 237(a)(1)(C), 237(a)(2), or 237(a)(4) of the Act, or who presents a significant risk of noncompliance with the order of removal, beyond the removal period, as necessary, until removal from the United States. If such alien demonstrates by clear and convincing evidence that the release would not pose a danger to the community or a significant flight risk, the district director may, in the exercise of discretion, order the alien released from custody on such conditions as the district director may prescribe, including bond in an amount sufficient to ensure the alien's appearance for removal. The district may consider, but is not limited to considering, the following factors:

(1) The nature and seriousness of the alien's criminal convictions;

(2) Other criminal history;

(3) Sentence(s) imposed and time actually served;

(4) History of failures to appear for court (defaults);

(5) Probation history;

(6) Disciplinary problems while incarcerated;

(7) Evidence of rehabilitative effort or recidivism;

(8) Equities in the United States; and

(9) Prior immigration violations and history.

(b) *Continuation of custody for other aliens.* Any alien removable under any section of the Act other than section 212(a), 237(a)(1)(C), 237(a)(2), or 237(a)(4) may be detained beyond the removal period, in the discretion of the district director, unless the alien demonstrates to the satisfaction of the district director that he or she is likely to comply with the removal order and is not a risk to the community.

### § 241.5  Conditions of release after removal period.

(a) *Order of supervision.* An alien released pursuant to § 241.4 shall be released pursuant to an order of supervision. A district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge may issue an order of supervision on Form I–220B. The order shall specify conditions of supervision including, but not limited to, the following:

(1) A requirement that the alien report to a specified officer periodically and provide relevant information under oath as directed;

(2) A requirement that the alien continue efforts to obtain a travel document and assist the Service in obtaining a travel document;

(3) A requirement that the alien report as directed for a mental or physical examination or examinations as directed by the Service;

(4) A requirement that the alien obtain advance approval of travel beyond previously specified times and distances; and

(5) A requirement that the alien provide the Service with written notice of any change of address on Form AR–11 within ten days of the change.

(b) *Posting of bond.* An officer authorized to issue an order of supervision may require the posting of a bond in an amount determined by the officer to be sufficient to ensure compliance with the conditions of the order, including surrender for removal.

(c) *Employment authorization.* An officer authorized to issue an order of supervision may, in his or her discretion, grant employment authorization to an alien released under an order of supervision if the officer specifically finds that:

(1) The alien cannot be removed because no country will accept the alien; or

(2) The removal of the alien is impracticable or contrary to public interest.

### § 241.6   Administrative stay of removal.

Any request of an alien under a final order of deportation or removal for a stay of deportation or removal shall be filed on Form I–246, Stay of Removal, with the district director having jurisdiction over the place where the alien is at the time of filing. The district director, in his or her discretion and in consideration of factors such as are listed in § 212.5 of this chapter and section 241(c) of the Act, may grant a stay of removal or deportation for such time and under such conditions as he or she may deem appropriate. Neither the request nor the failure to receive notice of disposition of the request shall delay removal or relieve the alien from strict compliance with any outstanding notice to surrender for deportation or removal. Denial by the district director of a request for a stay is not appealable, but such denial shall not preclude an immigration judge or the Board from granting a stay in connection with a motion to reopen or a motion to reconsider as provided in 8 CFR part 3. The Service shall take all reasonable steps to comply with a stay granted by an immigration judge or the Board. However, such a stay shall cease to have effect if granted (or communicated) after the alien has been placed aboard an aircraft or other conveyance for removal and the normal boarding has been completed.

### § 241.7   Self-removal.

A district director may permit an alien ordered removed (including an alien ordered excluded or deported in proceedings prior to April 1, 1997) to depart at his or her own expense to a destination of his or her own choice. Any alien who has departed from the United States while an order of deportation or removal is outstanding shall be considered to have been deported, excluded and deported, or removed, except that an alien who departed before the expiration of the voluntary departure period granted in connection with an alternate order of deportation or removal shall not be considered to have been so deported or removed.

### § 241.8   Reinstatement of removal orders.

(a) *Applicability.* An alien who illegally reenters the United States after having been removed, or having departed voluntarily, while under an order of exclusion, deportation, or removal shall be removed from the United States by reinstating the prior order. The alien has no right to a hearing before an immigration judge in such circumstances. In establishing whether an alien is subject to this section, the immigration officer shall determine the following:

(1) Whether the alien has been subject to a prior order of removal. The immigration officer must obtain the prior order of exclusion, deportation, or removal relating to the alien.

(2) The identity of the alien, i.e., whether the alien is in fact an alien who was previously removed, or who departed voluntarily while under an order of exclusion, deportation, or removal. In disputed cases, verification of identity shall be accomplished by a comparison of fingerprints between those of the previously excluded, deported, or removed alien contained in Service records and those of the subject alien. In the absence of fingerprints in a disputed case the alien shall not be removed pursuant to this paragraph.

(3) Whether the alien unlawfully reentered the United States. In making this determination, the officer shall consider all relevant evidence, including statements made by the alien and any evidence in the alien's possession. The immigration officer shall attempt to verify an alien's claim, if any, that he or she was lawfully admitted, which shall include a check of Service data systems available to the officer.

(b) *Notice.* If an officer determines that an alien is subject to removal under this section, he or she shall provide the alien with written notice of his or her determination. The officer shall advise the alien that he or she may make a written or oral statement contesting the determination. If the alien wishes to make such a statement, the officer shall allow the alien to do so and shall consider whether the alien's statement warrants reconsideration of the determination.

(c) *Order.* If the requirements of paragraph (a) of this section are met, the alien shall be removed under the previous order of exclusion, deportation, or removal in accordance with section 241(a)(5) of the Act.

(d) *Exception for withholding of removal.* If an alien whose prior order of removal has been reinstated under this section expresses a fear of returning to the country designated in that order, the alien shall be immediately referred to an asylum officer to determine whether the alien's removal to that country must be withheld under section 241(b)(3) of the Act. The alien's claim will be granted or denied by an asylum officer in accordance with § 208.16 of this chapter. If the alien has previously had a claim to withholding of deportation or removal denied, then that decision shall prevail unless the alien can establish the existence of changed circumstances that materially affect the alien's eligibility for withholding. The alien's case shall not be referred to an immigration judge, and there is no appeal from the decision of the asylum officer. If the alien is found to merit withholding of removal, the Service shall not enforce the reinstated order.

(e) *Execution of reinstated order.* Execution of the reinstated order of removal and detention of the alien shall be administered in accordance with this part.

### § 241.9   Notice to transportation line of alien's removal.

(a) An alien who has been ordered removed shall, immediately or as promptly as the circumstances permit, be offered for removal to the owner, agent, master, commanding officer, person in charge, purser, or consignee of the vessel or aircraft on which the alien is to be removed, as determined by the district director, with a written notice specifying the cause of inadmissibility or deportability, the class of travel in which such alien arrived and is to be removed, and with the return of any documentation that will assist in effecting his or her removal. If special care and attention are required, the provisions of § 241.10 shall apply.

(b) Failure of the carrier to accept for removal an alien who has been ordered removed shall result in the carrier being assessed any costs incurred by the

Service for detention after the carrier's failure to accept the alien for removal, including the cost of any transportation as required under section 241(e) of the Act. The User Fee Account shall not be assessed for expenses incurred because of the carrier's violation of the provisions of section 241 of the Act and this paragraph. The Service will, at the carrier's option, retain custody of the alien for an additional 7 days beyond the date of the removal order. If, after the third day of this additional 7-day period, the carrier has not made all the necessary transportation arrangements for the alien to be returned to his or her point of embarkation by the end of the additional 7-day period, the Service will make the arrangements and bill the carrier for its costs.

### § 241.10  Special care and attention of removable aliens.

When, in accordance with section 241(c)(3) of the Act, a transportation line is responsible for the expenses of an inadmissible or deportable alien's removal, and the alien requires special care and attention, the alien shall be delivered to the owner, agent, master, commanding officer, person in charge, purser, or consignee of the vessel or aircraft on which the alien will be removed, who shall be given Forms I–287, I–287A, and I–287B. The reverse of Form I–287A shall be signed by the officer of the vessel or aircraft to whom the alien has been delivered and immediately returned to the immigration officer effecting delivery. Form I–287B shall be retained by the receiving officer and subsequently filled out by the agents or persons therein designated and returned by mail to the district director named on the form. The transportation line shall at its own expense forward the alien from the foreign port of disembarkation to the final destination specified on Form I–287. The special care and attention shall be continued to such final destination, except when the foreign public officers decline to allow such attendant to proceed and they take charge of the alien, in which case this fact shall be recorded by the transportation line on the reverse of Form I–287B. If the transportation line fails, refuses, or neglects to provide the necessary special care and attention or comply with the directions of Form I–287, the district director shall thereafter and without notice employ suitable persons, at the expense of the transportation line, and effect such removal.

### § 241.11  Detention and removal of stowaways.

(a) *Presentation of stowaways.* The owner, agent, master, commanding officer, charterer, or consignee of a vessel or aircraft (referred to in this section as the carrier) bringing any alien stowaway to the United States is required to detain the stowaway on board the vessel or aircraft, at the expense of the owner of the vessel or aircraft, until completion of the inspection of the alien by an immigration officer. If detention on board the vessel or aircraft pending inspection is not possible, the carrier shall advise the Service of this fact without delay, and the Service may authorize that the carrier detain the stowaway at another designated location, at the expense of the owner, until the immigration officer arrives. No notice to detain the alien shall be required. Failure to detain an alien stowaway pending inspection shall result in a civil penalty under section 243(c)(1)(A) of the Act. The owner, agent, master, commanding officer, charterer, or consignee of a vessel or aircraft must present the stowaway for inspection, along with any documents or evidence of identity or nationality in the possession of the alien or obtained by the carrier relating to the alien stowaway, and must provide any available information concerning the alien's boarding or apprehension.

(b) *Removal of stowaways from vessel or aircraft for medical treatment.* The district director may parole an alien stowaway into the United States for medical treatment, but the costs of detention and treatment of the alien stowaway shall be at the expense of the owner of the vessel or aircraft, and such removal of the stowaway from the vessel or aircraft does not relieve the carrier of the requirement to remove the stowaway from the United States once such medical treatment has been completed.

(c) *Repatriation of stowaways*—(1) *Requirements of carrier.* Following inspection, an immigration officer may order the owner, agent, master, commanding officer, charterer, or consignee of a vessel or aircraft bringing any alien stowaway to the United States to remove the stowaway on the vessel or aircraft of arrival, unless it is impracticable to do so or other factors exist which would preclude removal on the same vessel or aircraft. Such factors may include, but are not limited to, sanitation, health, and safety concerns for the crew and/or stowaway, whether the stowaway is a female or a juvenile, loss of insurance coverage on account of the stowaway remaining aboard, need

for repairs to the vessel, and other similar circumstances. If the owner, agent, master, commanding officer, charterer, or consignee requests that he or she be allowed to remove the stowaway by other means, the Service shall favorably consider any such request, provided the carrier has obtained, or will obtain in a timely manner, any necessary travel documents and has made or will make all transportation arrangements. The owner, agent, master, commanding officer, charterer, or consignee shall transport the stowaway or arrange for secure escort of the stowaway to the vessel or aircraft of departure to ensure that the stowaway departs the United States. All expenses relating to removal shall be borne by the owner. Other than requiring compliance with the detention and removal requirements contained in section 241(d)(2) of the Act, the Service shall not impose additional conditions on the carrier regarding security arrangements. Failure to comply with an order to remove an alien stowaway shall result in a civil penalty under section 243(c)(1)(A) of the Act.

(2) *Detention of stowaways ordered removed.* If detention of the stowaway is required pending removal on other than the vessel or aircraft of arrival, or if the stowaway is to be removed on the vessel or aircraft of arrival but departure of the vessel or aircraft is not imminent and circumstances preclude keeping the stowaway on board the vessel or aircraft, the Service shall take the stowaway into Service custody. The owner is responsible for all costs of maintaining and detaining the stowaway pending removal, including costs for stowaways seeking asylum as described in paragraph (d) of this section. Such costs will be limited to those normally incurred in the detention of an alien by the Service, including, but not limited to, housing, food, transportation, medical expenses, and other reasonable costs incident to the detention of the stowaway. The Service may require the posting of a bond or other surety to ensure payment of costs of detention.

(d) *Stowaways claiming asylum*—(1) *Referral for credible fear determination.* A stowaway who indicates an intention to apply for asylum or a fear of persecution shall be removed from the vessel or aircraft of arrival in accordance with § 208.5(b) of this chapter. The immigration officer shall refer the alien to an asylum officer for a determination of credible fear in accordance with section 235(b)(1)(B) of the Act and § 208.30 of this chapter. The stowaway shall be detained in the custody of the Service pending the credible fear

determination and any review thereof. Parole of such alien, in accordance with section 212(d)(5) of the Act, may be permitted only when the Attorney General determines, in the exercise of discretion, that parole is required to meet a medical emergency or is necessary for a legitimate law enforcement objective. A stowaway who has established a credible fear of persecution in accordance with § 208.30 of this chapter may be detained or paroled pursuant to § 212.5 of this chapter during any consideration of the asylum application. In determining whether to detain or parole the alien, the Service shall consider the likelihood that the alien will abscond or pose a security risk.

(2) *Costs of detention of asylum-seeking stowaways.* The owner of the vessel or aircraft that brought the stowaway to the United States shall reimburse the Service for the costs of maintaining and detaining the stowaway pending a determination of credible fear under section 235(b)(1)(B) of the Act, up to a maximum period of 72 hours. The owner is also responsible for the costs of maintaining and detaining the stowaway during the period in which the stowaway is pursuing his or her asylum application, for a maximum period of 15 working days, excluding Saturdays, Sundays, and holidays. The 15-day period shall begin on the day following the day in which the alien is determined to have a credible fear of persecution by the asylum officer, or by the immigration judge if such review was requested by the alien pursuant to section 235(b)(1)(B)(iii)(III) of the Act, but not later than 72 hours after the stowaway was initially presented to the Service for inspection. Following the determination of credible fear, if the stowaway's application for asylum is not adjudicated within 15 working days, the Service shall pay the costs of detention beyond this time period. If the stowaway is determined not to have a credible fear of persecution, or if the stowaway's application for asylum is denied, including any appeals, the carrier shall be notified and shall arrange for repatriation of the stowaway at the expense of the owner of the vessel or aircraft on which the stowaway arrived.

## § 241.12   Nonapplication of costs of detention and maintenance.

The owner of a vessel or aircraft bringing an alien to the United States who claims to be exempt from payment of the costs of detention and maintenance of the alien pursuant to section 241(c)(3)(B) of the Act shall establish to the satisfaction of the district director in charge of the port of arrival that such costs should not be applied. The district director shall afford the owner a reasonable time within which to submit affidavits and briefs to support the claim. There is no appeal from the decision of the district director.

## §§ 241.13—241.19   [Reserved]

## Subpart B—Deportation of Excluded Aliens (for hearings commenced prior to April 1, 1997)

## § 241.20   Proceedings commenced prior to April 1, 1997.

Subpart B of 8 CFR part 241 applies to exclusion proceedings commenced prior to April 1, 1997. All references to the Act contained in this subpart are references to the Act in effect prior to April 1, 1997.

## § 241.21   Stay of deportation of excluded alien.

The district director in charge of the port of arrival may stay the immediate deportation of an excluded alien pursuant to sections 237 (a) and (d) of the Act under such conditions as he or she may prescribe.

## § 241.22   Notice to surrender for deportation.

An alien who has been finally excluded pursuant to 8 CFR part 240, subpart D may at any time surrender himself or herself to the custody of the Service and shall surrender to such custody upon notice in writing of the time and place for his or her surrender. The Service may take the alien into custody at any time. An alien taken into custody either upon notice to surrender or by arrest shall not be deported less than 72 hours thereafter without his or her consent thereto filed in writing with the district director in charge of the place of his or her detention. An alien in foreign contiguous territory shall be informed that he or she may remain there in lieu of surrendering to the Service, but that he or she will be deemed to have acknowledged the execution of the order of exclusion and deportation in his or her case upon his or her failure to surrender at the time and place prescribed.

## § 241.23   Cost of maintenance not assessed.

A claim pursuant to section 237(a)(1) of the Act shall be established to the satisfaction of the district director in charge of the port of arrival, from whose adverse decision no appeal shall lie. The district director shall afford the line a reasonable time within which to submit affidavits and briefs to support its claim.

## § 241.24   Notice to transportation line of alien's exclusion.

(a) An excluded alien shall, immediately or as promptly as the circumstances permit, be offered for deportation to the master, commanding officer, purser, person in charge, agent, owner, or consignee of the vessel or aircraft on which the alien is to be deported, as determined by the district director, with a written notice specifying the cause of exclusion, the class of travel in which such alien arrived and is to be deported, and with the return of any documentation that will assist in effecting his or her deportation. If special care and attention are required, the provisions of § 241.10 shall apply.

(b) Failure of the carrier to accept for removal an alien who has been ordered excluded and deported shall result in the carrier being assessed any costs incurred by the Service for detention after the carrier's failure to accept the alien for removal including the cost of any transportation. The User Fee Account shall not be assessed for expenses incurred because of the carrier's violation of the provisions of section 237 of the Act and this paragraph. The Service will, at the carrier's option, retain custody of the excluded alien for an additional 7 days beyond the date of the deportation/exclusion order. If, after the third day of this additional 7-day period, the carrier has not made all the necessary transportation arrangements for the excluded alien to be returned to his or her point of embarkation by the end of the additional 7-day period, the Service will make the arrangements and bill the carrier for its costs.

## § 241.25   Deportation.

(a) *Definitions of terms.* For the purposes of this section, the following terms mean:

(1) *Adjacent island*—as defined in section 101(b)(5) of the Act.

(2) *Foreign contiguous territory*—any country sharing a common boundary with the United States.

(3) *Residence in foreign contiguous territory or adjacent island*—any physical presence, regardless of intent, in a foreign contiguous territory or an adjacent island if the government of such territory or island agrees to accept the alien.

(4) *Aircraft or vessel*—any conveyance and other mode of travel by which arrival is effected.

(5) *Next available flight*—the carrier's next regularly scheduled departure to

the excluded alien's point of embarkation regardless of seat availability. If the carrier's next regularly scheduled departure to the excluded aliens point of embarkation is full, the carrier has the option of arranging for return transportation on other carriers which service the excluded aliens point of embarkation.

(b) *Place to which deported.* Any alien (other than an alien crewmember or an alien who boarded an aircraft or vessel in foreign contiguous territory or an adjacent island) who is ordered excluded shall be deported to the country where the alien boarded the vessel or aircraft on which the alien arrived in the United States. If that country refuses to accept the alien, the alien shall be deported to:

(1) The country of which the alien is a subject, citizen, or national;

(2) The country where the alien was born;

(3) The country where the alien has a residence; or

(4) Any country willing to accept the alien.

(c) *Contiguous territory and adjacent islands.* Any alien ordered excluded who boarded an aircraft or vessel in foreign contiguous territory or in any adjacent island shall be deported to such foreign contiguous territory or adjacent island if the alien is a native, citizen, subject, or national of such foreign contiguous territory or adjacent island, or if the alien has a residence in such foreign contiguous territory or adjacent island. Otherwise, the alien shall be deported, in the first instance, to the country in which is located the port at which the alien embarked for such foreign contiguous territory or adjacent island.

(d) *Land border pedestrian arrivals.* Any alien ordered excluded who arrived at a land border on foot shall be deported in the same manner as if the alien had boarded a vessel or aircraft in foreign contiguous territory.

### §§ 241.26–241.29    [Reserved]

### Subpart C—Deportation of Aliens in the United States (for hearings commenced prior to April 1, 1997)

### § 241.30    Proceedings commenced prior to April 1, 1997.

Subpart C of 8 CFR part 241 applies to deportation proceedings commenced prior to April 1, 1997. All references to the Act contained in this subpart are references to the Act in effect prior to April 1, 1997.

### § 241.31    Final order of deportation.

Except as otherwise required by section 242(c) of the Act for the specific purposes of that section, an order of deportation, including an alternate order of deportation coupled with an order of voluntary departure, made by the immigration judge in proceedings under 8 CFR part 240 shall become final upon dismissal of an appeal by the Board of Immigration Appeals, upon waiver of appeal, or upon expiration of the time allotted for an appeal when no appeal is taken; or, if such an order is issued by the Board or approved by the Board upon certification, it shall be final as of the date of the Board's decision.

### § 241.32    Warrant of deportation.

A Form I–205, Warrant of Deportation, based upon the final administrative order of deportation in the alien's case shall be issued by a district director. The district director shall exercise the authority contained in section 243 of the Act to determine at whose expense the alien shall be deported and whether his or her mental or physical condition requires personal care and attention en route to his or her destination.

### § 241.33    Expulsion.

(a) *Execution of order.* Except in the exercise of discretion by the district director, and for such reasons as are set forth in § 212.5(a) of this chapter, once an order of deportation becomes final, an alien shall be taken into custody and the order shall be executed. For the purposes of this part, an order of deportation is final and subject to execution upon the date when any of the following occurs:

(1) A grant of voluntary departure expires;

(2) An immigration judge enters an order of deportation without granting voluntary departure or other relief, and the alien respondent waives his or her right to appeal;

(3) The Board of Immigration Appeals enters an order of deportation on appeal, without granting voluntary departure or other relief; or

(4) A Federal district or appellate court affirms an administrative order of deportation in a petition for review or habeas corpus action.

(b) *Service of decision.* In the case of an order entered by any of the authorities enumerated above, the order shall be executed no sooner than 72 hours after service of the decision, regardless of whether the alien is in Service custody, provided that such period may be waived on the knowing and voluntary request of the alien. Nothing in this paragraph shall be construed, however, to preclude assumption of custody by the Service at the time of issuance of the final order.

### PART 242—[REMOVED AND RESERVED]

106. Part 242 is removed and reserved.

### PART 243—[REMOVED AND RESERVED]

107. Part 243 is removed and reserved.

### PART 244—TEMPORARY PROTECTED STATUS FOR NATIONALS OF DESIGNATED STATES

108. The heading for part 244 is revised as set forth above.

109. The authority citation for part 244 is revised to read as follows:

Authority: 8 U.S.C. 1103, 1254, 1254a note, 8 CFR part 2.

### §§ 244.1 and 244.2    [Removed]

110. Sections 244.1 and 244.2 are removed.

### §§ 244.3 through 244.22    [Redesignated as §§ 244.1 through 244.20]

111. Newly designated §§ 244.3 through 244.22 are further redesignated as §§ 244.1 through 244.20, respectively.

### PART 245—ADJUSTMENT OF STATUS TO THAT OF PERSON ADMITTED FOR PERMANENT RESIDENCE

112. The authority citation for part 245 is revised to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1182, 1255; 8 CFR part 2.

113. Section 245.1 is amended by:

a. Removing the word ''and'' at the end of the paragraph (c)(3);

b. Removing the '',' at the end of paragraphs (c)(4) through (c)(7), and replacing it with a '';'';

c. Redesignating paragraph (c)(8) as paragraph (c)(9);

d. Adding a new paragraph (c)(8);

e. Revising newly redesignated paragraph (c)(9) introductory text;

f. Revising newly redesignated paragraphs (c)(9)(i) through (c)(9)(iii); and by

g. Revising paragraph (f), to read as follows:

### § 245.1    Eligibility.

\*　　\*　　\*　　\*　　\*

(c) \* \* \*

(8) Any arriving alien who is in removal proceedings pursuant to section 235(b)(1) or section 240 of the Act; and

(9) Any alien who seeks to adjust status based upon a marriage which occurred on or after November 10, 1986, and while the alien was in exclusion, deportation, or removal proceedings, or judicial proceedings relating thereto.

(i) *Commencement of proceedings.* The period during which the alien is in

deportation, exclusion, or removal proceedings or judicial proceedings relating thereto, commences:

(A) With the issuance of the Form I–221, Order to Show Cause and Notice of Hearing prior to June 20, 1991;

(B) With the filing of a Form I–221, Order to Show Cause and Notice of Hearing, issued on or after June 20, 1991, with the Immigration Court;

(C) With the issuance of Form I–122, Notice to Applicant for Admission Detained for Hearing Before Immigration Judge, prior to April 1, 1997,

(D) With the filing of a Form I–862, Notice to Appear, with the Immigration Court, or

(E) With the issuance and service of Form I–860, Notice and Order of Expedited Removal.

(ii) *Termination of proceedings.* The period during which the alien is in exclusion, deportation, or removal proceedings, or judicial proceedings relating thereto, terminates:

(A) When the alien departs from the United States while an order of exclusion, deportation, or removal is outstanding or before the expiration of the voluntary departure time granted in connection with an alternate order of deportation or removal;

(B) When the alien is found not to be inadmissible or deportable from the United States;

(C) When the Form I–122, I–221, I–860, or I–862 is canceled;

(D) When proceedings are terminated by the immigration judge or the Board of Immigration Appeals; or

(E) When a petition for review or an action for habeas corpus is granted by a Federal court on judicial review.

(iii) *Exemptions.* This prohibition shall no longer apply if:

(A) The alien is found not to be inadmissible or deportable from the United States;

(B) Form I–122, I–221, I–860, or I–862, is canceled;

(C) Proceedings are terminated by the immigration judge or the Board of Immigration Appeals;

(D) A petition for review or an action for habeas corpus is granted by a Federal court on judicial review;

(E) The alien has resided outside the United States for 2 or more years following the marriage; or

(F) The alien establishes the marriage is bona fide by providing clear and convincing evidence that the marriage was entered into in good faith and in accordance with the laws of the place where the marriage took place, was not entered into for the purpose of procuring the alien's entry as an immigrant, and no fee or other

consideration was given (other than to an attorney for assistance in preparation of a lawful petition) for the filing of a petition.

*    *    *    *    *

(f) *Concurrent applications to overcome grounds of inadmissibility.* Except as provided in 8 CFR parts 235 and 249, an application under this part shall be the sole method of requesting the exercise of discretion under sections 212(g), (h), (i), and (k) of the Act, as they relate to the inadmissibility of an alien in the United States. No fee is required for filing an application to overcome the grounds of inadmissibility of the Act if filed concurrently with an application for adjustment of status under the provisions of the Act of October 28, 1977, and of this part.

*    *    *    *    *

114. Section 245.2 is amended by:

a. Revising paragraph (a)(1);

b. Revising paragraph (a)(4)(ii);

c. Revising paragraph (a)(5)(ii) and (iii); and by

d. Revising paragraph (c), to read as follows:

**§ 245.2  Application.**

(a) *    *    * (1) *Jurisdiction.* An alien who believes he or she meets the eligibility requirements of section 245 of the Act or section 1 of the Act of November 2, 1966, and § 245.1 shall apply to the director having jurisdiction over his or her place of residence unless otherwise instructed in 8 CFR part 245, or by the instruction on the application form. After an alien, other than an arriving alien, is in deportation or removal proceedings, his or her application for adjustment of status under section 245 of the Act or section 1 of the Act of November 2, 1966 shall be made and considered only in those proceedings. An arriving alien, other than an alien in removal proceedings, who believes he or she meets the eligibility requirements of section 245 of the Act or section 1 of the Act of November 2, 1966, and § 245.1 shall apply to the director having jurisdiction over his or her place of arrival. An adjustment application by an alien paroled under section 212(d)(5) of the Act, which has been denied by the director, may be renewed in removal proceedings under 8 CFR part 240 only if:

(i) The denied application must have been properly filed subsequent to the applicant's earlier inspection and admission to the United States; and

(ii) The applicant's later absence from and return to the United States was under the terms of an advance parole authorization on Form I–512 granted to

permit the applicant's absence and return to pursue the previously filed adjustment application.

*    *    *    *    *

(4) *    *    *

(ii) *Under section 245 of the Act.* The departure from the United States of an applicant who is under exclusion, deportation, or removal proceedings shall be deemed an abandonment of the application constituting grounds for termination of the proceeding by reason of the departure. The departure of an applicant who is not under exclusion, deportation, or removal proceedings shall be deemed an abandonment of his or her application constituting grounds for termination, unless the applicant was previously granted advance parole by the Service for such absence, and was inspected upon returning to the United States. If the application of an individual granted advance parole is subsequently denied, the applicant will be treated as an applicant for admission, and subject to the provisions of sections 212 and 235 of the Act.

*    *    *    *    *

(5) *    *    *

(ii) *Under section 245 of the Act.* If the application is approved, the applicant's permanent residence shall be recorded as of the date of the order approving the adjustment of status. An application for adjustment of status, as a preference alien, shall not be approved until an immigrant visa number has been allocated by the Department of State, except when the applicant has established eligibility for the benefits of Public Law 101–238. No appeal lies from the denial of an application by the director, but the applicant, if not an arriving alien, retains the right to renew his or her application in proceedings under 8 CFR part 240. Also, an applicant who is a parolee and meets the two conditions described in § 245.2(a)(1) may renew a denied application in proceedings under 8 CFR part 240 to determine admissibility. At the time of renewal of the application, an applicant does not need to meet the statutory requirement of section 245(c) of the Act, or § 245.1(g), if, in fact, those requirements were met at the time the renewed application was initially filed with the director. Nothing in this section shall entitle an alien to proceedings under section 240 of the Act who is not otherwise so entitled.

(iii) *Under the Act of November 2, 1966.* If the application is approved, the applicant's permanent residence shall be recorded in accordance with the provisions of section 1. No appeal lies from the denial of an application by the director, but the applicant, if not an

arriving alien, retains the right to renew his or her application in proceedings under 8 CFR part 240. Also, an applicant who is a parolee and meets the two conditions described in § 245.2(a)(1) may renew a denied application in proceedings under 8 CFR part 240 to determine admissibility.

*     *     *     *     *

(c) *Application under section 214(d) of the Act.* An application for permanent resident status pursuant to section 214(d) of the Act shall be filed on Form I–485 with the director having jurisdiction over the applicant's place of residence. A separate application shall be filed by each applicant. If the application is approved, the director shall record the lawful admission of the applicant as of the date of approval. The applicant shall be notified of the decision and, if the application is denied, of the reasons therefor. No appeal shall lie from the denial of an application by the director but such denial shall be without prejudice to the alien's right to renew his or her application in proceedings under 8 CFR part 240.

115. Section 245.5 is amended by revising the first sentence to read as follows:

### § 245.5   Medical examination.

Pursuant to section 232(b) of the Act, an applicant for adjustment of status shall be required to have a medical examination by a designated civil surgeon, whose report setting forth the findings of the mental and physical condition of the applicant, including compliance with section 212(a)(1)(A)(ii) of the Act, shall be incorporated into the record. *  *  *

116. Section 245.8 is amended by revising paragraph (e), to read as follows:

### § 245.8   Adjustment of status as a special immigrant under section 101(a)(27)(K) of the Act.

*     *     *     *     *

(e) *Removal provisions of section 237 of the Act.* If the Service is made aware by notification from the appropriate executive department or by any other means that a section 101(a)(27)(K) special immigrant who has already been granted permanent residence fails to complete his or her total active duty service obligation for reasons other than an honorable discharge, the alien may become subject to the removal provisions of section 237 of the Act, provided the alien is in one or more of the classes of deportable aliens specified in section 237 of the Act. The Service shall obtain a current Form DD–214, Certificate of Release or Discharge from Active Duty, from the appropriate executive department for verification of the alien's failure to maintain eligibility.

*     *     *     *     *

117. Section 245.9 is amended by revising paragraphs (d) and (m), to read as follows:

### § 245.9   Adjustment of Status of Certain Nationals of the People's Republic of China under Public Law 102–404.

*     *     *     *     *

(d) *Waivers of inadmissibility under section 212(a) of the Act.* An applicant for the benefits of the adjustment of status provisions of Pub. L. 102–404 is automatically exempted from compliance with the requirements of sections 212(a)(5) and 212(a)(7)(A) of the Act. A Pub. L. 102–404 applicant may also apply for one or more waivers of inadmissibility under section 212(a) of the Act, except for inadmissibility under section 212(a)(2)(C), 212(a)(3)(A), 212(a)(3)(B), 212(a)(3)(C) or 212(a)(3)(E) of the Act.

*     *     *     *     *

(m) *Effect of enactment on family members other than qualified family members.* The adjustment of status benefits and waivers provided by Pub. L. 102–404 do not apply to a spouse or child who is not a qualified family member as defined in paragraph (c) of this section. However, a spouse or child whose relationship to the principal alien was established prior to the approval of the principal's adjustment of status application may be accorded the derivative priority date and preference category of the principal alien, in accordance with the provisions of section 203(d) of the Act. The spouse or child may use the priority date and category when it becomes current, in accordance with the limitations set forth in sections 201 and 202 of the Act. Persons who are unable to maintain lawful nonimmigrant status in the United States and are not immediately eligible to apply for adjustment of status may request voluntary departure pursuant to 8 CFR part 240.

118. Section 245.10 is amended by:
a. Revising paragraphs (a) (3) and (6); and by
b. Revising introductory text in paragraph (b), to read as follows:

### § 245.10   Adjustment of status upon payment of additional sum under Public Law 103–317.

(a) *  *  *

(3) Is not inadmissible from the United States under any provision of section 212 of the Act, or all grounds for inadmissibility have been waived;

*     *     *     *     *

(6) Remits the sum specified in section 245(i) of the Act, unless payment of the sum is waived under section 245(i) of the Act; and

*     *     *     *     *

(b) *Payment of additional sum.* An applicant filing under the provisions of section 245(i) of the Act must pay the standard adjustment of status filing fee, as shown on Form I–485 and contained in § 103.7(b)(1) of this chapter. The applicant must also pay the additional sum specified in section 245(i) of the Act, unless at the time the application for adjustment of status is filed, the alien is:

*     *     *     *     *

119. Section 245.11 is amended by:
a. Revising paragraph (a)(4)(ii)(B);
b. Revising paragraph (b)(1)(iii);
c. Revising the introductory text in paragraph (c); and by
d. Revising paragraphs (h) and (i), to read as follows:

### § 245.11   Adjustment of aliens in S nonimmigrant classification.

(a) *  *  *
(4) *  *  *
(ii) *  *  *
(B) Be admissible to the United States as an immigrant, unless the ground of inadmissibility has been waived;

*     *     *     *     *

(b) *  *  *
(1) *  *  *
(iii) The family member is not inadmissible from the United States as a participant in Nazi persecution or genocide as described in section 212(a)(3)(E) of the Act;

*     *     *     *     *

(c) *Waivers of inadmissibility.* An alien seeking to adjust status pursuant to the provisions of section 101(a)(15)(S) of the Act may not be denied adjustment of status for conduct or a condition that:

*     *     *     *     *

(h) *Removal under section 237 of the Act.* Nothing in this section shall prevent an alien adjusted pursuant to the terms of these provisions from being removed for conviction of a crime of moral turpitude committed within 10 years after being provided lawful permanent residence under this section or for any other ground under section 237 of the Act.

(i) *Denial of application.* In the event the district director decides to deny an application on Form I–485 and an approved Form I–854 to allow an S nonimmigrant to adjust status, the Assistant Attorney General, Criminal Division, and the relevant LEA shall be notified in writing to that effect. The Assistant Attorney General, Criminal Division, shall concur in or object to

that decision. Unless the Assistant Attorney General, Criminal Division, objects within 7 days, he or she shall be deemed to have concurred in the decision. In the event of an objection by the Assistant Attorney General, Criminal Division, the matter will be expeditiously referred to the Deputy Attorney General for a final resolution. In no circumstances shall the alien or the relevant LEA have a right of appeal from any decision to deny. A denial of an adjustment application under this paragraph may not be renewed in subsequent removal proceedings.

120. Part 246 is revised to read as follows:

## PART 246—RESCISSION OF ADJUSTMENT OF STATUS

Sec.
246.1 Notice.
246.2 Allegations admitted; no answer filed; no hearing requested.
246.3 Allegations contested or denied; hearing requested.
246.4 Immigration judge's authority; withdrawal and substitution.
246.5 Hearing.
246.6 Decision and order.
246.7 Appeals.
246.8 [Reserved]
246.9 Surrender of Form I–551.

Authority: Authority: 8 U.S.C. 1103, 1254, 1255, 1256, 1259; 8 CFR part 2.

### § 246.1   Notice.

If it appears to a district director that a person residing in his or her district was not in fact eligible for the adjustment of status made in his or her case, a proceeding shall be commenced by the personal service upon such person of a notice of intent to rescind which shall inform him or her of the allegations upon which it is intended to rescind the adjustment of his or her status. In such a proceeding the person shall be known as the respondent. The notice shall also inform the respondent that he or she may submit, within thirty days from the date of service of the notice, an answer in writing under oath setting forth reasons why such rescission shall not be made, and that he or she may, within such period, request a hearing before an immigration judge in support of, or in lieu of, his or her written answer. The respondent shall further be informed that he or she may have the assistance of or be represented by counsel or representative of his or her choice qualified under part 292 of this chapter, at no expense to the Government, in the preparation of his or her answer or in connection with his or her hearing, and that he or she may present such evidence in his or her

behalf as may be relevant to the rescission.

### § 246.2   Allegations admitted; no answer filed; no hearing requested.

If the answer admits the allegations in the notice, or if no answer is filed within the thirty-day period, or if no hearing is requested within such period, the district director shall rescind the adjustment of status previously granted, and no appeal shall lie from his decision.

### § 246.3   Allegations contested or denied; hearing requested.

If, within the prescribed time following service of the notice pursuant to § 246.1, the respondent has filed an answer which contests or denies any allegation in the notice, or a hearing is requested, a hearing pursuant to § 246.5 shall be conducted by an immigration judge, and the requirements contained in §§ 240.3, 240.4, 240.5, 240.6, 240.7, and 240.9 of this chapter shall be followed.

### § 246.4   Immigration judge's authority; withdrawal and substitution.

In any proceeding conducted under this part, the immigration judge shall have authority to interrogate, examine, and cross-examine the respondent and other witnesses, to present and receive evidence, to determine whether adjustment of status shall be rescinded, to make decisions thereon, including an appropriate order, and to take any other action consistent with applicable provisions of law and regulations as may be appropriate to the disposition of the case. Nothing contained in this part shall be construed to diminish the authority conferred on immigration judges by the Act. The immigration judge assigned to conduct a hearing shall, at any time, withdraw if he or she deems himself or herself disqualified. If a hearing has begun but no evidence has been adduced other than the notice and answer, if any, pursuant to §§ 246.1 and 246.2, or if an immigration judge becomes unavailable to complete his or her duties within a reasonable time, or if at any time the respondent consents to a substitution, another immigration judge may be assigned to complete the case. The new immigration judge shall familiarize himself or herself with the record in the case and shall state for the record that he or she is familiar with the record in the case.

### § 246.5   Hearing.

(a) *Service counsel.* The Government shall be represented at the hearing by a Service counsel who shall have authority to present evidence, and to interrogate, examine, and cross-examine

the respondent and other witnesses. The Service counsel is authorized to appeal from a decision of the immigration judge pursuant to § 246.7 and to move for reopening or reconsideration pursuant to § 3.23 of this chapter.

(b) *Opening.* The immigration judge shall advise the respondent of the nature of the proceeding and the legal authority under which it is conducted; advise the respondent of his or her right to representation, at no expense to the Government, by counsel or representative of his or her own choice qualified under part 292 of this chapter and require him or her to state then and there whether he or she desires representation; advise the respondent that he or she will have a reasonable opportunity to examine and object to the evidence against him or her, to present evidence in his or her own behalf, and to cross-examine witnesses presented by the Government; place the respondent under oath; read the allegations in the notice to the respondent and explain them in nontechnical language, and enter the notice and respondent's answer, if any, as exhibits in the record.

(c) *Pleading by respondent.* The immigration judge shall require the respondent to state for the record whether he or she admits or denies the allegations contained in the notice, or any of them, and whether he or she concedes that his or her adjustment of status should be rescinded. If the respondent admits all of the allegations and concedes that the adjustment of status in his or her case should be rescinded under the allegations set forth in the notice, and the immigration judge is satisfied that no issues of law or fact remain, he or she may determine that rescission as alleged has been established by the respondent's admissions. The allegations contained in the notice shall be taken as admitted when the respondent, without reasonable cause, fails or refuses to attend or remain in attendance at the hearing.

### § 246.6   Decision and order.

The decision of the immigration judge may be oral or written. The formal enumeration of findings is not required. The order shall direct either that the proceeding be terminated or that the adjustment of status be rescinded. Service of the decision and finality of the order of the immigration judge shall be in accordance with, and as stated in §§ 240.13 (a) and (b) and 240.14 of this chapter.

### §246.7 Appeals.

Pursuant to 8 CFR part 3, an appeal shall lie from a decision of an immigration judge under this part to the Board of Immigration Appeals. An appeal shall be taken within 30 days after the mailing of a written decision or the stating of an oral decision. The reasons for the appeal shall be specifically identified in the Notice of Appeal (Form EOIR 26); failure to do so may constitute a ground for dismissal of the appeal by the Board.

### §246.8  [Reserved]

### §246.9  Surrender of Form I–551.

A respondent whose status as a permanent resident has been rescinded in accordance with section 246 of the Act and this part, shall, upon demand, promptly surrender to the district director having administrative jurisdiction over the office in which the action under this part was taken, the Form I–551 issued to him or her at the time of the grant of permanent resident status.

## PART 248—CHANGE OF NONIMMIGRANT CLASSIFICATION

121. The authority citation for part 248 continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1184, 1187, 1258; 8 CFR part 2.

122. Section 248.1 is amended by revising paragraph (b)(4) to read as follows:

### §248.1  Eligibility.

\*    \*    \*    \*    \*

(b) \* \* \*

(4) The alien is not the subject of removal proceedings under 8 CFR part 240.

\*    \*    \*    \*    \*

## PART 249—CREATION OF RECORDS OF LAWFUL ADMISSION FOR PERMANENT RESIDENCE

123. The authority citation for part 249 is revised to read as follows:

Authority: 8 U.S.C. 1103, 1182, 1259; 8 CFR part 2.

124. Section 249.2 is amended by revising the first sentence in paragraph (a) and by revising paragraph (b), to read as follows:

### §249.2  Application.

(a) *Jurisdiction.* An application by an alien, other than an arriving alien, who has been served with a notice to appear or warrant of arrest shall be considered only in proceedings under 8 CFR part 240. \* \* \*

(b) *Decision.* The applicant shall be notified of the decision and, if the application is denied, of the reasons therefor. If the application is granted, a Form I–551, showing that the applicant has acquired the status of an alien lawfully admitted for permanent residence, shall not be issued until the applicant surrenders any other document in his or her possession evidencing compliance with the alien registration requirements of former or existing law. No appeal shall lie from the denial of an application by the district director. However, an alien, other than an arriving alien, may renew the denied application in proceedings under 8 CFR part 240.

## PART 251—ARRIVAL MANIFESTS AND LISTS: SUPPORTING DOCUMENTS

125. The authority citation for part 251 is revised to read as follows:

Authority: 8 U.S.C. 1103, 1182, 1221, 1281, 1282, 8 CFR part 2.

126. Section 251.1 is revised to read as follows:

### §251.1  Arrival manifests and lists.

(a) *Vessels*—(1) *General.* The master or agent of every vessel arriving in the United States from a foreign place or an outlying possession of the United States shall present to the immigration officer at the port where the immigration inspection is performed a manifest of all crewmen on board on Form I–418, Passenger List and Crew List, in accordance with the instructions contained thereon.

(2) *Longshore work notations.* The master or agent of the vessel shall indicate in writing immediately below the name of the last alien listed on the Form I–418 whether or not crewmen aboard the vessel will be used to perform longshore work at any United States port before the vessel departs the United States.

(i) If no longshore work will be performed, no further notation regarding longshore work is required.

(ii) If longshore work will be performed, the master or agent shall note which exception listed in section 258 of the Act permits the work. The exceptions are:

(A) The hazardous cargo exception;

(B) The prevailing practice exception in accordance with a port's collective bargaining agreements;

(C) The prevailing practice exception at a port where there is no collective bargaining agreement, but for which the vessel files an attestation;

(D) The prevailing practice exception for automated vessels; and

(E) The reciprocity exception.

(iii) If longshore work will be performed under the hazardous cargo exception, the vessel must either be a tanker or be transporting dry bulk cargo that qualifies as hazardous. All tankers qualify for the hazardous cargo exception, except for a tanker that has been gas-freed to load non-hazardous dry bulk commodities.

(A) To invoke the exception for tankers, the master or agent shall note on the manifest that the vessel is a qualifying tanker.

(B) If the vessel is transporting dry bulk hazardous cargo, the master or agent shall note on the manifest that the vessel's dry bulk cargo is hazardous and shall show the immigration officer the dangerous cargo manifest that is signed by the master or an authorized representative of the owner, and that under 46 CFR 148.02 must be kept in a conspicuous place near the bridge house.

(iv) If longshore work will be performed under the prevailing practice exception, the master or agent shall note on the manifest each port at which longshore work will be performed under this exception. Additionally, for each port the master or agent shall note either that:

(A) The practice of nonimmigrant crewmen doing longshore work is in accordance with all collective bargaining agreements covering 30 percent or more of the longshore workers in the port;

(B) The port has no collective bargaining agreement covering 30 percent or more of the longshore workers in the port and an attestation has been filed with the Secretary of Labor;

(C) An attestation that was previously filed is still valid and the vessel continues to comply with the conditions stated in that attestation; or

(D) The longshore work consists of operating an automated, self-unloading conveyor belt or a vacuum-actuated system.

(v) If longshore work will be performed under the reciprocity exception, the master or agent shall note on the manifest that the work will be done under the reciprocity exception, and will note the nationality of the vessel's registry and the nationality or nationalities of the holders of a majority of the ownership interest in the vessel.

(3) *Exception for certain Great Lakes vessels.* (i) A manifest shall not be required for a vessel of United States, Canadian, or British registry engaged solely in traffic on the Great Lakes or the St. Lawrence River and connecting waterways, herein designated as a Great Lakes vessel, unless:

(A) The vessel employs nonimmigrant crewmen who will do longshore work at a port in the United States; or

(B) The vessel employs crewmen of other than United States, Canadian, or British citizenship.

(ii) In either situation, the master shall note the manifest in the manner prescribed in paragraph (a)(2) of this section.

(iii) After submission of a manifest on the first voyage of a calendar year, a manifest shall not be required on subsequent arrivals unless a nonimmigrant crewman of other than Canadian or British citizenship is employed on the vessel who was not aboard and listed on the last prior manifest, or a change has occurred regarding the performance of longshore work in the United States by nonimmigrant crewmen, or a change has occurred in the exception that the master or agent of the vessel wishes to invoke which was not noted on the last prior manifest.

(4) The master or agent of a vessel that only bunkers at a United States port en route to another United States port shall annotate Form I–418 presented at the onward port to indicate the time, date, and place of bunkering.

(5) If documentation is required to support an exception, as described in § 258.2 of this chapter, it must accompany the manifest.

(b) *Aircraft.* The captain or agent of every aircraft arriving in the United States from a foreign place or from an outlying possession of the United States, except an aircraft arriving in the United States directly from Canada on a flight originating in that country, shall present to the immigration officer at the port where the inspection is performed a manifest on United States Customs Service Form 7507 or on the International Civil Aviation Organization's General Declaration of all the alien crewmembers on board, including alien crewmembers who are returning to the United States after taking an aircraft of the same line from the United States to a foreign place or alien crewmembers who are entering the United States as passengers solely for the purpose of taking an aircraft of the same line from the United States to a foreign port. The captain or agent of an aircraft that only refuels at the United States en route to another United States port must annotate the manifest presented at the onward port to indicate the time, date, and place of refueling. The surname, given name, and middle initial of each alien crewman listed also shall be shown on the manifest. In addition, the captain or agent of the aircraft shall indicate the total number

of United States citizen crewmembers and total number of alien crewmembers.

(c) *Additional documents.* The master, captain, or agent shall prepare as a part of the manifest, when one is required for presentation to an immigration officer, a completely executed set of Forms I–95, Conditional Landing Permit, for each nonimmigrant alien crewman on board, except:

(1) A Canadian or British citizen crewman serving on a vessel plying solely between Canada and the United States; or

(2) A nonimmigrant crewman who is in possession of an unmutilated Form I–184, Alien Crewman Landing Permit and Identification Card, or an unmutilated Form I–95 with space for additional endorsements previously issued to him or her as a member of the crew of the same vessel or an aircraft of the same line on his or her last prior arrival in the United States, following which he or she departed from the United States as a member of the crew of the same vessel or an aircraft of the same line.

127. Section 251.2 is revised to read as follows:

### § 251.2  Notification of illegal landings.

As soon as discovered, the master or agent of any vessel from which an alien crewman has illegally landed or deserted in the United States shall inform the immigration officer in charge of the port where the illegal landing or desertion occurred, in writing, of the name, nationality, passport number and, if known, the personal description, circumstances and time of such illegal landing or desertion of such alien crewman, and furnish any other information and documents that might aid in his or her apprehension, including any passport surrendered pursuant to § 252.1(d) of this chapter. Failure to file notice of illegal landing or desertion and to furnish any surrendered passport within 24 hours of the time of such landing or desertion becomes known shall be regarded as lack of compliance with section 251(d) of the Act.

128. Section 251.3 is revised to read as follows:

### § 251.3  Departure manifests and lists for vessels.

(a) *Form I–418, Passenger List-Crew List.* The master or agent of every vessel departing from the United States shall submit to the immigration officer at the port from which such vessel is to depart directly to some foreign place or outlying possession of the United States, except when a manifest is not required pursuant to § 251.1(a), a single Form I–

418 completed in accordance with the instructions on the form. Submission of a Form I–418 that lacks any required endorsement shall be regarded as lack of compliance with section 251(c) of the Act.

(b) *Exception for certain Great Lakes vessels.* The required list need not be submitted for Canadian or British crewmembers of Great Lakes vessels described in § 251.1(a)(3).

129. Section 251.4 is revised to read as follows:

### § 251.4  Departure manifests and lists for aircraft.

(a) *United States Customs Service Form 7507 or International Civil Aviation Organization's General Declaration.* The captain or agent of every aircraft departing from the United States for a foreign place or an outlying possession of the United States, except on a flight departing for and terminating in Canada, shall submit to the immigration officer at the port from which such aircraft is to depart a completed United States Customs Service Form 7507 or the International Civil Aviation Organization's General Declaration. The form shall contain a list of all alien crewmen on board, including alien crewmen who arrived in the United States as crewmen on an aircraft of the same line and who are departing as passengers. The surname, given name, and middle initial of each such alien crewman listed shall be shown. In addition, the captain or agent of the aircraft shall indicate the total number of alien crewmembers and the total number of United States citizen crewmembers.

(b) *Notification of changes in employment for aircraft.* The agent of the air transportation line shall immediately notify in writing the nearest immigration office of the termination of employment in the United States of each alien employee of the line furnishing the name, birth date, birthplace, nationality, passport number, and other available information concerning such alien. The procedure to follow in obtaining permission to pay off or discharge an alien crewman in the United States after initial immigration inspection, other than an alien lawfully admitted for permanent residence, is set forth in § 252.1(f) of this chapter.

130. Section 251.5 is revised to read as follows:

### § 251.5  Exemptions for private vessels and aircraft.

The provisions of this part relating to submission of arrival and departure manifests and lists shall not apply to a private vessel or a private aircraft not

engaged directly or indirectly in the carriage of persons or cargo for hire.

## PART 252—LANDING OF ALIEN CREWMEN

131. The authority citation for part 252 is revised to read as follows:

Authority: 8 U.S.C. 1103, 1184, 1258, 1281, 1282; 8 CFR part 2.

132. Section 252.1 is amended by revising paragraphs (a) through (c) to read as follows:

### § 252.1   Examination of crewmen.

(a) *Detention prior to examination.* All persons employed in any capacity on board any vessel or aircraft arriving in the United States shall be detained on board the vessel or at the airport of arrival by the master or agent of such vessel or aircraft until admitted or otherwise permitted to land by an officer of the Service.

(b) *Classes of aliens subject to examination under this part.* The examination of every nonimmigrant alien crewman arriving in the United States shall be in accordance with this part except that the following classes of persons employed on vessels or aircraft shall be examined in accordance with the provisions of 8 CFR parts 235 and 240:

(1) Canadian or British citizen crewmen serving on vessels plying solely between Canada and the United States; or

(2) Canadian or British citizen crewmen of aircraft arriving in a State of the United States directly from Canada on flights originating in that country. The crew of a vessel arriving at a United States port that may not require inspection by or clearance from the United States Customs Service is, nevertheless, subject to examination under this part; however, the master of such a vessel is not required to present Form I–95 for any crewman who is not an applicant for a conditional landing permit.

(c) *Requirements for landing permits.* Every alien crewman applying for landing privileges in the United States must make his or her application in person before an immigration officer, present whatever documents are required, be photographed and fingerprinted as the district director may require, and establish to the satisfaction of the immigration officer that he or she is not inadmissible under any provision of the law and is entitled clearly and beyond doubt to landing privileges in the United States.

\*    \*    \*    \*    \*

133. Section 252.2 is revised to read as follows:

### § 252.2   Revocation of conditional landing permits; removal.

(a) *Revocation and removal while vessel is in the United States.* A crewman whose landing permit is subject to revocation pursuant to section 252(b) of the Act may be taken into custody by any immigration officer without a warrant of arrest and be transferred to the vessel of arrival, if the vessel is in any port in the United States and has not departed foreign since the crewman was issued his or her conditional landing permit. Detention and removal of the crewman shall be at the expense of the transportation line on which the crewman arrived. Removal may be effected on the vessel of arrival or, if the master of the vessel has requested in writing, by alternate means if removal on the vessel of arrival is impractical.

(b) *Revocation and removal after vessel has departed the United States.* A crewman who was granted landing privileges prior to April 1, 1997, and who has not departed foreign on the vessel of arrival, or on another vessel or aircraft if such permission was granted pursuant to § 252.1(f), is subject to removal proceedings under section 240 of the Act as an alien deportable pursuant to section 237(a)(1)(C)(i) of the Act. A crewman who was granted landing privileges on or after April 1, 1997, and who has not departed foreign on the vessel of arrival, or on another vessel or aircraft if such permission was granted pursuant to § 252.1(f), shall be removed from the United States without a hearing, except as provided in § 208.2(b)(1) of this chapter. In either case, if the alien is removed within 5 years of the date of landing, removal of the crewman shall be at the expense of the owner of the vessel. In the case of a crewman ordered removed more than 5 years after the date of landing, removal shall be at the expense of the appropriation for the enforcement of the Act.

134. Section 252.3 is revised to read as follows:

### § 252.3   Great Lakes vessels and tugboats arriving in the United States from Canada; special procedures.

(a) *United States vessels and tugboats.* An immigration examination shall not be required of any crewman aboard a Great Lakes vessel of United States registry or a tugboat of United States registry arriving from Canada at a port of the United States who has been examined and admitted by an immigration officer as a member of the crew of the same vessel or tugboat or of any other vessel or tugboat of the same company during the current calendar year.

(b) *Canadian or British vessels or tugboats.* An alien crewman need not be presented for inspection if the alien crewman:

(1) Serves aboard a Great Lakes vessel of Canadian or British registry or aboard a tugboat of Canadian or British registry arriving at a United States port-of-entry from Canada;

(2) Seeks admission for a period of less than 29 days;

(3) Has, during the current calendar year, been inspected and admitted by an immigration officer as a member of the crew of the same vessel or tugboat, or of any other vessel or tugboat of the same company;

(4) Is either a British or Canadian citizen or is in possession of a valid Form I–95 previously issued to him or her as a member of the crew of the same vessel or tugboat, or of any other vessel or tugboat of the same company;

(5) Does not request or require landing privileges in the United States beyond the time the vessel or tugboat will be in port; and,

(6) Will depart to Canada with the vessel or tugboat.

135. Section 252.4 is revised to read as follows:

### § 252.4   Permanent landing permit and identification card.

A Form I–184 is valid until revoked. It shall be revoked when an immigration officer finds that the crewman is in the United States in willful violation of the terms and conditions of his or her permission to land, or that he or she is inadmissible to the United States. On revocation, the Form I–184 shall be surrendered to an immigration officer. No appeal shall lie from the revocation of Form I–184.

136. Section 252.5 is revised to read as follows:

### § 252.5   Special procedures for deserters from Spanish or Greek ships of war.

(a) *General.* Under E.O. 11267 of January 19, 1966 (31 FR 807) and 28 CFR 0.109, and E.O. 11300 of August 17, 1966, (31 FR 11009), and 28 CFR 0.110, the Commissioner and immigration officers (as defined in § 103.1(j) of this chapter) are designated as ''competent national authorities'' on the part of the United States within the meaning of Article XXIV of the 1903 Treaty of Friendship and General Relations between the United States and Spain (33 Stat. 2105, 2117), and ''local authorities'' and ''competent officers'' on the part of the United States within the meaning of Article XIII of the Convention between the United States and Greece (33 Stat. 2122, 2131).

(b) *Application for restoration.* On application of a Consul General, Consul, Vice-Consul, or Consular-Agent of the Spanish or Greek Government, made in writing pursuant to Article XXIV of the treaty, or Article XIII of the Convention, respectively, stipulating for the restoration of crewmen deserting, stating that the person named therein has deserted from a ship of war of that government, while in any port of the United States, and on proof by the exhibition of the register, crew list, or official documents of the vessel, or a copy or extract therefrom, duly certified, that the person named belonged, at the time of desertion, to the crew of such vessel, such person shall be taken into custody by any immigration officer without a warrant of arrest. Written notification of charges shall be served on the alien when he or she is taken into custody or as soon as practical thereafter.

(c) *Examination.* Within a reasonable period of time after the arrest, the alien shall be accorded an examination by the district director, acting district director, or the deputy district director having jurisdiction over the place of arrest. The alien shall be informed that he or she may have the assistance of or be represented by a counsel or representative of his or her choice qualified under 8 CFR part 292 without expense to the Government, and that he or she may present such evidence in this or her behalf as may be relevant to this proceeding. If, upon the completion of such examination, it is determined that:

(1) The individual sought by the Spanish or Greek authorities had deserted from a Spanish or Greek ship of war in a United States port;

(2) The individual actually arrested and detained is the person sought;

(3) The individual is not a citizen of the United States; and

(4) The individual had not previously been arrested for the same cause and set at liberty because he or she had been detained for more than 3 months, or more than 2 months in the case of a deserter from a Greek ship of war, from the day of his or her arrest without the Spanish or Greek authorities having found an opportunity to send him or her home, the individual shall be served with a copy of the findings, from which no appeal shall lie, and be surrendered forthwith to the Spanish or Greek authorities if they are prepared to remove him or her from the United States. On written request of the Spanish or Greek authorities, the individual shall be detained, at their expense, for a period not exceeding 3 months or 2 months, respectively, from the day of arrest to afford opportunity to

arrange for his or her departure from the United States.

(d) *Timely departure not effected.* If the Spanish authorities delay in sending the individual home for more than 3 months, or if the Greek authorities delay in sending the individual home for more than 2 months, from the day of his or her arrest, the individual shall be dealt with as any other alien unlawfully in the United States under the removal provisions of the Act, as amended.

(e) *Commission of crime.* If the individual has committed any crime or offense in the United States, he or she shall not be placed at the disposal of the consul until after the proper tribunal having jurisdiction in his or her case shall have pronounced sentence, and such sentence shall have been executed.

PART 253—PAROLE OF ALIEN CREWMEN

137. The authority citation for part 253 is revised to read as follows:

Authority: 8 U.S.C. 1103, 1182, 1282, 1283, 1285; 8 CFR part 2.

138. In § 253.1, paragraph (f) is revised to read as follows:

§ 253.1   Parole.

*     *     *     *     *

(f) *Crewman, stowaway, or alien removable under section 235(c) alleging persecution.* Any alien crewman, stowaway, or alien removable under section 235(c) of the Act who alleges that he or she cannot return to his or her country of nationality or last habitual residence (if not a national of any country) because of fear of persecution in that country on account of race, religion, nationality, membership in a particular social group, or political opinion, is eligible to apply for asylum or withholding of removal under 8 CFR part 208. Service officers shall take particular care to ensure that the provisions of § 208.5(b) of this chapter regarding special duties toward aliens aboard certain vessels are closely followed.

*     *     *     *     *

PART 274a—CONTROL OF EMPLOYMENT OF ALIENS

139. The authority citation for part 274a continues to read as follows:

Authority: 8 U.S.C. 1101, 1103, 1324a; 8 CFR part 2.

140. Section 274a.12 is amended by:
a. Revising paragraphs (a)(10) and (12);

b. Revising paragraphs (c)(8) and (10);
c. Revising paragraph (c)(12); and by
d. Revising paragraph (c)(18), to read as follows:

§ 274a.12   Classes of aliens authorized to accept employment.

(a) * * *

(10) An alien granted withholding of deportation or removal for the period of time in that status, as evidenced by an employment authorization document issued by the Service;

*     *     *     *     *

(12) An alien granted Temporary Protected Status under section 244 of the Act for the period of time in that status, as evidenced by an employment authorization document issued by the Service; or

*     *     *     *     *

(c) * * *

(8) An alien who has filed a complete application for asylum or withholding of deportation or removal pursuant to 8 CFR part 208, whose application:

(i) Has not been decided, and who is eligible to apply for employment authorization under § 208.7 of this chapter because the 150-day period set forth in that section has expired. Employment authorization may be granted according to the provisions of § 208.7 of this chapter in increments to be determined by the Commissioner and shall expire on a specified date; or

(ii) Has been recommended for approval, but who has not yet received a grant of asylum or withholding or deportation or removal;

*     *     *     *     *

(10) An alien who has filed an application for suspension of deportation under section 244 of the Act (as it existed prior to April 1, 1997) or cancellation of removal pursuant to section 240A of the Act. Employment authorization shall be granted in increments not exceeding one year during the period the application is pending (including any period when an administrative appeal or judicial review is pending) and shall expire on a specified date;

*     *     *     *     *

(12) An alien granted benefits under the Family Unity provisions of section 301 of IMMACT 90 and the provisions of part 236, Subpart B of this chapter.

*     *     *     *     *

(18) An alien against whom a final order of deportation or removal exists and who is released on an order of supervision under the authority contained in section 241(a)(3) of the Act may be granted employment authorization in the discretion of the district director only if the alien cannot be removed due to the refusal of all countries designated by the alien or under section 241 of the Act to receive the alien, or because the removal of the alien is otherwise impracticable or

contrary to the public interest. Additional factors which may be considered by the district director in adjudicating the application for employment authorization include, but are not limited to, the following:

(i) The existence of economic necessity to be employed;

(ii) The existence of a dependent spouse and/or children in the United States who rely on the alien for support; and

(iii) The anticipated length of time before the alien can be removed from the United States.

*    *    *    *    *

## PART 286—IMMIGRATION USER FEE

141. The authority citation for part 286 continues to read as follows:

Authority: 8 U.S.C. 1103, 1356; 8 CFR part 2.

142. In § 286.9, paragraph (b)(3) is revised to read as follows:

### § 286.9  Fee for processing applications and issuing documentation at land border Ports-of-Entry.

*    *    *    *    *

(b) * * *

(3) A Mexican national in possession of a valid nonresident alien border crossing card or nonimmigrant B–1/B–2 visa who is required to be issued Form I–94, Arrival/Departure Record, pursuant to § 235.1(f) of this chapter, must remit the required fee for issuance of Form I–94 upon determination of admissibility.

*    *    *    *    *

## PART 287—FIELD OFFICERS; POWERS AND DUTIES

143. The authority citation for part 287 continues to read as follows:

Authority: 8 U.S.C. 1103, 1182, 1225, 1226, 1251, 1252, 1357; 8 CFR part 2.

144. Section 287.3 is revised to read as follows:

### § 287.3  Disposition of cases of aliens arrested without warrant.

(a) *Examination.* An alien arrested without a warrant of arrest under the authority contained in section 287(a)(2) of the Act will be examined by an officer other than the arresting officer. If no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay, the arresting officer, if the conduct of such examination is a part of the duties assigned to him or her, may examine the alien.

(b) *Determination of proceedings.* If the examining officer is satisfied that there is prima facie evidence that the

arrested alien was entering, attempting to enter, or is present in the United States in violation of the immigration laws, the examining officer will refer the case to an immigration judge for further inquiry in accordance with 8 CFR parts 235, 239, or 240, order the alien removed as provided for in section 235(b)(1) of the Act and § 235.3(b) of this chapter, or take whatever other action may be appropriate or required under the laws or regulations applicable to the particular case.

(c) *Notifications and information.* Except in the case of an alien subject to the expedited removal provisions of section 235(b)(1)(A) of the Act, an alien arrested without warrant and placed in formal proceedings under section 238 or 240 of the Act will be advised of the reasons for his or her arrest and the right to be represented at no expense to the Government. The examining officer will provide the alien with a list of the available free legal services provided by organizations and attorneys qualified under 8 CFR part 3 and organizations recognized under § 292.2 of this chapter that are located in the district where the hearing will be held. The examining officer shall note on Form I–862 that such a list was provided to the alien. The officer will also advise the alien that any statement made may be used against him or her in a subsequent proceeding.

(d) *Custody procedures.* Unless voluntary departure has been granted pursuant to subpart C of 8 CFR part 240, a determination will be made within 24 hours of the arrest whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest as prescribed in 8 CFR parts 236 and 239 will be issued.

145. In § 287.4, paragraph (d) is revised to read as follows:

### § 287.4  Subpoena.

*    *    *    *    *

(d) *Invoking aid of court.* If a witness neglects or refuses to appear and testify as directed by the subpoena served upon him or her in accordance with the provisions of this section, the officer or immigration judge issuing the subpoena shall request the United States Attorney for the district in which the subpoena was issued to report such neglect or refusal to the United States District Court and to request such court to issue an order requiring the witness to appear and testify and to produce the books, papers, or documents designated in the subpoena.

146. In § 287.5, paragraphs (b) through (f) are revised to read as follows:

### § 287.5  Exercise of power by immigration officers.

*    *    *    *    *

(b) *Power and authority to patrol the border.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the power to patrol the border conferred by section 287(a)(3) of the Act:

(1) Border patrol agents, including aircraft pilots;

(2) Special agents;

(3) Immigration inspectors (seaport operations only);

(4) Adjudications officers and deportation officers when in the uniform of an immigration inspector and performing inspections or supervising other immigration inspectors performing inspections (seaport operations only);

(5) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(6) Immigration officers who need the authority to patrol the border under section 287(a)(3) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner.

(c) *Power and authority to arrest*—(1) *Arrests of aliens under section 287(a)(2) of the Act for immigration violations.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the arrest power conferred by section 287(a)(2) of the Act and in accordance with § 287.8(c):

(i) Border patrol agents, including aircraft pilots;

(ii) Special agents;

(iii) Deportation officers;

(iv) Immigration inspectors;

(v) Adjudications officers;

(vi) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(vii) Immigration officers who need the authority to arrest aliens under section 287(a)(2) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner.

(2) *Arrests of persons under section 287(a)(4) of the Act for felonies regulating the admission or removal of aliens.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise

the arrest power conferred by section 287(a)(4) of the Act and in accordance with § 287.8(c):

(i) Border patrol agents, including aircraft pilots;

(ii) Special agents;

(iii) Deportation officers;

(iv) Immigration inspectors;

(v) Adjudications officers;

(vi) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(vii) Immigration officers who need the authority to arrest persons under section 287(a)(4) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner with the approval of the Deputy Attorney General.

(3) *Arrests of persons under section 287(a)(5)(A) of the Act for any offense against the United States.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the arrest power conferred by section 287(a)(5)(A) of the Act and in accordance with § 287.8(c):

(i) Border patrol agents, including aircraft pilots;

(ii) Special agents;

(iii) Deportation officers;

(iv) Immigration inspectors (permanent full-time immigration inspectors only);

(v) Adjudications officers when in the uniform of an immigration inspector and performing inspections or supervising other immigration inspectors performing inspections;

(vi) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(vii) Immigration officers who need the authority to arrest persons under section 287(a)(5)(A) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner with the approval of the Deputy Attorney General.

(4) *Arrests of persons under section 287(a)(5)(B) of the Act for any felony.* (i) Section 287(a)(5)(B) of the Act authorizes designated immigration officers, as listed in paragraph (c)(4)(iii) of this section, to arrest persons, without warrant, for any felony cognizable under the laws of the United States if:

(A) The immigration officer has reasonable grounds to believe that the person to be arrested has committed or is committing such a felony;

(B) The immigration officer is performing duties relating to the enforcement of the immigration laws at the time of the arrest;

(C) There is a likelihood of the person escaping before a warrant can be obtained for his or her arrest; and

(D) The immigration officer has been certified as successfully completing a training program that covers such arrests and the standards with respect to the enforcement activities of the Service as defined in § 287.8.

(ii) The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the arrest power conferred by section 287(a)(5)(B) of the Act and in accordance with § 287.8(c):

(A) Border patrol agents, including aircraft pilots;

(B) Special agents;

(C) Deportation officers;

(D) Immigration inspectors (permanent full-time immigration inspectors only);

(E) Adjudications officers when in the uniform of an immigration inspector and performing inspections or supervising other immigration inspectors performing inspections;

(F) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(G) Immigration officers who need the authority to arrest persons under section 287(a)(5)(B) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner with the approval of the Deputy Attorney General.

(iii) Notwithstanding the authorization and designation set forth in paragraph (c)(4)(ii) of this section, no immigration officer is authorized to make an arrest for any felony under the authority of section 287(a)(5)(B) of the Act until such time as he or she has been certified by the Director of Training as successfully completing a training course encompassing such arrests and the standards for enforcement activities as defined in § 287.8. Such certification shall be valid for the duration of the immigration officer's continuous employment, unless it is suspended or revoked by the Commissioner or the Commissioner's designee for just cause.

(5) *Arrests of persons under section 274(a) of the Act who bring in, transport, or harbor certain aliens, or induce them to enter.* (i) Section 274(a) of the Act authorizes designated immigration officers, as listed in paragraph (c)(5)(ii) of this section, to arrest persons who bring in, transport, or harbor aliens, or induce them to enter

the United States in violation of law. When making an arrest, the designated immigration officer shall adhere to the provisions of the enforcement standard governing the conduct of arrests in § 287.8(c).

(ii) The following immigration officers who have successfully completed basic immigration law enforcement training are authorized and designated to exercise the arrest power conferred by section 274(a) of the Act:

(A) Border patrol agents, including aircraft pilots;

(B) Special agents;

(C) Deportation officers;

(D) Immigration inspectors;

(E) Adjudications officers when in the uniform of an immigration inspector and performing inspections or supervising other immigration inspectors performing inspections;

(F) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(G) Immigration officers who need the authority to arrest persons under section 274(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner with the approval of the Deputy Attorney General.

(6) *Custody and transportation of previously arrested persons.* In addition to the authority to arrest pursuant to a warrant of arrest in paragraph (e)(3)(iv) of this section, detention enforcement officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to take and maintain custody of and transport any person who has been arrested by an immigration officer pursuant to paragraphs (c)(1) through (c)(5) of this section.

(d) *Power and authority to conduct searches.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the power to conduct searches conferred by section 287(c) of the Act:

(1) Border patrol agents, including aircraft pilots;

(2) Special agents;

(3) Deportation officers;

(4) Immigration inspectors;

(5) Adjudications officers;

(6) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(7) Immigration officers who need the authority to conduct searches under section 287(c) of the Act in order to

effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner.

(e) *Power and authority to execute warrants—*(1) *Search warrants.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the power conferred by section 287(a) of the Act to execute a search warrant:

(i) Border patrol agents, including aircraft pilots;

(ii) Special agents;

(iii) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph, and

(iv) Immigration officers who need the authority to execute search warrants under section 287(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner with the approval of the Deputy Attorney General.

(2) *Issuance of arrest warrants for immigration violations.* A warrant of arrest may be issued only by the following immigration officers:

(i) District directors (except foreign);

(ii) Deputy district directors (except foreign);

(iii) Assistant district directors for investigations;

(iv) Deputy assistant district directors for investigations;

(v) Assistant district directors for deportation;

(vi) Deputy assistant district directors for deportation;

(vii) Assistant district directors for examinations;

(viii) Deputy assistant district directors for examinations;

(ix) Officers in charge (except foreign);

(x) Assistant officers in charge (except foreign);

(xi) Chief patrol agents;

(xii) Deputy chief patrol agents;

(xiii) Associate chief patrol agents;

(xiv) Assistant chief patrol agents;

(xv) Patrol agents in charge;

(xvi) The Assistant Commissioner, Investigations;

(xvii) Institutional Hearing Program directors;

(xviii) Area port directors;

(xix) Port directors; or

(xx) Deputy port directors.

(3) *Service of warrant of arrests for immigration violations.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the power pursuant to section

287(a) of the Act to execute warrants of arrest for administrative immigration violations issued under section 236 of the Act or to execute warrants of criminal arrest issued under the authority of the United States:

(i) Border patrol agents, including aircraft pilots;

(ii) Special agents;

(iii) Deportation officers;

(iv) Detention enforcement officers (warrants of arrest for administrative immigration violations only);

(v) Immigration inspectors;

(vi) Adjudications officers when in the uniform of an immigration inspector and performing inspections or supervising other immigration inspectors performing inspections;

(vii) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(viii) Immigration officers who need the authority to execute arrest warrants for immigration violations under section 287(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner, for warrants of arrest for administrative immigration violations, and with the approval of the Deputy Attorney General, for warrants of criminal arrest.

(4) *Service of warrant of arrests for non-immigration violations.* The following immigration officers who have successfully completed basic immigration law enforcement training are hereby authorized and designated to exercise the power to execute warrants of criminal arrest for non-immigration violations issued under the authority of the United States:

(i) Border patrol agents, including aircraft pilots;

(ii) Special agents;

(iii) Deportation officers;

(iv) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(v) Immigration officers who need the authority to execute warrants of arrest for non-immigration violations under section 287(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner with the approval of the Deputy Attorney General.

(f) *Power and authority to carry firearms.* The following immigration officers who have successfully completed basic immigration enforcement training are hereby authorized and designated to exercise the power conferred by section 287(a) of the Act to carry firearms provided that

they are individually qualified by training and experience to handle and safely operate the firearms they are permitted to carry, maintain proficiency in the use of such firearms, and adhere to the provisions of the enforcement standard governing the use of force in §287.8(a):

(1) Border patrol agents, including aircraft pilots;

(2) Special agents;

(3) Deportation officers;

(4) Detention enforcement officers;

(5) Immigration inspectors;

(6) Adjudications officers when in the uniform of an immigration inspector and performing inspections or supervising other immigration inspectors performing inspections;

(7) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(8) Immigration officers who need the authority to carry firearms under section 287(a) of the Act in order to effectively accomplish their individual missions and who are designated, individually or as a class, by the Commissioner with the approval of the Deputy Attorney General.

147. Section 287.7 is revised to read as follows:

### §287.7   Detainer provisions under section 287(d)(3) of the Act.

(a) *Detainers in general.* Detainers are issued pursuant to sections 236 and 287 of the Act and this chapter. Any authorized Service official may at any time issue a Form I–247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Service seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Service, prior to release of the alien, in order for the Service to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

(b) *Authority to issue detainers.* The following officers are authorized to issue detainers:

(1) Border patrol agents, including aircraft pilots;

(2) Special agents;

(3) Deportation officers;

(4) Immigration inspectors;

(5) Adjudications officers;

(6) Supervisory and managerial personnel who are responsible for supervising the activities of those officers listed in this paragraph; and

(7) Immigration officers who need the authority to issue detainers under

section 287(d)(3) of the Act in order to effectively accomplish their individual missions and who are designated individually or as a class, by the Commissioner.

(c) *Availability of records.* In order for the Service to accurately determine the propriety of issuing a detainer, serving a notice to appear, or taking custody of an alien in accordance with this section, the criminal justice agency requesting such action or informing the Service of a conviction or act that renders an alien inadmissible or removable under any provision of law shall provide the Service with all documentary records and information available from the agency that reasonably relates to the alien's status in the United States, or that may have an impact on conditions of release.

(d) *Temporary detention at Service request.* Upon a determination by the Service to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Service.

(e) *Financial responsibility for detention.* No detainer issued as a result of a determination made under this chapter shall incur any fiscal obligation on the part of the Service, until actual assumption of custody by the Service, except as provided in paragraph (d) of this section.

## PART 299—IMMIGRATION FORMS

148. The authority citation for part 299 continues to read as follows:

Authority: 8 U.S.C. 1101, 1103; 8 CFR part 2.

149. Section 299.1 is amended by:

a. Revising the entries for Forms "I–147", "I–205", "I–246", "I–247", "I–259", "I–284", "I–286", "I–291", "I–296", "I–408", "I–541", "I–589", "I–775", "I–851", and "I–851A";

b. Removing the entries for Forms I–122", "I–221", "I–259C", "I–290A", and "I–444", and by

c. Adding the entries for Forms "I–94T", "I–99", "I–148", "I–160", "I–210", "I–213", "I–217", "I–220A", "I–220B", "I–241", "I–261", "I–270", "I–275", "I–294", "I–407", "I–546", "I–701", "I–770", "I–771", "I–826", "I–827B", "I–860", "I–862", "I–863", "I–867AB", and "I–869" in proper numerical sequence, to the listing of forms, to read as follows:

**§ 299.1   Prescribed forms.**

\*      \*      \*      \*      \*

| Form No. | Edition date | | Title | | | | |
|---|---|---|---|---|---|---|---|
| \* | \* | \* | \* | \* | \* | \* | \* |
| I–94T | 09–22–87 | ........................ | Arrival-Departure Record (Transit without visa). | | | | |
| \* | \* | \* | \* | \* | \* | \* | \* |
| I–99 ................................... | 04–01–97 | ........................ | Notice of Revocation and Penalty. | | | | |
| \* | \* | \* | \* | \* | \* | \* | \* |
| I–147 ................................. | 04–01–97 | ........................ | Notice of Temporary Inadmissibility to U.S. | | | | |
| I–148 ................................. | 04–01–97 | ........................ | Notice of Permanent Inadmissibility. | | | | |
| I–160 ................................. | 04–01–97 | ........................ | Notice of Parole/Lookout Intercept. | | | | |
| \* | \* | \* | \* | \* | \* | \* | \* |
| I–205 ................................. | 04–01–97 | ........................ | Warrant of Removal. | | | | |
| I–210 ................................. | 04–01–97 | ........................ | Notice of Action—Voluntary Departure. | | | | |
| \* | \* | \* | \* | \* | \* | \* | \* |
| I–213 ................................. | 04–01–97 | ........................ | Record of Deportable/Inadmissible Alien. | | | | |
| I–217 ................................. | 04–01–97 | ........................ | Information for Travel Document or Passport. | | | | |
| I–220A ............................... | 04–01–97 | ........................ | Order of Release on Recognizance. | | | | |
| I–220B ............................... | 04–01–97 | ........................ | Order of Supervision. | | | | |
| \* | \* | \* | \* | \* | \* | \* | \* |
| I–241 ................................. | 04–01–97 | ........................ | Request for Travel Document to Country Designated by Alien. | | | | |
| \* | \* | \* | \* | \* | \* | \* | \* |
| I–246 ................................. | 04–01–97 | ........................ | Application for Stay of Removal. | | | | |
| I–247 ................................. | 04–01–97 | ........................ | Immigration Detainer—Notice of Action. | | | | |
| I–259 ................................. | 04–01–97 | ........................ | Notice to Detain, Deport, Remove, or Present Aliens. | | | | |
| \* | \* | \* | \* | \* | \* | \* | \* |
| I–261 ................................. | 04–01–97 | ........................ | Additional Charges of Removability. | | | | |
| I–270 ................................. | 04–01–97 | ........................ | Request for Consent to Return Person to Canada. | | | | |
| I–275 ................................. | 04–01–97 | ........................ | Withdrawal of Application/Consular Notification. | | | | |
| I–284 ................................. | 04–01–97 | ........................ | Notice to Transportation Line Regarding Deportation and Detention Expenses of Detained Alien. | | | | |
| I–286 ................................. | 04–01–97 | ........................ | Notification to Alien of Conditions of Release or Detention. | | | | |
| \* | \* | \* | \* | \* | \* | \* | \* |
| I–291 ................................. | 04–01–97 | ........................ | Decision on Application for Status as Permanent Resident. | | | | |
| \* | \* | \* | \* | \* | \* | \* | \* |
| I–294 ................................. | 04–01–97 | ........................ | Notice of Country to Which Deportation has been Directed and Penalty for Reentry without Permission. | | | | |
| I–296 ................................. | 04–01–97 | ........................ | Notice to Alien Ordered Removed. | | | | |
| \* | \* | \* | \* | \* | \* | \* | \* |
| I–407 ................................. | 04–01–97 | ........................ | Abandonment by Alien of Status as Lawful Permanent Resident. | | | | |
| I–408 ................................. | 04–01–97 | ........................ | Application to Pay Off or Discharge Alien Crewman. | | | | |

| Form No. | Edition date | | Title |
|---|---|---|---|
| * | * | * | * * * * |
| I–541 ...................................... | 04–01–97 ........................ | | Order of Denial of Application for Extension of Stay or Student Employment or Student Transfer. |
| * | * | * | * * * * |
| I–546 ...................................... | 04–01–97 ........................ | | Order to Appear—Deferred Inspection. |
| * | * | * | * * * * |
| I–589 ...................................... | 04–01–97 ........................ | | Application for Asylum and Withholding of Removal. |
| * | * | * | * * * * |
| I–701 ...................................... | 04–01–97 ........................ | | Detainee Transfer Worksheet. |
| * | * | * | * * * * |
| I–770 ...................................... | 04–01–97 ........................ | | Notice of Rights and Request for Disposition. |
| I–771 ...................................... | 04–01–97 ........................ | | Bond Computation Worksheet. |
| I–775 ...................................... | 04–01–97 ........................ | | Visa Waiver Pilot Program Agreement. |
| * | * | * | * * * * |
| I–826 ...................................... | 04–01–97 ........................ | | Notice of Rights and Request for Disposition |
| I–851 ...................................... | 04–01–97 ........................ | | Notice of Intent to Issue Final Administrative Removal Order. |
| I–851A ..................................... | 04–01–97 ........................ | | Final Administrative Removal Order. |
| * | * | * | * * * * |
| I–860 ...................................... | 04–01–97 ........................ | | Notice and Order of Expedited Removal. |
| I–862 ...................................... | 04–01–97 ........................ | | Notice to Appear. |
| I–863 ...................................... | 04–01–97 ........................ | | Notice of Referral to Immigration Judge. |
| I–867AB .................................... | 04–01–97 ........................ | | Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act. |
| I–869 ...................................... | 04–01–97 ........................ | | Record of Negative Credible Fear Finding and Request for Review by Immigration Judge. |
| * | * | * | * * * * |

150. Section 299.5 is amended by:

a. Removing the entry for Form "I–259C"; and by

b. Revising the entries for Forms "I–246" and "I–589", and to read as follows:

§ 299.5   Display of control numbers.

* * * * *

| INS form no. | INS form title | Currently assigned OMB control no. |
|---|---|---|
| * | * * * * | * |
| I–246 | Application for Stay of Removal ........................................................................ | 1115–0055 |
| * | * * * * | * |
| I–589 | Application for Asylum and Withholding of Removal ........................................... | 1115–0086 |
| * | * * * * | * |

## PART 316—GENERAL REQUIREMENTS FOR NATURALIZATION

151. The authority citation for part 316 is revised to read as follows:

Authority: 8 U.S.C. 1103, 1181, 1182, 1443, 1447; 8 CFR part 2.

152. Section 316.5 is amended by revising paragraph (c)(3) to read as follows:

### § 316.5   Residence in the United States.

* * * * * *

(c) * * *

(3) *Removal and return.* Any departure from the United States while under an order of removal (including previously issued orders of exclusion or deportation) terminates the applicant's status as a lawful permanent resident and, therefore, disrupts the continuity of residence for purposes of this part.

* * * * *

## PART 318—PENDING REMOVAL PROCEEDINGS

153. The heading for part 318 is revised as set forth above.

154. The authority citation for part 318 is revised to read as follows:

Authority: 8 U.S.C. 1103, 1252, 1429, 1443; 8 CFR part 2.

155. Section 318.1 is revised to read as follows:

### § 318.1   Warrant of arrest.

For the purposes of section 318 of the Act, a notice to appear issued under 8 CFR part 239 (including a charging document issued to commence proceedings under sections 236 or 242 of the Act prior to April 1, 1997) shall be regarded as a warrant of arrest.

## PART 329—SPECIAL CLASSES OF PERSONS WHO MAY BE NATURALIZED: NATURALIZATION BASED UPON ACTIVE DUTY SERVICE IN THE UNITED STATES ARMED FORCES DURING SPECIFIED PERIODS OF HOSTILITIES

156. The authority citation for part 329 is revised to read as follows:

Authority: 8 U.S.C. 1103, 1440, 1443; 8 CFR part 2.

159 Section 329.2 is amended by revising paragraph (e)(3) to read as follows:

**§ 329.2  Eligibility.**

\*    \*    \*    \*    \*

(e) \* \* \*

(3) The applicant may be naturalized even if an outstanding notice to appear pursuant to 8 CFR part 239 (including a charging document issued to commence proceedings under sections 236 or 242 of the Act prior to April 1, 1997) exists.

Dated: February 26, 1997.

Janet Reno,

*Attorney General.*

[FR Doc. 97–5250 Filed 2–28–97; 3:29 pm]

**BILLING CODE 4410–10–P**